1 | Ralph S. LaMontagne, Jr. [State Bar No. 91536]
Eric A. Amador [State Bar No. 143395]
2 | Thomas T. Carpenter [State Bar No. 98051]
LaMONTAGNE & AMADOR LLP
3 | 150 S. Los Robles Avenue, Suite 940
Pasadena, California 91101
4 | Telephone:  (626) 765-6800
Facsimile:  (626) 765-6801
5 |
Attorneys for Defendant
6 | OLD REPUBLIC INSURANCE COMPANY

7

8 | **UNITED STATES DISTRICT COURT**

9 | **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 | R CONSULTING & SALES, INC., a        )   Case No. 3:17-cv-00171-LAB-BLM
Nevada corporation,                   )
12 |                                    )   **MEMORANDUM OF POINTS AND**
                                       )   **AUTHORITIES IN SUPPORT OF**
13 |         Plaintiff,                 )   **MOTION FOR SUMMARY**
                                       )   **JUDGMENT, OR, IN THE**
14 |    vs.                            )   **ALTERNATIVE, PARTIAL**
                                       )   **SUMMARY JUDGMENT**
15 | OLD REPUBLIC INSURANCE            )
16 | COMPANY, a Pennsylvania corporation; )
and DOES 1 through 10,                )   Date:  July 23, 2018
17 |                                    )   Time: 11:00 a.m.
                                       )   Ctrm:  14A
18 |         Defendants.                )
                                       )
19 | _____ )   Removal Filed:  1/30/2017

20

21

22

23

24

25

26

27

28

LAW OFFICES
LAMONTAGNE &
AMADOR LLP

238577

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................... 1

II. STATEMENT OF FACTS ............................................................................ 1

III. LEGAL STANDARD .................................................................................. 9

IV. ARGUMENT ............................................................................................... 9

    A.    PLAINTIFF'S FIRST CLAIM FOR RELIEF FOR BREACH OF CONTRACT FAILS FOR NUMEROUS INDEPENDENT REASONS ........................................................................................... 9

        1.    No Coverage Is Possible Due To Material Misrepresentations/Concealment On The Part Of Plaintiff ........................................................................................... 9

                a.    Plaintiff Materially Misrepresented That The Aircraft Would Be Based In The United States, And Materially Concealed That The Aircraft Was, In Fact, Leased To Parties Based In Mexico ........................ 12

                b.    Plaintiff's Concealment Of The Execution Of The Purchase Agreement Also Voids Coverage .......................... 13

                c.    Plaintiff's Misrepresentation/Concealment Regarding Ricotta's Felony Conviction Additionally Negates Coverage .............................................. 14

        2.    Plaintiff Has Not Met Its Burden Of Demonstrating Compliance With Several Warranties ................................................ 14

                a.    The "Your Aircraft" Warranty Was Breached ...................... 15

                b.    The "Purpose Of Flight" Warranty, As Defined By The "Industrial Aid Use Amendment" Endorsement, Was Violated ................................................... 16

                c.    Plaintiff Also Breached The "Home Airport" Warranty ............................................................................ 17

        3.    Plaintiff Has Also Failed To Meet Its Burden Of Demonstrating That The Basic Insuring Agreement Of The Comprehensive Physical Damage Coverage Has Been Triggered ................................................................................ 18

                a.    There Has Been No "Theft" Established .............................. 18

                b.    There Has Also Been No "Direct And Accidental Physical Damage Or Loss" Demonstrated .......................... 20

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

LAW OFFICES
LAMONTAGNE &
AMADOR LLP

238577

|  |  | c. | There Has Also Been No Trigger Of The "Disappearance" Language ....................................................22 |
|  | 4. |  | The "Sale Or Disposition" Exclusion Has Been Triggered ...........................................................................23 |
|  | 5. |  | Plaintiff's Clear Violation Of The "What To Do In Case Of An Accident Or Suit" Section Of The Policy Also Vitiates Coverage ................................................................23 |
| B. |  |  | PLAINTIFF'S SECOND CLAIM FOR RELIEF FOR BAD FAITH ALSO FAILS AS A MATTER OF LAW .....................................24 |

V. CONCLUSION ...........................................................................................................25

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Atkin v. Smith*,
   137 F.3d 1169 (9th Cir. 1998) ............................................................... 14

*Barnett v. State Farm Gen. Ins. Co.*,
   200 Cal. App. 4th 536, 132 Cal. Rptr. 3d 742 (2011) ........................... 18

*Bauer Bros., LLC v. Nike, Inc.*,
   159 F. Supp. 3d 1202 (S.D. Cal. 2016)..................................................... 9

*Benavides v. State Farm Gen. Ins. Co.*,
   136 Cal. App. 4th 1241, 39 Cal. Rptr. 3d 650 (2006) ........................... 25

*Century Sur. Co. v. 350 W.A., LLC*,
   2000 WL 4506981 (S.D. Cal. 2011), *aff'd* 539 Fed. Appx. 749 (9th
   Cir. 2013) ............................................................................................... 10

*Chase v. Nat'l Indem. Co.*,
   129 Cal. App. 2d 853, 278 P.2d 68 (1954) ........................................... 15

*Chierfue Her v. State Farm Ins. Co.*,
   92 F. Supp. 3d 957 (E.D. Cal. 2015) ..................................................... 19

*Columbiana Cty. Bd. of Commissioners v. Nationwide Ins. Co.*,
   719 N.E.2d 561 (Ohio Ct. App. 1998)................................................... 22

*Congleton v. National Union Fire Ins. Co.*,
   189 Cal. App. 3d 51, 234 Cal. Rptr. 218 (1987)..............................20, 22

*De Campos v. State Comp. Ins. Fund*,
   122 Cal. App. 2d 519, 265 P.2d 617 (1954) ......................................... 15

*Feldman v. Allstate Ins. Co.*,
   322 F.3d 660 (9th Cir.), *cert. denied* 550 U.S. 875 (2003) ................... 25

*Freeman v. Allstate Life Ins. Co.*,
   253 F.3d 533 (9th Cir. 2001) ...........................................................10, 11

*Gradetech, Inc. v. Amer. Employers Ins. Grp*,
   2006 WL 1806156 (N.D. Cal. 2006) ..................................................... 16

*Grange Ins. Ass'n v. Shran*,
   184 F. Supp. 3d 799 (E.D. Cal. 2016) ................................................... 17

*Holz Rubber Co., Inc. v. Amer. Star Ins. Co.*,
   14 Cal. 3d 45, 533 P.2d 1055, 120 Cal. Rptr. 415 (1975) ..................... 16

*Houston Fire & Cas. Ins. Co. v. Ivens*,
   338 F.2d 452 (5th Cir. 1964) ................................................................. 17

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

238577

*Imperial Casualty & Indemnity Co. v. Sogomonian*,
    198 Cal. App. 3d 169 , 243 Cal. Rptr. 639 (1988)....................................................10

*Jackson v. Teachers Ins. Co.*,
    30 Cal. App. 3d 341, 106 Cal. Rptr. 208 (1973)....................................................18

*Kelly v. Starr Indem. & Liab. Co.*,
    2017 WL 3457145 (S.D. Cal. 2017) ....................................................................11

*Kennedy v. Underwriters at Lloyd's, London*,
    219 Cal. App. 2d 11, 32 Cal. Rptr. 685 (1963)....................................................15

*Kurtz v. Liberty Mut. Ins. Co.*, 668 Fed. Appx. 755 (9th Cir. 2016) .................................12

*LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*,
    156 Cal. App. 4th 1259,  67 Cal. Rptr. 3d 917 (2007) .........................................10

*Lemoine v. State Farm General Ins. Co.*,
    2016 WL 6778647 (N.D. Cal. 2016) ....................................................................24

*Lennar Mare Island, LLC v. Steadfast Ins. Co.*,
    176 F. Supp. 3d 949 (E.D. Cal. 2016) ...................................................................9

*Maddux v. Philadelphia Life Ins. Co.*,
    77 F. Supp. 2d 1123 (S.D. Cal. 1999)...................................................................25

*Mesa Underwriters Spec. Ins. Co. v. Iverson*,
    2018 WL 2585536 (N.D. Cal. 2018) ....................................................................12

*Mitchell v. United Nat'l Ins. Co.*,
    127 Cal. App. 4th 457 , 25 Cal. Rptr. 3d 627 (2005) ...............................10, 11, 12

*Monarch Ins. Co. of Ohio v. Siegel*,
    625 F. Supp. 693 (N.D. Ind. 1986) .......................................................................17

*Moon v. Pruco Life Ins. Co.*,
    2017 WL 979096 (C.D. Cal. 2017) ......................................................................12

*Munoz v. InGenesis STGI Partners, LLC*,
    182 F. Supp. 3d 1097 (S.D. Cal. 2016)...................................................................9

*N. Amer. Capacity Ins. Co. v. Claremont Liab. Ins. Co.*,
    177 Cal. App. 4th 272, 99 Cal. Rptr. 3d 225 (2009) ............................................15

*Navigators Specialty Ins. Co. v. Leal*,
    2012 WL 13014629 (C.D. Cal. 2012) ..................................................................15

*Northrop Grumman Corp. v. Factory Mutual Ins. Co.*,
    805 F. Supp. 2d 945 (C.D. Cal. 2011) ..................................................................24

