# EXHIBIT 15

1   PAUL S. METSCH [SBN 121912]
    pmetsch@metschlaw.com
2   MICHAEL J. MASON [SBN 222602]
    mmason@metschlaw.com
3   METSCH & MASON, LLP
    Emerald Plaza
4   402 W. Broadway, Suite 2700
    San Diego, CA 92101
5   Direct: 619-230-1642
    Fax: 619-230-1839
6
7   Attorneys for Plaintiff
    R CONSULTING & SALES, INC.

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
06/26/2015 at 12:43:10 PM
Clerk of the Superior Court
By Adam Beason, Deputy Clerk

8

9              SUPERIOR COURT OF CALIFORNIA

10            COUNTY OF SAN DIEGO, CENTRAL DIVISION

11

12  R CONSULTING & SALES, INC., a Nevada    Case No. 37-2015-00021516-CU-BC-CTL
    corporation,

13            Plaintiff,                    COMPLAINT FOR:

14  v.                                      1) BREACH OF AGENCY
                                               AGREEMENT;
15  PABLO GONZALEZ ULLOA, an individual;    2) BREACH OF LEASE;
    AVIARRENDAMIENTOS S.A. DE C.V., an      3) CONVERSION;
16  entity of unknown form and origin; and DOES   4) INTENTIONAL
    1 through 10,                              MISREPRESENTATION (FRAUD);
17                                             AND
              Defendants.                   5) NEGLIGENCE
18
                                            [IMAGED FILE]
19

20

21

22

23

24

25

26

27

28

55431-006

                            COMPLAINT                           RCONS0241

Exhibit 15, page 1

Plaintiff R CONSULTING & SALES, INC. ("R Consulting") alleges as follows:

## PARTIES

1.    R Consulting is, and at all relevant times was, a Nevada corporation authorized to do business in the County of San Diego, California.  R Consulting is, and at all relevant times was, the owner of the aircraft identified as a 1983 Gulfstream III Aircraft S/N G-1159A-388 and its affixed two engines, bearing FAA Registration Number N388LR (the "Aircraft").

2.    R Consulting alleges on information and belief that Defendant Aviarrendamientos S.A. de C.V ("Aviarrendamientos") is, and at all relevant times was, an entity of unknown form and origin doing business in the County of San Diego, California.

3.    R Consulting alleges on information and belief that Defendant Pablo Gonzalez Ulloa ("Ulloa," and together with Aviarrendamientos, the "Defendants") is, and at all relevant times was, an individual residing in Mexico City, Mexico and doing business in the County of San Diego.

4.    R Consulting is the lessor of the Aircraft under a September 4, 2014 Aircraft Dry Lease between R Consulting, on the one hand, and Aviarrendamientos and Ulloa as lessees, on the other hand (the "Lease").  A true copy of the Lease is attached hereto as **Exhibit "1"** and incorporated by this reference.

5.    R Consulting is presently unaware of the true names or capacities of the defendants sued as Does 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. R Consulting will seek leave to amend this Complaint to allege the true names and capacities of Does 1 through 10 when it learns them.

6.    R Consulting alleges on information and belief that Does 1 through 10 are in some way responsible for the events and damages, along with the other defendants, alleged in this Complaint.  R Consulting further alleges on information and belief that, at all relevant times, each defendant, including Does 1 through 10, was the agent, employee, partner, member, officer, parent, subsidiary, alter ego, fiduciary or co-conspirator of the remaining defendants, and in acting or failing to act as alleged, each defendant acted within the course and scope of its agency, employment, partnership, membership or conspiracy, and with the knowledge and consent and

Exhibit 15, page 2

1    under the direction and control of one or more of the remaining defendants. Unless specifically

2    indicated otherwise, each reference to any named defendant or to "Defendants" or "defendants"

3    includes by reference all Doe defendants.

4                              **VENUE AND JURISDICTION**

5           7.      Venue is proper in this Court because the obligations and claims sued upon in this

6    Complaint were made and entered into, and were to be performed and were performed, in San

7    Diego County, California.

8                              **COMMON ALLEGATIONS**

9           8.      During the term of the Lease, Sanchez purchased the Aircraft from R Consulting

10   under a December 1, 2014 Aircraft Purchase Agreement ("Purchase Agreement"). A true copy of

11   the Purchase Agreement is attached hereto as **Exhibit "2"** and incorporated by this reference. The

12   Purchase Agreement provided for a purchase price of $1,000,000 (the "Purchase Price").

13          9.      Because Defendants were in possession of the Aircraft, Defendants orally agreed

14   within the last two years to act as R Consulting's agent in connection with the sale and delivery of

15   the Aircraft to third-party, Jose Luis Sanchez ("Sanchez") (the "Agency Agreement"). As R

16   Consulting's agents under the Agency Agreement, Defendants agreed to receive the Purchase

17   Price from Sanchez and deliver the Purchase Price to R Consulting upon their receipt of the

18   Purchase Price, which Defendants received in-full from Sanchez in December, 2014. As

19   consideration for the Agency Agreement, R Consulting agreed to terminate the Lease upon

20   completion of both of the following: (1) Defendants' delivery to Sanchez of the Aircraft; and (2)

21   Defendants' delivery to R Consulting of the Purchase Price.

22          10.     Although Defendants delivered the Aircraft to Sanchez and have repeatedly

23   acknowledged in writing receiving the Purchase Price in December of 2014 and owing the

24   Purchase Price to R Consulting, Defendants have failed and refused to deliver the Purchase Price

25   to R Consulting, despite R Consulting's repeated demands.

26          11.     As a result of Defendants' failure to deliver the Purchase Price to R Consulting, the

27   Lease remains in full force and effect. Defendants have failed to make the required Rent

28   payments due to R Consulting under the Lease since January 1, 2015, with Rent accruing at the

55431-006                                    -2-
                                           COMPLAINT                              RCONS0243

Exhibit 15, page 3

1  rate of $73,000 per month, exclusive of the 10% late charges.

2      12.     To date, in addition to the Purchase Price, Defendants owe R Consulting the

3  principal sum of $438,000 for their breaches of the Lease.  Thus, as a result of Defendants' actions

4  and omissions, R Consulting has sustained damages in the principal sum of $1,438,000, exclusive

5  of late charges due under the Lease, pre-judgment interest, costs and punitive damages.

6                          **FIRST CAUSE OF ACTION**

7                  **(Breach of Agency Agreement—against all Defendants)**

8      13.     R Consulting incorporates by reference paragraphs 1 through 12 above as though

9  fully set forth herein.

10      14.     R Consulting has fully and timely performed all of its legal obligations under the

11  Agency Agreement, except for those legally excused.

12      15.     R Consulting alleges on information and belief that Defendants materially breached

13  the Agency Agreement by failing to deliver the $1,000,000 Purchase Price to R Consulting upon

14  their receipt of the Purchase Price from Sanchez. To date, Defendants owe R Consulting the sum

15  of at least $1,000,000, exclusive of pre-judgment interest and costs, according to proof at trial.

16      16.     As a direct and proximate result of Defendants' breaches, R Consulting has been

17  damaged in the sum of at least $1,000,000, exclusive of pre-judgment interest and costs, according

18  to proof at trial.

19                          **SECOND CAUSE OF ACTION**

20                  **(Breach of Lease—against all Defendants)**

21      17.     R Consulting incorporates by reference paragraphs 1 through 12 above as though

22  fully set forth herein.

23      18.     R Consulting has fully and timely performed all of its legal obligations under the

24  Lease, except for those legally excused.

25      19.     R Consulting alleges on information and belief that Defendants materially breached

26  the Lease by failing to make the required payments under the Lease when due.  To date,

27  Defendants owe R Consulting the sum of at least $438,000, exclusive of 10% late charges due

28  under the Lease, pre-judgment interest and costs, according to proof at trial.

55431-006                          -3-
                                 COMPLAINT                          RCONS0244

Exhibit 15, page 4

1    20.   As a direct and proximate result of Defendants' breaches, R Consulting has been

2    damaged in the sum of at least $438,000, exclusive of 10% late charges due under the Lease, pre-

3    judgment interest and costs, according to proof at trial.

**THIRD CAUSE OF ACTION**

**(Conversion—against all Defendants)**

6    21.   R Consulting incorporates by reference paragraphs 1 through 12 above as though

7    fully set forth herein.

8    22.   R Consulting is informed and believes that Defendants intentionally and

9    wrongfully converted the Purchase Price to their own personal use and benefit.

10   23.   R Consulting is informed and believes that Defendants have exercised wrongful

11   dominion or control over the Purchase Price, and R Consulting did not consent to Defendants use,

12   interference or conversion.

13   24.   As a direct and proximate result of Defendants' acts of conversion, R Consulting

14   has been damaged in the sum of at least $1,000,000, exclusive of pre-judgment interest and costs,

15   according to proof at trial.

16   25.   R Consulting is entitled to the imposition of a constructive trust over Defendants'

17   assets in an amount equal to the Purchase Price, which amount is at least $1,000,000, exclusive of

18   pre-judgment interest and costs, according to proof at trial.

19   26.   Defendants' conduct was intended to cause injury to R Consulting, and was

20   oppressive, fraudulent, and malicious, as defined by Civil Code section 3294, entitling R

21   Consulting to punitive damages, according to proof.

**FOURTH CAUSE OF ACTION**

**(Intentional Misrepresentation (Fraud)—against all Defendants)**

24   27.   R Consulting incorporates by reference paragraphs 1 through 12 above as though

25   fully set forth herein.

26   28.   In or around December of 2014, Ulloa, acting individually and on behalf of

27   Aviarrendamientos, represented to Lance Ricotta of R Consulting that Ulloa would deliver the

28   Aircraft to Sanchez; take delivery of the Purchase Price from Sanchez; and deliver the Purchase

55431-006                                    -4-
                                        COMPLAINT                                RCONS0245

Exhibit 15, page 5

1  Price to R Consulting upon receipt of the Purchase Price, as required under the Purchase

2  Agreement (the "Representations").  Ulloa, acting individually and on behalf of

3  Aviarrendamientos, made the Representations with the intent to defraud and deceive R

4  Consulting.

5      29.    The Representations were false, and Defendants knew that the Representations

6  were false when they made them.

7      30.    Defendants made the Representations with an intent to defraud and to deceive R

8  Consulting, that is, for the purpose of inducing R Consulting to rely upon the Representations and

9  to act or to refrain from acting in reliance on the Representations.  Specifically, Defendants made

10 the Representations to induce R Consulting to enter into the Agency Agreement and allow

11 Defendants to take delivery of the Purchase Price from Sanchez.

12     31.    Defendants knew that R Consulting did not know and could not reasonably

13 discover the true facts.

14     32.    At all times Defendants were making the Representations, R Consulting was

15 unaware of the falsity of the Representations and believed them to be true.

16     33.    R Consulting reasonably and justifiably relied on the Representations of material

17 fact and was induced to, and in reliance on and as a result of the Representations did, enter into the

18 Agency Agreement and allow Defendants to take delivery of the Purchase Price from Sanchez.

19     34.    Had R Consulting known the true facts, it would never have entered into the

20 Agency Agreement.

21     35.    As a direct and proximate result of Defendants' fraud and intentional

22 misrepresentations, R Consulting has been damaged in the sum of at least $1,000,000, exclusive of

23 pre-judgment interest and costs, according to proof at trial.

24     36.    Defendants' conduct was intended to cause injury to R Consulting, and was

25 oppressive, fraudulent and malicious conduct as defined in Civil Code section 3294, entitling R

26 Consulting to exemplary and punitive damages, according to proof at trial.

27 ///

28 ///

55431-006

-5-
COMPLAINT

RCONS0246

Exhibit 15, page 6

## FIFTH CAUSE OF ACTION

### (Negligence—against all defendants)

37.     R Consulting re-alleges and incorporates by reference paragraphs 1 through 12 above as though fully set forth herein.

38.     At all relevant times, Defendants owed R Consulting a duty of care to disclose material facts in connection with the Agency Agreement.

39.     Defendants breached their duty of care owed to R Consulting by failing to disclose that Defendants had negligently misrepresented and/or concealed the true facts from R Consulting in connection with R Consulting entering into the Agency Agreement.

40.     As a direct and proximate result of Defendants' negligent misrepresentations and/or failure to disclose the true facts to R Consulting, R Consulting has been damaged in the sum of at least $1,000,000, exclusive of pre-judgment interest and costs, according to proof at trial.

### PRAYER

WHEREFORE, R Consulting prays for judgment against Defendants, and each of them, as follows:

**ON THE FIRST AND FIFTH CAUSES OF ACTION:**

1.     For compensatory damages in at least the sum of $1,000,000, to be proven at trial.

**ON THE SECOND CAUSE OF ACTION:**

1.     For compensatory damages in at least the sum of $438,000, exclusive of 10% late charges due under the Lease, to be proven at trial.

**ON THE THIRD AND FOURTH CAUSE OF ACTION:**

1.     For compensatory damages in at least the sum of $1,000,000 to be proven at trial; and

2.     For punitive and exemplary damages according to proof.

///
///
///
///

55431-006

-6-

COMPLAINT

RCONS0247

Exhibit 15, page 7

<u>ON ALL CAUSES OF ACTION</u>:

    1.    For costs of suit incurred in this action;

    2.    For pre-judgment interest at the maximum allowable legal rate; and

    3.    For such other and further relief as the Court deems just and proper.

DATED: June 26, 2015        METSCH & MASON, LLP

By: _____
    PAUL S. METSCH
    MICHAEL J. MASON
    Attorneys for Plaintiff R CONSULTING &
    SALES, INC.

55431-006        -7-        RCONS0248
        COMPLAINT

# EXHIBIT 1

RCONS0249

## AIRCRAFT DRY LEASE

THIS AIRCRAFT DRY LEASE ("Lease") is made as of September 4, 2014 (the "Effective Date") by and between R Consulting and Sales Inc., a Nevada professional corporation ("Lessor") and Aviarrendamientos S.A. de C.V. and Pablo Gonzalez Ulloa ("Lessee") (collectively, the "parties," and individually a "party").

In consideration of the representations, warranties and agreements hereinafter set forth, the parties agree as follows:

1.  **Aircraft.** Subject to the terms and conditions of this Lease, Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, a 1983 Gulfstream III Aircraft S/N G-1159A-388 and its affixed two engines, bearing FAA Registration Number N388LR, including its engines, avionics, instruments, accessories, and component parts, including replacement parts installed thereon (collectively, the "Aircraft"). Lessor represents and warrants to Lessee that it owns, free and clear of any claim, encumbrance, restriction, or lien, all right, title and interest to the Aircraft; that as of the Effective Date, the Aircraft has current hull insurance and liability insurance for the Aircraft issued by insurance in the limit amounts set forth below in Paragraph 10 ("Insurance Policy"); the Aircraft has a valid Federal Aviation Administration ("FAA") registration.

2.  **Term.** The term of this Lease shall be for (3) months after the Effective Date subject to earlier termination by either party at any time thirty (30) days after delivery of written notice ("Notice of Termination") Payments must be current to terminate Lease to the other party to this Lease ("Termination Date"). Lessee shall not schedule use of the Aircraft so that the trip extends beyond the Termination Date without the express prior written agreement of Lessor.