*Old Line Life Ins. Co. v. Superior Court*,
    229 Cal. App. 3d 1600, 281 Cal. Rptr. 15 (1991)................................................11

*Pacif. Indem. v. Acel Delivery Service, Inc.*,
    485 F.2d 1169 (5th Cir. 1973), *cert. denied* 415 U.S. 921 (1974) .......................17

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

*Pacif. Marine Ctr., Inc. v. Phil. Indem. Ins. Co.*,
  248 F. Supp. 3d 984 (E.D. Cal. 2017) ...................................................... 18

*Pan Pacif. Retail Prop., Inc. v. Gulf Ins. Co.*,
  471 F.3d 961 (9th Cir. 2006) .................................................................. 15

*Rhodes & Jamieson, Ltd. v. Calif. State Board of Equalization*,
  201 Cal. App. 2d 343, 20 Cal. Rptr. 218 (1962)................................... 17

*Salkin v. United Services Auto. Ass'n*,
  835 F. Supp. 2d 825 (C.D. Cal. 2011) .................................................. 10

*Soler v. County of San Diego*,
  274 F. Supp. 3d 1043 (S.D. Cal. 2017)..................................................... 9

*Superior Dispatch, Inc. v. Ins. Corp. of New York*,
  151 Cal. App. 4th 175, 104 Cal. Rptr. 3d 508 (2010) .................11, 12, 13

*Tran v. Kansas City Life Ins. Co.*,
  228 F. Supp. 3d 1068 (C.D. Cal. 2017) ............................................ 10, 12

*Trishan Air, Inc. v. Federal Ins. Co.*,
  635 F.3d 422 (9th Cir. 2011) ............................................................ 15, 21

*Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*,
  88 F. Supp. 3d 1156 (S.D. Cal. 2017)..................................................... 24

*United Specialty Ins. Co. v. Saleh*,
  2016 WL 4434479 (E.D. Cal. 2016)....................................................... 10

*Upper Deck Co. v. Endurance American Spec. Ins. Co.*,
  2011 WL 6396413 (S.D. Cal. 2011)....................................................... 12

*Warkentin v. Federated Life Ins. Co.*,
  2015 WL 2358174 (E.D. Cal. 2015)....................................................... 12

*Warner v. Fire Ins. Exch.*,
  230 Cal. App. 3d 1029, 281 Cal. Rptr. 635 (1991)................................ 15

*Waste Mgmt. of the Desert, Inc. v. Palm Springs Recycling Ctr., Inc.*,
  7 Cal. 4th 478, 869 P.2d 440, 28 Cal. Rptr. 2d 461 (1994) ................... 23

*West Coast Life Ins. Co. v. Ward*,
  132 Cal. App. 4th 181, 33 Cal. Rptr. 3d 319 (2005) ............................. 11

*Western World Ins. Co. v. Prof. Collection Consultants*,
  721 Fed. Appx. 621 (9th Cir. 2018)........................................................ 12

*Williams v. Davis*,
  69 Cal. App. 2d 141, 158 P.2d 748 (1945) ............................................ 22

*Williamson & Vollmer Engineering, Inc. v. Sequoia Ins. Co.*,
  64 Cal. App. 3d 261, 134 Cal. Rptr. 427 (1976)................................... 11

*Zepeda v. Uribe*,
  710 F. Supp. 2d 1024 (S.D. Cal. 2010).................................................. 20

LAW OFFICES
LaMONTAGNE &
AMADOR LLP

v

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

238577

**<u>Statutes</u>**

California Inssurance Code § 358 ...................................................................................... 10

California Insurance Code § 444 ...................................................................................... 15

California Insurance Code § 445 .................................................................................. 15, 21

**<u>Treatises</u>**

Croskey, *et al.*, *California Practice Guide: Insurance Litigation* (The Rutter
    Group 2017)
       § 5:153 ............................................................................................................. 11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

238577

# I.  INTRODUCTION

In this case, Plaintiff, R Consulting & Sales, Inc. ("R Consulting") was the owner of a certain Gulfstream III aircraft ("the Aircraft").  Defendant, Old Republic Insurance Company ("ORIC"), a company that does *not* write aviation risks based in Mexico, insured the Aircraft, the coverage having been obtained through R Consulting's broker, Avsurance Corporation ("Avsurance").  In R Consulting's multiple applications for insurance, the representations were made that the Aircraft would be based in the United States.  In fact, however, unbeknownst to either ORIC or Avsurance, at the time of inception of the relevant policy of insurance, the Aircraft was, in fact, based deep down in Mexico, pursuant to a lease that had been finalized several weeks prior.  R Consulting thereafter entered into an agreement to sell the Aircraft to a third party, pursuant to a purchase contract that was to be effective approximately three months after policy inception, with the lessee acting as R Consulting's sales agent.  R Consulting never informed either ORIC or its broker of the sale.  R Consulting thereafter sued the lessee/sales agent to enforce the contract.  Eventually, R Consulting became concerned about the status of the Aircraft, and, a few days before policy expiration, *started* the process of "coming clean" regarding the Aircraft's *actual* status, and filed a claim.  ORIC was unable to honor that claim.

Plaintiff thereafter filed the instant action for breach of contract and bad faith.  As will be seen in the discussion that follows, both Plaintiff's breach of contract claim for relief and its bad faith claim for relief must fail as a matter of law for a multitude of reasons.

# II.  STATEMENT OF FACTS

R Consulting is a company involved in the sales and leasing of aircraft, as well as aircraft consulting.  Ex. 1 at 6.  It is essentially comprised of two individuals.  Raquel Michel ("Michel") is its president, sole officer, and sole shareholder.  Ex. 2 at 23:3-8, 28:7-11.  Lance Z. Ricotta ("Ricotta") is the company's "flight operations person," "consultant" and "aircraft manager."  Ex. 1 at 3:1-3; Ex. 2 at 3:12-23.  In this position, Ricotta "does everything that has to do with the aircraft."  Ex. 2 at 5:9-17.

On February 9, 2005, a judgment of conviction was entered against Ricotta in this Court for the Class C felony of "Conspiracy to Commit Fraud Involving Aircraft," in the action styled *United States of America v. Lance Z. Ricotta*, case no. 3:02-cr-00333-W ("the Ricotta Felony Action").  Ex. 3.  As a result of the conviction, Ricotta was, *inter alia*: (1) sentenced to one month in prison; (2) sentenced to three years "supervised release" upon release from jail; and (3) required to pay $185,000 in restitution.  *Id.*

For a number of years, R Consulting has been a client of Avsurance.  Coleman Decl., ¶ 3; Underwood Decl., ¶ 3.  Avsurance is an insurance broker that places aviation risks on behalf of its clients.  Underwood Decl., ¶2.  In its capacity as broker, Avsurance has, over the years, negotiated and obtained, on behalf of R Consulting, a number of aviation policies written by various insurance companies.  Coleman Decl., ¶ 4.

Commencing in 2013, Avsurance negotiated with Phoenix Aviation Managers, Inc. ("PAM") to obtain, on behalf of R Consulting, two ORIC aviation policies of insurance: (1) no. CA 00246201, effective September 30, 2013 to September 30, 2014 ("the 13/14 Policy"); and (2) no. CA 00246202, effective September 30, 2014 to September 30, 2015 ("the 14/15 Policy").  Coleman Decl., ¶¶ 5, 6.[1]

The PAM underwriter in charge of the R Consulting account was Jennifer Melvin ("Melvin").  Melvin Decl., ¶ 4.  In initially evaluating the R Consulting risk, Melvin considered, among other things, two documents which had been received from Avsurance: (1) the "Pilot Experience Form" signed by Ricotta, and dated September 4, 2013 ("PEF"); and (2) the "Aircraft Insurance Application" signed by Michel on September 10, 2013 ("the 2013 Application").  *Id.*, ¶ 5; Exs. 6, 7. In the PEF, the "No" box was checked as respects the question: "Have you ever been convicted of or pleaded guilty to a felony or driving while impaired or intoxicated?"  Ex. 7.  The 2013 Application represented that the aircraft

---

[1] PAM changed its name to Old Republic Aerospace, Inc. ("ORA") on May 1, 2015. PAM/ORA acts as managing general agent for ORIC with respect to the placement of aviation insurance risks.  Murray Decl., ¶¶ 1-2; Ex. 52.

1  to be insured, a 1983 Gulfstream III jet, would be "based at" Brown Field in San Diego,

2  California.  Ex. 6 at 1.[2]  In response to the inquiry "[d]escribe any navigation outside the

3  USA & Canada," it was stated "Mexico."  *Id.*  This response led Melvin to inquire as to the

4  *extent* to which the Aircraft would be traveling to Mexico.  Melvin Decl., ¶ 9.  In this

5  regard, it was (and is) PAM's/ORA's underwriting policy to *not* bind coverage under *any*

6  ORIC policy as respects *any* aircraft based in Mexico.  *Id*., ¶ 9; Prahl Decl., ¶ 10.  Risks

7  involving aircraft based in Mexico are considered by PAM/ORA to be particularly

8  problematic for a number of reasons, including corruption, drug cartel activity and lack of

9  airport security.  Prahl Decl., ¶ 10.