3.  **Security Deposit.** Upon the execution of this Lease by Lessor and Lessee, Lessee shall deliver to Lessor a non-refundable first and last month security deposit and one month security deposit of Two Hundred Nineteen Thousand Dollars (U.S. $219,000) ("Security Deposit"), which shall be held by Lessor as provided in this Lease. Lessee may pay the Security Deposit by a wire as instructed in writing by Lessor or by check payable to Lessor.

4.  **Rent.** Lessee will pay Lessor as rental for the Aircraft ("Rent") Seventy Three Thousand Dollars ($ 73,000) per month of Lessee's use of the Aircraft, including for "Deadhead" legs. Lessee will pay Rent within five (5) days of the fourth of every month. Late rent will be charged at 10% of Lease Payment.

5.  **Base Maintenance.** The Aircraft will be Maintained by **R Consulting & Sales, Inc.,** a California corporation ("Manager"), whose principal place of Ontario, California, or such other location as the parties may agree in writing ("Base"). Lessor and Manager have entered into a management agreement that Lessor represents and warrants to Lessee is in effect as of the Effective Date (the "Management Agreement") pursuant to which Manager has agreed to maintain the Aircraft at Lessor's approved maintenance facility; Lessor represents and warrants

Scanned by CamScanner

RCONS0250

to Lessee that it shall maintain the Aircraft at its sole cost during the Term and if it replaces the manager of the Aircraft during the Term, it shall promptly notify Lessee of such fact.

6.   **Return.**  Upon expiration or termination of the Term, Lessee will return the Aircraft to the Base at San Diego Brown Field.  Lessee will return the Aircraft to Lessor in the same condition as received, normal wear and tear excepted.

7.   **Operation.**  The Aircraft is to be operated under this Lease in accordance with Part 91.  When the Aircraft is operated under this Lease, Lessee will at all times be in operational control of the Aircraft and will not, except with Lessor's prior written consent, assign this Lease or sublease the Aircraft, and Lessee will be solely responsible for its possession and use.  Lessee will not use or operate the Aircraft in violation of any law, regulation or order of any governmental authority, or in violation of the Aircraft's airworthiness certificate, license or registration, or in breach of any term or condition of any insurance policy required under this Lease, or use the Aircraft in any area excluded from coverage by the terms of any insurance policy required under this Lease.  When the Aircraft is operated under this Lease, Lessee will, at all times, employ or contract (through Manager or independently) for pilots to operate the Aircraft who are duly qualified, current, and rated on the Aircraft and whose licenses are in good standing, and who meet the standards established by the Federal Aviation Administration ("FAA") and by any insurance policy required under this Lease.  Lessee will bear the cost of any fees, charges or penalties arising out of Lessee's operation of the Aircraft.  Lessor will bear all capital improvement costs for the Aircraft at lessors approved facility.

8.   **Maintenance.**  Lessor will at all times, at Lessor's own expense, either through Manager or otherwise, cause the Aircraft to be kept in a fully operational.  Lessee is responsible for consumables such as oils, hydraulic fluids, oxygen, nitrogen, ect while aircraft is in there possession. Lessee shall not make alterations, modifications, additions or improvements to the Aircraft without the prior written consent of Lessor.  All alterations, modifications, additions and improvements which are made become the property of Lessor and are subject to the terms of this Lease.

9.   **Records.**  Lessee will maintain, or cause to be maintained, all Aircraft logs and records related to Lessee's use of the Aircraft under this Lease

10.   **Insurance.**  Lessor will at all times, at Lessor's own expense, cause to be maintained a policy or policies of insurance with premiums thereon fully paid in advance, issued by and binding upon a solvent insurance company, identifying Lessor as the named insured and sole loss payee under the aircraft hull, engine and property damage casualty insurance policy and naming, among others, Lessee (and its affiliates, shareholders, directors, officers, employees, and agents) and Manager as additional insureds under the general liability portion of such policy, insuring against personal injury, death, hull damage or other property damage or loss arising out of or in any manner occasioned by the act, omission or negligence of Lessor, Lessee, or Manager, or their respective affiliates, owners, shareholders, directors, officers, employees, and agents or invitees with respect to the custody, maintenance, use or operation of the Aircraft. Lessor represents and warrants to Lessee that such Insurance Policy shall afford (a) adequate

2   **Scanned by CamScanner**

RCONS0251

aircraft hull, engine and other property casualty insurance to satisfy Lessor in the event of the destruction of the Aircraft; (b) include a breach of warranty endorsement and a waiver of subrogation; and (c) include aircraft liability insurance with a minimum combined single legal liability limit in the amount of not less than Five Million Dollars ($5,000,000.00). Lessor shall cause such Insurance Policy expressly to refer to, and shall provide coverage with respect to, Lessee's indemnity undertaking as set forth in Section 12 below. Such Insurance Policy shall provide for at least thirty (30) days' notice in writing to Lessee and Lessor before any cancellation of such Insurance Policy, and an original endorsement complying with the foregoing provisions shall be delivered by Lessor to Lessee promptly after this Lease is executed as a condition of this Lease.

11.    **Loss or Damage.** This Lease may be terminated by either party by reason of any damage to or loss of the Aircraft and no Rent shall be due for any period after the occurrence of a casualty loss of the Aircraft.

12.    **Indemnification.** To the extent that Lessee's indemnity undertaking herein is covered by the Insurance Policy, Lessee agrees to indemnify, hold harmless and defend Lessor and its members, together with the members, managers, officers, employees, agents, successors and assigns of Lessor and of each such member of Lessor (each, an "Indemnitee"), from and against any and all liabilities, losses, (including Lessee's own loss of use), damages, penalties, sanctions, fines, causes of action, suits, claims (including, without limitation, claims involving strict or absolute liability in tort, damage, injury, death, liability and third party claims), demands, costs and expenses of every nature (collectively, "Claims"), arising directly or indirectly from or in connection with Lessee's use or operation of the Aircraft, or any default in the performance of Lessee's other obligations under this Lease, or any failure by Lessee to comply with applicable law, or any unlawful or negligent act or omission by Lessee, except to the extent any such Claims arise out of, result from or relate to the negligence, breach of contract or failure to comply with any applicable law on the part of such Indemnitee. Lessee's obligations under this paragraph will survive termination of this Lease and will remain in effect until all indemnity payments required hereunder have been made by Lessee.

13.    **Taxes.** Lessor shall be responsible for any State sales, use or other tax and shall pay such taxes to the appropriate taxing authority related to this Lease. Lessor shall also be responsible for filing personal tax owed on or for the Aircraft; provided, however, that Lessee shall pay all taxes and other charges associated with Lessee's use of the Aircraft under this Lease, including, without limitation, landing fees, fuel taxes and any other charges or fees that may be assessed against a specific flight by Lessee. In case any report or return is required to be made by Lessee with respect to any taxes, Lessee will either (after notice to Lessor) make such report or return in such manner as will show the ownership of the Aircraft in Lessor and send a copy of such report or return to Lessor, or will notify Lessor of such requirement and make such report or return in such manner as will be satisfactory to Lessor. Lessor and Lessee agree to cooperate fully with each other in the preparation of any such report or return.

14.    **Liens.** Lessee will not directly or indirectly create, incur, assume or permit the existence of any liens on the Aircraft related to Lessee's use or operation of the Aircraft and

dry_lease_Gulfstream_JSS_2014.doc                      3

**Scanned by CamScanner**

RCONS0252

Lessee will promptly, at Lessee's own expense, take such action as may be necessary duly to discharge any such lien.

    15.    **Inspection.** Lessor or its designee has the right, but not the duty, to inspect the Aircraft at any reasonable time and upon reasonable notice, in flight, or wherever the Aircraft may then be located. Upon Lessor's request, Lessee will advise Lessor of the Aircraft's location and will furnish Lessor with all logs and records in Lessee's possession regarding the Aircraft and its use, maintenance or condition.

    16.    **Lessee's Default.** Each of the following events shall constitute an "Event of Default" hereunder:

        (a)    Lessee fails to make payment of Rent within five (5) days after the same becomes due; or

        (b)    Lessee fails to perform or observe any covenant, condition or agreement to be performed or observed by Lessee under this Lease; or

        (c)    Lessee becomes insolvent; or

        (d)    Lessor believes, in good faith, that the prospect of payment or Lessee's performance under this Lease is uncertain or impaired.

    17.    **Lessor's Remedies.** Upon the occurrence of any Event of Default, Lessor may, in its sole discretion, elect:

        (a)    By notice in writing, to terminate this Lease, whereupon Lessee will, without further demand, forthwith return the Aircraft to Lessor as required under Section 6, and pay all accrued and unpaid amounts due under this Lease; or

        (b)    To perform or cause to be performed any obligation, covenant or agreement under this Lease. Lessee agrees to pay all costs and expenses incurred for such performance and acknowledges that such performance shall not be deemed to cure said Event of Default; or

        (c)    To initiate proceedings against Lessee for any other remedy available to Lessor whether at law or in equity.

    Lessee will be liable for all costs, charges and expenses, incurred by Lessor by reason of the occurrence of any Event of Default or the exercise of Lessor's remedies hereunder.

    No remedy is intended to be exclusive, but each will be cumulative and in addition to any other remedy referred to above or otherwise available at law or in equity. The failure or delay of Lessor in exercising any rights granted under this Lease upon any occurrence of any of the contingencies set forth above shall not constitute a waiver of any such right.

⁴ **Scanned by CamScanner**

RCONS0253

18.   **Counterparts, Electronic Notices, and Signatures.**  This Lease may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and such counterparts together shall constitute only one instrument. Electronic signatures shall be binding and effective as an original.  This Lease shall be effective as of the date specified on the first page hereof, notwithstanding the actual date of execution of any of the counterparts hereof.  Any one of such counterparts, or any true, complete and correct copy thereof, shall be sufficient for the purpose of proving the existence and terms of this Lease, and no party shall be required to produce an original or all of such counterparts in making such proof.  Notices to be given under the terms of this Lease shall be delivered in writing and may be delivered by (1) electronic communication, provided electronic mail is confirmed as received by the recipient; (2) personally; (3) by overnight courier; or (4) by certified mail, return receipt requested, postage prepaid, addressed as provided on the signature page or to such replacement address as may subsequently be provided in writing by one party to the other, and shall be deemed to have been delivered in the case of an email, on the next business day if delivered after 5 PM to the location to which it is sent or the email is received, respectively; in the case of mailing, two (2) business days after being mailed; and in the case of personal delivery, upon actual delivery or the intended recipient's refusal to accept delivery.

19.   **Entire Agreement.**  The terms and conditions of this Lease constitute the entire agreement between the parties with respect to the subject-matter of this Lease and supersede all prior written and oral negotiations, representations and agreements, if any, between the parties with respect to such subject-matter, and will be binding upon them, their successors, assigns and legal representatives.

20.   **Modification of Agreement.**  No change or modification or waiver of any term or condition of this Lease will be effective unless the change or modification is in writing and signed by the party to be charged.

21.   **Governing Law.**  The parties acknowledge that this Lease and the enforcement thereof will be governed by and construed and enforced in all respects in accordance with the laws of the County of San Diego, State of California, without reference to its conflicts of law rules.

22.   **Right to Pay Expenses.**  Lessor will have the right, but not the obligation, to pay any costs or expenses that Lessee is obligated to pay under any provision of this Agreement, and Lessee shall, promptly upon its receipt of a request therefor from Lessor, reimburse Lessor for all amounts so paid by Lessor.

23.   **Truth-In-Leasing.**

   (a)   LESSOR HAS REVIEWED THE AIRCRAFT'S PRECEDING EXECUTION OF THIS LEASE.

   (b)   LESSEE CERTIFIES THAT LESSEE, AND NOT LESSOR, IS RESPONSIBLE FOR OPERATIONAL CONTROL OF THE AIRCRAFT UNDER THIS LEASE.  LESSEE'S ADDRESS APPEARS ON THE SIGNATURE PAGE HEREOF.  LESSEE

Scanned by CamScanner
RCONS0254

FURTHER CERTIFIES THAT LESSEE UNDERSTANDS LESSEE'S RESPONSIBILITY
FOR COMPLIANCE WITH APPLICABLE FEDERAL AVIATION REGULATIONS.

      (c)    LESSOR AND LESSEE CERTIFY THAT THE AIRCRAFT WILL BE
MAINTAINED AND INSPECTED AS PROVIDED HEREIN UNDER PART 91 OF THE
FEDERAL AVIATION REGULATIONS AND, AT THE MINIMUM, IN ACCORDANCE
WITH THE MANUFACTURER'S RECOMMENDED INSPECTION MAINTENANCE
PROGRAM FOR THE AIRCRAFT WHEN OPERATED UNDER THIS LEASE.  LESSEE
FURTHER CERTIFIES THAT LESSEE UNDERSTANDS LESSEE'S RESPONSIBILITY
FOR COMPLIANCE WITH PART 91 AND OTHER APPLICABLE PROVISIONS OF THE
FEDERAL AVIATION REGULATIONS.

      (d)    LESSEE UNDERSTANDS THAT AN EXPLANATION OF FACTORS
BEARING ON OPERATIONAL CONTROL AND PERTINENT FEDERAL AVIATION
REGULATIONS CAN BE OBTAINED FROM THE NEAREST FAA FLIGHT STANDARDS
DISTRICT OFFICE.

*[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]*

Scanned by CamScanner
RCONS0255

(e)    THE PARTIES HEREBY CERTIFY THAT A COPY OF THIS LEASE WILL BE CARRIED ON THE AIRCRAFT AT ALL TIMES, AND WILL BE MADE AVAILABLE FOR INSPECTION ON REQUEST BY AN APPROPRIATELY CONSTITUTED AND IDENTIFIED REPRESENTATIVE OF THE FAA.

IN WITNESS WHEREOF, the parties hereto have each caused this Lease to be duly executed effective as of the Effective Date.

LESSOR:

**R Consulting and Sales, Inc.,**
a Nevada professional corporation

LESSEE:

Aviarrendamientos S.A. de C.V..,
Pablo Gonzalez Ulloa
An individual

By _____

Name: _____
Title: _____

Mailing Address:
R Consulting and Sales, Inc.
318 N Carson st STE 208
Carson City, NV 89701

Email: skywonders@aol.com

By _____

Name: PABLO GONZALEZ-ULLOA
Title: PRESIDENT

Mailing Address:
Pablo Gonzalez Ulloa.
Address
Indiana 141 Napoles
Mexico, DF. 03810

Email: pgu@arm.aero

**Scanned by CamScanner**

RCONS0256

# EXHIBIT 2

RCONS0257

# AIRCRAFT PURCHASE AGREEMENT

THIS AIRCRAFT PURCHASE AGREEMENT (THIS "AGREEMENT") IS MADE THIS 1st DAY OF DECEMBER, 2014 BY AND BETWEEN R CONSULTING & SALES, INC., 318 N CARSON St., SUITE 208, CARSON CITY, NV 89701,   E-MAIL: skywonders@aol.com, PHONE: (760) 809-45-66 ("SELLER") AND   JOSE LUIS SANCHEZ_____ , E-MAIL: joseluissanchez188@yahoo.com___ , PHONE: (___) _____ ("PURCHASER") AND WITNESSETH:

WHEREAS, SELLER AND PURCHASER PREVIOUSLY EXECUTED A LETTER OF INTENT (THE "LETTER OF INTENT TO PURCHASE") THE GULFSTREAM III AIRCRAFT DESCRIBED BELOW (THE "AIRCRAFT") EXECUTED DECEMBER 1, 2014 PROVIDING FOR, AMONG OTHER THINGS, A PRE-PURCHASE INSPECTION OF THE AIRCRAFT AND RECORDS;

WHEREAS, PURSUANT TO THE OFFER TO PURCHASE, THE AIRCRAFT HAS BEEN DELIVERED BY SELLER TO A FACILITY DESIGNATED BY PURCHASER FOR ACCOMPLISHMENT OF THE PRE-PURCHASE INSPECTION; AND

WHEREAS, THE LETTER OF INTENT CONTEMPLATES THE EXECUTION OF AN AIRCRAFT PURCHASE AGREEMENT AND THE PARTIES INTEND THIS AGREEMENT TO FULFILL THAT CONTEMPLATION.