10         Given the above, in initially communicating with Avsurance's Account Manager,

11  James D. Coleman, regarding the potential issuance of a policy to R Consulting, Melvin

12  wanted to make sure that trips to Mexico were limited, and that the Aircraft was *truly* going

13  to be based in the United States.  Melvin Decl., ¶¶ 9-16; Coleman Decl., ¶ 1.  In this regard,

14  in a September 11, 2013 email to Coleman, Melvin stated that she needed "[c]onfirmation

15  that the aircraft is not predominantly based in, or conducting flights in Mexico."  Melvin

16  Decl., ¶ 10; Ex. 8.  She added: "[T]he policy territory is Worldwide, so we do not mind the

17  occasional vacation south of the border, but if they spend more time down there than up

18  here, we'd have to pass."  *Id*.  On September 17, 2013, Melvin sent an email to Coleman "to

19  confirm a series of [prior] emails and phone calls."  Ex. 9.  Therein, Melvin "confirmed,"

20  *inter alia*, that, "[w]hile there are several vacation flights a year to Mexico, their operations

21  are predominantly domestic."  *Id*.  In a September 18, 2013 email to Melvin, Coleman

22  clarified that "they do go to Mexico from time to time for business, so I wouldn't classify it

23  solely as 'vacation' trips."  Ex. 11.  Additionally, via email dated September 19, 2013,

24  Coleman advised Melvin that the Aircraft was "no longer based in San Diego," but was,

25  rather, "based at Atlantic Aviation in El Paso, TX."  Ex. 12 at 2.  Melvin replied that the El

26  _____

27       [2] The single aircraft identified in the 2013 Application was N797BD.  *Id*.  However, the
registration number had actually been changed to N388LR.  Melvin Decl., ¶ 7.

28

LAW OFFICES
LAMONTAGNE &
AMADOR LLP

238577

3
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

1  Paso base was "[n]ot a problem."  *Id*. at 1.

2  Thereafter, the 13/14 Policy was issued.  Prahl Decl., ¶ 5; Ex. 13.  The "Coverage

3  Data Page" identified the "Home Airport" as El Paso, Texas.  *Id*. at 5.

4  In July of 2014, Ricotta had a trip to Toluca, Mexico, and, when in Toluca, met one

5  Pablo Gonzales Ulloa ("Ulloa"), who is president of the Mexican company

6  Aviarrendamientos S.A. de C.V. ("ASACV").  Ex. 14 at 1; Ex. 15 at 2 (¶¶ 2-3), 16.

7  Subsequently, Ulloa "called asking about a dry [l]ease."  Ex. 14 at 1.  According to Ricotta,

8  Ulloa told Ricotta that "he was doing work for the Mexican Military," was "working on

9  selling the Army some C-130 aircraft," would be using the Aircraft "for his travel and his

10  clients [sic] travel" and that the Aircraft would be based in Toluca.  *Id*.; Ex. 16 at 4-5.

11  In August of 2014, R Consulting submitted its application for a renewal policy for

12  the period September 30, 2014 to September 30, 2015 ("the 2014 Application").  Ex. 17 at

13  5-7; Ex. 18 at 3:20-24.  Therein, R Consulting sought coverage not only for the Aircraft, but

14  also a second Gulfstream III, N234LR.  Ex. 17 at 6.  The application indicated that both jets

15  would be "[b]ased [a]t" the Minden-Tahoe Airport in Nevada.  *Id*.  And it provided a "No"

16  response to the following question:  "Has any pilot ever been convicted of or plead guilty to

17  a felony or driving while intoxicated?"  *Id*. at 7.

18  On September 4, 2014, an Aircraft Dry Lease ("the Lease") was entered into

19  between R Consulting and Ulloa/ASACV as respects the Aircraft.  Ex. 17 at 8-15; Ex. 18 at

20  3:25-28.  The Lease set forth a three month term, with an agreed monthly rental rate of

21  $73,000 per month.  Ex. 17 at 9.  It was silent as respects hourly usage.  On September 5,

22  2014, the Aircraft was delivered to Ulloa in Toluca by Ricotta. Ex. 20 at 5:26-28.

23  Thereafter, an "Aircraft Insurance Binder" relative to the 14/15 Policy was issued.

24  Melvin Decl., ¶ 18.  The binder stated that the Aircraft would be "[b]ased at" El Paso.  *Id*.

25  The identification of El Paso, instead of Minden-Tahoe, as the Aircraft's base was the result

26  of a telephone conversation Melvin had with Avsurance.  *Id*.  Avsurance immediately

27  confirmed that the binder "look[ed] good."  *Id*., ¶19.  The 14/15 Policy was subsequently

28  issued with the "Home Base" identified as El Paso. Ex. 21 at 6; Prahl Decl., ¶ 5.  The 14/15

LAW OFFICES
LaMONTAGNE &
AMADOR LLP

4

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

238577

Policy contained, *inter alia*, the following provisions: (1) the "**Your aircraft**" provision which states, in part: "You must own your aircraft solely or in part or you must hold it under a written lease of at least one year"; (2) the "**Purpose of flight**" provision which, as modified by the "Industrial Aid Use Amendment" endorsement, states, in part: "[Y]ou cannot charge any person or organization for using your aircraft for anything other than reimbursement of the operating expenses of the Aircraft"; (3) the "**Who can fly your aircraft**" provision which provides that only certain named pilots or pilots meeting minimum qualifications may fly the Aircraft; (4) the insuring grant of the Comprehensive Physical Damage Coverage which states that coverage is only possible if the Aircraft sustains "direct and accidental physical damage or loss," is "stolen" or "disappears after takeoff and is not found or heard from within 60 days"; (5) the "**Sale or disposition**" exclusion, which negates coverage "[i]f someone is legally holding your aircraft, and later sells or disposes of your aircraft, or keeps you from using it"; (6) the "**Voiding the Policy**" provision, which states that the policy "will be void if you do not fully and accurately disclose, whether before or after a loss, all the important information we have requested"; and (7) the "**Physical Damage to Aircraft**" provision, which states that, "[i]f there is physical damage or loss to your aircraft," the insured must "[n]otify us or your agent immediately," "notify the police immediately if there is any theft, robbery, or pilferage to your aircraft," and, within sixty days after loss, provide the insurer with a "sworn proof of loss," which includes "the time, place, and nature of the loss."  Ex. 21 at 10, 12, 14, 27, 29, 33.

R Consulting never told either Avsurance or PAM/ORA about the Lease until a few days before the 14/15 Policy was to expire in September 2015.  Melvin Decl., ¶ 21; Prahl Decl., ¶ 15; Coleman Decl., ¶ 8; Underwood, Decl., ¶ 8.

One Jose Luis Sanchez ("Sanchez") purchased the Aircraft from R Consulting via an Aircraft Purchase Agreement ("Purchase Agreement") that had an effective date of December 1, 2014.  Ex. 17 at 16-26; Ex. 18 at 4:1-4; Ex. 15 at 3 (¶ 8).  The Purchase Agreement provided for a purchase price of $1,000,000, with Ulloa to act as R Consulting's

agent as respects the sale and delivery of the Aircraft to Sanchez.  Ex. 15 at 3 (¶ 9).  The Purchase Agreement contained an acknowledgment by the seller that Sanchez took "delivery" of the Aircraft on December 1, 2014.  Ex. 17 at 23.  Sanchez himself eventually represented to R Consulting that he "assumed possession and control" of the Aircraft later in December of that year.  Ex. 24.  Ulloa also repeatedly represented that he had delivered the Aircraft to Sanchez.  Ex. 25 at 1; Ex. 26 at 1; Ex. 27 at 1.  R Consulting did not inform Avsurance or PAM/ORA about the existence of the Purchase Agreement until September of 2015.  Ex. 1 at 43:24-44:20.

On April 9, 2015, Ulloa made a $200,000 payment to R Consulting.  Ex. 20 at 4:1-22.  Sanchez and Ulloa have asserted that the payment was made towards the purchase price.  Ex. 25 at 1; Ex. 28 at 4.

On May 28, 2015, Plaintiff's counsel, Paul Metsch ("Metsch"), sent a letter to Ulloa at his Mexico City address.  Ex. 23.  Therein, after identifying Ulloa as "R Consulting's agent," Metsch demanded that Ulloa immediately tender the sum of $1,000,000, and stated:

> Based on the information and documentation in our possession, we can conclusively establish that Sanchez paid to you the sum of $1 million due under the Purchase Agreement and that you then delivered the Aircraft to Mr. Sanchez, yet you failed to remit the $1 million to R Consulting, as required under the Purchase Agreement.

*Id*. at 1.

On June 26, 2015, R Consulting filed an action in the San Diego County Superior Court, styled *R Consulting & Sales, Inc. v. Pablo Gonzalez Ulloa, et al.*, case no. 37-2015-0002156-CU-BC-CTL ("the Ulloa Action").  Ex. 15.  Therein, R Consulting sought recovery from Ulloa/ASACV of the $1 million purchase price plus $438,000 allegedly due as rent under the Lease.  *Id*., at 3 (¶¶ 8-11).  It asserted that the defendants in that case acted "as R Consulting's agent in connection with the sale and delivery of the Aircraft to . . . Sanchez," that the purchase price was "received in-full from Sanchez in December, 2014," and that said defendants "delivered the Aircraft to Sanchez and . . . repeatedly acknowledged in writing receiving the Purchase Price in December of 2014."  *Id*.