NOW THEREFORE, SELLER AND PURCHASER HEREBY AGREE AS FOLLOWS:

1.    **Agreement to Purchase**:  Seller agrees to sell and purchaser agrees to purchase the aircraft specified below subject to the terms and conditions set forth below and attached herein (and by this reference made a part hereof).

| YEAR | MODEL | FAA NUMBER | AIRCRAFT SERIAL NUMBER | ENGINES |
|------|-------|-----------|------------------------|---------|
| 1983 | Gulfstream III | N388LR | 388 | Rolls Royce Spey Mk 511SR |

Specifications:
Seller represents that the Aircraft has the specifications set forth in Appendix 1 hereto.

| | | |
|---|---|---|
| TOTAL SELLING PRICE | $1,000,000 | 00 |
| TOTAL SALE | $1,000,000 | 00 |

| | | |
|---|---|---|
| TOTAL CREDIT TO SALE | | 00 |
| CASH DUE | $1,000,000 | 00 |

2.    **Payment**:  The Aircraft will be sold for cash, payable on the date of Closing (as hereinafter defined) and by delivery of lawful money of the United States of America by wire transfer to  R Consulting & Sales  Inc.

3.    **Pre-Purchase Inspection** Buyer has executed and is satisfied with his own pre-purchase inspection.

4.    **Failure to Close or Accept Delivery**: Purchaser accepts and takes delivery of aircraft upon execution of this purchase agreement.

5.    **Force Majeure**:  Seller shall not be liable for labor difficulties, machinery breakdowns, inability to obtain shipping space or transportation, delays of carriers or suppliers, fires, floods, acts of God, or other outbreak of hostilities, mobilization, civil commotion, riots, embargoes, and domestic or foreign governmental regulations or orders (each a "Force Majeure Event") or should the Aircraft be destroyed or damaged beyond repair before or after Closing.

6.    **Closing**.  The closing (the "Closing") on the Aircraft will take place on or before three (3) business days after the Airworthiness Discrepancies are completed.

| Seller's Initials _____   Date _____ | Purchaser's Initials _JJ_  Date 12-14 |
|---|---|

RCONS0258

Exhibit 15, page 18

7.   Closing, Title and Delivery:  On or prior to the Closing Date, Purchaser shall (i) wire the remaining portion of the Purchase Price to the Escrow Agent, together with amounts sufficient to pay all taxes pursuant to Paragraph 10 hereof, the filing fees to file for the Registration (as hereinafter defined) and the FAA Bill of Sale (as hereinafter defined) with the FAA, and the Delivery Costs (as hereinafter defined), (ii) deliver to the Escrow Agent an original completed and executed application for registration of the Aircraft with the FAA (the "Registration"), and (iii) deliver to Escrow Agent an executed escrow agreement authorizing the release of the Purchase Price and filing of the Registration and FAA Bill of Sale upon satisfaction of the terms of this Paragraph 9.  On or prior to the Closing Date, Seller shall (i) deliver to the Escrow Agent two (2) original executed Federal Aviation Administration Bill of Sale Form 8050-2 in the form attached hereto as Appendix 3 (the "FAA Bill of Sale"), (ii) deliver to Escrow Agent an original executed Warranty Bill of Sale to the Aircraft in the form attached hereto as Appendix 4, and (iii) deliver to Escrow Agent an executed escrow agreement authorizing the release of the Purchase Price and filing of the Registration and the FAA Bill of Sale upon satisfaction of the terms of this Paragraph 9.  The Aircraft shall be delivered for closing in or at Purchaser's expense to some other mutually agreeable location within the continental United States (the "Delivery Location"), which shall not give rise to adverse tax consequences for the parties.  Purchaser shall pay Seller's reasonable out-of-pocket cost for fuel, pilot travel and the pilot's daily rate if other than Seller's own pilots (not to exceed $500.00 per pilot) to ferry the Aircraft from  to the Delivery Location (collectively, the "Delivery Costs").  On the date of Closing, the parties shall close on this transaction once it has been verified by the Escrow Agent that (i) Escrow Agent has received all deliveries required by the Purchaser, (ii) Escrow Agent has received all deliveries required by the Seller, (iii) the Aircraft is in position at the Delivery Location, and (iv) Purchaser has accepted delivery of the Aircraft by executing and delivering to Seller the Delivery Receipt in a form substantially the same as Appendix 2 attached hereto and incorporated herein.  At the time of Closing the Escrow Agent shall simultaneously:  i) release to Seller the Purchase Price less any broker commissions to be paid by Seller, any loan payoff and the escrow fees due to Escrow Agent; ii) release the Delivery Costs to Seller; iii) file the Registration and the FAA Bill of Sale with the FAA, and (iv) release the Warranty Bill of Sale to Purchaser.

Title to the Aircraft free and clear of all liens and encumbrances and risk to the Aircraft shall pass to Purchaser on the date of Closing.  Seller will maintain full insurance coverage on the Aircraft until the risk of loss passes to Purchaser at Closing.

8.   Taxes:  Purchaser agrees to pay and to indemnify Seller for all sales and use taxes or assessments which may be imposed by any governmental authority upon this sales transaction or the use of the Aircraft by Purchaser, and any such taxes or assessments which Seller will be obligated under law to collect from Purchaser. Except as provided herein, Seller agrees to pay and to indemnify Purchaser for all taxes, fees or duties and expenses, as well as any penalties, interest and attorney's fees, imposed by any jurisdiction or governmental authority as a result of the ownership, location or usage of the Aircraft prior to the Closing Date/Delivery Time and all taxes on profits, gross receipts or income of Seller applicable to or arising out of the transactions contemplated by this Agreement.  Prior to the payment of any assessment for which Purchaser or Seller desires to seek indemnification from the other party hereunder, the party desiring indemnification shall provide the other party with five (5) business days prior written notice of the same.  The indemnified party shall allow the indemnifying party to dispute any such assessment and shall cooperate reasonably in regard thereto.

9.   DISCLAIMER: BUYER UNDERSTANDS THAT THE AIRCRAFT IS BEING PURCHASED IN AN "AS IS, WHERE IS" CONDITION EXCEPT AS PROVIDED ABOVE TO THE CONTRARY. UNLESS OTHERWISE PROHIBITED BY LAW AND THIS AGREEMENT, BUYER AGREES THAT THE WARRANTIES OF SELLER SET FORTH IN THE FOLLOWING PARAGRAPH ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES OF SELLER, WHETHER WRITTEN, ORAL OR IMPLIED, OTHER THAN THE EXPRESS WARRANTIES OF TITLE SET FORTH IN THE WARRANTY BILL OF SALE. BUYER ACKNOWLEDGES AND AGREES THAT SELLER SHALL NOT, BY VIRTUE OF HAVING OWNED AND SOLD THE AIRCRAFT OR OTHERWISE, BE DEEMED TO HAVE MADE ANY REPRESENTATIONS OR WARRANTY AS TO THE MERCHANTABILITY, FITNESS, DESIGN OR CONDITION OF, OR AS TO THE QUALITY OF THE MATERIAL OR WORKMANSHIP IN, THE AIRCRAFT, OR TO HAVE MADE ANY OTHER REPRESENTATIONS OR WARRANTIES.   SELLER DISCLAIMS AND BUYER WAIVES ALL WARRANTIES AND LIABILITIES, EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE (INCLUDING STRICT LIABILITY IN TORT), WITH RESPECT TO THE MERCHANTABILITY, FITNESS, DESIGN OR CONDITION OF, OR AS TO THE QUALITY OF THE MATERIAL OR WORKMANSHIP IN, THE AIRCRAFT.

10.   WARRANTY:  Seller warrants that all representations and warranties in this Agreement are true and correct in all material respects as of the contract acceptance date on the front page of this Agreement and will be true and correct as of the date of Closing.  Seller warrants that, at closing, it will have good, marketable title and possession

| Seller's Initials _____   Date _____ | Purchaser's Initials _JL_   Date 1-12-14 |
|---|---|

RCONS0259

of the Aircraft, including the engines, free and clear of all liens, claims, demands and encumbrances, which title Seller will convey to Purchaser. Purchaser and Seller warrant that each has the authority to enter into this transaction under its articles of incorporation and the applicable law of the state of its incorporation.

11. **Assignments of Programs and Warranties:** Seller hereby assigns to Purchaser (to the extent assignable), as of the date of Closing, all of the rights, warranties, representations, covenants, and indemnities made to Seller by or which Seller is entitled to enforce against any predecessor in title to the Aircraft or from the Aircraft manufacturer, if any. Seller agrees to assist Purchaser, at Purchaser's sole cost and expense, in enforcing or arranging for the enforcement by appropriate parties for Purchaser's benefit, at Purchaser's sole cost and expense, all such rights, warranties, representations, covenants and indemnities, including transfer to Purchaser at Closing of any other third party service or maintenance agreements. However, Purchaser shall pay any costs related to the transfer of such warranties and programs.

12. **Acceptance Flight:** Shall not exceed two (2) hours with Sellers Pilot in Command as captain during the flight and the Purchaser may provide a qualified co-pilot for such Acceptance Flight. The Acceptance Flight may be combined with the ferry flight to transport the Aircraft to the location of the final Delivery.

13. **Applicable Law:** This Agreement shall be construed and interpreted under the laws of the State of California in the County encompassing the City of San Diego.

14. **Enforceability:** In the event any provision of this Agreement is prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without affecting the remaining provisions of this Agreement which shall continue in full force and effect.

15. **Survival:** The covenants, agreements, representations and warranties by Seller shall survive the Closing of this transaction.

16. **Cooperation:** Each party shall execute and deliver all such documents as may reasonably be requested in order to implement the intent and purposes of this Agreement, and shall cooperate reasonably in carrying out the Closing.

17. **Broker's Commissions:** Seller shall be responsible for payment of a commission due to its broker, if any. Purchaser has not engaged any broker. Seller does hereby agree to indemnify and defend Purchaser and hold Purchaser harmless from any and all commissions, claims to such commissions or similar fees, including attorneys' fees incurred in any lawsuit regarding such commission or fees to Broker, or any other broker to the extent such claims or liabilities are by any broker claiming by, through or under Seller and are based upon the actions of Seller. Purchaser does hereby agree to indemnify Seller and hold Seller harmless from any and all commissions, claims to such commissions or similar fees, including attorneys' fees incurred in any lawsuit regarding such commission or fees, to the extent such claims or liabilities are by any broker claiming by, through or under Purchaser and are based upon the actions of Purchaser.

18. **Non-Disclosure:** The material terms and conditions set forth in this Agreement may not be disclosed in any fashion, either in whole or in part, to any third party (excluding governmental authorities and the disclosing party's legal counsel, financial institution, accountants and other relevant personnel with a need to know) unless in connection with enforcement of the terms hereof or unless the party desiring to make such disclosure first obtains the express written approval of the other party.

19. **Litigation Expenses:** If litigation is instituted to enforce this Agreement, the prevailing party shall be awarded its reasonable attorney's fees incurred and all reasonable litigation costs, including depositions, expert witness fees, photographic expense, witness travel and lodging expense and all court costs.

20. **Agreement Assignment:** Neither party may assign its rights, interests or obligations under this Agreement without the prior written consent of the other party.

21. **International Registry:** Purchaser and Seller agree to timely register, and to cause their lenders and/or lessees, if any, to timely register, as users of the International Registry established pursuant to the Cape Town Convention on International Interests in Mobile Equipment and the Protocol to the Convention on International Interests in Mobile Equipment on Matters Specific to Aircraft Equipment (collectively the "Cape Town Treaty") and to make, or cause to be made all filings and consents to filings required to perfect Purchaser's ownership interest, and the lien hold interest of Purchaser's lender, in the Aircraft pursuant to the Cape Town Treaty, concurrent with the Closing.

Seller's Initials _____ Date _____

Purchaser's Initials _JJ_ Date 6-12-14

RCONS0260

21. **International Registry:**  Purchaser and Seller agree to timely register, and to cause their lenders and/or lessees, if any, to timely register, as users of the International Registry established pursuant to the Cape Town Convention on International Interests in Mobile Equipment and the Protocol to the Convention on International Interests in Mobile Equipment on Matters Specific to Aircraft Equipment (collectively the "Cape Town Treaty") and to make, or cause to be made all filings and consents to filings required to perfect Purchaser's ownership interest, and the lien hold interest of Purchaser's lender, in the Aircraft pursuant to the Cape Town Treaty, concurrent with the Closing. Purchaser shall pay for all costs associated with registering Purchaser's and Purchaser's lender's International Interests, including but not limited to registering Purchaser and Purchaser's lender as a Transacting User Entity, filing fees for filing Purchaser's and Purchaser's lenders International Interests in the airframe and engines, and fees associated with searching the International Registry prior to, and after registration of Purchaser's and Purchaser's lender's International Interests.  Seller shall be required to pay its own costs related to registering Seller as a Transacting User Entity on the International Registry.

23. **Counterparts:**  This Agreement may be executed in counterparts, each when read together constituting a binding agreement on the parties.  E-mailed signatures will have the full force and effect of original signatures.

24. **Entire Agreement:**  This Agreement constitutes the entire agreement of the parties hereto with respect to the purchase and sale of the Aircraft; all prior representations and understandings having been merged herein.  This Agreement may not be modified or terminated orally.  No claimed modification, termination or waiver or any of the provisions of this Agreement shall be valid unless in writing signed by the party to be bound thereby.  The terms and conditions hereof supersede and cancel any terms contained in any other documents.  This Agreement becomes a binding contract when it is signed by both parties hereto.

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be duly executed by their authorized officers as of the date and year first above mentioned.

SELLER: R Consulting & Sales, Inc.