1    In September of 2015, just prior to the September 30, 2015 expiration of the 14/15

2 Policy, R Consulting informed Avsurance that it had concerns about the status of the

3 Aircraft. Coleman Decl., ¶ 7. In an internal email, Avsurance's President, Ed Underwood,

4 sent an email to Coleman which stated, *inter alia*: "I am sure this will generate a

5 reservation of rights letter due to the delayed reporting of the claim and lack of hard facts."

6 Ex. 29.

7    On September 29, 2015, ORA's California Claims Manager, Doug Bland ("Bland"),

8 sent an email to Ricotta, seeking an outline of "what you can recall happened between

9 yourself and Pablo." Ex. 14 at 2. This outline was provided on September 30, 2015. *Id.* at

10 1-2. Therein, *inter alia*, Ricotta made mention of the "$200,000 payment in April" from

11 Ulloa, and added "[w]e have been trying to find the aircraft ever since." *Id.* at 2. He further

12 stated: "[W]e turned in a claim because we can not recover our aircraft and feel something

13 bad has happened to it." *Id.*

14    On October 15, 2015, ORA's Vice President and Claims Special Projects Manager,

15 Les Sychak, sent a letter to Michel, indicating that ORA would be investigating R

16 Consulting's claim under a reservation of rights. Ex. 30.

17    Commencing on October 15, 2015, ORA requested from R Consulting and/or its

18 counsel a number of documents, including: (1) copies of police reports filed in Mexico (and

19 any other locations); (2) a copy of the Lease; (3) a copy of the Purchase Agreement; and (4)

20 a copy of the complaint in the Ulloa Action. Exs. 31-35. On December 16, 2015, ORA

21 received item (4), having previously received items (2) and (3). Sychak Decl., ¶ 7. Item

22 (1), however, was *never* provided to ORA, nor was a proof of loss. *Id.*, ¶¶ 7-8.

23    On November 30, 2015, Ricotta sent Bland an email indicating that he had received

24 a call from one Scott Weigman of the United States Department of Homeland Security.

25 Ex. 36. As respects that call, Ricotta stated: "He told me that his sources in Venezuela said

26 the aircraft was destroyed in Venezuela around the 23rd of December 2014. He said your

27 [sic] welcome to call him but that's all he knows about the situation." *Id.*

28

1    Commencing in July of 2015, and continuing through at least early December 2015,

2  there were ongoing negotiations between Ulloa and Ricotta and/or R Consulting's counsel,

3  regarding further payments being made by Ulloa pursuant to the terms of the Purchase

4  Agreement and possible resolution of the Ulloa Action.  Exs. 25, 28, 37-40.  These

5  negotiations included an email from R Consulting's counsel to Ulloa dated December 4,

6  2015, wherein counsel stated "my client rejects your offer to pay $785,000," and demanded,

7  instead, Ulloa's placement of "$1,019,000 into escrow."  Ex. 40 at 1.

8    Based upon all the materials reviewed, on January 13, 2016, ORA sent an email to

9  Michel, asking for responses to some 21 questions.  Ex. 41.  On January 27, 2016, R

10  Consulting's counsel provided responses to those questions.  Ex. 42.  He also provided a

11  copy of an invoice sent to R Consulting dated January 2, 2015 from the Jamaica Civil

12  Aviation Authority which set forth "air navigation charges" for a flight involving the

13  Aircraft on December 23, 2014.  *Id*. at 8-11.  ORA sent five follow up questions to

14  R Consulting's counsel on February 12, 2016.  Ex. 43.  On February 15, 2016,

15  R Consulting's counsel provided responses.  Ex. 44.

16    Thereafter, ORA had the matter reviewed by coverage counsel and also contacted

17  Weigman.  Ex. 45; Ex. 46 at 2.  During a telephone conversation between Sychak and

18  Weigman, the latter indicated that he did have information suggesting that the aircraft may

19  have been destroyed in Venezuela.  However, he was unable to offer any specifics

20  whatsoever.  He stated he had not seen the Aircraft, had no photographs of it, had no

21  information regarding the circumstances of its purported destruction, and didn't even know

22  where in Venezuela the supposed destruction occurred.  Ex. 45.

23    On March 24, 2016, ORA, on behalf of ORIC, sent a detailed letter to R Consulting,

24  explaining that it could not honor its claim.  Ex. 46.  While a multitude of reasons and

25  policy provisions were cited in support of its position, reduced to the basics, ORA denied

26  coverage because R Consulting had provided inaccurate material information and/or

27  concealed material information regarding the ownership, usage, and base location of the

28

Law Offices
LaMontagne &
Amador llp

238577

8

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

1    Aircraft.  *Id*. at 2-9.  Additionally, R Consulting had violated the Policy's notice/proof of

2    loss requirements.  *Id*. at 10-11.[3]

3                            ## III. LEGAL STANDARD

4            "The party seeking summary judgment bears the initial burden of establishing the

5    basis of its motion and of identifying the portions of the declarations, pleadings and

6    discovery that demonstrate absence of a genuine issue of material fact."  *Munoz v.*

7    *InGenesis STGI Partners, LLC*, 182 F. Supp. 3d 1097, 1101 (S.D. Cal. 2016).  "If the party

8    opposing summary judgment bears the burden of proof at trial, the moving party need only

9    illustrate the 'absence of evidence to support the non-moving party's case.' "  *Lennar Mare*

10   *Island, LLC v. Steadfast Ins. Co.*, 176 F. Supp. 3d 949, 954 (E.D. Cal. 2016).  "The burden

11   then shifts to the opposing party to provide admissible evidence beyond the pleadings to

12   show that summary judgment is not appropriate."  *Bauer Bros., LLC v. Nike, Inc.*, 159 F.

13   Supp. 3d 1202, 1210 (S.D. Cal. 2016).  "The party opposing summary judgment cannot

14   'rest upon the mere allegations or denials of [its] pleading but must instead produce

15   evidence that sets forth specific facts showing that there is a genuine issue for trial.' "  *Soler*

16   *v. County of San Diego*, 274 F. Supp. 3d 1043, 1050 (S.D. Cal. 2017).

17                            ## IV. ARGUMENT

18   **A.    PLAINTIFF'S FIRST CLAIM FOR RELIEF FOR BREACH OF CONTRACT**
19   **       FAILS FOR NUMEROUS INDEPENDENT REASONS**[4]

20        **1.    No Coverage Is Possible Due To Material**
21   **              Misrepresentations/Concealment On The Part Of Plaintiff**

22        " ' "An insurance company is entitled to determine for itself what risks it will

23   accept." ' "  *Imperial Casualty & Indemnity Co. v. Sogomonian*, 198 Cal. App. 3d 169, 180,

24   ─────────────
         [3] An inadvertent error in the letter was corrected in a subsequent letter to Plaintiff's
25   counsel from Sychak dated July 1, 2016.  Ex. 47 at 1.

26        [4] In this memorandum, Defendant focuses on the 14/15 Policy, since Plaintiff contends
     that the date of loss is December 23, 2014-- well after expiration of the 13/14 Policy.  *See*
27   Ex. 20 at 15:4-6.  Additionally, the relevant contractual terms in the 13/14 Policy are
     identical to those in the 14/15 Policy.  *See* Ex. 13.

28

**LAW OFFICES**
LaMONTAGNE &
AMADOR LLP

                                    9
─────────────────────────────────────────
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**
238577

243 Cal. Rptr. 639, 644 (1988).  In this regard, California law "imposes 'heavy burdens of disclosure.' "  *Salkin v. United Services Auto. Ass'n*, 835 F. Supp. 2d 825, 831 (C.D. Cal. 2011).  Thus, "[i]n California, an applicant for insurance is under an affirmative obligation to provide truthful information to an insurer when applying for coverage."  *United Specialty Ins. Co. v. Saleh*, 2016 WL 4434479, at *3 (E.D. Cal. 2016).  "[F]ull disclosure" is required "at the inception of the insurance contract."  *Mitchell v. United Nat'l Ins. Co.*, 127 Cal. App. 4th 457, 468-69, 25 Cal. Rptr. 3d 627, 633 (2005).  And an insurer has the right to rely on the insured's answers to questions "without verifying their accuracy."  *Id.* at 477, 25 Cal. Rptr. 3d at 640.  Accordingly, "in California 'an insurer has no independent duty to investigate facts in an insurance application.' "  *Tran v. Kansas City Life Ins. Co.*, 228 F. Supp. 3d 1068, 1078 (C.D. Cal. 2017).  The importance of the need for full disclosure from the insured is emphasized by the "**Voiding the Policy**" provision, which states, in pertinent part:  "This policy will be void if you do not fully and accurately disclose, whether before or after a loss, all the important information we have requested."  Ex. 21 at 27.

"A representation is false when the facts fail to correspond with its assertions or stipulations."  Cal. Ins. Code § 358.  "Concealment . . . is the '[n]eglect to communicate that which a party knows, and ought to communicate.' "  *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*, 156 Cal. App. 4th 1259, 1266, 67 Cal. Rptr. 3d 917, 922 (2007).