PURCHASER

By:_____
Name: Raquel Michel      Title: President

Address:   318 N Carson St, Suite 208

City/State/Zip:  Carson City, Nevada 89701

Phone:   (760) 809 4566

By:_____
Name:  Jose Luis Sanchez      Title: Individual

Address: 1150 Lee Wagener Blvd, Suite 203

City/State/   Fort Lauderdale, Florida 33315

Phone:   _____

| Seller's Initials _____   Date _____ |
| Purchaser's Initials _____  Date 1-12-14 |

RCONS0261

Exhibit 15, page 21

| APPENDIX 1 |
|---|

## SPECIFICATIONS

| ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ |
|---|
| _____ Landings, _____ since mid-life,  No Damage, Good P&I, Factory Maintenance Program, CMP |

| ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ |
|---|
| Max Ramp: 70,200 Lbs<br>Max Take-off: 69,700 Lbs<br><br>**Engine Specs:**<br>ROLLS ROYCE SPEY MKC 511-8<br><br><br>APU-Allied Signal GTCP 36-100 G-APU<br>s/n 440C |
| **Avionics/Radios:**<br>Sperry SPZ 800 Auto-Pilot<br>HNYWL Primus 880 Radar<br>Dual Collins FD-109 F.D.<br>Allied Signal TCS II W/CH7<br>Dual Collins VHF 220 Comms<br>Universal UNSIK FMS<br>Dual Collins VIR 30 NAVS<br>Universal UNS 1K GPS<br>Dual Collins ADF-60 ADF<br>Dual Litton 92 INS<br>Dual Collins DME-42 DME<br>Collins ALT 55B Radar ALT W/VTA<br>Dual HNYWL RCZ852 XPNDR<br>Universal Class A EGPWS<br>Dual Collins 671 URN/SEL H.F. |
| **Additional Equipment:**<br>AFT Lavatorie<br>AFT Galley<br>Convection Oven<br>Microwave Oven<br>Three Cabin Monitors<br>Panasonic DVD Player<br>Sony VCR<br>10 Disc CD Player<br><br>OTHER OPTIONS:<br><br>Fairchild A-100 CVR<br>RVSM Approved |

| Seller's Initials _____   Date _____ | Purchaser's Initials _____ Date 1·12·14 |
|---|---|

RCONS0262

Provisions for FDR
8.33 Spacing
FM Immunity
Gulfstream Camp

**Exterior:**
Overall White w/ Black Main Stripes

**Interior:**
12 Passenger Ten Individual Chairs, Three Place Divan, Chairs Beige Leather, Divan Beige and Tan Fabrics, Carpet Brown Sculptured. Headliner in Sand Ultra, Cabinetry and Wood Trim in Dark Burl.

**Inspection Status:**
On Factory Recommended Maintenance, Camp Maintenance Records.

Fresh 12, 24, & 72 Mo. and 5000 Cycle Inspections and Fresh Landing Gear O.H.

Seller's Initials _____   Date _____

Purchaser's Initials ____   Date _____

RCONS0263

APPENDIX 2

## DELIVERY RECEIPT

Pursuant to the Aircraft Purchase Agreement ("Agreement") dated the 1st of __December__, 2014 between R Consulting & Sales, Inc. (hereinafter "Seller") and Jose Luis Sanchez (hereinafter "Purchaser"), Purchaser hereby acknowledges

delivery on this FIRST day of December , 2014, of the following Aircraft:

| | |
|---|---|
| Year/Model: | 1983 Gulfstream III |
| Serial Number: | 388 |
| Registration #: | N388LR |

Aircraft Total Time:_____

Total Engine Hours-Left: _____

Total Engine Hours-Right:  _____

Delivery of the Gulfstream III has been made to Purchaser at:

(Facility), _____

_____

(City and State) _____
complete with all logbooks and equipment (as outlined on the Schedule A to the Agreement), as well as all spare or loose equipment associated with the Aircraft.

Purchaser has visually examined the Aircraft and completed a Pre-purchase Inspection as defined in the Terms and Conditions to the Aircraft Purchase Agreement, and hereby accepts delivery of the Aircraft under terms and conditions of the above referenced Agreement. As of this date, Purchaser further accepts the Aircraft "As Is, Where Is," with all faults.

Agreed and Accepted By Purchaser:

Signed By:_____
Name: _____
Title: _____

| Seller's Initials _____    Date _____ | Purchaser's Initials _____ Date _____ |
|---|---|

RCONS0264

APPENDIX 3

**B FORM
APPROVED**
OMB NO. 2120-0042

## UNITED STATES OF AMERICA

U. S. DEPARTMENT OF TRANSPORTATION FEDERAL AVIATION ADMINISTRATION

*AIRCRAFT BILL OF SALE*

FOR AND IN CONSIDERATION OF $ 1.00 + o.v.c. THE UNDERSIGNED OWNER(S) OF THE FULL LEGAL AND BENEFICIAL TITLE OF THE AIRCRAFT DESCRIBED AS FOLLOWS:

UNITED STATES
REGISTRATION NUMBER          N388LR

AIRCRAFT MANUFACTURER & MODEL
Gulfstream III

AIRCRAFT SERIAL No.
388

DOES THIS _____ DAY OF __DECEMBER  2014__, HEREBY SELL, GRANT, TRANSFER AND DELIVER ALL RIGHTS, TITLE, AND INTERESTS IN AND TO SUCH AIRCRAFT UNTO:

Do Not Write In This Block
FOR FAA USE ONLY

| PUR CHA SER | NAME AND ADDRESS (IF INDIVIDUAL (S), GIVE LAST NAME, FIRST NAME, AND MIDDLE INITIAL.) Sanchez, Jose L |
|---|---|
| | DEALER CERTIFICATE NUMBER |

AND TO _____ EXECUTORS, ADMINISTRATORS, AND ASSIGNS TO HAVE AND TO HOLD SINGULARLY THE SAID AIRCRAFT FOREVER, AND WARRANTS THE TITLE THEREOF.

IN TESTIMONY WHEREOF ___ HAVE SET _____ HAND AND SEAL THIS ____ DAY OF _____, 2014.

| SEL LER | NAME (S) OF SELLER (TYPED OR PRINTED) | SIGNATURE (S) (IN INK) (IF EXECUTED FOR CO-OWNERSHIP, ALL MUST SIGN.) | TITLE (TYPED OR PRINTED) |
|---|---|---|---|
| | R Consulting & Sales, Inc. | | |
| | | | |

ACKNOWLEDGEMENT (NOT REQUIRED FOR PURPOSES OF FAA RECORDING: HOWEVER, MAY BE REQUIRED BY LOCAL LAW FOR VALIDITY OF THE INSTRUMENT.)

**ORIGINAL TO FAA**

AC Form 8050-2 (9/92) (NSN 0052-00-629-0003) Supersedes Previous Edition

| Seller's Initials _____  Date _____ | Purchaser's Initials _|_  Date |-12-14 |
|---|---|

RCONS0265

**WARRANTY BILL OF SALE**

| APPENDIX 4 |
|---|

(hereinafter "Seller"), in consideration of the sum of one dollar ($1.00) plus other good and valuable consideration paid by (hereinafter "Purchaser"), receipt of which is hereby acknowledged, pursuant and subject to an Aircraft Purchase Agreement between Seller and Purchaser, dated December 1st, 2014, (the "Agreement"), hereby sells, grants, assigns, transfers and delivers to Purchaser, its successors and assigns, all right, title and interest in and to the Aircraft described as: 1) 1983 Gulfstream III, bearing FAA Registration N388LR and manufacturer's serial number 388; 2) two (2) engines, respectively bearing manufacturer's serial numbers 3) all Aircraft records; and 4) other equipment of whatever nature installed on the Aircraft as set forth in the Agreement and as may be more fully set forth in Appendix 1 thereof, those items set forth or as provided in 1), 2) and 3) above being hereinafter collectively referred to as "Aircraft."

Seller hereby represents and warrants to, and agrees with, Purchaser, its successors and assigns, that (1) Seller is the lawful owner of the Aircraft and, Seller is hereby transferring and conveying to Purchaser full legal and beneficial title to the Aircraft and that Purchaser will acquire by the terms of this Warranty Bill of Sale and the FAA Bill of Sale (Form 8050-2) good and valid title to the Aircraft and that the Aircraft is free and clear of all mortgages, leases, security interests, claims, charges, liens and encumbrances of any kind whatsoever; (2) Seller has the right to sell the Aircraft as aforesaid; and (3) Seller shall warrant and defend title to the Aircraft against the claims of any person, party, firm, corporation or entity of any kind whatsoever which may have accrued, existed or attached thereto or arisen prior to transfer of title by Seller to Purchaser.

DISCLAIMER: BUYER UNDERSTANDS THAT THE AIRCRAFT IS BEING PURCHASED IN AN "AS IS, WHERE IS" CONDITION EXCEPT AS PROVIDED ABOVE TO THE CONTRARY. UNLESS OTHERWISE PROHIBITED BY LAW AND THIS AGREEMENT, BUYER AGREES THAT THE WARRANTIES OF SELLER SET FORTH IN THE FOLLOWING PARAGRAPH ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES OF SELLER, WHETHER WRITTEN, ORAL OR IMPLIED, OTHER THAN THE EXPRESS WARRANTIES OF TITLE SET FORTH IN THE WARRANTY BILL OF SALE. BUYER ACKNOWLEDGES AND AGREES THAT SELLER SHALL NOT, BY VIRTUE OF HAVING OWNED AND SOLD THE AIRCRAFT OR OTHERWISE, BE DEEMED TO HAVE MADE ANY REPRESENTATIONS OR WARRANTY AS TO THE MERCHANTABILITY, FITNESS, DESIGN OR CONDITION OF, OR AS TO THE QUALITY OF THE MATERIAL OR WORKMANSHIP IN, THE AIRCRAFT, OR TO HAVE MADE ANY OTHER REPRESENTATIONS OR WARRANTIES. SELLER DISCLAIMS AND BUYER WAIVES ALL WARRANTIES AND LIABILITIES, EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE (INCLUDING STRICT LIABILITY IN TORT), WITH RESPECT TO THE MERCHANTABILITY, FITNESS, DESIGN OR CONDITION OF, OR AS TO THE QUALITY OF THE MATERIAL OR WORKMANSHIP IN, THE AIRCRAFT.

Seller's other warranties and representations, including disclaimers and limitations, with respect to the Aircraft are as set forth in the Agreement.

Seller agrees and acknowledges that the terms and conditions of this Warranty Bill of Sale, including without limitation, all representations, warranties and agreements for the benefit of Purchaser, shall survive the delivery of the Aircraft and the delivery, execution and recording of the FAA Bill of Sale.

In witness whereof, Seller has caused this Warranty Bill of Sale to be signed by its duly authorized officer this <u>First</u> day of <u>December 2014</u> .

Seller:

By:_____
Name:
Title:

| Seller's Initials _____   Date _____ | | Purchaser's Initials ___   Date 11.14 |
|---|---|---|

RCONS0266

Exhibit 15, page 26

APPENDIX 5

### AIRWORTHINESS DISCREPANCIES

| Seller's Initials _____   Date _____ |

| Purchaser's Initials _11_ Date _1.12_ M |

RCONS0267

Exhibit 15, page 27



**METSCH | MASON**

METSCH & MASON, LLP
Emerald Plaza
402 W. Broadway, Suite 2700
San Diego, California 92101
www.metschmason.com

Paul S. Metsch
Direct Dial: 619-230-1642
Direct Fax: 619-230-1639
pmetsch@metschlaw.com

May 28, 2015

<u>**VIA FEDEX AND EMAIL**</u>
(pgu@arm.aero)

Pablo Gonzalez Ulloa
Indiana 141 Napoles
Mexico, D.F, 03810

Re:     1983 Gulfstream III Aircraft S/N G-1159A-388 ("Aircraft")

Dear Mr. Ulloa:

We represent R Consulting & Sales, Inc. ("R Consulting").   I write with reference to the
December 1, 2014 Aircraft Purchase Agreement ("Purchase Agreement") between R Consulting
and Jose Luis Sanchez, in which you acted as R Consulting's agent, and the September 4, 2014
Aircraft Dry Lease between R Consulting, on the one hand, and Aviarrendamientos S.A. de C.V.
and you, on the other hand ("Lease"). I enclose copies of the Purchase Agreement and Lease for
your reference. We hereby demand that you remit payment of the $1 million (U.S. dollars) due
to R Consulting under the Purchase Agreement by no later than <u>**Friday, June 5, 2015**</u>.

Based on the information and documentation in our possession, we can conclusively establish
that Sanchez paid to you the sum of $1 million due under the Purchase Agreement and that you
then delivered the Aircraft to Mr. Sanchez, yet you failed to remit the $1 million to R Consulting,
as required under the Purchase Agreement. In addition, as a result of your failure to remit the
payment, the Lease terms remain in effect and the monthly rental rate of $73,000 continues to
accrue, along with interest on the accrued rent at the rate of 10%.

These facts give rise to causes of action against you for breach of contract, fraud and breach of
your fiduciary duty to R Consulting, as its agent in connection with the sale of the Aircraft under
the Purchase Agreement.   Your wrongful actions expose you and your company to both
compensatory and punitive damages. We have already prepared a Complaint based upon these
facts and are prepared to file it immediately.

If R Consulting does not receive payment of $1 million (U.S. dollars) from you by <u>**Friday, June
5, 2015**</u>, we will have no option but to file the lawsuit and seek all compensatory damages due to
R Consulting, to include all past-due sums under the Lease, as well as punitive damages under
the fraud claim. The total amount due under the Complaint is well in excess of the $1 million
due under the Purchase Agreement.

55431-006

RCONS0268

Pablo Gonzalez Ulloa
May 28, 2015
Page 2

R Consulting reserves all rights.

Sincerely,

Paul S. Metsch
METSCH & MASON, LLP
PSM/ad
Enclosures
cc:  client

RCONS0269

Exhibit 15, page 29

## AIRCRAFT PURCHASE AGREEMENT

THIS AIRCRAFT PURCHASE AGREEMENT (THIS "AGREEMENT") IS MADE THIS 1st DAY OF DECEMBER, 2014 BY AND BETWEEN R CONSULTING & SALES, INC., 318 N CARSON St., SUITE 208, CARSON CITY, NV 89701.  E-MAIL: skywonders@aol.com, PHONE: (760) 809-45-66 ("SELLER") AND  JOSE LUIS SANCHEZ                            , E-MAIL: joseluissanchez188@yahoo.com , PHONE: (___) _____ ("PURCHASER") AND WITNESSETH:

WHEREAS, SELLER AND PURCHASER PREVIOUSLY EXECUTED A LETTER OF INTENT (THE "LETTER OF INTENT TO PURCHASE") THE GULFSTREAM III AIRCRAFT DESCRIBED BELOW (THE "AIRCRAFT") EXECUTED DECEMBER 1, 2014 PROVIDING FOR, AMONG OTHER THINGS, A PRE-PURCHASE INSPECTION OF THE AIRCRAFT AND RECORDS;

WHEREAS, PURSUANT TO THE OFFER TO PURCHASE, THE AIRCRAFT HAS BEEN DELIVERED BY SELLER TO A FACILITY DESIGNATED BY PURCHASER FOR ACCOMPLISHMENT OF THE PRE-PURCHASE INSPECTION; AND

WHEREAS, THE LETTER OF INTENT CONTEMPLATES THE EXECUTION OF AN AIRCRAFT PURCHASE AGREEMENT AND THE PARTIES INTEND THIS AGREEMENT TO FULFILL THAT CONTEMPLATION.