"As a general matter, California law 'permits an insurer to rescind a policy when the insured has misrepresented or concealed material information in connection with obtaining insurance.' "  *Tran*, 228 F. Supp. 3d at 1073.  As this Court has noted, "[m]ateriality is determined under 'a subjective test.' "  *Century Sur. Co. v. 350 W.A., LLC*, 2011 WL 4506981, at *4 (S.D. Cal. 2011), *aff'd* 539 Fed. Appx. 749 (9th Cir. 2013).  In this regard, " '[m]ateriality is determined solely by the probable and reasonable effect which truthful answers would have had upon the insurer.' "  *Freeman v. Allstate Life Ins. Co.*, 253 F.3d 533, 536 (9th Cir. 2001).  " '[T]he critical question is the effect truthful answers would have had on [the particular insurer], not on some "average reasonable" insurer.' "  *West Coast Life Ins. Co. v. Ward*, 132 Cal. App. 4th 181, 187, 33 Cal. Rptr. 3d 319, 323 (2005).  To

1   establish materiality, " 'an actual intent to deceive need not be shown.' " *Freeman*, 253

2   F.3d at 536.  To the contrary, the misrepresentation/omission can be "negligent or

3   inadvertent." *Mitchell*, 127 Cal. App. 4th at 469, 25 Cal. Rptr. 3d at 634.  Furthermore,

4   "[t]he misrepresentation need not relate to the loss ultimately claimed by the insured." *Id.*

5   at 474, 25 Cal. Rptr. 3d at 638.

6       In general terms, it has been held that "a misrepresentation or concealment is

7   material if a truthful statement would have affected the insurer's underwriting decision."

8   *Superior Dispatch, Inc. v. Ins. Corp. of New York*, 181 Cal. App. 4th 175, 191, 104 Cal.

9   Rptr. 3d 508, 520 (2010).  More specifically, it has been stated that " '[t]he most generally

10   accepted test of materiality is whether or not the matter misstated could reasonably be

11   considered material in affecting the insurer's decision as to whether or not to enter into the

12   contract, in estimating the degree or character of the risk, or in fixing the premium rate

13   thereon.' " *Old Line Life Ins. Co. v. Superior Court*, 229 Cal. App. 3d 1600, 1604, 281 Cal.

14   Rptr. 15, 18 (1991); *accord Mitchell*, 127 Cal. App. 4th at 474, 25 Cal. Rptr. 3d at 638.

15   " 'The fact that the insurer has demanded answers to specific questions in an application for

16   insurance is in itself usually sufficient to establish materiality as a matter of law.' "

17   *Freeman,* 253 F.3d at 536.

18       Although material misrepresentation/concealment entitles the insurer to rescind, as

19   this Court has recently noted, "[i]t is well established that rescission is not an exclusive

20   remedy." *Kelly v. Starr Indem. & Liab. Co.*, 2017 WL 3457145, at *5 (S.D. Cal. 2017);

21   *accord Williamson & Vollmer Engineering, Inc. v. Sequoia Ins. Co.*, 64 Cal. App. 3d 261,

22   274-75, 134 Cal. Rptr. 427, 434-35 (1976).  Rather, "[a] misrepresentation or concealment

23   of a material fact in an insurance application also establishes a complete defense in an

24   action on the policy." *Superior Dispatch,* 181 Cal. App. 4th at 192, 104 Cal. Rptr. 3d at

25   520-21; *accord* Croskey, *et al.*, *California Practice Guide: Insurance Litigation* (The Rutter

26   Group 2017) § 5:153 at 5-45; *Williamson & Vollmer*, 64 Cal. App. 3d at 275, 134 Cal. Rptr.

27   at 434-35.  "As with rescission, an insurer seeking to invalidate a policy based on a material

28   misrepresentation or concealment as a defense need not show an intent to deceive."

1   *Superior Dispatch*, 181 Cal. App. 4th at 192, 104 Cal. Rptr. 3d at 521.  And "[t]he test for

2   materiality is the same."  *Id.*

3       "Where the facts are undisputed, materiality is determined as a matter of law."

4   *Moon v. Pruco Life Ins. Co.*, 2017 WL 979096, at *3 (C.D. Cal. 2017).  Indeed, the case

5   law entering, or affirming, summary judgments in favor of the insurer based upon material

6   misrepresentation/concealment is so extensive in both state and federal court that space

7   limitations simply prohibit anything even approaching a complete recitation of same.[5]

8       In the discussion below, it will be demonstrated that Plaintiff misrepresented and

9   concealed material facts as respects at least three separate matters-- any of which, standing

10  alone, warrants entry of summary judgment.

11              **a.      Plaintiff Materially Misrepresented That The Aircraft Would Be
                         Based In The United States, And Materially Concealed That The**

12                       **Aircraft Was, In Fact, Leased To Parties Based In Mexico**

13      Plaintiff's president, Michel, executed the 2014 Application, which specifically

14  referenced the "**Policy Period**" of September 30, 2014 to September 30, 2015.  Ex. 48.  At

15  the end of the application, just above Michel's signature, the following language appeared:

16      All answers herein are warranted true and complete to the best of my/our

17      knowledge and no information has been withheld or suppressed and I/we
        agree that this Application and the terms and conditions of the policy in use

18      by the insurer shall be the basis of any contract between me/us and the
        insurer.

19

20  *Id.* at 2.

21

22

23      [5] For a tiny sampling, *see, e.g., Western World Ins. Co. v. Prof. Collection Consultants*,

24  721 Fed. Appx. 621 (9th Cir. 2018); *Kurtz v. Liberty Mut. Ins. Co.*, 668 Fed. Appx. 755 (9th
    Cir. 2016); *Mesa Underwriters Spec. Ins. Co. v. Iverson*, 2018 WL 2585536 (N.D. Cal.

25  2018); *Tran*, 228 F. Supp. 3d 1068; *Warkentin v. Federated Life Ins. Co.*, 2015 WL
    2358174 (E.D. Cal. 2015); *Navigators Ins. Co. v. Top Const., Inc.*, 2015 WL 5999326

26  (C.D. Cal. 2015); *Upper Deck Co. v. Endurance American Spec. Ins. Co.*, 2011 WL
    6396413 (S.D. Cal. 2011); *Superior Dispatch*, 181 Cal. App. 4th 175, 104 Cal. Rptr. 3d

27  508; *West Coast Life*, 132 Cal. App. 4th 181, 33 Cal. Rptr. 3d 319; *Mitchell*, 127 Cal. App.
    4th 457, 25 Cal. Rptr. 3d 627.

28

LAW OFFICES
LAMONTAGNE &
AMADOR LLP

238577

12

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

Towards the top of the first page of the application, it was stated: "**Aircraft Based At**: <u>Minden-Tahoe Airport</u>." *Id.* at 1.  The Minden-Tahoe Airport, located in Minden, Nevada, was an acceptable base for ORIC.  *See* Melvin Decl., ¶ 17.  However, as a result of a telephone call with Coleman at Avsurance, Melvin, the underwriter on the account, was informed that the correct base for the insured aircraft was, in fact, El Paso, which was another acceptable base.  Melvin Decl., ¶¶ 17-18.  Accordingly, the El Paso base was indicated in the subsequently issued "Aircraft Insurance Binder" (which R Consulting's broker said "looks good") as well as in the 14/15 Policy itself.  *Id.*, ¶¶ 17-19, Ex. 21 at 6.

Of course, it is undisputed that, at the time of the inception of the Policy, the Aircraft was *not* based in El Paso, Minden, or, indeed, any other location in the United States.  Rather, several weeks prior to Policy inception, the Aircraft was flown by Ricotta down to Toluca, Mexico, and possession of same was given to Ulloa.

As clearly indicated from both Melvin's declaration and her deposition testimony, *under no circumstances* would Melvin have agreed to insure the Aircraft had she known *either* of the following: (1) the existence of the Lease; or (2) that the Aircraft would be based anywhere in Mexico.  Melvin Decl., ¶ 23; Ex. 49 at 29:20-30:25.  Plaintiff concealed *both* material circumstances.

In short, it is readily apparent that there was both a material misrepresentation and material concealment on the part of Plaintiff regarding the Aircraft's base and usage.[6]

**b.      Plaintiff's Concealment Of The Execution Of The Purchase Agreement Also Voids Coverage**

As set forth above, under California law, a concealment is material if "a truthful statement would have affected the insurer's underwriting decision." *Superior Dispatch,* 181 Cal. App. 4th at 191, 104 Cal. Rptr. 3d at 520.  Here, it is undisputed that Plaintiff did

---

[6] It is noteworthy that R Consulting has exhibited a continuing pattern of making misrepresentations regarding the Aircraft's true base.  In this regard, it represented in an application prepared on September 20, 2015 that the Aircraft was based at Minden-Tahoe, when, in fact, R Consulting "ha[d]n't known of its whereabouts since [the preceeding] December."  Prahl Decl., ¶ 9; Ex. 51 at 1; Ex. 65.

1  *not* inform Defendant that it was entering into the Purchase Agreement, which was to be

2  effective December 1, 2014.  Ex. 1 at 43:24-44:20.  Had it done so, Defendant would have

3  dropped the Aircraft from the policy effective December 1, 2014.  Melvin Decl., ¶ 24.

### c.   Plaintiff's Misrepresentation/Concealment Regarding Ricotta's Felony Conviction Additionally Negates Coverage

6  Question 5 of the above-referenced 2014 Application stated: "Has any pilot ever

7  been convicted of or plead guilty to a felony or driving while intoxicated?"  Ex. 48 at 2.

8  The "No" box was checked.  *Id.*  This was a blatantly false representation since, as noted

9  above, in the Ricotta Felony Action, Ricotta pled guilty in this Court to, and was convicted

10  of, the Class C felony offense of "Conspiracy to Commit Fraud Involving Aircraft."  Ex. 3.