NOW THEREFORE, SELLER AND PURCHASER HEREBY AGREE AS FOLLOWS:

1.   **Agreement to Purchase**:  Seller agrees to sell and purchaser agrees to purchase the aircraft specified below subject to the terms and conditions set forth below and attached herein (and by this reference made a part hereof).

| YEAR | MODEL | FAA NUMBER | AIRCRAFT SERIAL NUMBER | ENGINES |
|------|-------|-----------|-----------------------|---------|
| 1983 | Gulfstream III | N388LR | 388 | Rolls Royce Spey Mk 511SR |

**Specifications:**
Seller represents that the Aircraft has the specifications set forth in Appendix 1 hereto.

| | | |
|---|---|---|
| TOTAL SELLING PRICE | $1,000,000 | 00 |
| TOTAL SALE | $1,000,000 | 00 |

| | | |
|---|---|---|
| TOTAL CREDIT TO SALE | | 00 |
| CASH DUE | $1,000,000 | 00 |

2.   **Payment:**  The Aircraft will be sold for cash, payable on the date of Closing (as hereinafter defined) and by delivery of lawful money of the United States of America by wire transfer to  R Consulting & Sales  Inc.

3.   **Pre-Purchase Inspection** Buyer has executed and is satisfied with his own pre-purchase inspection.

4.   **Failure to Close or Accept Delivery:** Purchaser accepts and takes delivery of aircraft upon execution of this purchase agreement.

5.   **Force Majeure:**  Seller shall not be liable for labor difficulties, machinery breakdowns, inability to obtain shipping space or transportation, delays of carriers or suppliers, fires, floods, acts of God, or other outbreak of hostilities, mobilization, civil commotion, riots, embargoes, and domestic or foreign governmental regulations or orders (each a "Force Majeure Event") or should the Aircraft be destroyed or damaged beyond repair before or after Closing.

6.   **Closing.**  The closing (the "Closing") on the Aircraft will take place on or before three (3) business days after the Airworthiness Discrepancies are completed.

| Seller's Initials _____  Date _____ | Purchaser's Initials _____ Date 12-__ |
|---|---|

RCONS0270

Exhibit 15, page 30

7.  Closing, Title and Delivery:  On or prior to the Closing Date, Purchaser shall (i) wire the remaining portion of the Purchase Price to the Escrow Agent, together with amounts sufficient to pay all taxes pursuant to Paragraph 10 hereof, the filing fees to file for the Registration (as hereinafter defined) and the FAA Bill of Sale (as hereinafter defined) with the FAA, and the Delivery Costs (as hereinafter defined), (ii) deliver to the Escrow Agent an original completed and executed application for registration of the Aircraft with the FAA (the "Registration"), and (iii) deliver to Escrow Agent an executed escrow agreement authorizing the release of the Purchase Price and filing of the Registration and FAA Bill of Sale upon satisfaction of the terms of this Paragraph 9.  On or prior to the Closing Date, Seller shall (i) deliver to the Escrow Agent two (2) original executed Federal Aviation Administration Bill of Sale Form 8050-2 in the form attached hereto as Appendix 3 (the "FAA Bill of Sale"), (ii) deliver to Escrow Agent an original executed Warranty Bill of Sale to the Aircraft in the form attached hereto as Appendix 4, and (iii) deliver to Escrow Agent an executed escrow agreement authorizing the release of the Purchase Price and filing of the Registration and the FAA Bill of Sale upon satisfaction of the terms of this Paragraph 9.  The Aircraft shall be delivered for closing in or at Purchaser's expense to some other mutually agreeable location within the continental United States (the "Delivery Location"), which shall not give rise to adverse tax consequences for the parties.  Purchaser shall pay Seller's reasonable out-of-pocket cost for fuel, pilot travel and the pilot's daily rate if other than Seller's own pilots (not to exceed $500.00 per pilot) to ferry the Aircraft from  to the Delivery Location (collectively, the "Delivery Costs").  On the date of Closing, the parties shall close on this transaction once it has been verified by the Escrow Agent that (i) Escrow Agent has received all deliveries required by the Purchaser, (ii) Escrow Agent has received all deliveries required by the Seller, (iii) the Aircraft is in position at the Delivery Location, and (iv) Purchaser has accepted delivery of the Aircraft by executing and delivering to Seller the Delivery Receipt in a form substantially the same as Appendix 2 attached hereto and incorporated herein.  At the time of Closing the Escrow Agent shall simultaneously:  i) release to Seller the Purchase Price less any broker commissions to be paid by Seller, any loan payoff and the escrow fees due to Escrow Agent; ii) release the Delivery Costs to Seller; (iii) file the Registration and the FAA Bill of Sale with the FAA, and (iv) release the Warranty Bill of Sale to Purchaser.

Title to the Aircraft free and clear of all liens and encumbrances and risk to the Aircraft shall pass to Purchaser on the date of Closing.  Seller will maintain full insurance coverage on the Aircraft until the risk of loss passes to Purchaser at Closing.

8.  Taxes:  Purchaser agrees to pay and to indemnify Seller for all sales and use taxes or assessments which may be imposed by any governmental authority upon this sales transaction or the use of the Aircraft by Purchaser, and any such taxes or assessments which Seller will be obligated under law to collect from Purchaser. Except as provided herein, Seller agrees to pay and to indemnify Purchaser for all taxes, fees or duties and expenses, as well as any penalties, interest and attorney's fees, imposed by any jurisdiction or governmental authority as a result of the ownership, location or usage of the Aircraft prior to the Closing Date/Delivery Time and all taxes on profits, gross receipts or income of Seller applicable to or arising out of the transactions contemplated by this Agreement.  Prior to the payment of any assessment for which Purchaser or Seller desires to seek indemnification from the other party hereunder, the party desiring indemnification shall provide the other party with five (5) business days prior written notice of the same.   The indemnified party shall allow the indemnifying party to dispute any such assessment and shall cooperate reasonably in regard thereto.

9.  DISCLAIMER:  BUYER UNDERSTANDS THAT THE AIRCRAFT IS BEING PURCHASED IN AN "AS IS, WHERE IS" CONDITION EXCEPT AS PROVIDED ABOVE TO THE CONTRARY. UNLESS OTHERWISE PROHIBITED BY LAW AND THIS AGREEMENT, BUYER AGREES THAT THE WARRANTIES OF SELLER SET FORTH IN THE FOLLOWING PARAGRAPH ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES OF SELLER, WHETHER WRITTEN, ORAL OR IMPLIED, OTHER THAN THE EXPRESS WARRANTIES OF TITLE SET FORTH IN THE WARRANTY BILL OF SALE.  BUYER ACKNOWLEDGES AND AGREES THAT SELLER SHALL NOT, BY VIRTUE OF HAVING OWNED AND SOLD THE AIRCRAFT OR OTHERWISE, BE DEEMED TO HAVE MADE ANY REPRESENTATIONS OR WARRANTY AS TO THE MERCHANTABILITY, FITNESS, DESIGN OR CONDITION OF, OR AS TO THE QUALITY OF THE MATERIAL OR WORKMANSHIP IN, THE AIRCRAFT, OR TO HAVE MADE ANY OTHER REPRESENTATIONS OR WARRANTIES.   SELLER DISCLAIMS AND BUYER WAIVES ALL WARRANTIES AND LIABILITIES, EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE (INCLUDING STRICT LIABILITY IN TORT), WITH RESPECT TO THE MERCHANTABILITY, FITNESS, DESIGN OR CONDITION OF, OR AS TO THE QUALITY OF THE MATERIAL OR WORKMANSHIP IN, THE AIRCRAFT.

10.  WARRANTY:  Seller warrants that all representations and warranties in this Agreement are true and correct in all material respects as of the contract acceptance date on the front page of this Agreement and will be true and correct as of the date of Closing.  Seller warrants that, at closing, it will have good, marketable title and possession

| Seller's Initials _____ Date _____ | Purchaser's Initials _J_ Date 1-2-17 |

of the Aircraft, including the engines, free and clear of all liens, claims, demands and encumbrances, which title Seller will convey to Purchaser. Purchaser and Seller warrant that each has the authority to enter into this transaction under its articles of incorporation and the applicable law of the state of its incorporation.

11. **Assignments of Programs and Warranties:** Seller hereby assigns to Purchaser (to the extent assignable), as of the date of Closing, all of the rights, warranties, representations, covenants, and indemnities made to Seller by or which Seller is entitled to enforce against any predecessor in title to the Aircraft or from the Aircraft manufacturer, if any. Seller agrees to assist Purchaser, at Purchaser's sole cost and expense, in enforcing or arranging for the enforcement by appropriate parties for Purchaser's benefit, at Purchaser's sole cost and expense, all such rights, warranties, representations, covenants and indemnities, including transfer to Purchaser at Closing of any other third party service or maintenance agreements. However, Purchaser shall pay any costs related to the transfer of such warranties and programs.

12. **Acceptance Flight:** Shall not exceed two (2) hours with Sellers Pilot in Command as captain during the flight and the Purchaser may provide a qualified co-pilot for such Acceptance Flight. The Acceptance Flight may be combined with the ferry flight to transport the Aircraft to the location of the final Delivery.

13. **Applicable Law:** This Agreement shall be construed and interpreted under the laws of the State of California in the County encompassing the City of San Diego.

14. **Enforceability:** In the event any provision of this Agreement is prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without affecting the remaining provisions of this Agreement which shall continue in full force and effect.

15. **Survival:** The covenants, agreements, representations and warranties by Seller shall survive the Closing of this transaction.

16. **Cooperation:** Each party shall execute and deliver all such documents as may reasonably be requested in order to implement the intent and purposes of this Agreement, and shall cooperate reasonably in carrying out the Closing.

17. **Broker's Commissions:** Seller shall be responsible for payment of a commission due to its broker, if any. Purchaser has not engaged any broker. Seller does hereby agree to indemnify and defend Purchaser and hold Purchaser harmless from any and all commissions, claims to such commissions or similar fees, including attorneys' fees incurred in any lawsuit regarding such commission or fees to Broker, or any other broker to the extent such claims or liabilities are by any broker claiming by, through or under Seller and are based upon the actions of Seller. Purchaser does hereby agree to indemnify Seller and hold Seller harmless from any and all commissions, claims to such commissions or similar fees, including attorneys' fees incurred in any lawsuit regarding such commission or fees, to the extent such claims or liabilities are by any broker claiming by, through or under Purchaser and are based upon the actions of Purchaser.

18. **Non-Disclosure:** The material terms and conditions set forth in this Agreement may not be disclosed in any fashion, either in whole or in part, to any third party (excluding governmental authorities and the disclosing party's legal counsel, financial institution, accountants and other relevant personnel with a need to know) unless in connection with enforcement of the terms hereof or unless the party desiring to make such disclosure first obtains the express written approval of the other party.

19. **Litigation Expenses:** If litigation is instituted to enforce this Agreement, the prevailing party shall be awarded its reasonable attorney's fees incurred and all reasonable litigation costs, including depositions, expert witness fees, photographic expense, witness travel and lodging expense and all court costs.

20. **Agreement Assignment:** Neither party may assign its rights, interests or obligations under this Agreement without the prior written consent of the other party.

21. **International Registry:** Purchaser and Seller agree to timely register, and to cause their lenders and/or lessees, if any, to timely register, as users of the International Registry established pursuant to the Cape Town Convention on International Interests in Mobile Equipment and the Protocol to the Convention on International Interests in Mobile Equipment on Matters Specific to Aircraft Equipment (collectively the "Cape Town Treaty") and to make, or cause to be made all filings and consents to filings required to perfect Purchaser's ownership interest, and the lien hold interest of Purchaser's lender, in the Aircraft pursuant to the Cape Town Treaty, concurrent with the Closing.

| Seller's Initials _____   Date _____ | Purchaser's Initials _____   Date 1/25/18 |
| --- | --- |

RCONS0272

21. International Registry:  Purchaser and Seller agree to timely register, and to cause their lenders and/or lessees, if any, to timely register, as users of the International Registry established pursuant to the Cape Town Convention on International Interests in Mobile Equipment and the Protocol to the Convention on International Interests in Mobile Equipment on Matters Specific to Aircraft Equipment (collectively the "Cape Town Treaty") and to make, or cause to be made all filings and consents to filings required to perfect Purchaser's ownership interest, and the lien hold interest of Purchaser's lender, in the Aircraft pursuant to the Cape Town Treaty, concurrent with the Closing. Purchaser shall pay for all costs associated with registering Purchaser's and Purchaser's lender's International Interests, including but not limited to registering Purchaser and Purchaser's lender as a Transacting User Entity, filing fees for filing Purchaser's and Purchaser's lenders International Interests in the airframe and engines, and fees associated with searching the International Registry prior to and after registration of Purchaser's and Purchaser's lender's International Interests.  Seller shall be required to pay its own costs related to registering Seller as a Transacting User Entity on the International Registry.

23. Counterparts:  This Agreement may be executed in counterparts, each when read together constituting a binding agreement on the parties.  E-mailed signatures will have the full force and effect of original signatures.

24. Entire Agreement:  This Agreement constitutes the entire agreement of the parties hereto with respect to the purchase and sale of the Aircraft, all prior representations and understandings having been merged herein.  This Agreement may not be modified or terminated orally.  No claimed modification, termination or waiver or any of the provisions of this Agreement shall be valid unless in writing signed by the party to be bound thereby.  The terms and conditions hereof supersede and cancel any terms contained in any other documents.  This Agreement becomes a binding contract when it is signed by both parties hereto.

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be duly executed by their authorized officers as of the date and year first above mentioned.

SELLER: R Consulting & Sales, Inc.                  PURCHASER

By: _____                        By: _____
Name: Raquel Michel      Title: President           Name:  Jose Luis Sanchez      Title: Individual
Address: ___318 N Carson St, Suite 208___           Address: 1150 Lee Wagener Blvd, Suite 203
City/State/Zip:  Carson City, Nevada 89701___       City/State/   Fort Lauderdale, Florida 33315___
Phone:  (760) 809 4566_____                   Phone: _____

APPENDIX 1

## SPECIFICATIONS

**General Information**

_____ Landings, _____ since mid-life, No Damage, Good P&I, Factory Maintenance Program, CMP

**Detailed Description**

Max Ramp: 70,200 Lbs
Max Take-off: 69,700 Lbs

Engine Specs:
ROLLS ROYCE SPEY MKC 511-8

APU-Allied Signal GTCP 36-100 G-APU
s/n 440C

Avionics/Radios:
Sperry SPZ 800 Auto-Pilot
HNYWL Primus 880 Radar
Dual Collins FD-109 F.D.
Allied Signal TCS II W/CH7
Dual Collins VHF 220 Comms
Universal UNSIK FMS
Dual Collins VIR 30 NAVS
Universal UNS 1K GPS
Dual Collins ADF-60 ADF
Dual Litton 92 INS
Dual Collins DME-42 DME
Collins ALT 55B Radar ALT W/VTA
Dual HNYWL RCZ852 XPNDR
Universal Class A EGPWS
Dual Collins 671 URN/SEL H.F.