11  The evidence is undisputed that, had Defendant been aware of Ricotta's felony

12  conviction for conspiracy to commit fraud involving aircraft, it would have refused to issue

13  the Policy.  In this regard, in her declaration, Melvin states that, had the true information

14  about Ricotta's conviction been conveyed, she would not have issued any policy to R

15  Consulting without obtaining express approval from her supervisor, Michael Prahl.  Melvin

16  Decl., ¶ 25.  In his declaration, Prahl has categorically stated that, in light of the felony

17  conviction, he would *not* have given such approval.  *See* Prahl Decl., ¶¶ 19-22.

18  Ricotta's undisclosed criminal history was material as a matter of law.  *See C.N.R.*

19  *Atkin v. Smith*, 137 F.3d 1169, 1170-71 (9th Cir. 1998) (affirming summary judgment in

20  favor of marine insurer based upon yacht captain's misrepresentation/concealment

21  regarding a "prior conviction for knowingly secreting a boat and possessing an unlawfully

22  obtained certificate of title").

### 2.   Plaintiff Has Not Met Its Burden Of Demonstrating Compliance With Several Warranties

24  Even if one ignores the obvious material misrepresentations/concealment detailed

25  above, Plaintiff's claim for coverage here must fail for numerous additional reasons, as

26  well.  As noted by the Ninth Circuit, it is well established in California that "the insured has

27  the burden to prove that the claim falls within the basic scope of coverage."  *Pan Pacif.*

1   *Retail Prop., Inc. v. Gulf Ins. Co.*, 471 F.3d 961, 970 (9th Cir. 2006).  This includes the

2   burden of demonstrating compliance with all warranties/conditions precedent.  *Kennedy v.*

3   *Underwriters at Lloyd's, London*, 219 Cal. App. 2d 11, 13, 32 Cal. Rptr. 685, 687 (1963);

4   *De Campos v. State Comp. Ins. Fund*, 122 Cal. App. 2d 519, 530, 265 P.2d 617, 623 (1954).

5   Plaintiff here has failed to meet its burden in multiple respects.

6       **a.**  **The "Your Aircraft" Warranty Was Breached**

7      The final sentence in the "**Your Aircraft**" provision states: "You must own your

8   aircraft solely or in part or you must hold it under a written lease of at least one year."  Ex.

9   21 at 10.[7]  In California, "[a] statement in a policy, which imports that there is an intention

10  to do or not to do a thing which materially affects the risk, is a warranty that such act or

11  omission will take place."  Cal. Ins. Code § 445; *accord Trishan Air, Inc. v. Federal Ins.*

12  *Co.*, 635 F.3d 422, 428 (9th Cir. 2011).  "A warranty may relate to the past, the present, the

13  future or to any or all of these."  Cal. Ins. Code § 444; *accord De Campos*, 122 Cal. App. 2d

14  at 529, 265 P.2d at 622.  "[C]ompliance with the terms of a warranty is a condition

15  precedent to a right of recovery."  *Chase v. Nat'l Indem. Co.*, 129 Cal. App. 2d 853, 858,

16  278 P.2d 68, 72 (1954); *accord Navigators Specialty Ins. Co. v. Leal*, 2012 WL 13014629,

17  at *5 (C.D. Cal. 2012).  " 'A condition *precedent* refers to an act, condition or event that

18  must occur before the insurance contract becomes effective or binding on the parties.' "  *N.*

19  *Amer. Capacity Ins. Co. v. Claremont Liab. Ins. Co.*, 177 Cal. App. 4th 272, 289, 99 Cal.

20  Rptr. 3d 225, 240 (2009).  Thus, "noncompliance defeats recovery."  *De Campos*, 122 Cal.

21  App. 2d at 530, 265 P.2d at 623.  In California, the test for materiality in the warranty

22  context is essentially the same as that utilized in the misrepresentation/concealment context.

23  In this regard, a warranty is considered material if it "directly affect[s] the risk undertaken

24

25

26    [7] This provision relates directly to the issue of insurable interest.  *See Warner v. Fire*

27  *Ins. Exch.*, 230 Cal. App. 3d 1029, 1033, 281 Cal. Rptr. 635, 637 (1991) ("a seller does not
     have an insurable interest in property after he or she sells it").

28

1  by the insurer." *Holz Rubber Co., Inc. v. Amer. Star Ins. Co.*, 14 Cal. 3d 45, 55 n.11, 533

2  P.2d 1055, 1060 n.11, 120 Cal. Rptr. 415, 420 n.11 (1975).

3       Here, it is undisputed that the Purchase Agreement with Sanchez was entered into

4  and was effective December 1, 2014.  It is further undisputed that R Consulting's counsel

5  represented that R Consulting could "conclusively establish" that Sanchez paid the purchase

6  price to Ulloa and that Ulloa delivered the Aircraft to Sanchez.  These same assertions were

7  made by R Consulting in the Ulloa Action.  *See Gradetech, Inc. v. Amer. Employers Ins.*

8  *Grp*, 2006 WL 1806156, at *3 (N.D. Cal. 2006) (court identifies as "strongest evidence" a

9  "judicial admission in an unrelated lawsuit").  Furthermore, for a period of approximately

10  five months, through at least December 4, 2015 (a minimum of four days *after* Weigman

11  told Ricotta about the possible Venezuela connection), there were ongoing negotiations

12  regarding payment to R Consulting of amounts due under the Purchase Agreement, as well

13  as settlement of the lawsuit that was based upon said Purchase Agreement.  Clearly, if R

14  Consulting did not believe the Purchase Agreement was enforceable, there would have been

15  no such negotiations.

16       As set forth above, had Defendant known that there would be a change of ownership,

17  Defendant would have removed the Aircraft from the policy.

18       There was a clear breach of the warranty set forth in the "**Your Aircraft**" provision.

19            **b.    The "Purpose Of Flight" Warranty, As Defined By The**
                     **"Industrial Aid Use Amendment" Endorsement, Was Violated**
20

21       The "**Purpose of flight**" provision was modified by the "Industrial Aid Use

22  Amendment" endorsement, which set forth the following warranty:

23       It is agreed that your aircraft will be used for **Industrial Aid** purposes.

24       "**Industrial Aid**" means the pleasure and business use of your
         aircraft with the aircraft being flown by a professional pilot or
25       professional flight crew employed or contracted for that purpose.
         However, you cannot charge any person or organization for using
26       your aircraft for anything other than reimbursement of the operating
         expenses of the aircraft.  If your aircraft is used for any other
27       purpose, and you or anyone else protected by this policy knows

28

LAW OFFICES
LaMontagne &
Amador LLP

238577

16
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

1   about this use and agrees to it, we will not provide any coverage
2   under the policy.

3   Ex. 21 at 33.

4   It is undisputed that, *at the very inception of the policy*, the Aircraft was *already*

5   being operated under the terms of the Lease, a lease that R Consulting contends extended at

6   least through March of 2015, well after the date R Consulting contends the Aircraft was

7   destroyed. Ex. 20 at 4:1-22. And it is further undisputed that it is R Consulting's position

8   that Ulloa paid a total of $466,404.49 pursuant to the terms of the Lease. *Id.* It cannot be

9   seriously argued that these payments were not in the nature of a "charge."

10   In California, "[w]hen interpreting the language of an insurance policy, the Court

11   'should give the words used their plain and ordinary meaning, unless the policy clearly

12   indicates to the contrary.' " *Grange Ins. Ass'n v. Shran*, 184 F. Supp. 3d 799, 813 (E.D.

13   Cal. 2016). Where "policy language is 'clear and explicit, it governs.' " *Id.* at 814. As

14   noted in *Rhodes & Jamieson, Ltd. v. Calif. State Board of Equalization*, 201 Cal. App. 2d

15   343, 345, 20 Cal. Rptr. 218, 219 (1962), Webster's defines "charge" as " '[t]he price

16   demanded for a thing or service.' " Here, R Consulting clearly demanded a substantial

17   "price" in exchange for Ulloa's use of the Aircraft.

18   In enforcing an aviation policy provision prohibiting coverage where there is a

19   "charge" made for use of the aircraft, this Court would hardly be trailblazing, as numerous

20   cases throughout the country have enforced such provisions. *See, e.g., Pacif. Indem. v. Acel

21   Delivery Service, Inc.*, 485 F.2d 1169, 1172 (5th Cir. 1973), *cert. denied* 415 U.S. 921

22   (1974); *Houston Fire & Cas. Ins. Co. v. Ivens*, 338 F.2d 452, 453-55 (5th Cir. 1964);

23   *Monarch Ins. Co. of Ohio v. Siegel*, 625 F. Supp. 693, 699-700 (N.D. Ind. 1986).

### c.    Plaintiff Also Breached The "Home Airport" Warranty

24   The Coverage Data Page identified the Aircraft's "Home Base" as "ELP," *i.e.*, El

25   Paso. Ex. 21 at 6. This, too, was a clear material warranty that was breached here, as the

26   evidence is undisputed that, had Defendant been aware of the Aircraft's *true* "Home

27

28

17

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

1   Airport," *i.e.*, a *Mexican* airport, it would have refused to insure the Aircraft.  Melvin Decl.,

2   ¶ 23; Prahl Decl., ¶¶ 10, 13.