Additional Equipment:
AFT Lavatorie
AFT Galley
Convection Oven
Microwave Oven
Three Cabin Monitors
Panasonic DVD Player
Sony VCR
10 Disc CD Player

OTHER OPTIONS:

Fairchild A-100 CVR
RVSM Approved

Seller's Initials ____ Date _____          Purchaser's Initials __ Date 1·13·14

RCONS0274

Exhibit 15, page 34

Provisions for FDR
8.33 Spacing
FM Immunity
Gulfstream Camp

**Exterior:**
Overall White w/ Black Main Stripes

**Interior:**
12 Passenger Ten Individual Chairs, Three Place Divan, Chairs Beige Leather, Divan Beige and Tan Fabrics, Carpet Brown Sculptured. Headliner in Sand Ultra, Cabinetry and Wood Trim in Dark Burl.

**Inspection Status:**
On Factory Recommended Maintenance. Camp Maintenance Records.

Fresh 12, 24, & 72 Mo. and 5000 Cycle Inspections and Fresh Landing Gear O.H.

Seller's Initials _____  Date _____

Purchaser's Initials _____  Date _____

RCONS0275

Exhibit 15, page 35

APPENDIX 2

### DELIVERY RECEIPT

Pursuant to the Aircraft Purchase Agreement ("Agreement") dated the 1st of  December  , 2014 between R Consulting & Sales, Inc. (hereinafter "Seller") and Jose Luis Sanchez (hereinafter "Purchaser"), Purchaser hereby acknowledges

delivery on this FIRST day of December  , 2014, of the following Aircraft:

| | |
|---|---|
| Year/Model: | 1983 Gulfstream III |
| Serial Number: | 388 |
| Registration #: | N388LR |

Aircraft Total Time:_____

Total Engine Hours-Left: _____

Total Engine Hours-Right: _____

Delivery of the Gulfstream III has been made to Purchaser at:

(Facility), _____

_____

(City and State) _____
complete with all logbooks and equipment (as outlined on the Schedule A to the Agreement), as well as all spare or loose equipment associated with the Aircraft.

Purchaser has visually examined the Aircraft and completed a Pre-purchase Inspection as defined in the Terms and Conditions to the Aircraft Purchase Agreement, and hereby accepts delivery of the Aircraft under terms and conditions of the above referenced Agreement.  As of this date, Purchaser further accepts the Aircraft "As Is, Where Is," with all faults.

Agreed and Accepted By Purchaser:

Signed By:_____
Name: _____
Title: _____

| | |
|---|---|
| Seller's Initials _____ Date _____ | Purchaser's Initials _____ Date _____ |

RCONS0276

Exhibit 15, page 36

APPENDIX 3

B FORM
APPROVED
OMB NO. 2120-0042

## UNITED STATES OF AMERICA

U. S. DEPARTMENT OF TRANSPORTATION FEDERAL AVIATION ADMINISTRATION

*AIRCRAFT BILL OF SALE*

FOR AND IN CONSIDERATION OF $ 1.00 + o.v.c.  THE UNDERSIGNED
OWNER(S) OF THE FULL LEGAL AND BENEFICIAL TITLE OF THE AIRCRAFT
DESCRIBED AS FOLLOWS:

UNITED STATES
REGISTRATION NUMBER        N388LR

AIRCRAFT MANUFACTURER & MODEL

Gulfstream III

AIRCRAFT SERIAL No.

388

DOES THIS ____ DAY OF __DECEMBER  2014___ , HEREBY SELL,
GRANT, TRANSFER AND DELIVER ALL RIGHTS, TITLE, AND INTERESTS IN
AND TO SUCH AIRCRAFT UNTO:

Do Not Write In This Block
FOR FAA USE ONLY

**PUR CHA SER**

NAME AND ADDRESS
(IF INDIVIDUAL (S), GIVE LAST NAME, FIRST NAME, AND MIDDLE INITIAL.)

Sanchez, Jose L

DEALER CERTIFICATE
NUMBER

AND TO _____ EXECUTORS, ADMINISTRATORS, AND ASSIGNS TO HAVE AND TO HOLD
SINGULARLY THE SAID AIRCRAFT FOREVER, AND WARRANTS THE TITLE THEREOF.

IN TESTIMONY WHEREOF ___ HAVE SET ____ HAND AND SEAL THIS ____ DAY OF _____ , 2014.

| | NAME (S) OF SELLER (TYPED OR PRINTED) | SIGNATURE (S) (IN INK) (IF EXECUTED FOR CO-OWNERSHIP, ALL MUST SIGN.) | TITLE (TYPED OR PRINTED) |
|---|---|---|---|
| **SEL LER** | R Consulting & Sales, Inc. | | |
| | | | |
| | | | |

ACKNOWLEDGEMENT (NOT REQUIRED FOR PURPOSES OF FAA RECORDING: HOWEVER, MAY BE REQUIRED
BY LOCAL LAW FOR VALIDITY OF THE INSTRUMENT.)

**ORIGINAL TO FAA**

AC Form 8050-2 (9/92) (NSN 0052-00-629-0003) Supersedes Previous Edition

Seller's Initials _____  Date _____

Purchaser's Initials ___  Date 12-14

RCONS0277

Exhibit 15, page 37

| APPENDIX 4 | WARRANTY BILL OF SALE |
|---|---|

       (hereinafter "Seller"), in consideration of the sum of one dollar ($1.00) plus other good and valuable consideration paid by (hereinafter "Purchaser"), receipt of which is hereby acknowledged, pursuant and subject to an Aircraft Purchase Agreement between Seller and Purchaser, dated December 1st, 2014, (the "Agreement"), hereby sells, grants, assigns, transfers and delivers to Purchaser, its successors and assigns, all right, title and interest in and to the Aircraft described as: 1) 1983 Gulfstream III, bearing FAA Registration N388LR and manufacturer's serial number 388; 2) two (2) engines, respectively bearing manufacturer's serial numbers  3) all Aircraft records, and 4) other equipment of whatever nature installed on the Aircraft as set forth in the Agreement and as may be more fully set forth in Appendix 1 thereof, those items set forth or as provided in 1), 2) and 3) above being hereinafter collectively referred to as "Aircraft."

       Seller hereby represents and warrants to, and agrees with, Purchaser, its successors and assigns, that (1) Seller is the lawful owner of the Aircraft and, Seller is hereby transferring and conveying to Purchaser full legal and beneficial title to the Aircraft and that Purchaser will acquire by the terms of this Warranty Bill of Sale and the FAA Bill of Sale (Form 8050-2) good and valid title to the Aircraft and that the Aircraft  is free and clear of all mortgages, leases, security interests, claims, charges, liens and encumbrances of any kind whatsoever; (2) Seller has the right to sell the Aircraft  as aforesaid; and (3) Seller shall warrant and defend title to the Aircraft against the claims of any person, party, firm, corporation or entity of any kind whatsoever which may have accrued, existed or attached thereto or arisen prior to transfer of title by Seller to Purchaser.

DISCLAIMER: BUYER UNDERSTANDS THAT THE AIRCRAFT IS BEING PURCHASED IN AN "AS IS, WHERE IS" CONDITION EXCEPT AS PROVIDED ABOVE TO THE CONTRARY. UNLESS OTHERWISE PROHIBITED BY LAW AND THIS AGREEMENT, BUYER AGREES THAT THE WARRANTIES OF SELLER SET FORTH IN THE FOLLOWING PARAGRAPH ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES OF SELLER, WHETHER WRITTEN, ORAL OR IMPLIED, OTHER THAN THE EXPRESS WARRANTIES OF TITLE SET FORTH IN THE WARRANTY BILL OF SALE.  BUYER ACKNOWLEDGES AND AGREES THAT SELLER SHALL NOT, BY VIRTUE OF HAVING OWNED AND SOLD THE AIRCRAFT OR OTHERWISE, BE DEEMED TO HAVE MADE ANY REPRESENTATIONS OR WARRANTY AS TO THE MERCHANTABILITY, FITNESS, DESIGN OR CONDITION OF, OR AS TO THE QUALITY OF THE MATERIAL OR WORKMANSHIP IN, THE AIRCRAFT, OR TO HAVE MADE ANY OTHER REPRESENTATIONS OR WARRANTIES.   SELLER DISCLAIMS AND BUYER WAIVES ALL WARRANTIES AND LIABILITIES. EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE (INCLUDING STRICT LIABILITY IN TORT), WITH RESPECT TO THE MERCHANTABILITY, FITNESS, DESIGN OR CONDITION OF, OR AS TO THE QUALITY OF THE MATERIAL OR WORKMANSHIP IN, THE AIRCRAFT.

       Seller's other warranties and representations, including disclaimers and limitations, with respect to the Aircraft are as set forth in the Agreement.

       Seller agrees and acknowledges that the terms and conditions of this Warranty Bill of Sale, including without limitation, all representations, warranties and agreements for the benefit of Purchaser, shall survive the delivery of the Aircraft and the delivery, execution and recording of the FAA Bill of Sale.

In witness whereof, Seller has caused this Warranty Bill of Sale to be signed by its duly authorized officer this First day of December 2014 .

Seller:

By:_____

Name:

Title:

| Seller's Initials _____ Date _____ | Purchaser's Initials _____ Date _____ |
|---|---|

RCONS0278

APPENDIX 5

<u>AIRWORTHINESS DISCREPANCIES</u>

| Seller's Initials _____ Date _____ | | Purchaser's Initials _4/_ Date _7 13 14 |

RCONS0279

## AIRCRAFT DRY LEASE

**THIS AIRCRAFT DRY LEASE** ("Lease") is made as of September 4, 2014 (the "Effective Date") by and between R Consulting and Sales Inc., a Nevada professional corporation ("Lessor") and Aviarrendamientos S.A. de C.V. and Pablo Gonzalez Ulloa ("Lessee") (collectively, the "parties," and individually a "party").

In consideration of the representations, warranties and agreements hereinafter set forth, the parties agree as follows:

1. **Aircraft.** Subject to the terms and conditions of this Lease, Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, a 1983 Gulfstream III Aircraft S/N G-1159A-388 and its affixed two engines, bearing FAA Registration Number N388LR, including its engines, avionics, instruments, accessories, and component parts, including replacement parts installed thereon (collectively, the "Aircraft"). Lessor represents and warrants to Lessee that it owns, free and clear of any claim, encumbrance, restriction, or lien, all right, title and interest to the Aircraft; that as of the Effective Date, the Aircraft has current hull insurance and liability insurance for the Aircraft issued by insurance in the limit amounts set forth below in Paragraph 10 ("Insurance Policy"); the Aircraft has a valid Federal Aviation Administration ("FAA") registration.

2. **Term.** The term of this Lease shall be for (3) months after the Effective Date subject to earlier termination by either party at any time thirty (30) days after delivery of written notice ("Notice of Termination") Payments must be current to terminate Lease to the other party to this Lease ("Termination Date"). Lessee shall not schedule use of the Aircraft so that the trip extends beyond the Termination Date without the express prior written agreement of Lessor.

3. **Security Deposit.** Upon the execution of this Lease by Lessor and Lessee, Lessee shall deliver to Lessor a non-refundable first and last month security deposit and one month security deposit of Two Hundred Nineteen Thousand Dollars (U.S. $219,000) ("Security Deposit"), which shall be held by Lessor as provided in this Lease. Lessee may pay the Security Deposit by a wire as instructed in writing by Lessor or by check payable to Lessor.

4. **Rent.** Lessee will pay Lessor as rental for the Aircraft ("Rent") Seventy Three Thousand Dollars ($ 73,000) per month of Lessee's use of the Aircraft, including for "Deadhead" legs. Lessee will pay Rent within five (5) days of the fourth of every month. Late rent will be charged at 10% of Lease Payment.

5. **Base Maintenance.** The Aircraft will be Maintained by **R Consulting & Sales, Inc.**, a California corporation ("Manager"), whose principal place of Ontario, California, or such other location as the parties may agree in writing ("Base"). Lessor and Manager have entered into a management agreement that Lessor represents and warrants to Lessee is in effect as of the Effective Date (the "Management Agreement") pursuant to which Manager has agreed to maintain the Aircraft at Lessor's approved maintenance facility; Lessor represents and warrants

**Scanned by CamScanner**
RCONS0280

to Lessee that it shall maintain the Aircraft at its sole cost during the Term and if it replaces the manager of the Aircraft during the Term, it shall promptly notify Lessee of such fact.

6.   **Return.**  Upon expiration or termination of the Term, Lessee will return the Aircraft to the Base at San Diego Brown Field.  Lessee will return the Aircraft to Lessor in the same condition as received, normal wear and tear excepted.

7.   **Operation.**  The Aircraft is to be operated under this Lease in accordance with Part 91.  When the Aircraft is operated under this Lease, Lessee will at all times be in operational control of the Aircraft and will not, except with Lessor's prior written consent, assign this Lease or sublease the Aircraft, and Lessee will be solely responsible for its possession and use.  Lessee will not use or operate the Aircraft in violation of any law, regulation or order of any governmental authority, or in violation of the Aircraft's airworthiness certificate, license or registration, or in breach of any term or condition of any insurance policy required under this Lease, or use the Aircraft in any area excluded from coverage by the terms of any insurance policy required under this Lease.  When the Aircraft is operated under this Lease, Lessee will, at all times, employ or contract (through Manager or independently) for pilots to operate the Aircraft who are duly qualified, current, and rated on the Aircraft and whose licenses are in good standing, and who meet the standards established by the Federal Aviation Administration ("FAA") and by any insurance policy required under this Lease.  Lessee will bear the cost of any fees, charges or penalties arising out of Lessee's operation of the Aircraft.  Lessor will bear all capital improvement costs for the Aircraft at lessors approved facility.

8.   **Maintenance.**  Lessor will at all times, at Lessor's own expense, either through Manager or otherwise, cause the Aircraft to be kept in a fully operational. Lessee is responsible for consumables such as oils, hydraulic fluids, oxygen, nitrogen, ect while aircraft is in there possession. Lessee shall not make alterations, modifications, additions or improvements to the Aircraft without the prior written consent of Lessor.  All alterations, modifications, additions and improvements which are made become the property of Lessor and are subject to the terms of this Lease.

9.   **Records.**  Lessee will maintain, or cause to be maintained, all Aircraft logs and records related to Lessee's use of the Aircraft under this Lease

10.   **Insurance.**  Lessor will at all times, at Lessor's own expense, cause to be maintained a policy or policies of insurance with premiums thereon fully paid in advance, issued by and binding upon a solvent insurance company, identifying Lessor as the named insured and sole loss payee under the aircraft hull, engine and property damage casualty insurance policy and naming, among others, Lessee (and its affiliates, shareholders, directors, officers, employees, and agents) and Manager as additional insureds under the general liability portion of such policy, insuring against personal injury, death, hull damage or other property damage or loss arising out of or in any manner occasioned by the act, omission or negligence of Lessor, Lessee, or Manager, or their respective affiliates, owners, shareholders, directors, officers, employees, and agents or invitees with respect to the custody, maintenance, use or operation of the Aircraft. Lessor represents and warrants to Lessee that such Insurance Policy shall afford (a) adequate

aircraft hull, engine and other property casualty insurance to satisfy Lessor in the event of the destruction of the Aircraft; (b) include a breach of warranty endorsement and a waiver of subrogation; and (c) include aircraft liability insurance with a minimum combined single legal liability limit in the amount of not less than Five Million Dollars ($5,000,000.00).  Lessor shall cause such Insurance Policy expressly to refer to, and shall provide coverage with respect to, Lessee's indemnity undertaking as set forth in Section 12 below.  Such Insurance Policy shall provide for at least thirty (30) days' notice in writing to Lessee and Lessor before any cancellation of such Insurance Policy, and an original endorsement complying with the foregoing provisions shall be delivered by Lessor to Lessee promptly after this Lease is executed as a condition of this Lease.