3   **3.    Plaintiff Has Also Failed To Meet Its Burden Of Demonstrating That The Basic Insuring Agreement Of The Comprehensive Physical Damage Coverage Has Been Triggered**

4

5   The basic insuring agreement of the Comprehensive Physical Damage Coverage

6   reads as follows:

7   > If you have this kind of coverage, you are protected if your aircraft suffers

8   > any kind of direct and accidental physical damage or loss.  You are also

9   > protected if your aircraft is stolen, or if it disappears after takeoff and is not

10  > found or heard from within 60 days.  However, you are not protected against those losses described in the **Losses Not Covered** section below.

11  Ex. 21 at 12.

12  Thus, coverage is possible only if it has been demonstrated that the Aircraft: (1) was

13  "stolen"; (2) had suffered "direct and accidental physical damage or loss"; or (3)

14  "disappear[ed] after takeoff and [was] not found or heard from within 60 days."  Plaintiff

15  has not demonstrated, and cannot demonstrate, *any* of the three circumstances.

16  **a.    There Has Been No "Theft" Established**

17  The burden of demonstrating a "theft" lies with the insured.  *See Pacif. Marine Ctr.,*

18  *Inc. v. Phil. Indem. Ins. Co.*, 248 F. Supp. 3d 984, 997 (E.D. Cal. 2017).  As recently

19  articulated by the California Court of Appeal, "theft 'involves the idea of knowingly

20  unlawful acquisition of property; that is, a felonious taking of it.' "  *Barnett v. State Farm*

21  *Gen. Ins. Co.*, 200 Cal. App. 4th 536, 543, 132 Cal. Rptr. 3d 742, 747 (2011).  There must

22  be an "intent to deprive the insured permanently of his [property]."  *Jackson v. Teachers*

23  *Ins. Co.*, 30 Cal. App. 3d 341, 344, 106 Cal. Rptr. 208, 210 (1973).  "The requirement in the

24  words 'theft' and 'stolen' of a felonious taking is critical because it is not enough to commit

25  a 'trespass' against another's right of possession, rather there must exist a criminal 'intent to

26  steal,' or '*animus furandi*,' that consists of 'the intent, without a good faith claim of right, to

27  *permanently deprive* the owner of possession.' "  *Barnett*, 200 Cal. App. 4th at 543, 132

28  Cal. Rptr. 3d at 748 (emphasis original and added).

1    There has been an abject failure on the part of Plaintiff to satisfy its burden.  In the

2  first instance, Plaintiff *completely ignored* the policy requirement that it provide a "sworn

3  proof of loss" setting forth, *inter alia*, "the time, place, and nature of the loss."  Sychak

4  Decl., ¶ 8; Ex. 21 at 29.[8]  This could well have been the result of R Consulting's sole

5  principal being disinclined to aver under penalty of perjury that she knew what happened to

6  the Aircraft when, as she admitted during her recent deposition, R Consulting *has no idea*

7  *what actually happened to the Aircraft*.  Ex. 2 at 34:16-35:16.  In this regard, Michel agreed

8  that she "still" doesn't know "what happened" to the Aircraft, including whether it was

9  "lost" or "stolen."  *Id*.  This admission, *standing alone*, is sufficient to warrant entry of

10  summary judgment.

11    Defendant propounded an interrogatory to Plaintiff which stated: "If YOU contend

12  that AIRCRAFT was stolen, state all facts that support that contention and IDENTIFY all

13  persons with knowledge [of] such facts."  Ex. 20 at 8:3-5.  In response, R Consulting

14  essentially stated that it learned from Weigman on or about November 30, 2015 that Ulloa

15  could not have delivered the Aircraft to Sanchez "on or about January 12, 2015," as Ulloa

16  had purportedly previously represented, because, according to Weigman, the Aircraft "had

17  been destroyed in Venezuela on or about December 23, 2014."  *Id*. at 8:6-23.  The response

18  then added:  "Based upon comments from Mr. Weigman, R Consulting now *believes* that

19  SANCHEZ was an employee of ULLOA, playing a part at ULLOA's behest to cover for

20  the theft of the AIRCRAFT by an unknown third-party."  *Id*. at 8:23-26 (emphasis added).

21  In addition to being devoid of logic,[9] Plaintiff's response is also devoid of evidentiary value

---

23  [8] As one court has recently noted, "such a provision is meant to give the insurer the
necessary facts to facilitate an investigation of a claim and to protect itself against

24  fraudulent and excessive claims."  *Chierfue Her v. State Farm Ins. Co.*, 92 F. Supp. 3d 957,
971 (E.D. Cal. 2015).  Here, Plaintiff not only failed to provide the required proof of loss

25  during the stated 60 day period, it *never ever provided one*, despite being reminded on
multiple occasions about the deficiency.  Sychak Decl., ¶ 8; Ex. 46 at 11; Ex. 50 at 22-23.

26  [9] If the Aircraft had *actually* been stolen *from* Ulloa, why wouldn't Ulloa simply inform

27  R Consulting of the theft and allow it to attempt to collect on the insurance?  Proceeding in
this manner would have *completely avoided* the subsequent lawsuit that was filed against

28  him by R Consulting.  Plaintiff fails to provide enlightenment as to what possible incentive
(Continued...)

LAW OFFICES
LAMONTAGNE &
AMADOR LLP

19

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

238577

1   insofar as the theft issue is concerned.  *See Zepeda v. Uribe*, 710 F. Supp. 2d 1024, 1032

2   (S.D. Cal. 2010) ("*beliefs . . . are not evidence*").

3       The clear reality is that the interrogatory response sets forth *absolutely nothing in the*

4   *way of actual evidence* supporting a theft.  Of course, typically, aircraft thefts are

5   demonstrated by the party in legal possession of same reporting that the aircraft has been

6   wrongfully taken from said party without permission.  Here, of course, Plaintiff *cannot*

7   *make such a demonstration* as the party in legal possession of the Aircraft, Ulloa, has

8   *repeatedly* represented that the Aircraft was *not* wrongfully taken from him, but was, rather,

9   *voluntarily delivered* to Sanchez as part of a sales transaction.  *See, e.g.,* Ex. 26 at 1-2; Ex.

10  40 at 1, 4-5.

11      Clearly, Plaintiff has failed to sustain its burden of demonstrating that the Aircraft

12  was stolen.  *See Congleton v. National Union Fire Ins. Co.*, 189 Cal. App. 3d 51, 61-62,

13  234 Cal. Rptr. 218, 224 (1987) (mere fact that "the whereabouts of the plane were

14  unknown" does not establish "theft").

15          **b.    There Has Also Been No "Direct And Accidental Physical Damage
                   Or Loss" Demonstrated**
16

17      As an alternative to its "theft" theory, Plaintiff might attempt to urge coverage on the

18  basis of the "direct and accidental physical damage or loss" language.  For a number of

19  reasons, such an assertion, if forthcoming, must be rejected.

20      First, Plaintiff has already committed itself to the "theft" theory.  *See* Ex. 20 at 6:18-

21  21, 7:18-21, 8:23-26, 12:21-24.

22      Secondly, the only conceivable basis for triggering this language is Plaintiff's

23  contention that it "learned from" Weigman "that the AIRCRAFT had been destroyed in

24  _____

25      (...Continued)

26  Ulloa would have to hide the theft (unless, of course, Ulloa *himself* was *involved* in the
    theft, which would necessarily further trigger the "**Sale or disposition**" exclusion discussed

27  below).  Furthermore, the fact that possession of the Aircraft may not have been transferred
    to Sanchez *on January 12, 2015* does *not* foreclose an *earlier* delivery date.

28

**LAW OFFICES**
LAMONTAGNE &
AMADOR LLP

Venezuela on or about December 23, 2014," and that Weigman "believed" that the Aircraft had been "burned." *Id*. at 8:15-20.  Once again, "beliefs" do not get us anywhere.  We need *specific facts*.  As set forth above, Defendant attempted to obtain those facts, but to no avail.  In this regard, in March of 2016, Defendant's claim handler telephoned Weigman, and while, during that conversation, Weigman did indicate that the Aircraft was "reportedly destroyed" in Venezuela, he could provide no details whatever.  Ex. 45.  Several weeks later, Defendant's claim handler had another conversation with Weigman, but, again, no details were provided.  Ex. 63.

Clearly, even if one accepts, *arguendo*, that something "happened" to the Aircraft in Venezuela, neither the information obtained from Weigman, nor the general assertions of Plaintiff's interrogatory responses, provide sufficient information to trigger coverage.

For example, if the Aircraft crashed (and had *not* previously been stolen), it was incumbent upon Plaintiff to demonstrate that designated pilots were flying the Aircraft at the time of the crash.  In this regard, the "**Who can fly your aircraft**" section of the Policy states, in pertinent part:  "When your aircraft is in flight, your aircraft must be operated by the pilot or pilots named in the Pilot Qualification Amendment attached to this policy, or who meet the minimum qualifications described in that amendment; otherwise, there is no coverage."  Ex. 21 at 10.  This statement clearly constitutes a material warranty.  *See* Cal. Ins. Code § 445 ("[a] statement in a policy, which imports that there is an intention to do or not to do a thing which materially affects the risk, is a warranty that such act or omission will take place").  As recently observed by the Ninth Circuit, "strict compliance with pilot warranties serves as a necessary corollary of aviation insurance policies.  'Federal courts uniformly enforce [pilot warranties] . . . and for good reason.  Pilot qualifications and experience are obviously factors bearing directly on the risk the insurer is underwriting.' " *Trishan Air,* 635 F.3d at 428.  " '[C]ompliance with the terms of a warranty is a condition precedent to a right of recovery.' "  *Id.* at 428.  In order to avoid the mandates of the pilot warranty under the non-theft scenario, it was incumbent upon R Consulting to demonstrate

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

238577

1   that the asserted "destruction" of the Aircraft occurred at a time *other than* while the

2   Aircraft was "in flight" as defined by the Policy.  This it has not done.

3           **c.      There Has Also Been No Trigger Of The "Disappearance"
                        Language**

4

5           Plaintiff also cannot rely upon the "disappears after takeoff and is not found or heard

6   from within 60 days" language for several reasons.