11.    **Loss or Damage.**  This Lease may be terminated by either party by reason of any damage to or loss of the Aircraft and no Rent shall be due for any period after the occurrence of a casualty loss of the Aircraft.

12.    **Indemnification.**  To the extent that Lessee's indemnity undertaking herein is covered by the Insurance Policy, Lessee agrees to indemnify, hold harmless and defend Lessor and its members, together with the members, managers, officers, employees, agents, successors and assigns of Lessor and of each such member of Lessor (each, an "Indemnitee"), from and against any and all liabilities, losses, (including Lessee's own loss of use), damages, penalties, sanctions, fines, causes of action, suits, claims (including, without limitation, claims involving strict or absolute liability in tort, damage, injury, death, liability and third party claims), demands, costs and expenses of every nature (collectively, "Claims"), arising directly or indirectly from or in connection with Lessee's use or operation of the Aircraft, or any default in the performance of Lessee's other obligations under this Lease, or any failure by Lessee to comply with applicable law, or any unlawful or negligent act or omission by Lessee, except to the extent any such Claims arise out of, result from or relate to the negligence, breach of contract or failure to comply with any applicable law on the part of such Indemnitee.  Lessee's obligations under this paragraph will survive termination of this Lease and will remain in effect until all indemnity payments required hereunder have been made by Lessee.

13.    **Taxes.**  Lessor shall be responsible for any State sales, use or other tax and shall pay such taxes to the appropriate taxing authority related to this Lease.  Lessor shall also be responsible for filing personal tax owed on or for the Aircraft; provided, however, that Lessee shall pay all taxes and other charges associated with Lessee's use of the Aircraft under this Lease, including, without limitation, landing fees, fuel taxes and any other charges or fees that may be assessed against a specific flight by Lessee.  In case any report or return is required to be made by Lessee with respect to any taxes, Lessee will either (after notice to Lessor) make such report or return in such manner as will show the ownership of the Aircraft in Lessor and send a copy of such report or return to Lessor, or will notify Lessor of such requirement and make such report or return in such manner as will be satisfactory to Lessor.  Lessor and Lessee agree to cooperate fully with each other in the preparation of any such report or return.

14.    **Liens.**  Lessee will not directly or indirectly create, incur, assume or permit the existence of any liens on the Aircraft related to Lessee's use or operation of the Aircraft and

Scanned by CamScanner

RCG-A00282

Lessee will promptly, at Lessee's own expense, take such action as may be necessary duly to discharge any such lien.

15.    **Inspection.**  Lessor or its designee has the right, but not the duty, to inspect the Aircraft at any reasonable time and upon reasonable notice, in flight, or wherever the Aircraft may then be located.  Upon Lessor's request, Lessee will advise Lessor of the Aircraft's location and will furnish Lessor with all logs and records in Lessee's possession regarding the Aircraft and its use, maintenance or condition.

16.    **Lessee's Default.**  Each of the following events shall constitute an "Event of Default" hereunder:

(a)    Lessee fails to make payment of Rent within five (5) days after the same becomes due; or

(b)    Lessee fails to perform or observe any covenant, condition or agreement to be performed or observed by Lessee under this Lease; or

(c)    Lessee becomes insolvent; or

(d)    Lessor believes, in good faith, that the prospect of payment or Lessee's performance under this Lease is uncertain or impaired.

17.    **Lessor's Remedies.**  Upon the occurrence of any Event of Default, Lessor may, in its sole discretion, elect:

(a)    By notice in writing, to terminate this Lease, whereupon Lessee will, without further demand, forthwith return the Aircraft to Lessor as required under Section 6, and pay all accrued and unpaid amounts due under this Lease; or

(b)    To perform or cause to be performed any obligation, covenant or agreement under this Lease.  Lessee agrees to pay all costs and expenses incurred for such performance and acknowledges that such performance shall not be deemed to cure said Event of Default; or

(c)    To initiate proceedings against Lessee for any other remedy available to Lessor whether at law or in equity.

Lessee will be liable for all costs, charges and expenses, incurred by Lessor by reason of the occurrence of any Event of Default or the exercise of Lessor's remedies hereunder.

No remedy is intended to be exclusive, but each will be cumulative and in addition to any other remedy referred to above or otherwise available at law or in equity.  The failure or delay of Lessor in exercising any rights granted under this Lease upon any occurrence of any of the contingencies set forth above shall not constitute a waiver of any such right.

dry_lease_Chiffstream_388 2014.doc

**⁴ Scanned by CamScanner**

RCONS0283

18.   **Counterparts, Electronic Notices, and Signatures.** This Lease may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and such counterparts together shall constitute only one instrument. Electronic signatures shall be binding and effective as an original. This Lease shall be effective as of the date specified on the first page hereof, notwithstanding the actual date of execution of any of the counterparts hereof. Any one of such counterparts, or any true, complete and correct copy thereof, shall be sufficient for the purpose of proving the existence and terms of this Lease, and no party shall be required to produce an original or all of such counterparts in making such proof. Notices to be given under the terms of this Lease shall be delivered in writing and may be delivered by (1) electronic communication, provided electronic mail is confirmed as received by the recipient; (2) personally; (3) by overnight courier; or (4) by certified mail, return receipt requested, postage prepaid, addressed as provided on the signature page or to such replacement address as may subsequently be provided in writing by one party to the other, and shall be deemed to have been delivered in the case of an email, on the next business day if delivered after 5 PM to the location to which it is sent or the email is received, respectively; in the case of mailing, two (2) business days after being mailed; and in the case of personal delivery, upon actual delivery or the intended recipient's refusal to accept delivery.

19.   **Entire Agreement.** The terms and conditions of this Lease constitute the entire agreement between the parties with respect to the subject-matter of this Lease and supersede all prior written and oral negotiations, representations and agreements, if any, between the parties with respect to such subject-matter, and will be binding upon them, their successors, assigns and legal representatives.

20.   **Modification of Agreement.** No change or modification or waiver of any term or condition of this Lease will be effective unless the change or modification is in writing and signed by the party to be charged.

21.   **Governing Law.** The parties acknowledge that this Lease and the enforcement thereof will be governed by and construed and enforced in all respects in accordance with the laws of the County of San Diego, State of California, without reference to its conflicts of law rules.

22.   **Right to Pay Expenses.** Lessor will have the right, but not the obligation, to pay any costs or expenses that Lessee is obligated to pay under any provision of this Agreement, and Lessee shall, promptly upon its receipt of a request therefor from Lessor, reimburse Lessor for all amounts so paid by Lessor.

23.   **Truth-In-Leasing.**

(a)   LESSOR HAS REVIEWED THE AIRCRAFT'S PRECEDING EXECUTION OF THIS LEASE.

(b)   LESSEE CERTIFIES THAT LESSEE, AND NOT LESSOR, IS RESPONSIBLE FOR OPERATIONAL CONTROL OF THE AIRCRAFT UNDER THIS LEASE. LESSEE'S ADDRESS APPEARS ON THE SIGNATURE PAGE HEREOF. LESSEE

dry_lease_Gulfstream_388 2014.doc

5

Scanned by CamScanner

ACUN00284

FURTHER CERTIFIES THAT LESSEE UNDERSTANDS LESSEE'S RESPONSIBILITY FOR COMPLIANCE WITH APPLICABLE FEDERAL AVIATION REGULATIONS.

(c)    LESSOR AND LESSEE CERTIFY THAT THE AIRCRAFT WILL BE MAINTAINED AND INSPECTED AS PROVIDED HEREIN UNDER PART 91 OF THE FEDERAL AVIATION REGULATIONS AND, AT THE MINIMUM, IN ACCORDANCE WITH THE MANUFACTURER'S RECOMMENDED INSPECTION MAINTENANCE PROGRAM FOR THE AIRCRAFT WHEN OPERATED UNDER THIS LEASE.  LESSEE FURTHER CERTIFIES THAT LESSEE UNDERSTANDS LESSEE'S RESPONSIBILITY FOR COMPLIANCE WITH PART 91 AND OTHER APPLICABLE PROVISIONS OF THE FEDERAL AVIATION REGULATIONS.

(d)    LESSEE UNDERSTANDS THAT AN EXPLANATION OF FACTORS BEARING ON OPERATIONAL CONTROL AND PERTINENT FEDERAL AVIATION REGULATIONS CAN BE OBTAINED FROM THE NEAREST FAA FLIGHT STANDARDS DISTRICT OFFICE.

*[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]*

Scanned by CamScanner
RC001-00285

(e)   THE PARTIES HEREBY CERTIFY THAT A COPY OF THIS LEASE WILL BE CARRIED ON THE AIRCRAFT AT ALL TIMES, AND WILL BE MADE AVAILABLE FOR INSPECTION ON REQUEST BY AN APPROPRIATELY CONSTITUTED AND IDENTIFIED REPRESENTATIVE OF THE FAA.

IN WITNESS WHEREOF, the parties hereto have each caused this Lease to be duly executed effective as of the Effective Date.

**LESSOR:**                                                    **LESSEE:**

**R Consulting and Sales, Inc.,**              Aviarrendamientos S.A. de C.V..,
a Nevada professional corporation          Pablo Gonzalez Ulloa
                                                              An individual


By _____          By _____

Name: _____          Name: PABLO GONZALEZ-ULLOA
Title: _____          Title: PRESIDENT


Mailing Address:                               Mailing Address:
R Consulting and Sales, Inc.                 Pablo Gonzalez Ulloa.
318 N Carson st STE 208                      Address
Carson City, NV 89701                        Indiana 141 Napoles
                                                              Mexico, DF. 03810

Email: skywonders@aol.com                Email: pgu@arm.aero


**Scanned by CamScanner** 00000286

Exhibit 15, page 46

# EXHIBIT 16



# San Diego County Sheriff's Department
## Crime/Incident Report

| | | | |
|---|---|---|---|
| CAD Event No.: | **E3003758** | Case No. | **15163154** |
| Primary Victim: | **[E] R Consulting & Sales Inc.** | Report No. | **15163154.1** |

**1**
Page 1 of 6

## GENERAL CASE INFORMATION

| Primary Charge: | **990000 - ZZ - COURTESY REPORTS** | | |
|---|---|---|---|
| Special Studies: | | Related Cases: | |
| Location, City, State, ZIP: **1424 Continental St, San Diego, CA  92154** | | Occurred On: **12/23/2014 10:00:00 (Tuesday)** | |
| Jurisdiction: **City of San Marcos - SAN MARCOS** | Beat: **357** | Call Source: **ADMIN** | (and Between): |
| Means: | | Motives: | |

## VICTIM/S

### Victim #1

| Person Code: | ☐ Secured Premise | ☐ Discovered Crime | ☐ Reporting Party | ☐ Law Enforcement Officer |
|---|---|---|---|---|

| Name: **[E] R Consulting & Sales Inc.** | Victim Type: **B - Business** | Interpreter Language: |
|---|---|---|

#### ALIAS / AKA / NICKNAME / MONIKER:

| Name Type: | First: | Middle: | Last: | Suffix: |
|---|---|---|---|---|

| Victim Of: **990000 - ZZ - COURTESY REPORTS** | | | County Residence: |
|---|---|---|---|
| Home Address, City, State, ZIP: **Po Box 2840, San Marcos, CA  92079** | Res. Country: **US** | Place of Birth: | Undocumented: **No** |
| Race: | Sex: | Date of Birth / Age: | Height: | Weight: | Hair Color: | Eye Color: | Facial Hair: | Complexion: |
| Employment Status: | Occupation/Grade: | Employer/School: | Employer Address, City, State, ZIP: |

#### CONTACT INFORMATION:

| Type: **WP - Work Phone** | Number/Address: **760 809-4566** |
|---|---|

#### IDENTIFICATION:

| Type: | Number: | State: | Country: |
|---|---|---|---|

| Attire: | Injury: | Extent of Treatment: | Violent Crime Circumstances: |
|---|---|---|---|

| LAW ENFORCEMENT OFFICER KILLED OR ASSAULTED INFORMATION | Type: | Type Activity: | Type Assignment: |
|---|---|---|---|

## IBR/UCR OFFENSE/S

| Offense Description: **990000 - ZZ - COURTESY REPORTS** | Level: **O** | Against: | Completed? **Yes** | Counts | Using: **N - Not Applicable** |
|---|---|---|---|---|---|
| Location Type: **01 - Air/Bus/Train Terminal** | Hate/Bias: **88 - None (No Bias)** | | | Domestic Violence: **No** | |
| Criminal Activity: | Type Security: | | Gang Related: **No** | Entry: | Point of Entry: |
| Weapons/Force: | Tools: | | | Targets: | |

## ARRESTEE/S

## SUSPECT/S (Not Yet Arrested)

### Suspect #1

| Name: **[E] Unknown** | County Residence: **U - Unknown** | Interpreter Language: |
|---|---|---|

#### ALIAS / AKA / NICKNAME / MONIKER:

| Name Type: | First: | Middle: | Last: | Suffix: |
|---|---|---|---|---|

| Home Address, City, State, ZIP: | Res. Country: | Place of Birth: | Undocumented: |
|---|---|---|---|
| Race: **X** | Sex: **U** | Date of Birth / Age: **00** | Height: | Weight: | Hair Color: | Eye Color: | Facial Hair: | Complexion: |

| Reporting Officer **SH1118 - BUSWELL, JARROD** | Division / Organization **San Marcos Station SAN MARCOS PATROL** | Reviewed By **SH2435 - DEESE, DANIEL** |
|---|---|---|
| Report Date **12/7/2015 9:49:00 AM** | Detective Assigned **SH2181 - CARTER, SCOTT** | Reviewed Date **12/10/2015 12:11:05** |

| NetRMS_CASDCR.rtl v11-15-06 | Printed By SH5034 | Printed: December 17, 2015 - 12:20 PM |
|---|---|---|

Exhibit 16, page 1

# San Diego County Sheriff's Department
## Crime/Incident Report

| | | |
|---|---|---|
| CAD Event No.: **E3003758** | Case No. **15163154** | **2** |
| Primary Victim: **[E] R Consulting & Sales Inc.** | Report No. **15163154.1** | Page 2 of 6 |

| Hair Style: | Hair Length: | Build: | Teeth: | Suspected User: |
|---|---|---|---|---|
| Employment Status: | Occupation/Grade: | Employer/School: | Employer Address, City, State, ZIP: | |

**CONTACT INFORMATION:**

| Type: | Number/Address: |
|---|---|

**IDENTIFICATION:**

| Type: | Number: | State: | Country: |
|---|---|---|---|

**SCARS, MARKS, TATTOOS, ODDITIES:**

| Attire: | Suspect Actions: |
|---|---|

**WITNESSES**

**OTHER ENTITIES**

## Other Entity #1

| Person Code: | ☐ Secured Premise | ☐ Discovered Crime | ☒ Reporting Party | ☐ Law Enforcement Officer |
|---|---|---|---|---|

| Name: **Ricotta, Lance Zane** | Entity Type: **LOI - Legal Owner - Individual** | Person Code: **RP - Reporting Party** | County Residence: **R - Resident** |
|---|---|---|---|