7           First, as noted above, Plaintiff has already elected the "theft" theory.

8           Secondly, a "disappearance" after takeoff would necessarily involve an "in flight"

9   operation, thus triggering the pilot warranty requirements.

10          Thirdly, based upon Plaintiff's discovery responses, the language in question simply

11  *cannot* apply *factually*.  In this regard, R Consulting asserts that the Aircraft "was stolen on

12  or about December 23, 2014," that the Aircraft was thereafter "flown though Jamaican

13  airspace," and that Plaintiff "now believes the AIRCRAFT was ultimately destroyed in

14  Venezuela on or about December 23, 2014."  Ex. 20 at 13:27-14:2.  "Disappear means 'to

15  cease to be; to cease to be known; to vanish from sight; to pass from existence.' "  *Williams

16  v. Davis*, 69 Cal. App. 2d 141, 146, 158 P.2d 748, 750 (1945).  "[I]f the loss of property is

17  traceable, it has not disappeared even if the property is not recoverable."  *Columbiana Cty.

18  Bd. of Commissioners v. Nationwide Ins. Co.*, 719 N.E.2d 561, 568 (Ohio Ct. App. 1998).

19  If, as R Consulting contends, the Aircraft took off, over flew Jamaica, and was destroyed in

20  Venezuela, all on the same day, then it obviously cannot, at the same time, be said that the

21  Aircraft was not "heard from" within 60 days after takeoff.  Clearly, under Plaintiff's

22  scenario, it *was*.

23          In short, the "disappears after takeoff" language has clearly *not* been triggered.  *See

24  Congleton v. National Union Fire Ins. Co.*, 189 Cal. App. 3d at 60-61, 232 Cal. Rptr. at

25  223-24 (interpreting similar policy provision, court holds that "disappearance" is *not*

26  "synonymous with a mere inability to locate the aircraft").

27

28

**Law Offices**
LaMontagne &
Amador llp

238577

22

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

### 4. The "Sale Or Disposition" Exclusion Has Been Triggered

Even if this Court rejects each and every one of the arguments set forth above, coverage is *still* eliminated as a result of the "**Sale or disposition**" exclusion, which states: "If someone is legally holding your aircraft, and later sells or disposes of your aircraft, or keeps you from using it, we will not cover your losses." Ex. 21 at 14.

There can be no question that Ulloa was "legally holding" the Aircraft as it is undisputed that he had legal possession of same pursuant to the Lease.  Furthermore, as set forth above, Ulloa, as R Consulting's agent, sold the Aircraft to Sanchez, as both R Consulting and Ulloa have repeatedly asserted.  Moreover, even if one accepts R Consulting's revised position that there was no actual "sale," the fact remains that, in the words of Plaintiff, Ulloa "delivered the Aircraft to Sanchez."  *See* Ex. 15 at 3 (¶ 10).  In other words, Ulloa clearly "dispose[d] of" the Aircraft.  *See Waste Mgmt. of the Desert, Inc. v. Palm Springs Recycling Ctr., Inc.*, 7 Cal. 4th 478, 486, 869 P.2d 440, 443, 28 Cal. Rptr. 2d 461, 464 (1994) (" 'dispose' . . . means '[t]o transfer or part with, as by giving or selling'").

Finally, even if one erroneously assumes, *arguendo*, that Ulloa *neither* "sold" *nor* "disposed of" the Aircraft, based upon Plaintiff's current recitation of the facts, it is clear that, at a bare minimum, Ulloa "ke[pt] [Plaintiff] from using it."  In this regard, Plaintiff has asserted in interrogatory responses that Ulloa "perpetrated" a "fraud" upon R Consulting, and bore "responsibility for the theft of the AIRCRAFT." Ex. 20 at 9:3-5.

Thus, under any conceivable scenario, the "**Sale or disposition**" exclusion applies.

### 5. Plaintiff's Clear Violation Of The "What To Do In Case Of An Accident Or Suit" Section Of The Policy Also Vitiates Coverage

The "What To Do In Case Of An Accident Or Suit" section of the Policy states, in pertinent part:

**Physical Damage to Aircraft**

If there is physical damage or loss to your aircraft follow these steps:

. . .

- • Notify us or your agent immediately.  You must also notify the police immediately if there is any theft, robbery, or pilferage of your aircraft.

- • Within 60 days after loss, send us sworn proof of loss including the following:

  - • the time, place, and nature of the loss;

  - • your interest in the damaged or lost property;

  - • the interest anyone else has in the damaged or lost property; and

  - • any other insurance you have on your aircraft.

Ex. 21 at 29.

As explained above, Plaintiff *never* filed a proof of loss, notwithstanding the fact that its deficiency in this regard was pointed out on multiple occasions.  "Under California law, it is permissible for an insurer to deny a claim if the insured fails to cooperate with the insurer's investigation of loss, *including failing to submit a completed proof of loss . . ..*" *Northrop Grumman Corp. v. Factory Mutual Ins. Co.*, 805 F. Supp. 2d 945, 957 (C.D. Cal. 2011) (emphasis added).  In this regard, "[w]here 'no reasonable trier of fact could conclude [an insured] substantially performed [his] obligations *or complied with the condition of [his] insurance contract requiring [him] to provide a proof of loss* with supporting documentation,' summary judgment is appropriate." *Lemoine v. State Farm General Ins. Co.*, 2016 WL 6778647, at *4 (N.D. Cal. 2016) (emphasis added).  Here, R Consulting not only failed to "substantially perform" its obligations relative to a proof of loss, it *completely ignored* them.

**B.**   **PLAINTIFF'S SECOND CLAIM FOR RELIEF FOR BAD FAITH ALSO FAILS AS A MATTER OF LAW**

As this Court has recently observed, in California, "[t]o state a claim 'for breach of the implied covenant of good faith and fair dealing in the denial of coverage context, the plaintiff must show that (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause.' " *Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*, 88 F. Supp. 3d 1156, 1174 (S.D. Cal. 2015).

1    Insofar as the first requirement is concerned, "an insured cannot maintain a claim for

2  tortious breach of the implied covenant of good faith and fair dealing absent a covered

3  loss." *Benavides v. State Farm Gen. Ins. Co.*, 136 Cal. App. 4th 1241, 1250, 39 Cal. Rptr.

4  3d 650, 656 (2006). Here, as demonstrated above, the claim in question was *not* covered for

5  *numerous* reasons.

6    Even if one erroneously assumes for the sake of argument, however, that there *was*

7  coverage, the *second* requirement has obviously not been satisfied.  In this regard, " 'an

8  insurer can erroneously dispute coverage without acting in bad faith.' "  *Maddux v.*

9  *Philadelphia Life Ins. Co.*, 77 F. Supp. 2d 1123, 1130 (S.D. Cal. 1999).  And under

10  California law, "a bad faith claim should be dismissed on summary judgment if the

11  defendant demonstrates that there was 'a genuine dispute as to coverage.' "  *Feldman v.*

12  *Allstate Ins. Co.*, 322 F.3d 660, 669 (9th Cir.), *cert. denied* 540 U.S. 875 (2003).

13    It would truly require a willing suspension of disbelief to conclude that there was not

14  *at the very least* a "genuine dispute" as to whether coverage was afforded here, given the

15  multitude of legitimate coverage issues discussed above.

16               ## V.  <u>CONCLUSION</u>

17    For the reasons set forth above, summary judgment should be granted as respects

18  both claims for relief.  Alternatively, at a bare minimum, partial summary judgment should

19  be granted, and the second claim for relief for bad faith dismissed.

20

21  Dated:  June 15, 2018              Respectfully submitted,

22

23                          LaMONTAGNE & AMADOR LLP

24

25                          By: _/s/   *Ralph S. LaMontagne, Jr.*
                                 Ralph S. LaMontagne, Jr.

26                               Eric A. Amador
                                 Thomas T. Carpenter

27                          Attorneys for Defendant

28                          OLD REPUBLIC INSURANCE COMPANY

1

## CERTIFICATE OF SERVICE

2

3       I HEREBY CERTIFY that on June 15, 2018, I electronically transmitted

4   Defendant Old Republic Insurance Company's MEMORANDUM OF POINTS AND

5   AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN

6   THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT to the Clerk's Office using

7   the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the

    following CM/ECF registrants:

8

9

10  Michael J. Mason, Esq.                          Tel: 619-230-0897
    Metsch & Mason, LLP
11  5060 N. Harbor Drive, Suite 275
    San Diego, CA  92106
12  Email: *mmason@metschlaw.com*

13  Attorneys for Plaintiff
    R CONSULTING & SALES, INC.
14

15

16                                              */s/  Ralph S. LaMontagne, Jr.*
                                                Ralph S. LaMontagne, Jr.
17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**