**ALIAS / AKA / NICKNAME / MONIKER:**

| Name Type: | First: | Middle: | Last: | Suffix: |
|---|---|---|---|---|

| Home Address, City, State, ZIP: **Po Box 72529, Yuma, AZ 85365** | Res. Country: **US** | Place of Birth: | Undocumented: **No** | Interpreter Language |
|---|---|---|---|---|

| Race: **W** | Sex: **M** | Date of Birth / Age: **07/03/1971 - 43** | Height: **6' 0"** | Weight: **785 lbs** | Hair Color: **BRO** | Eye Color: **BLU** | Facial Hair: **12 - None/Fuzz** | Complexion: **LGT - Light** |
|---|---|---|---|---|---|---|---|---|

| Employment Status: **E - Employed** | Occupation/Grade: **Business Owner** | Employer/School: **R Consulting and Sales Inc.** | Employer Address, City, State, ZIP: **Po 2840, San Marcos, CA 92079** |
|---|---|---|---|

**CONTACT INFORMATION:**

| Type: **MP - Mobile Phone** | Number/Address: **760 803-9985** |
|---|---|

**IDENTIFICATION:**

| Type: **DLN - Drivers License Number** | Number: **B14536643** | State: **AZ** | Country: **US** |
|---|---|---|---|

| Injury: **N - None** | Extent of Treatment: **01 - None** |
|---|---|

## Other Entity #2

| Person Code: | ☐ Secured Premise | ☐ Discovered Crime | ☐ Reporting Party | ☐ Law Enforcement Officer |
|---|---|---|---|---|

| Name: **Michel, Raquel Elizabeth** | Entity Type: **LOI - Legal Owner - Individual** | Person Code: **06 - Other Lay Witness** | County Residence: **R - Resident** |
|---|---|---|---|

**ALIAS / AKA / NICKNAME / MONIKER:**

| Name Type: | First: | Middle: | Last: | Suffix: |
|---|---|---|---|---|

| Home Address, City, State, ZIP: **Po Box 2840, San Marcos, CA 92079** | Res. Country: **US** | Place of Birth: | Undocumented: **No** | Interpreter Language |
|---|---|---|---|---|

| Race: **W** | Sex: **F** | Date of Birth / Age: **05/01/1971 - 43** | Height: **5' 7"** | Weight: **130 lbs** | Hair Color: **BRO** | Eye Color: **HAZ** | Facial Hair: **12 - None/Fuzz** | Complexion: **TAN - Tanned** |
|---|---|---|---|---|---|---|---|---|

| Employment Status: **E - Employed** | Occupation/Grade: **Business Owner** | Employer/School: **R Consulting and Sales Inc.** | Employer Address, City, State, ZIP: **Po 2840, San Marcos, CA 92079** |
|---|---|---|---|

**CONTACT INFORMATION:**

| Type: **MP - Mobile Phone** | Number/Address: **760 809-4566** |
|---|---|

**IDENTIFICATION:**

| Type: **DLN - Drivers License Number** | Number: **A2209033** | State: **CA** | Country: **US** |
|---|---|---|---|

| Reporting Officer **SH1118 - BUSWELL, JARROD** | Division / Organization **San Marcos Station SAN MARCOS PATROL** | Reviewed By **SH2435 - DEESE, DANIEL** |
|---|---|---|
| Report Date **12/7/2015 9:49:00 AM** | Detective Assigned **SH2181 - CARTER, SCOTT** | Reviewed Date **12/10/2015 12:11:05** |

| NetRMS_CASDCR.rtf v11-15-06 | Printed By SH5034 | Printed: December 17, 2015 - 12:20 PM |
|---|---|---|

RS-ONS001091

Exhibit 16, page 2

## San Diego County Sheriff's Department
## Crime/Incident Report

| CAD Event No.: | E3003758 | Case No. | 15163154 | **3** |
|---|---|---|---|---|
| Primary Victim: | [E] R Consulting & Sales Inc. | Report No. | 15163154.1 | Page 3 of 6 |

| Injury: | Extent of Treatment: |
|---|---|
| N - None | 01 - None |

### Other Entity #3

| Person Code: ☐ | Secured Premise ☐ | Discovered Crime ☐ | Reporting Party ☐ | Law Enforcement Officer ☐ | |
|---|---|---|---|---|---|
| Name: **Ulloa, Pablo** | | Entity Type: **OT - Other** | Person Code: **06 - Other Lay Witness** | | County Residence: |

| ALIAS / AKA / NICKNAME / MONIKER: | | | | | |
|---|---|---|---|---|---|
| Name Type: **Alias/AKA** | First: **Pablo** | Middle: | Last: **Gonzalez** | | Suffix: |
| Home Address, City, State, ZIP: | | Res. Country: **MX** | Place of Birth: | Undocumented: | Interpreter Language: |
| Race: **H** | Sex: **M** | Date of Birth / Age: | Height: | Weight: | Hair Color: | Eye Color: | Facial Hair: | | Complexion: |
| Employment Status: **E - Employed** | Occupation/Grade: **Business Owner** | Employer/School: **Aviarrendamientos S.A de C.V.** | Employer Address, City, State, ZIP: **Indiana 141 Napoles, Mexico, DF 03810** |

| CONTACT INFORMATION: | |
|---|---|
| Type: **MP - Mobile Phone** | Number/Address: **011521 552 338-7378** |
| Type: **WP - Work Phone** | Number/Address: **01152 556 552-5942** |
| Type: **WP - Work Phone** | Number/Address: **01152 555 652-3931** |
| Type: **EM - Email Address** | Number/Address: **pgu@arm.aero** |

| IDENTIFICATION: | | | |
|---|---|---|---|
| Type: | Number: | State: | Country: |

| Injury: | Extent of Treatment: |
|---|---|
| N - None | 01 - None |

### Other Entity #4

| Person Code: ☐ | Secured Premise ☐ | Discovered Crime ☐ | Reporting Party ☐ | Law Enforcement Officer ☐ | |
|---|---|---|---|---|---|
| Name: **Weigman, Scott** | | Entity Type: **OT - Other** | Person Code: | County Residence: **R - Resident** |

| ALIAS / AKA / NICKNAME / MONIKER: | | | | | |
|---|---|---|---|---|---|
| Name Type: | First: | Middle: | Last: | | Suffix: |
| Home Address, City, State, ZIP: | | Res. Country: **US** | Place of Birth: | Undocumented: **No** | Interpreter Language: |
| Race: **W** | Sex: **M** | Date of Birth / Age: | Height: | Weight: | Hair Color: | Eye Color: | Facial Hair: | | Complexion: |
| Employment Status: **E - Employed** | Occupation/Grade: **Special Agent** | Employer/School: **US Department of Homeland Security** | Employer Address, City, State, ZIP: **477 Michigan Ave, Room 1850, Detroit, MI  48226** |

| CONTACT INFORMATION: | |
|---|---|
| Type: **MP - Mobile Phone** | Number/Address: **313 530-1931** |
| Type: **WP - Work Phone** | Number/Address: **313 226-0781** |
| Type: **FX - Fax** | Number/Address: **313 226-0405** |
| Type: **EM - Email Address** | Number/Address: **Michael.S.Weigman@ice.dhs.gov** |

| IDENTIFICATION: | | | |
|---|---|---|---|
| Type: | Number: | State: | Country: |
| Injury: | | Extent of Treatment: | |

| Reporting Officer **SH1118 - BUSWELL, JARROD** | Division / Organization **San Marcos Station SAN MARCOS PATROL** | Reviewed By **SH2435 - DEESE, DANIEL** |
|---|---|---|
| Report Date **12/7/2015 9:49:00 AM** | Detective Assigned **SH2181 - CARTER, SCOTT** | Reviewed Date **12/10/2015 12:11:05** |

CONS001092

Exhibit 16, page 3



## San Diego County Sheriff's Department
## Crime/Incident Report

| CAD Event No.: | E3003758 | Case No. | 15163154 | **4** |
|---|---|---|---|---|
| Primary Victim: | [E] R Consulting & Sales Inc. | Report No. | 15163154.1 | Page 4 of 6 |

| PROPERTY |
|---|

**Property Item #1.000 - Copies of Documnets**

| Derivative No.: | 0 | Property Category: | 1899 - Misc Papers | | |
|---|---|---|---|---|---|
| Status: | ES - Evidence (Seized) | Count: | 7 | Value: | |
| Manufacturer: | | Model: | | | |
| Serial No.: | | Model Year: | | OAN: | |
| Color: | | Caliber: | | | |
| Body Style: | | Recovered/ Seized Date: | 12/07/2015 | | |
| Owner: | | Disposition: | SH90 | | |
| Evidence Tag: | | Alert(s): | | | |
| Drug Type: | | Drug Quantity: | | | |
| Search Warrant: | | | | | |
| Notes: | | | | | |

| REPORT NARRATIVE |
|---|

**SYNOPSIS:**

Lance Ricotta and Raquel Michel own and operate R Consulting & Sales Inc. On 09/14/2014, they contracted a plane to a Pablo Gonzalez Ulloa. Ulloa told Ricotta he was a contractor with the Mexican Military out of Mexico City.

The plane was a G-1159A Gulfstream American Corp, tail number N388LR and worth approximately 1.3 million dollars. Ulloa told Ricotta the plane would be based in Toluca, Mexico. On 12/23/2014, the plane left Toluca Mexico heading to Queretaro, Mexico, but never arrived. Ricotta received information the plane was possibly in Venezuela.

**ORIGIN:**

On 12/07/2015, at about 0952 hours, I received a call to investigate a report of a theft at 182 Santar Pl, San Marcos (CAD: E3003758).

**BACKGROUND:**

None

**INVESTIGATION:**

I met the reporting party/victims, Lance Ricotta and Raquel Michel, at the San Marcos station. Ricotta and Michel own and operate R Consulting & Sales Inc. R Consulting & Sales Inc. is listed as an Aircraft Manufactures company. Ricotta provided me with the following statement:

**STATEMENTS:**

Statement of Lance Ricotta (Reporting Party/Victim):

| Reporting Officer | Division / Organization | Reviewed By |
|---|---|---|
| SH1118 - BUSWELL, JARROD | San Marcos Station SAN MARCOS PATROL | SH2435 - DEESE, DANIEL |
| Report Date | Detective Assigned | Reviewed Date |
| 12/7/2015 9:49:00 AM | SH2181 - CARTER, SCOTT | 12/10/2015 12:11:05 ONS001093 |

| NetRMS_CASDCR.rtf v11-15-06 | Printed by SH5034 | Printed: December 17, 2015 - 12:20 PM |
|---|---|---|



| | San Diego County Sheriff's Department Crime/Incident Report | | |
|---|---|---|---|
| CAD Event No.: E3003758 | | Case No. 15163154 | **5** |
| Primary Victim: [E] R Consulting & Sales Inc. | | Report No. 15163154.1 | Page 5 of 6 |

Ricotta stated on 09/14/2014, he contracted a plane to a Pablo Gonzalez Ulloa. Ulloa told Ricotta he was a contractor with the Mexican Military out of Mexico City. The plane was a G-1159A Gulfstream American Corp, tail number N388LR and worth approximately 1.3 million dollars. Ulloa told Ricotta the plane would be based in Toluca, Mexico.

Ricotta told me on 09/15/2015, he became suspicious because he was not receiving any payments from Ulloa for the plane. Ricotta contacted the Direction General of Civil Aeronautics (DGCA). The DGCA is an agency of the Secretariat of Communications and Transportation of Mexico. The DGCA told Ricotta on 12/23/2014, the plane left Toluca, Mexico, and was heading to Queretaro, Mexico. The DGCA told Ricotta the pilot, in midflight, contacted the Mexico Center and changed the plane's destination to Cancun, Mexico. The DGCA told Ricotta this was the last communication they had with the plane and they lost all communications and tracking with the plane after the pilot's last radio transmission. The plane never arrived at Cancun.

Ricotta told me he contacted the FBI, but they were unable to help him. Ricotta then contacted Scott Weigman with the Homeland Security Department. Weigman told Ricotta he contacted his liaisons in Mexico. Weigman told Ricotta he received information the plane was possibly in Venezuela and the plane was destroyed. Weigman advised Ricotta to file a police report with his local agency. Ricotta also contacted his insurance company, Old Republic Aerospace/Old Republic Insurance Group and they told Ricotta to file a police report.

Ricotta told me he has an office in San Marcos, PO Box 2840, San Marcos. The plane is registered to R Consulting & Sales Inc. and is registered in Nevada at 318 N Carson St Suite 208, in the city of Carson City, Nevada. Ricotta told me the plane was stored at the Brown Field Municipal Airport located at 1424 Continental St, San Diego, before he contracted the plane out to Ulloa.

INVESTIGATION CONTINUED:

Ricotta provided me with copies of the documents for the business and plane. I later placed the documents into evidence at the San Marcos and attached the documents to this case.

I contacted Scott Weigman with the Department of Homeland Security, Narcotics & Contraband Smuggling Group. Weigman told me he is familiar with Ricotta's situation. Weigman told me Ricotta has a history of aviation incidents with planes and cartels. Weigman told me he spoke with his contacts in Venezuela. They possibly located a damaged or destroyed plane in Apure, Venezuela, that could be Ricotta's plane.

I then spoke with Detective Roos #2293 with the Sheriff Department Criminal Intelligence Detail. Due to the unusual circumstances surrounding this incident, Deputy Roos advised me to write a Deputy's Report and have the case forwarded to his department.

EVIDENCE

| Reporting Officer SH1118 - BUSWELL, JARROD | Division / Organization San Marcos Station SAN MARCOS PATROL | Reviewed By SH2435 - DEESE, DANIEL |
|---|---|---|
| Report Date 12/7/2015 9:49:00 AM | Detective Assigned SH2181 - CARTER, SCOTT | Reviewed Date 12/10/2015 12:11:05 ONS001094 |
| NetRMS_CASDCR.rtf v11-15-06 | Printed By SH5034 | Printed: December 17, 2015 - 12:20 PM |



### San Diego County Sheriff's Department
### Crime/Incident Report

| | | | |
|---|---|---|---|
| CAD Event No.: | E3003758 | Case No. | 15163154 |
| Primary Victim: | [E] R Consulting & Sales Inc. | Report No. | 15163154.1 |

**6**
Page 6 of 6

1. Copies of documents

PROPERTY DAMAGE:

None

INJURIES:

None

FOLLOW UP:

To be determined by assigned investigator

RELATED REPORTS:

None

| Reporting Officer | Division / Organization | Reviewed By |
|---|---|---|
| SH1118 - BUSWELL, JARROD | San Marcos Station<br>SAN MARCOS PATROL | SH2435 - DEESE, DANIEL |
| Report Date | Detective Assigned | Reviewed Date |
| 12/7/2015 9:49:00 AM | SH2181 - CARTER, SCOTT | 12/10/2015 12:11:05 CONS001095 |

NetRMS_CASDCR.rtf v11-15-06   Printed By SH5034   Printed: December 17, 2015 - 12:20 PM