# EXHIBIT 17

1  Ralph S. LaMontagne, Jr. [State Bar No. 91536]
   Eric A. Amador [State Bar No. 143395]
2  Thomas T. Carpenter [State Bar No. 98051]
   LaMONTAGNE & AMADOR LLP
3  150 S. Los Robles Avenue, Suite 940
   Pasadena, California 91101
4  Telephone:  (626) 765-6800
   Facsimile:  (626) 765-6801
5
   Attorneys for Defendant
6  OLD REPUBLIC INSURANCE COMPANY

7

8                    UNITED STATES DISTRICT COURT

9                SOUTHERN DISTRICT OF CALIFORNIA

10

11 R CONSULTING & SALES, INC., a      )   Case No. 3:17-cv-00171-LAB-BLM
   Nevada corporation,                )
12                                     )   **REQUESTS FOR ADMISSION, SET ONE**
                                       )
13           Plaintiff,                )
                                       )
14      vs.                            )
                                       )
15 OLD REPUBLIC INSURANCE COMPANY, a   )
   Pennsylvania corporation; and DOES 1 through )
16 10,                                 )
                                       )
17           Defendants.               )
                                       )
18                                     )

19

20

21 **REQUESTING PARTY:**     **DEFENDANT, OLD REPUBLIC INSURANCE
                             COMPANY**

22
   **RESPONDING PARTY:**     **PLAINTIFF, R CONSULTING & SALES, INC.**
23
   **SET NO.:**              **ONE (1)**
24
           Pursuant to Fed. R. Civ. P. 36, Defendant, Old Republic Insurance Company, hereby
25
   requests Plaintiff, R Consulting & Sales, Inc., to admit the following within 30 days of
26
   service hereof.  Pursuant to Local Rule 36.1(b), responses and objections to requests for
27

28

LAW OFFICES
LAMONTAGNE &
AMADOR LLP
                    REQUESTS FOR ADMISSION, SET ONE
238311

                        Exhibit 17, page 1

1  admission or answers thereto must identify and quote each request for admission in full

2  immediately preceding the statement of any answer or objection thereto.

3  ## DEFINITIONS

4      1.    "AIRCRAFT" means the aircraft at issue in this action, i.e., that certain

5  Gulfstream III aircraft, bearing FAA registration no. N388LR, identified in paragraph 1 of

6  YOUR Complaint.

7      2.    "ASACV" means Aviarrendamientos S.A. de C.V.

8      3.    "AVSURANCE" means Avsurance Corporation.

9      4.    "FAA" means Federal Aviation Administration.

10      5.    "LEASE" means that certain "Aircraft Dry Lease" relative to the AIRCRAFT

11  identified in paragraph 8 of YOUR Complaint.

12      6.    "PURCHASE AGREEMENT" means that certain "Aircraft Purchase

13  Agreement" relative to the AIRCRAFT, identifying YOU as the "seller" and SANCHEZ as

14  the "purchaser," identified by YOU in paragraph 9 of YOUR Complaint filed in the

15  ULLOA ACTION.

16      7.    "RICOTTA" means Lance Ricotta.

17      8.    "SANCHEZ" means Jose Luis Sanchez.

18      9.    "ULLOA" means Pablo Gonzalez Ulloa.

19      10.    "ULLOA ACTION" refers to that certain action filed by YOU against

20  ULLOA and ASACV in the San Diego County Superior Court, styled *R Consulting, Inc. v.*

21  *Pablo Gonzalez Ulloa, et al.*, case no. 37-2015-00021516.

22      11.    "YOU" and "YOUR" refers to Plaintiff, R Consulting & Sales, Inc., and

23  anyone acting on its behalf, including its attorneys.

24  ## REQUESTS

25  <u>Request No. 1</u>: Exhibit 1 is a genuine copy of an Aircraft Insurance Application that

26  YOU submitted to AVSURANCE in August of 2014.

27  <u>Request No. 2</u>: Exhibit 2 is a genuine copy of the LEASE.

28  <u>Request No. 3</u>: Exhibit 3 is a genuine copy of the PURCHASE AGREEMENT.

LAW OFFICES
LaMontagne &
Amador LLP

2

REQUESTS FOR ADMISSION, SET ONE

238311

Exhibit 17, page 2

1   **Request No. 4**:  Exhibit 4 is a genuine copy of four emails exchanged between

2   RICOTTA and ULLOA on July 1, 2015.

3   **Request No. 5**:  The $200,000 wire transfer YOU received from ASACV/ULLOA in

4   April of 2015 represented rental payments pursuant to the LEASE for the months of

5   January 2015, February 2015 and March 2015.

6   **Request No. 6**:  The $200,000 wire transfer YOU received from ASACV/ULLOA in

7   April of 2015 represented payment towards the amount due under the PURCHASE

8   AGREEMENT.

9   **Request No. 7**:  ULLOA released possession of the AIRCRAFT to SANCHEZ

10  before there had been payment of the amount due under the PURCHASE AGREEMENT.

11  **Request No. 8**:  As of July 6, 2015, the LEASE was still registered to

12  ULLOA/ASACV with the FAA.

13  **Request No. 9**:  Exhibit 5 is a genuine copy of a letter dated July 31, 2015 directed to

14  RICOTTA that YOU received on or about July 31, 2015.

15  **Request No. 10**:  YOU have no evidence disputing the fact that possession and

16  control of the AIRCRAFT was assumed by SANCHEZ at the Toluca International Airport,

17  Mexico, on December 22, 2014.

18  **Request No. 11**:  Exhibit 6 is a genuine copy of a document with the title "Lic. Luis

19  Arevalo Contreras Corredor Publico No. 1 Del Estado De Guerrero" that was attached to an

20  email dated August 27, 2015 from ULLOA to RICOTTA.

21  **Request No. 12**:  ULLOA has stated that he delivered the AIRCRAFT to

22  SANCHEZ.

23  **Request No. 13**:  YOU have no evidence disputing ULLOA's statement that ULLOA

24  delivered the AIRCRAFT to SANCHEZ.

25  **Request No. 14**:  YOU believe ULLOA stole the AIRCRAFT.

26  **Request No. 15**:  Exhibit 7 is a genuine copy of an email dated November 16, 2015

27  from YOUR attorney, Michael Mason, to ULLOA.

28

LAW OFFICES
LAMONTAGNE &
AMADOR LLP

238311

3
REQUESTS FOR ADMISSION, SET ONE

Exhibit 17, page 3

1    <u>Request No. 16</u>:  Exhibit 8 is a genuine copy of an email dated November 19, 2015

2  from YOUR attorney, Michael Mason, to ULLOA.

3    <u>Request No. 17</u>:  The AIRCRAFT was destroyed in Venezuela on or about

4  December 23, 2014.

5    <u>Request No. 18</u>:  If the AIRCRAFT was destroyed, YOU are not aware how it was

6  destroyed.

7    <u>Request No. 19</u>:  The AIRCRAFT was not destroyed in Venezuela on or about

8  December 23, 2014.

9    <u>Request No. 20</u>:  Prior to 2015, YOU failed to inform AVSURANCE that the

10  AIRCRAFT had been leased to ULLOA and ASACV.

11    <u>Request No. 21</u>:  Exhibit 9 is a genuine copy of an email dated December 4, 2015

12  from YOUR attorney, Michael Mason, to ULLOA.

13    <u>Request No. 22</u>:  SANCHEZ did not steal the AIRCRAFT.

14    <u>Request No. 23</u>:  No individual other than ULLOA or SANCHEZ stole the

15  AIRCRAFT.

16

17  Dated:  September 25, 2017        LaMONTAGNE & AMADOR LLP

18

19               By:  *Ralph S. LaMontagne, Jr.*      /s/

20                   Ralph S. LaMontagne, Jr.

                      Eric A. Amador

21                Attorneys for Defendant

                  OLD REPUBLIC INSURANCE COMPANY

22

23

24

25

26

27

28

Exhibit 17, page 4

# EXHIBIT 1

 **AVSURANCE CORPORATION**

# AIRCRAFT INSURANCE APPLICATION

Legal Name of Applicant:   R Consulting and Sales Firm

Physical Address:   318 N Carson St Suite 208 Carson City NV 89701

Mailing Address:   P.O. Box 2840, San Marcos, CA 92079-2840

Aircraft Based At:   Minden-Tahoe Airport                                    Identifier:   MED

Current Carrier:   Old Republic Insurance Company                Current Policy Expiration Date:   9/30/2014

Policy Period:   from 12:01 am on   9/30/2014   until 12:01am on   9/30/2015   *local time at address above*

Business or Occupation of Applicant:   Consulting Firm

Applicant Is:   ☐ Individual(s)  ☐ Holding Company  ☒ Corporation  ☐ Partnership  ☐ Other _____   Years in Business:  7

Is applicant incorporated solely for ownership of the aircraft?   ☒ NO   ☐ YES

| LIABILITY COVERAGE | EACH PERSON | LIMITS OF LIABILITY DESIRED EACH OCCURRENCE |
|---|---|---|
| Combined Single Limit including Passengers | $ | $10,000,000 |
| Passenger Liability sublimited to: | $ | |
| Medical Payments                including Crew | $5,000 | $70,000 |
| Non-Owned Aircraft Liability: | $ | $ |
| **PHYSICAL DAMAGE COVERAGE** | **AGREED HULL VALUE** | **DEDUCTIBLES** |
| ☒ All Risk / Ground & Flight | $1,300,000 | $0        In Motion |
| ☐ Not In Flight (Ground Only) | $ | $0        Not In Motion |
| | $ | |
| Non-Owned Physical Damage | | |
| **ADDITIONAL COVERAGE(S)** | **EACH PERSON** | **EACH OCCURRENCE** |
| Mexican | $ | $ |
| Broad Coverage | $ | $ |
| | $ | $ |

## SCHEDULE OF AIRCRAFT INSURED

| FAA REG # | YR | MAKE & MODEL | SEATING CREW + PAX | EST. HULL VALUE | AIRCRAFT USE* | # HOURS FLOWN PAST 12 MONTHS | HANGARED? |
|---|---|---|---|---|---|---|---|
| N388LR | #3 | Gulfstream III | + | $1,300,000 | IA | Hrs. | ☒ YES ☐ NO |
| N234LR | 80 | Gulfstream III | + | $1,000,000 | IA | Hrs. | ☐ YES ☐ NO |
| | | | + | $ | | Hrs. | ☐ YES ☐ NO |
| | | | + | $ | | Hrs. | ☐ YES ☐ NO |

*Aircraft Use Codes:  CML = Full Commercial  / I&R = Instruction & Rental Only / CHTR = Charter/Part 135Use/ SD = Sales Demo /
IA = Industrial Aid (pro flown) /  P&B = Pleasure & Business (owner/non-pro flown) /  GO = Ground Only Coverage

1   If used under Part 135, who owns the Part 135 Operating Certificate?   N/A

2   Under Part 135, who maintains operational control of the aircraft being operated?   N/A

3.  Are any aircraft registered under a name other than that of the Applicants?   ☒ NO   ☐ YES
    Describe: _____

4.  Does applicant hangar, service, repair or crew aircraft of others?   ☒ NO ☐ YES   Describe ____

5.  Does applicant use any unapproved runways or airports?   ☒ NO   ☐ YES   Describe: ____

6.  Describe any navigation outside the USA & Canada:   Mexico

**AVSURANCE CORPORATION**
47 W. Ellsworth Rd, PO Box 1367, Ann Arbor, MI 48106
Phone: (800) 472-7090    Fax: (734) 663-8296

Page 1 of 2

Revised 06/2013

 **AVSURANCE CORPORATION**

# AIRCRAFT INSURANCE APPLICATION

## NAMED PILOT INFORMATION
### CERTS/RATINGS

| LEGAL NAME OF PILOT | DOB | ATP | COM | PVT | INST | ME | Total Hrs PIC in all Aircraft | Total Hrs in Multi Engine Aircraft | Total PIC hrs in Turbine / TP Aircraft | Total Hrs in Make & Model | Total Hrs Past 12 Months |
|---|---|---|---|---|---|---|---|---|---|---|---|
| See Pilot Exp. Forms | | | | | | | | | | | |

**OPEN PILOT WARRANTY:**

All pilots must successfully complete full-motion sim based annual ground & flight recurrent training in MM insured. Any commercial pilot holding a valid ME and Inst. Rating

PIC: Logged minimum of 4000 total hrs. of which 3000 must be ME jet a/c, 2000 turbojet a/c and 500 hrs in MM insured.

SIC: Logged minimum of 3200 total hrs. of which 2000 with ME jet a/c, 500 turbojet a/c and 100 hrs. in MM insured.

**PILOT INFORMATION**   *Explain all YES responses – attach a separate sheet if necessary*

1.  Do all pilots attend the Manufacturers Ground & Flight School every 12 months in the Make & Model flown? ☐ NO   x☒ YES
*If YES, provide copies of the school completion certificates for each pilot.*

2.  Do any pilots have any (a) physical impairment? x☒ NO   ☐ YES
(b) Waivers, limitations or conditions on their medical certificate or on their pilot certificate? x ☒ NO   ☐ YES
If YES:

3.  Has any pilot certificate held ever been suspended or revoked by the FAA, Transport Canada or Military? x☐ NO   ☐ YES
If YES:

4   Has any pilot ever been cited for violation of any aviation regulation in any country? x☒ NO   ☐ YES
If YES:

5   Has any pilot ever been convicted of or plead guilty to a felony or driving while intoxicated? x☒ NO   ☐ YES
If YES:

**ADDITIONAL INTERESTS**

1.  Is there a lien on the aircraft? x☒ NO   ☐ YES   If Yes, give complete name & mailing address for Lienholder below:

2.  Are there any companies who need to be an Additional Insured with regard to your aircraft operations? ☐ NO   ☐ YES
If YES, provide Name, Address & Interest:

**LOSS HISTORY & PREVIOUS AVIATION INSURANCE**

1.  Has applicant had any aviation/aircraft losses, claims, or incidents in the past five (5) years? ☒ NO   ☐ YES
If YES:

2.  Has any insurer cancelled, declined, sent notice of cancellation, or refused to renew any aviation insurance?
☒ NO   ☐ YES   If YES:

**FRAUD WARNING:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

All answers herein are warranted true and complete to the best of my/our knowledge and no information has been withheld or suppressed, and I/we agree that this Application and the terms and conditions of the policy in use by the insurer shall be the basis of any contract between me/us and the Insurer. I hereby authorize this company to investigate all or any qualifications or statements contained herein.

Applicant's Signature   X _____   Date: _____

This application does not commit the Company to any liability nor make the Applicant liable for any premium unless and until the Company agrees to effect this insurance.

**AVSURANCE CORPORATION**
47 W. Ellsworth Rd, PO Box 1387, Ann Arbor  MI 48108
Phone (800) 472-7090   Fax (734) 663-8296

Page 2 of 2

Revised 06/2013

# EXHIBIT 2

## AIRCRAFT DRY LEASE

THIS AIRCRAFT DRY LEASE ("Lease") is made as of September 4, 2014 (the "Effective Date") by and between R Consulting and Sales Inc., a Nevada professional corporation ("Lessor") and Aviarrendamientos S.A. de C.V. and Pablo Gonzalez Ulloa ("Lessee") (collectively, the "parties," and individually a "party").

In consideration of the representations, warranties and agreements hereinafter set forth, the parties agree as follows:

1.   **Aircraft.**  Subject to the terms and conditions of this Lease, Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, a 1983 Gulfstream III Aircraft S/N G-1159A-388 and its affixed two engines, bearing FAA Registration Number N388LR, including its engines, avionics, instruments, accessories, and component parts, including replacement parts installed thereon (collectively, the "Aircraft"). Lessor represents and warrants to Lessee that it owns, free and clear of any claim, encumbrance, restriction, or lien, all right, title and interest to the Aircraft; that as of the Effective Date, the Aircraft has current hull insurance and liability insurance for the Aircraft issued by insurance in the limit amounts set forth below in Paragraph 10 ("Insurance Policy"); the Aircraft has a valid Federal Aviation Administration ("FAA") registration.

2.   **Term.**  The term of this Lease shall be for  (3) months after the Effective Date subject to earlier termination by either party at any time thirty (30) days after delivery of written notice ("Notice of Termination") Payments must be current to terminate Lease to the other party to this Lease ("Termination Date").  Lessee shall not schedule use of the Aircraft so that the trip extends beyond the Termination Date without the express prior written agreement of Lessor.

3.   **Security Deposit.**  Upon the execution of this Lease by Lessor and Lessee, Lessee shall deliver to Lessor a non-refundable first and last month security deposit and one month security deposit of Two Hundred Nineteen Thousand Dollars (U.S. $219,000) ("Security Deposit"), which shall be held by Lessor as provided in this Lease.  Lessee may pay the Security Deposit by a wire as instructed in writing by Lessor or by check payable to Lessor.

4.   **Rent.**  Lessee will pay Lessor as rental for the Aircraft ("Rent") Seventy Three Thousand Dollars ($ 73,000) per month of Lessee's use of the Aircraft, including for "Deadhead" legs.  Lessee will pay Rent within five (5) days of the fourth of every month. Late rent will be charged at 10% of Lease Payment.

5.   **Base Maintenance.**  The Aircraft will be Maintained by **R Consulting & Sales, Inc.,** a California corporation ("Manager"), whose principal place of Ontario, California, or such other location as the parties may agree in writing ("Base").  Lessor and Manager have entered into a management agreement that Lessor represents and warrants to Lessee is in effect as of the Effective Date (the "Management Agreement") pursuant to which Manager has agreed to maintain the Aircraft at Lessor's approved maintenance facility; Lessor represents and warrants

**Scanned by CamScanner**

to Lessee that it shall maintain the Aircraft at its sole cost during the Term and if it replaces the manager of the Aircraft during the Term, it shall promptly notify Lessee of such fact.

6.   **Return.**  Upon expiration or termination of the Term, Lessee will return the Aircraft to the Base at San Diego Brown Field.  Lessee will return the Aircraft to Lessor in the same condition as received, normal wear and tear excepted.

7.   **Operation.**  The Aircraft is to be operated under this Lease in accordance with Part 91.  When the Aircraft is operated under this Lease, Lessee will at all times be in operational control of the Aircraft and will not, except with Lessor's prior written consent, assign this Lease or sublease the Aircraft, and Lessee will be solely responsible for its possession and use.  Lessee will not use or operate the Aircraft in violation of any law, regulation or order of any governmental authority, or in violation of the Aircraft's airworthiness certificate, license or registration, or in breach of any term or condition of any insurance policy required under this Lease, or use the Aircraft in any area excluded from coverage by the terms of any insurance policy required under this Lease.  When the Aircraft is operated under this Lease, Lessee will, at all times, employ or contract (through Manager or independently) for pilots to operate the Aircraft who are duly qualified, current, and rated on the Aircraft and whose licenses are in good standing, and who meet the standards established by the Federal Aviation Administration ("FAA") and by any insurance policy required under this Lease.  Lessee will bear the cost of any fees, charges or penalties arising out of Lessee's operation of the Aircraft.  Lessor will bear all capital improvement costs for the Aircraft at lessors approved facility.

8.   **Maintenance.**  Lessor will at all times, at Lessor's own expense, either through Manager or otherwise, cause the Aircraft to be kept in a fully operational. Lessee is responsible for consumables such as oils, hydraulic fluids, oxygen, nitrogen, ect while aircraft is in there possession. Lessee shall not make alterations, modifications, additions or improvements to the Aircraft without the prior written consent of Lessor.  All alterations, modifications, additions and improvements which are made become the property of Lessor and are subject to the terms of this Lease.

9.   **Records.**  Lessee will maintain, or cause to be maintained, all Aircraft logs and records related to Lessee's use of the Aircraft under this Lease

10.   **Insurance.**  Lessor will at all times, at Lessor's own expense, cause to be maintained a policy or policies of insurance with premiums thereon fully paid in advance, issued by and binding upon a solvent insurance company, identifying Lessor as the named insured and sole loss payee under the aircraft hull, engine and property damage casualty insurance policy and naming, among others, Lessee (and its affiliates, shareholders, directors, officers, employees, and agents) and Manager as additional insureds under the general liability portion of such policy, insuring against personal injury, death, hull damage or other property damage or loss arising out of or of in any manner occasioned by the act, omission or negligence of Lessor, Lessee, or Manager, or their respective affiliates, owners, shareholders, directors, officers, employees, and agents or invitees with respect to the custody, maintenance, use or operation of the Aircraft. Lessor represents and warrants to Lessee that such Insurance Policy shall afford (a) adequate

2  **Scanned by CamScanner**

aircraft hull, engine and other property casualty insurance to satisfy Lessor in the event of the destruction of the Aircraft; (b) include a breach of warranty endorsement and a waiver of subrogation; and (c) include aircraft liability insurance with a minimum combined single legal liability limit in the amount of not less than Five Million Dollars ($5,000,000.00). Lessor shall cause such Insurance Policy expressly to refer to, and shall provide coverage with respect to, Lessee's indemnity undertaking as set forth in Section 12 below. Such Insurance Policy shall provide for at least thirty (30) days' notice in writing to Lessee and Lessor before any cancellation of such Insurance Policy, and an original endorsement complying with the foregoing provisions shall be delivered by Lessor to Lessee promptly after this Lease is executed as a condition of this Lease.

11.   **Loss or Damage.**  This Lease may be terminated by either party by reason of any damage to or loss of the Aircraft and no Rent shall be due for any period after the occurrence of a casualty loss of the Aircraft.

12.   **Indemnification.**  To the extent that Lessee's indemnity undertaking herein is covered by the Insurance Policy, Lessee agrees to indemnify, hold harmless and defend Lessor and its members, together with the members, managers, officers, employees, agents, successors and assigns of Lessor and of each such member of Lessor (each, an "Indemnitee"), from and against any and all liabilities, losses, (including Lessee's own loss of use), damages, penalties, sanctions, fines, causes of action, suits, claims (including, without limitation, claims involving strict or absolute liability in tort, damage, injury, death, liability and third party claims), demands, costs and expenses of every nature (collectively, "Claims"), arising directly or indirectly from or in connection with Lessee's use or operation of the Aircraft, or any default in the performance of Lessee's other obligations under this Lease, or any failure by Lessee to comply with applicable law, or any unlawful or negligent act or omission by Lessee, except to the extent any such Claims arise out of, result from or relate to the negligence, breach of contract or failure to comply with any applicable law on the part of such Indemnitee.  Lessee's obligations under this paragraph will survive termination of this Lease and will remain in effect until all indemnity payments required hereunder have been made by Lessee.

13.   **Taxes.**  Lessor shall be responsible for any State sales, use or other tax and shall pay such taxes to the appropriate taxing authority related to this Lease.  Lessor shall also be responsible for filing personal tax owed on or for the Aircraft; provided, however, that Lessee shall pay all taxes and other charges associated with Lessee's use of the Aircraft under this Lease, including, without limitation, landing fees, fuel taxes and any other charges or fees that may be assessed against a specific flight by Lessee.  In case any report or return is required to be made by Lessee with respect to any taxes, Lessee will either (after notice to Lessor) make such report or return in such manner as will show the ownership of the Aircraft in Lessor and send a copy of such report or return to Lessor, or will notify Lessor of such requirement and make such report or return in such manner as will be satisfactory to Lessor.  Lessor and Lessee agree to cooperate fully with each other in the preparation of any such report or return.

14.   **Liens.**  Lessee will not directly or indirectly create, incur, assume or permit the existence of any liens on the Aircraft related to Lessee's use or operation of the Aircraft and

Scanned by CamScanner

Exhibit 17, page 11

Lessee will promptly, at Lessee's own expense, take such action as may be necessary duly to discharge any such lien.

15.    **Inspection.** Lessor or its designee has the right, but not the duty, to inspect the Aircraft at any reasonable time and upon reasonable notice, in flight, or wherever the Aircraft may then be located. Upon Lessor's request, Lessee will advise Lessor of the Aircraft's location and will furnish Lessor with all logs and records in Lessee's possession regarding the Aircraft and its use, maintenance or condition.

16.    **Lessee's Default.** Each of the following events shall constitute an "Event of Default" hereunder:

(a)    Lessee fails to make payment of Rent within five (5) days after the same becomes due; or

(b)    Lessee fails to perform or observe any covenant, condition or agreement to be performed or observed by Lessee under this Lease; or

(c)    Lessee becomes insolvent; or

(d)    Lessor believes, in good faith, that the prospect of payment or Lessee's performance under this Lease is uncertain or impaired.

17.    **Lessor's Remedies.** Upon the occurrence of any Event of Default, Lessor may, in its sole discretion, elect:

(a)    By notice in writing, to terminate this Lease, whereupon Lessee will, without further demand, forthwith return the Aircraft to Lessor as required under Section 6, and pay all accrued and unpaid amounts due under this Lease; or

(b)    To perform or cause to be performed any obligation, covenant or agreement under this Lease. Lessee agrees to pay all costs and expenses incurred for such performance and acknowledges that such performance shall not be deemed to cure said Event of Default; or

(c)    To initiate proceedings against Lessee for any other remedy available to Lessor whether at law or in equity.

Lessee will be liable for all costs, charges and expenses, incurred by Lessor by reason of the occurrence of any Event of Default or the exercise of Lessor's remedies hereunder.

No remedy is intended to be exclusive, but each will be cumulative and in addition to any other remedy referred to above or otherwise available at law or in equity. The failure or delay of Lessor in exercising any rights granted under this Lease upon any occurrence of any of the contingencies set forth above shall not constitute a waiver of any such right.

dry_lease_Gulfstream_388 2014.doc

⁴ Scanned by CamScanner

18.   **Counterparts, Electronic Notices, and Signatures.** This Lease may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and such counterparts together shall constitute only one instrument. Electronic signatures shall be binding and effective as an original. This Lease shall be effective as of the date specified on the first page hereof, notwithstanding the actual date of execution of any of the counterparts hereof. Any one of such counterparts, or any true, complete and correct copy thereof, shall be sufficient for the purpose of proving the existence and terms of this Lease, and no party shall be required to produce an original or all of such counterparts in making such proof. Notices to be given under the terms of this Lease shall be delivered in writing and may be delivered by (1) electronic communication, provided electronic mail is confirmed as received by the recipient; (2) personally; (3) by overnight courier; or (4) by certified mail, return receipt requested, postage prepaid, addressed as provided on the signature page or to such replacement address as may subsequently be provided in writing by one party to the other, and shall be deemed to have been delivered in the case of an email, on the next business day if delivered after 5 PM to the location to which it is sent or the email is received, respectively; in the case of mailing, two (2) business days after being mailed; and in the case of personal delivery, upon actual delivery or the intended recipient's refusal to accept delivery.

19.   **Entire Agreement.** The terms and conditions of this Lease constitute the entire agreement between the parties with respect to the subject-matter of this Lease and supersede all prior written and oral negotiations, representations and agreements, if any, between the parties with respect to such subject-matter, and will be binding upon them, their successors, assigns and legal representatives.

20.   **Modification of Agreement.** No change or modification or waiver of any term or condition of this Lease will be effective unless the change or modification is in writing and signed by the party to be charged.

21.   **Governing Law.** The parties acknowledge that this Lease and the enforcement thereof will be governed by and construed and enforced in all respects in accordance with the laws of the County of San Diego, State of California, without reference to its conflicts of law rules.

22.   **Right to Pay Expenses.** Lessor will have the right, but not the obligation, to pay any costs or expenses that Lessee is obligated to pay under any provision of this Agreement, and Lessee shall, promptly upon its receipt of a request therefor from Lessor, reimburse Lessor for all amounts so paid by Lessor.

23.   **Truth-In-Leasing.**

   (a)   LESSOR HAS REVIEWED THE AIRCRAFT'S PRECEDING EXECUTION OF THIS LEASE.

   (b)   LESSEE CERTIFIES THAT LESSEE, AND NOT LESSOR, IS RESPONSIBLE FOR OPERATIONAL CONTROL OF THE AIRCRAFT UNDER THIS LEASE. LESSEE'S ADDRESS APPEARS ON THE SIGNATURE PAGE HEREOF. LESSEE

dry_lease_Gulfstream_388 2014.doc

5

**Scanned by CamScanner**

FURTHER CERTIFIES THAT LESSEE UNDERSTANDS LESSEE'S RESPONSIBILITY FOR COMPLIANCE WITH APPLICABLE FEDERAL AVIATION REGULATIONS.

(c)     LESSOR AND LESSEE CERTIFY THAT THE AIRCRAFT WILL BE MAINTAINED AND INSPECTED AS PROVIDED HEREIN UNDER PART 91 OF THE FEDERAL AVIATION REGULATIONS AND, AT THE MINIMUM, IN ACCORDANCE WITH THE MANUFACTURER'S RECOMMENDED INSPECTION MAINTENANCE PROGRAM FOR THE AIRCRAFT WHEN OPERATED UNDER THIS LEASE. LESSEE FURTHER CERTIFIES THAT LESSEE UNDERSTANDS LESSEE'S RESPONSIBILITY FOR COMPLIANCE WITH PART 91 AND OTHER APPLICABLE PROVISIONS OF THE FEDERAL AVIATION REGULATIONS.

(d)     LESSEE UNDERSTANDS THAT AN EXPLANATION OF FACTORS BEARING ON OPERATIONAL CONTROL AND PERTINENT FEDERAL AVIATION REGULATIONS CAN BE OBTAINED FROM THE NEAREST FAA FLIGHT STANDARDS DISTRICT OFFICE.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

dry_lease_Outfstream_388 2014.doc

6

Scanned by CamScanner

(e)     THE PARTIES HEREBY CERTIFY THAT A COPY OF THIS LEASE WILL BE CARRIED ON THE AIRCRAFT AT ALL TIMES, AND WILL BE MADE AVAILABLE FOR INSPECTION ON REQUEST BY AN APPROPRIATELY CONSTITUTED AND IDENTIFIED REPRESENTATIVE OF THE FAA.

IN WITNESS WHEREOF, the parties hereto have each caused this Lease to be duly executed effective as of the Effective Date.

**LESSOR:**

**R Consulting and Sales, Inc.,**
a Nevada professional corporation

By _____

Name: _____
Title: _____

Mailing Address:
R Consulting and Sales, Inc.
318 N Carson st STE 208
Carson City, NV 89701

Email: skywonders@aol.com

**LESSEE:**

Aviarrendamientos S.A. de C.V..,
Pablo Gonzalez Ulloa
An individual

By _____

Name: PABLO GONZALEZ-ULLOA
Title: PRESIDENT

Mailing Address:
Pablo Gonzalez Ulloa.
Address
Indiana 141 Napoles
Mexico, DF. 03810

Email: pgu@arm.aero

**Scanned by CamScanner**

Exhibit 17, page 15

# EXHIBIT 3

# AIRCRAFT PURCHASE AGREEMENT

THIS AIRCRAFT PURCHASE AGREEMENT (THIS "AGREEMENT") IS MADE THIS 1st DAY OF DECEMBER, 2014 BY AND BETWEEN R CONSULTING & SALES, INC., 318 N CARSON St., SUITE 208, CARSON CITY, NV 89701, E-MAIL: skywonders@aol.com, PHONE: (760) 809-45-66 ("SELLER") AND  JOSE LUIS SANCHEZ _____ , E-MAIL: joseluissanchez188@yahoo.com __ , PHONE: (___) _____ ("PURCHASER") AND WITNESSETH:

WHEREAS, SELLER AND PURCHASER PREVIOUSLY EXECUTED A LETTER OF INTENT (THE "LETTER OF INTENT TO PURCHASE") THE GULFSTREAM III AIRCRAFT DESCRIBED BELOW (THE "AIRCRAFT") EXECUTED DECEMBER 1, 2014 PROVIDING FOR, AMONG OTHER THINGS, A PRE-PURCHASE INSPECTION OF THE AIRCRAFT AND RECORDS;

WHEREAS, PURSUANT TO THE OFFER TO PURCHASE, THE AIRCRAFT HAS BEEN DELIVERED BY SELLER TO A FACILITY DESIGNATED BY PURCHASER FOR ACCOMPLISHMENT OF THE PRE-PURCHASE INSPECTION; AND

WHEREAS, THE LETTER OF INTENT CONTEMPLATES THE EXECUTION OF AN AIRCRAFT PURCHASE AGREEMENT AND THE PARTIES INTEND THIS AGREEMENT TO FULFILL THAT CONTEMPLATION.

NOW THEREFORE, SELLER AND PURCHASER HEREBY AGREE AS FOLLOWS:

1.  **Agreement to Purchase:**  Seller agrees to sell and purchaser agrees to purchase the aircraft specified below subject to the terms and conditions set forth below and attached herein (and by this reference made a part hereof).

| YEAR | MODEL | FAA NUMBER | AIRCRAFT SERIAL NUMBER | ENGINES |
|------|-------|-----------|------------------------|---------|
| 1983 | Gulfstream III | N388LR | 388 | Rolls Royce Spey Mk 511SR |

**Specifications:**

Seller represents that the Aircraft has the specifications set forth in Appendix 1 hereto.

| | | |
|---|---|---|
| TOTAL SELLING PRICE | $1,000,000 | 00 |
| TOTAL SALE | $1,000,000 | 00 |

| | | |
|---|---|---|
| TOTAL CREDIT TO SALE | | 00 |
| CASH DUE | $1,000,000 | 00 |

2.  **Payment:**  The Aircraft will be sold for cash, payable on the date of Closing (as hereinafter defined) and by delivery of lawful money of the United States of America by wire transfer to  R Consulting & Sales  Inc.

3.  **Pre-Purchase Inspection** Buyer has executed and is satisfied with his own pre-purchase inspection.

4.  **Failure to Close or Accept Delivery:** Purchaser accepts and takes delivery of aircraft upon execution of this purchase agreement.

5.  **Force Majeure:**  Seller shall not be liable for labor difficulties, machinery breakdowns, inability to obtain shipping space or transportation, delays of carriers or suppliers, fires, floods, acts of God, or other outbreak of hostilities, mobilization, civil commotion, riots, embargoes, and domestic or foreign governmental regulations or orders (each a "Force Majeure Event") or should the Aircraft be destroyed or damaged beyond repair before or after Closing.

6.  **Closing.**  The closing (the "Closing") on the Aircraft will take place on or before three (3) business days after the Airworthiness Discrepancies are completed.

| | |
|---|---|
| Seller's Initials _____   Date _____ | Purchaser's Initials _JJ_   Date 1 12-15 |

7.     **Closing, Title and Delivery:**  On or prior to the Closing Date, Purchaser shall (i) wire the remaining portion of the Purchase Price to the Escrow Agent, together with amounts sufficient to pay all taxes pursuant to Paragraph 10 hereof, the filing fees to file for the Registration (as hereinafter defined) and the FAA Bill of Sale (as hereinafter defined) with the FAA, and the Delivery Costs (as hereinafter defined), (ii) deliver to the Escrow Agent an original completed and executed application for registration of the Aircraft with the FAA (the "Registration"), and (iii) deliver to Escrow Agent an executed escrow agreement authorizing the release of the Purchase Price and filing of the Registration and FAA Bill of Sale upon satisfaction of the terms of this Paragraph 9.  On or prior to the Closing Date, Seller shall (i) deliver to the Escrow Agent two (2) original executed Federal Aviation Administration Bill of Sale Form 8050-2 in the form attached hereto as Appendix 3 (the "FAA Bill of Sale"), (ii) deliver to Escrow Agent an original executed Warranty Bill of Sale to the Aircraft in the form attached hereto as Appendix 4, and (iii) deliver to Escrow Agent an executed escrow agreement authorizing the release of the Purchase Price and filing of the Registration and the FAA Bill of Sale upon satisfaction of the terms of this Paragraph 9.  The Aircraft shall be delivered for closing in or at Purchaser's expense to some other mutually agreeable location within the continental United States (the "Delivery Location"), which shall not give rise to adverse tax consequences for the parties.  Purchaser shall pay Seller's reasonable out-of-pocket cost for fuel, pilot travel and the pilot's daily rate if other than Seller's own pilots (not to exceed $500.00 per pilot) to ferry the Aircraft from  to the Delivery Location (collectively, the "Delivery Costs").  On the date of Closing, the parties shall close on this transaction once it has been verified by the Escrow Agent that (i) Escrow Agent has received all deliveries required by the Purchaser, (ii) Escrow Agent has received all deliveries required by the Seller, (iii) the Aircraft is in position at the Delivery Location, and (iv) Purchaser has accepted delivery of the Aircraft by executing and delivering to Seller the Delivery Receipt in a form substantially the same as Appendix 2 attached hereto and incorporated herein.  At the time of Closing the Escrow Agent shall simultaneously:  i) release to Seller the Purchase Price less any broker commissions to be paid by Seller, any loan payoff and the escrow fees due to Escrow Agent; ii) release the Delivery Costs to Seller, (iii) file the Registration and the FAA Bill of Sale with the FAA, and (iv) release the Warranty Bill of Sale to Purchaser.

Title to the Aircraft free and clear of all liens and encumbrances and risk to the Aircraft shall pass to Purchaser on the date of Closing.  Seller will maintain full insurance coverage on the Aircraft until the risk of loss passes to Purchaser at Closing.

8.     **Taxes:**  Purchaser agrees to pay and to indemnify Seller for all sales and use taxes or assessments which may be imposed by any governmental authority upon this sales transaction or the use of the Aircraft by Purchaser, and any such taxes or assessments which Seller will be obligated under law to collect from Purchaser.  Except as provided herein, Seller agrees to pay and to indemnify Purchaser for all taxes, fees or duties and expenses, as well as any penalties, interest and attorney's fees, imposed by any jurisdiction or governmental authority as a result of the ownership, location or usage of the Aircraft prior to the Closing Date/Delivery Time and all taxes on profits, gross receipts or income of Seller applicable to or arising out of the transactions contemplated by this Agreement.  Prior to the payment of any assessment for which Purchaser or Seller desires to seek indemnification from the other party hereunder, the party desiring indemnification shall provide the other party with five (5) business days prior written notice of the same.  The indemnified party shall allow the indemnifying party to dispute any such assessment and shall cooperate reasonably in regard thereto.

9.     **DISCLAIMER:** BUYER UNDERSTANDS THAT THE AIRCRAFT IS BEING PURCHASED IN AN "AS IS, WHERE IS" CONDITION EXCEPT AS PROVIDED ABOVE TO THE CONTRARY. UNLESS OTHERWISE PROHIBITED BY LAW AND THIS AGREEMENT, BUYER AGREES THAT THE WARRANTIES OF SELLER SET FORTH IN THE FOLLOWING PARAGRAPH ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES OF SELLER, WHETHER WRITTEN, ORAL OR IMPLIED, OTHER THAN THE EXPRESS WARRANTIES OF TITLE SET FORTH IN THE WARRANTY BILL OF SALE. BUYER ACKNOWLEDGES AND AGREES THAT SELLER SHALL NOT, BY VIRTUE OF HAVING OWNED AND SOLD THE AIRCRAFT OR OTHERWISE, BE DEEMED TO HAVE MADE ANY REPRESENTATIONS OR WARRANTY AS TO THE MERCHANTABILITY, FITNESS, DESIGN OR CONDITION OF, OR AS TO THE QUALITY OF THE MATERIAL OR WORKMANSHIP IN, THE AIRCRAFT, OR TO HAVE MADE ANY OTHER REPRESENTATIONS OR WARRANTIES.   SELLER DISCLAIMS AND BUYER WAIVES ALL WARRANTIES AND LIABILITIES, EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE (INCLUDING STRICT LIABILITY IN TORT), WITH RESPECT TO THE MERCHANTABILITY, FITNESS, DESIGN OR CONDITION OF, OR AS TO THE QUALITY OF THE MATERIAL OR WORKMANSHIP IN, THE AIRCRAFT.

10.    **WARRANTY:**  Seller warrants that all representations and warranties in this Agreement are true and correct in all material respects as of the contract acceptance date on the front page of this Agreement and will be true and correct as of the date of Closing.  Seller warrants that, at closing, it will have good, marketable title and possession

| Seller's Initials _____   Date _____ | Purchaser's Initials _JJ_   Date _1-12-17_ |
|---|---|

of the Aircraft, including the engines, free and clear of all liens, claims, demands and encumbrances, which title Seller will convey to Purchaser. Purchaser and Seller warrant that each has the authority to enter into this transaction under its articles of incorporation and the applicable law of the state of its incorporation.

11. **Assignments of Programs and Warranties:** Seller hereby assigns to Purchaser (to the extent assignable), as of the date of Closing, all of the rights, warranties, representations, covenants, and indemnities made to Seller by or which Seller is entitled to enforce against any predecessor in title to the Aircraft or from the Aircraft manufacturer, if any. Seller agrees to assist Purchaser, at Purchaser's sole cost and expense, in enforcing or arranging for the enforcement by appropriate parties for Purchaser's benefit, at Purchaser's sole cost and expense, all such rights, warranties, representations, covenants and indemnities, including transfer to Purchaser at Closing of any other third party service or maintenance agreements. However, Purchaser shall pay any costs related to the transfer of such warranties and programs.

12. **Acceptance Flight:** Shall not exceed two (2) hours with Sellers Pilot in Command as captain during the flight and the Purchaser may provide a qualified co-pilot for such Acceptance Flight. The Acceptance Flight may be combined with the ferry flight to transport the Aircraft to the location of the final Delivery.

13. **Applicable Law:** This Agreement shall be construed and interpreted under the laws of the State of California in the County encompassing the City of San Diego.

14. **Enforceability:** In the event any provision of this Agreement is prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without affecting the remaining provisions of this Agreement which shall continue in full force and effect.

15. **Survival:** The covenants, agreements, representations and warranties by Seller shall survive the Closing of this transaction.

16. **Cooperation:** Each party shall execute and deliver all such documents as may reasonably be requested in order to implement the intent and purposes of this Agreement, and shall cooperate reasonably in carrying out the Closing.

17. **Broker's Commissions:** Seller shall be responsible for payment of a commission due to its broker, if any. Purchaser has not engaged any broker. Seller does hereby agree to indemnify and defend Purchaser and hold Purchaser harmless from any and all commissions, claims to such commissions or similar fees, including attorneys' fees incurred in any lawsuit regarding such commission or fees to Broker, or any other broker to the extent such claims or liabilities are by any broker claiming by, through or under Seller and are based upon the actions of Seller. Purchaser does hereby agree to indemnify Seller and hold Seller harmless from any and all commissions, claims to such commissions or similar fees, including attorneys' fees incurred in any lawsuit regarding such commission or fees, to the extent such claims or liabilities are by any broker claiming by, through or under Purchaser and are based upon the actions of Purchaser.

18. **Non-Disclosure:** The material terms and conditions set forth in this Agreement may not be disclosed in any fashion, either in whole or in part, to any third party (excluding governmental authorities and the disclosing party's legal counsel, financial institution, accountants and other relevant personnel with a need to know) unless in connection with enforcement of the terms hereof or unless the party desiring to make such disclosure first obtains the express written approval of the other party.

19. **Litigation Expenses:** If litigation is instituted to enforce this Agreement, the prevailing party shall be awarded its reasonable attorney's fees incurred and all reasonable litigation costs, including depositions, expert witness fees, photographic expense, witness travel and lodging expense and all court costs.

20. **Agreement Assignment:** Neither party may assign its rights, interests or obligations under this Agreement without the prior written consent of the other party.

21. **International Registry:** Purchaser and Seller agree to timely register, and to cause their lenders and/or lessees, if any, to timely register, as users of the International Registry established pursuant to the Cape Town Convention on International Interests in Mobile Equipment and the Protocol to the Convention on International Interests in Mobile Equipment on Matters Specific to Aircraft Equipment (collectively the "Cape Town Treaty") and to make, or cause to be made all filings and consents to filings required to perfect Purchaser's ownership interest, and the lien hold interest of Purchaser's lender, in the Aircraft pursuant to the Cape Town Treaty, concurrent with the Closing.

| Seller's Initials _____ Date _____ | Purchaser's Initials _JJ_ Date 1-12-[?] |

21.   **International Registry:**  *Purchaser and Seller agree to timely register, and to cause their lenders and/or lessees, if any, to timely register, as users of the International Registry established pursuant to the Cape Town Convention on International Interests in Mobile Equipment and the Protocol to the Convention on International Interests in Mobile Equipment on Matters Specific to Aircraft Equipment (collectively the "Cape Town Treaty") and to make, or cause to be made all filings and consents to filings required to perfect Purchaser's ownership interest, and the lien hold interest of Purchaser's lender, in the Aircraft pursuant to the Cape Town Treaty, concurrent with the Closing. Purchaser shall pay for all costs associated with registering Purchaser's and Purchaser's lender's International Interests, including but not limited to registering Purchaser and Purchaser's lender as a Transacting User Entity, filing fees for filing Purchaser's and Purchaser's lenders International Interests in the airframe and engines, and fees associated with searching the International Registry prior to, and after registration of Purchaser's and Purchaser's lender's International Interests.  Seller shall be required to pay its own costs related to registering Seller as a Transacting User Entity on the International Registry.*

23.   **Counterparts:**  *This Agreement may be executed in counterparts, each when read together constituting a binding agreement on the parties.  E-mailed signatures will have the full force and effect of original signatures.*

24.   **Entire Agreement:**  *This Agreement constitutes the entire agreement of the parties hereto with respect to the purchase and sale of the Aircraft; all prior representations and understandings having been merged herein.  This Agreement may not be modified or terminated orally.  No claimed modification, termination or waiver or any of the provisions of this Agreement shall be valid unless in writing signed by the party to be bound thereby.  The terms and conditions hereof supersede and cancel any terms contained in any other documents.  This Agreement becomes a binding contract when it is signed by both parties hereto.*

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be duly executed by their authorized officers as of the date and year first above mentioned.

SELLER: R Consulting & Sales, Inc.                    PURCHASER

By:_____          By:_____
Name: Raquel Michel        Title: President          Name:  Jose Luis Sanchez        Title: Individual

Address: ___318 N Carson St. Suite 208___          Address: 1150 Lee Wagener Blvd. Suite 203____

City/State/Zip: _Carson City, Nevada 89701___          City/State/___Fort Lauderdale, Florida 33315___

Phone: _(760) 809 4566_____          Phone: _____

| Seller's Initials _____   Date _____ | Purchaser's Initials _JL_ Date 1·17·14 |

APPENDIX 1

## SPECIFICATIONS

_____ Landings, _____ since mid-life,  No Damage, Good P&I, Factory Maintenance Program, CMP

Max Ramp: 70,200 Lbs
Max Take-off: 69,700 Lbs

**Engine Specs:**
ROLLS ROYCE SPEY MKC 511-8

APU-Allied Signal GTCP 36-100 G-APU
s/n 440C

**Avionics/Radios:**
Sperry SPZ 800 Auto-Pilot
HNYWL Primus 880 Radar
Dual Collins FD-109 F.D.
Allied Signal TCS II W/CH7
Dual Collins VHF 220 Comms
Universal UNSIK FMS
Dual Collins VIR 30 NAVS
Universal UNS 1K GPS
Dual Collins ADF-60 ADF
Dual Litton 92 INS
Dual Collins DME-42 DME
Collins ALT 55B Radar ALT W/VTA
Dual HNYWL RCZ852 XPNDR
Universal Class A EGPWS
Dual Collins 671 URN/SEL H.F.

**Additional Equipment:**
AFT Lavatorie
AFT Galley
Convection Oven
Microwave Oven
Three Cabin Monitors
Panasonic DVD Player
Sony VCR
10 Disc CD Player

OTHER OPTIONS:

Fairchild A-100 CVR
RVSM Approved

| Seller's Initials _____   Date _____ | Purchaser's Initials _A._ Date 1·12·14 |

Provisions for FDR
8.33 Spacing
FM Immunity
Gulfstream Camp

**Exterior:**
Overall White w/ Black Main Stripes

**Interior:**
12 Passenger Ten Individual Chairs, Three Place Divan, Chairs Beige Leather, Divan Beige and Tan Fabrics, Carpet Brown Sculptured. Headliner in Sand Ultra, Cabinetry and Wood Trim in Dark Burl.

**Inspection Status:**
On Factory Recommended Maintenance, Camp Maintenance Records.

Fresh 12, 24, & 72 Mo. and 5000 Cycle Inspections and Fresh Landing Gear O.H.

Seller's Initials _____   Date _____

Purchaser's Initials ____   Date 11-14

Exhibit 17, page 22

APPENDIX 2

DELIVERY RECEIPT

Pursuant to the Aircraft Purchase Agreement ("Agreement") dated the 1st of  December  , 2014 between R Consulting & Sales, Inc. (hereinafter "Seller") and Jose Luis Sanchez (hereinafter "Purchaser"), Purchaser hereby acknowledges

delivery on this FIRST day of December  , 2014, of the following Aircraft:

Year/Model:            1983 Gulfstream III
Serial Number:         388
Registration #:        N388LR

Aircraft Total Time:_____

Total Engine Hours-Left:_____

Total Engine Hours-Right: _____

Delivery of the Gulfstream III has been made to Purchaser at:

(Facility), _____

_____

(City and State) _____
complete with all logbooks and equipment (as outlined on the Schedule A to the Agreement), as well as all spare or loose equipment associated with the Aircraft.

Purchaser has visually examined the Aircraft and completed a Pre-purchase Inspection as defined in the Terms and Conditions to the Aircraft Purchase Agreement, and hereby accepts delivery of the Aircraft under terms and conditions of the above referenced Agreement. As of this date, Purchaser further accepts the Aircraft "As Is, Where Is," with all faults.

Agreed and Accepted By Purchaser:

Signed By:_____
Name: _____
Title: _____

| Seller's Initials _____   Date _____ | Purchaser's Initials _____   Date _____ |

Exhibit 17, page 23

**APPENDIX 3**

B FORM
APPROVED
OMB NO. 2120-0042

## UNITED STATES OF AMERICA

U. S. DEPARTMENT OF TRANSPORTATION FEDERAL AVIATION ADMINISTRATION

*AIRCRAFT BILL OF SALE*

FOR AND IN CONSIDERATION OF $ 1.00 + o.v.c. THE UNDERSIGNED
OWNER(S) OF THE FULL LEGAL AND BENEFICIAL TITLE OF THE AIRCRAFT
DESCRIBED AS FOLLOWS:

UNITED STATES
REGISTRATION NUMBER    N388LR

AIRCRAFT MANUFACTURER & MODEL
Gulfstream III

AIRCRAFT SERIAL No.
388

DOES THIS ____ DAY OF   DECEMBER 2014    , HEREBY SELL,
GRANT, TRANSFER AND DELIVER ALL RIGHTS, TITLE, AND INTERESTS IN
AND TO SUCH AIRCRAFT UNTO:

Do Not Write In This Block
FOR FAA USE ONLY

PUR CHA SER

NAME AND ADDRESS
(IF INDIVIDUAL (S), GIVE LAST NAME, FIRST NAME, AND MIDDLE INITIAL.)

Sanchez, Jose L.

DEALER CERTIFICATE
NUMBER

AND TO _____ EXECUTORS, ADMINISTRATORS, AND ASSIGNS TO HAVE AND TO HOLD
SINGULARLY THE SAID AIRCRAFT FOREVER, AND WARRANTS THE TITLE THEREOF.

IN TESTIMONY WHEREOF ___ HAVE SET ____ HAND AND SEAL THIS ____ DAY OF _____, 2014.

| NAME (S) OF SELLER (TYPED OR PRINTED) | SIGNATURE (S) (IN INK) (IF EXECUTED FOR CO-OWNERSHIP, ALL MUST SIGN.) | TITLE (TYPED OR PRINTED) |
|---|---|---|
| R Consulting & Sales, Inc. | | |
| | | |
| | | |
| | | |

SEL LER

ACKNOWLEDGEMENT (NOT REQUIRED FOR PURPOSES OF FAA RECORDING: HOWEVER, MAY BE REQUIRED
BY LOCAL LAW FOR VALIDITY OF THE INSTRUMENT.)

**ORIGINAL TO FAA**

AC Form 8050-2 (9/92) (NSN 0052-00-629-0003) Supersedes Previous Edition

Seller's Initials _____   Date _____

Purchaser's Initials __  Date 12-14

Exhibit 17, page 24

**WARRANTY BILL OF SALE**

| APPENDIX 4 |
| --- |

    (hereinafter "Seller"), in consideration of the sum of one dollar ($1.00) plus other good and valuable consideration paid by (hereinafter "Purchaser"), receipt of which is hereby acknowledged, pursuant and subject to an Aircraft Purchase Agreement between Seller and Purchaser, dated December 1st, 2014, (the "Agreement"), hereby sells, grants, assigns, transfers and delivers to Purchaser, its successors and assigns, all right, title and interest in and to the Aircraft described as: 1) 1985 Gulfstream III, bearing FAA Registration N388LR and manufacturer's serial number 386; 2) two (2) engines, respectively bearing manufacturer's serial numbers 3) all Aircraft records; and 4) other equipment of whatever nature installed on the Aircraft as set forth in the Agreement and as may be more fully set forth in Appendix 1 thereof, those items set forth or as provided in 1), 2) and 3) above being hereinafter collectively referred to as "Aircraft."

    Seller hereby represents and warrants to, and covenants and agrees with, Purchaser, its successors and assigns, that (1) Seller is the lawful owner of the Aircraft and, Seller is hereby transferring and conveying to Purchaser full legal and beneficial title to the Aircraft and that Purchaser will acquire by the terms of this Warranty Bill of Sale and the FAA Bill of Sale (Form 8050-2) good and valid title to the Aircraft and that the Aircraft is free and clear of all mortgages, leases, security interests, claims, charges, liens and encumbrances of any kind whatsoever; (2) Seller has the right to sell the Aircraft as aforesaid; and (3) Seller shall warrant and defend title to the Aircraft against the claims of any person, party, firm, corporation or entity of any kind whatsoever which may have accrued, existed or attached thereto or arisen prior to transfer of title by Seller to Purchaser.

DISCLAIMER: BUYER UNDERSTANDS THAT THE AIRCRAFT IS BEING PURCHASED IN AN "AS IS, WHERE IS" CONDITION EXCEPT AS PROVIDED ABOVE TO THE CONTRARY. UNLESS OTHERWISE PROHIBITED BY LAW AND THIS AGREEMENT, BUYER AGREES THAT THE WARRANTIES OF SELLER SET FORTH IN THE FOLLOWING PARAGRAPH ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES OF SELLER, WHETHER WRITTEN, ORAL OR IMPLIED, OTHER THAN THE EXPRESS WARRANTIES OF TITLE SET FORTH IN THE WARRANTY BILL OF SALE. BUYER ACKNOWLEDGES AND AGREES THAT SELLER SHALL NOT, BY VIRTUE OF HAVING OWNED AND SOLD THE AIRCRAFT OR OTHERWISE, BE DEEMED TO HAVE MADE ANY REPRESENTATIONS OR WARRANTY AS TO THE MERCHANTABILITY, FITNESS, DESIGN OR CONDITION OF, OR AS TO THE QUALITY OF THE MATERIAL OR WORKMANSHIP IN, THE AIRCRAFT, OR TO HAVE MADE ANY OTHER REPRESENTATIONS OR WARRANTIES. SELLER DISCLAIMS AND BUYER WAIVES ALL WARRANTIES AND LIABILITIES, EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE (INCLUDING STRICT LIABILITY IN TORT), WITH RESPECT TO THE MERCHANTABILITY, FITNESS, DESIGN OR CONDITION OF, OR AS TO THE QUALITY OF THE MATERIAL OR WORKMANSHIP IN, THE AIRCRAFT.

    Seller's other warranties and representations, including disclaimers and limitations, with respect to the Aircraft are as set forth in the Agreement.

    Seller agrees and acknowledges that the terms and conditions of this Warranty Bill of Sale, including without limitation, all representations, warranties and agreements for the benefit of Purchaser, shall survive the delivery of the Aircraft and the delivery, execution and recording of the FAA Bill of Sale.

In witness whereof, Seller has caused this Warranty Bill of Sale to be signed by its duly authorized officer this First day of December, 2014.

Seller:

By:_____

Name:

Title:

| Seller's Initials _____   Date _____ | | Purchaser's Initials ____  Date 11/14 |
| --- | --- | --- |

APPENDIX 5

**AIRWORTHINESS DISCREPANCIES**

| Seller's Initials _____   Date _____ | | Purchaser's Initials _47_ Date _7·13_ M |

# EXHIBIT 4

Begin forwarded message:

**From:** Lance <skywonders@aol.com>
**Date:** July 1, 2015 at 6:21:46 PM PDT
**To:** Pablo Gonzalez Ulloa <PGU@arm.aero>
**Subject:** Re: N388LR

Pablo the sale never was completed we were never paid. Do not try to say that. The aircraft is still leased to you and we are demanding it be returned. I never would have told you to release the plane to Jose Luis without payment in our account. I have no idea who this Jose Luis person is. First time I talked to someone named Jose Luis if that's really who that was which I have no way to verify that. Why don't you have him send a copy of his passport and all of the information I requested and how about sending the money? And all the rest of the stuff you promised. Let's start with that. You know no sale is complete without full payment. And you know full payment has not been made to us. That contract was null and void a long time ago because we did not receive payment. Does any of this make sense? Why would we allow the release of the aircraft to anyone with being paid in full? Would you? It's been 6 months. I told you we would still sell the aircraft for the $1M agreed price but there would need to be some consideration for the amount of time. You agreed and we're going to make an offer two weeks ago but you still haven't done this. Please return the aircraft N388LR immediately to San Diego Brown Field and then we can discuss the purchase.

Lance

On Jul 1, 2015, at 4:25 PM, Pablo Gonzalez Ulloa <PGU@arm.aero> wrote:

I don´t know. As you may understand, he will answer on his own terms. I'd wait for the answer, or call him again.

P.

On Jul 1, 2015, at 3:16 PM, Lance <skywonders@aol.com> wrote:

1

RCONS0046

Exhibit 17, page 28

When can I get that information?


On Jul 1, 2015, at 1:08 PM, Pablo González Ulloa
<PGU@arm.aero> wrote:

I did receive, I'm sure he did too.

A word of advise Lance. Goods manners have
worked wonders for me with this man.
Best,

P.


2

RCONS0047

Exhibit 17, page 29

On 01/07/2015, at 14:54, Lance
<skywonders@aol.com> wrote:

Want to verify you received earlier
email. Shouldn't take that long to get
me that information.

Lance

3

RCONS0048

Exhibit 17, page 30

# EXHIBIT 5

2015-07-31
R Consulting & Sales Inc.
Attn. Mr. Lance Ricotta

As spoken earlier by telephone, I'm confirming that I do have operational control and possession of the 1983 Gulfstream 3 aircraft N388LR, serial number 388, as stated on the aircraft purchase agreement executed between R consulting & Sales Inc. and myself, José Luis Sánchez.

According to such agreement, I received this aircraft from R Consulting & Sales Inc., at Toluca International Airport, Mexico and assumed possession and control over said aircraft, the 22nd day of December of 2014.

Any business related to N388LR should be addressed to me, personally, at the following address:

Río Sena 84,
Colonia Cuauhtemoc,
Delegación Cuauhtemoc,
Mexico, Distrito Federal
C.P. 06850

José Luis Sánchez.

RCONS0082

Exhibit 17, page 32

# EXHIBIT 6

**LIC. LUIS AREVALO CONTRERAS**
CORREDOR PUBLICO No. I DEL ESTADO DE GUERRERO



I

CONTRATO DE RECONOCIMIENTO DE ADEUDO CON GARANTÍA HIPOTECARIA QUE CELEBRAN POR UNA PARTE AVIARRENDAMIENTOS, SOCIEDAD ANONIMA DE CAPITAL VARIABLE, EN LO SUCESIVO "LA PARTE ACREEDORA", REPRESENTADA POR EL SEÑOR, PABLO FRANCISCO PATRICIO GONZALEZ ULLOA Y GONZALEZ EN SU CARÁCTER DE APODERADO LEGAL Y POR LA OTRA EL SEÑOR JOSE LUIS SANCHEZ, A DE MANERA INDIVIDUAL Y EN PLENO CONOCIMIENTO DE SUS DERECHOS, QUIEN SERA DENOMINADO EN LO SUCESIVO "LA PARTE DEUDORA", LOS CUALES FORMALIZAN EL PRESENTE INSTRUMENTO AL TENOR DE LOS ANTECEDENTES, DECLARACIONES Y CLAUSULAS SIGUIENTES:-------------------------------------------------------------------

----------------------------------------------------------------------------------

-----------------------------ANTECEDENTES------------------------------

----------------------------------------------------------------------------------

---I.- Por póliza número dos mil trescientos sesenta y cuatro, libro dos de registro, de fecha veintiocho de octubre del año dos mil once, suscrita ante la fe del Licenciado Carlos Alfredo Ongay Flores, Corredor Público número setenta y dos en ejercicio de la Plaza del Distrito Federal, se constituyó la Sociedad Mercantil denominada "AVIARRENDAMIENTOS", Sociedad Anónima de Capital Variable, designándose en ese mismo acto al Señor PABLO FRANCISCO PATRICIO GONZALEZ ULLOA Y GONZALEZ, Presidente del Consejo de Administración con las facultades insertas en los tres párrafos del artículo dos mil quinientos cincuenta y cuatro del Código Civil para el Distrito Federal, e inscrita en el Registro Público de la Propiedad y del Comercio bajo el folio mercantil número "474141-1" de fecha cinco de junio del año dos mil doce.--------

---II.- El Señor José Luis Sánchez se identifica ante mi como ciudadano de los Estados Unidos de América, mediante pasaporte numero 491514081 emitido por el Departamento de Estado del mencionado país con fecha diez y nueve de Abril del año dos mil doce.------------------------------------------------------------------

---III.-Por contrato privado de compra-venta fechado el día primero de Diciembre del año dos mil catorce, el Señor José Luis Sánchez adquiere para si mismo la aeronave Gulfstream III, construida en el año mil novecientos ochenta y tres, con número de serie 388 y matrícula de registro aeronáutico de los Estados Unidos de América numero "N388LR".---------------------------------------------------------

---IV.-Por el mismo contrato de compraventa citado en el inciso anterior, la compañía "R Consulting and sales, Inc" de la Ciudad de Carson, Estado de Nevada, en los Estados Unidos de América, por medio de su Presidente, la Señora Raquel Michel, vende este activo al Sr. José Luis Sánchez, mediando la operación de compra-venta a través de "Aviarrendamientos S.A. de C.V.", quien hasta esa fecha mantuvo un contrato de arrendamiento sobre esta aeronave para el cumplimiento de sus objeto social.-----------------------------------------

----------------------------------------------------------------------------------

----Expuesto lo anterior, los comparecientes hacen las siguientes:----------

----------------------------------------------------------------------------------

----------------------------DECLARACIONES--------------------------------

----------------------------------------------------------------------------------

---I.- El Señor Pablo Francisco Patricio Gonzalez Ulloa y González manifiesta bajo protesta de decir verdad que las facultades otorgadas por la Sociedad Mercantil denominada "AVIARRENDAMIENTOS", Sociedad Anónima de Capital Variable, a que se refiere el instrumento publico que se hizo mención en el punto uno (romano) del apartado de ANTECEDENTES, del presente instrumento, no le han sido revocadas o limitadas a la fecha de esta escritura.----------------------

----II.- El Señor José Luis Sánchez manifiesta bajo protesta de decir verdad que se presenta a ratificar el presente instrumento por su propia voluntad, a título personal, y con pleno conocimiento de su contenido y alcance legal.

RCONS0084

Exhibit 17, page 34

## LIC. LUIS AREVALO CONTRERAS
CORREDOR PUBLICO No. 1 DEL ESTADO DE GUERRERO

2

---El Señor José Luis Sánchez manifiesta bajo protesta de decir verdad que la aeronave objeto del contrato de compra venta, y el presente reconocimiento de adeudo se encuentra bajo su control y posesión desde el día primero de Diciembre de dos mil catorce.---------------------------------------------------------

---Expuesto lo anterior los comparecientes otorgan las siguientes: ----------------

----------------------------------CLAUSULAS--------------------------------------------

---PRIMERA.- El Señor José Luis Sánchez, denominado para los efectos del presente acto como "**LA PARTE DEUDORA**" reconoce deber y se obligan a pagar a "**LA PARTE ACREEDORA**", la persona moral denominada AVIARRENDAMIENTOS, SOCIEDAD ANONIMA DE CAPITAL VARIABLE, la cantidad de $1'000,000.00 (UN MILLON DE DOLARES, 00/100 MONEDA DE CURSO LEGAL DE LOS ESTADOS UNIDOS DE AMERICA).------------------

---SEGUNDA.- "**LA PARTE DEUDORA**" se obliga a devolver a "**LA PARTE ACREEDORA**", el monto adeudado precisamente a los treinta días naturales posteriores a la fecha de la firma de la presente escritura, los cuales serán forzosos para "**LA PARTE ACREEDORA**", pudiendo "**LA PARTE DEUDORA**" hacer pagos parciales del capital en cualquier momento, dentro de la vigencia del plazo para el pago de la cantidad adeudada.--------------------------------------

---TERCERA.- En el presente Contrato de Reconocimiento de Adeudo, para el caso de que "**LA PARTE DEUDORA**" deje de pagar puntualmente en el término señalado la suma a que se obligó, y se causaran intereses moratorios a razón del cinco por ciento mensual, y serán computados a partir del día siguiente a la fecha en que el pago debió de realizarse y hasta la fecha en que se realice el pago total de lo adeudado.----------------------------------------------

---CUARTA.- "**LA PARTE ACREEDORA**" tendrá derecho a exigir el pago anticipado del importe total de las obligaciones asumidas por "**LA PARTE DEUDORA**", al vencimiento del plazo pactado en el presente reconocimiento de adeudo que por el presente instrumento se constituye o que a su cargo se deriven de este o de la ley.---------------------------------------------------------------

---QUINTA.- Si la "**LA PARTE DEUDORA**" diera lugar a juicio por ese solo hecho pagara a "**LA PARTE ACREEDORA**", la cantidad de $200,000.00 (doscientos mil Dólares 00/100 moneda de curso legal de los Estados Unidos de América) por concepto de gastos de cobranza judiciales y extrajudiciales que se origen con motivo de la recuperación del adeudo, mas accesorios generados.-------------------------------------------------------------------------------

---Asimismo responderá por los daños y perjuicios ocasionados a "**LA PARTE ACREEDORA**" que se originen por el incumplimiento-----------------------------------

---SEXTA.- "**LA PARTE DEUDORA**" conviene y acepta en que si "**LA PARTE ACREEDORA**", exigiere judicialmente el cumplimiento de las obligaciones a cargo de "**LA PARTE DEUDORA**", "**LA PARTE ACREEDORA**", podrá: ----------

---a).- Elegir la vía procesal que más le convenga.--------------------------------------
---b).- Señalar los bienes que deban embargarse sin sujetarse al orden establecido en los artículos quinientos treinta y seis, y quinientos treinta y siete del Código de Procedimientos Civiles para el Distrito Federal.------------------------
---c).- Designar depositario de los bienes que se embarguen y tomar inmediatamente posesión de ellos sin necesidad del otorgamiento de fianza.-------
---d).- Proceder al remate o venta del los bienes embargados, sirviendo como base de lo anterior, la cantidad que como valor comercial resulte de un avalúo que al efecto se practique.--------------------------------------------------------------------

RCONS0085

**LIC. LUIS AREVALO CONTRERAS**
CORREDOR PUBLICO No. 1 DEL ESTADO DE GUERRERO

3

---SEPTIMA.- Los gastos, derechos y honorarios que se causen con motivo de este instrumento, su registro y los de la cancelación de hipoteca en su caso, serán por cuenta exclusiva de "LA PARTE DEUDORA".---------------------------

---OCTAVA.- Las partes manifiestan que en la expresión de sus voluntades no existe, dolo o violencia, ni vicio alguno en la formación del consentimiento.--------

---NOVENA.- Para la interpretación y cumplimiento de los actos contenidos en el presente instrumento, las partes se someten expresamente a la jurisdicción de los tribunales del Distrito Federal, renunciando al fuero que por razón de domicilios presentes o futuros puedan corresponder,--------------------------------

---DECIMA.- Para los efectos del presente instrumento, las partes señalan como sus domicilios los siguientes:-----------------------------

---a) "LA PARTE ACREEDORA", el marcado con el número 141 de la Calle de Indiana, en la Colonia Nápoles, Delegación Benito Juárez de la Ciudad de México, Distrito Federal, con Código Postal número 03810-----------------------
---b) "LA PARTE DEUDORA", en el número 84 de la Calle de Río Sena, en la Colonia Cuauhtémoc, Delegación Cuauhtémoc de la Ciudad de México, Distrito Federal, con Código Postal número 06850-----------------------------------------
Mientras cualquiera de las partes no notifique a la otra, fehacientemente por escrito y con acuse de recibo, el cambio de su domicilio, las notificaciones judiciales y extrajudiciales surtirán plenamente sus efectos en el domicilio indicado en esta escritura o en el último notificado por escrito.----------------

---DECIMA PRIMERA.- REGISTRO PUBLICO.- Que los comparecientes manifiestan de manera expresa, que por así convenir a sus intereses el primer original del presente instrumento será inscrito en el Registro Público correspondiente por ellos mismos, liberando en consecuencia al suscrito Corredor Público de dicha responsabilidad.--------------------------------------

---DECIMA SEGUNDA.- CERTIFICACIONES.-
a).- Que en términos de lo dispuesto por los artículos quince y diez y nueve de la Ley Federal de Correduría Pública y treinta y dos de su reglamento en vigor, certifico que: Me aseguré de la identidad de los comparecientes con los documentos que en copia agrego al archivo de esta póliza:--------------------

b).- Me aseguré de su capacidad legal para contratar y obligarse, pues en términos de la fracción VI del artículo diez y nueve de la Ley Federal de Correduría Pública, en relación con el último párrafo del artículo treinta y dos de su Reglamento, a mi juicio tienen capacidad legal pues no encuentro en ellos manifestaciones evidentes de incapacidad natural y no tengo noticias de que estén sujetos a interdicción.--------------------------------------------

c).- Que les hice saber el derecho que tienen de leer personalmente el presente instrumento y que su contenido les sea explicado por el suscrito, ante lo cual me solicitaron que les leyera y explicara.-----------------------------------------

d).- Que les leí íntegramente el texto del presente instrumento, los oriente acerca de su contenido, y les explique su valor y consecuencias legales; y------------

e).- Que los comparecientes me expresaron su comprensión plena, consentimiento y conformidad, y en comprobación otorgaron en mi presencia este instrumento mediante la impresión de sus respectivas firmas puestas al día de su fecha momento en el que AUTORIZO EL PRESENTE INSTRUMENTO, para todos los efectos legales a que haya lugar.------------------------------------

---------------------------------------------------------------------------------
-----------------------------FIRMAS----------------------------------

Aviarrendamientos S.A. de C.V., por medio de su apoderado, Pablo Francisco Patricio González Ulloa y González----------------------------FIRMADO---

RCONS0086



1

*Servicios de Correduría Pública*
*Correadurías Públicas No.38 y 72*
*Plaza Distrito Federal*

PÓLIZA NÚMERO **DOS MIL TRESCIENTOS SESENTA Y CUATRO.**-----------

LIBRO DOS DE REGISTRO.--------------------------------------------------

En la Ciudad de México, Distrito Federal, a los veintiocho días del mes de octubre del dos mil once, **CARLOS ALFREDO ONGAY FLORES**, Corredor Público en ejercicio, titular de la Correduría Pública número setenta y dos de la Plaza del Distrito Federal, actuando con el carácter de Fedatario Público que me confiere la Ley Federal de Correduría Pública, y con fundamento en lo dispuesto por los artículos sexto fracción sexta del citado ordenamiento, cincuenta y tres fracción quinta y cincuenta y cuatro de su Reglamento, así como los artículos diez y ochenta y nueve de la Ley General de Sociedades Mercantiles, hago constar:------------------------------------------------

**EL CONTRATO DE SOCIEDAD ANÓNIMA DE CAPITAL VARIABLE** por el que se constituye **"AVIARRENDAMIENTOS", SOCIEDAD ANÓNIMA DE CAPITAL VARIABLE,** en que intervienen los señores **MARIA DEL CARMEN GONZÁLEZ SERRANO** y **PABLO FRANCISCO PATRICIO GONZÁLEZ ULLOA Y GONZÁLEZ** por su propio derecho, de conformidad con lo siguiente:-------------------------------

------------------------**A N T E C E D E N T E S**------------------------

ÚNICO.- **PERMISO DE LA SECRETARÍA DE RELACIONES EXTERIORES.**------------

Los comparecientes me exhiben, el permiso número 0940409 (CERO, NUEVE, CUATRO, CERO, CUATRO, CERO, NUEVE); expediente número 20110937789 (DOS, CERO, UNO, UNO, CERO, NUEVE, TRES, SIETE, SIETE, OCHO, NUEVE); folio número 111027091178 (UNO, UNO, UNO, CERO, DOS, SIETE, CERO, NUEVE, UNO, UNO, SIETE, OCHO), expedido por la Secretaría de Relaciones Exteriores el día veintisiete de octubre del dos mil once, por el que se autorizó se constituyera una **SOCIEDAD ANÓNIMA DE CAPITAL VARIABLE,** bajo la denominación de **"AVIARRENDAMIENTOS"**, dicho permiso lo agrego como documento integrante del instrumento al archivo de esta Póliza bajo la letra **"A"**, y en copia a los ejemplares que de la misma se expidan.---------------------------------------------------------

--------------Expuesto lo anterior, los comparecientes otorgan los siguientes:------------

----------------------------**ESTATUTOS SOCIALES**----------------------------

La sociedad habrá de regirse durante su existencia por estos estatutos, por lo dispuesto en la Ley General de Sociedades Mercantiles y en lo omiso, por lo dispuesto en el Código de Comercio, las demás leyes mercantiles y, en su caso, la Legislación Civil Federal.--------------------------------------------------------------

------------------------------**CAPITULO PRIMERO**------------------------------

----------------**DENOMINACIÓN, DOMICILIO, OBJETO,**----------------

------------------**DURACIÓN Y NACIONALIDAD.**------------------

ARTÍCULO PRIMERO.- <u>DENOMINACIÓN.</u>--------------------------------

RCONS0087

2

*Servicios de Correduría Pública*
*Corredurías Públicas No. 38 y 72*
*Plaza Distrito Federal*

La denominación de la sociedad es **"AVIARRENDAMIENTOS"**, que irá seguida siempre por las palabras **"SOCIEDAD ANÓNIMA DE CAPITAL VARIABLE"**, o de su abreviatura, **"S.A. DE C.V."**.----------------------------------------------

**ARTÍCULO SEGUNDO.- DOMICILIO.**------------------------------------------------------

El domicilio de la sociedad será en esta Ciudad de México, Distrito Federal, pero podrá establecer sucursales y agencias en cualquier parte de la República Mexicana y del Extranjero, y designar domicilios convencionales en los contratos que otorgue.------

**ARTÍCULO TERCERO.- OBJETO SOCIAL.**------------------------------------------------

Los objetos de esta sociedad son:-------------------------------------------------------------

**I.-** Prestación del servicio público de transporte aéreo de pasajeros, de carga , Express, correo, nacional e internacional, mediante vuelos regulares o de flotamiento según lo dispongan las leyes aplicables.--------------------------------------------------------

**II.-** Adquirir en propiedad o posesión por cualquier título legal de todo tipo de aeronaves comerciales o privadas, ya sea con matrícula nacional o extranjera.----------

**III.-** La adquisición en propiedad o posesión por cualquier título legal de todo tipo de refacciones, herramientas, componentes y partes que sean necesarias para el debido mantenimiento y funcionamiento de aeronaves comerciales y privadas.------------------

**IV.-** La reparación y mantenimiento por cuenta propia o de terceros de todo tipo de aeronaves, ya sean comerciales o privadas, dentro o fuera del territorio nacional.-------

**V.-** La adquisición en propiedad o posesión de todo tipo de inmuebles y facilidades aeroportuarias, ya se mediante compra o arrendamiento u otro título legal, dentro y fuera del territorio nacional para el debido ejercicio del objeto social.---------------------

**VI.-** El entrenamiento o adiestramiento de todo el personal que sea necesario, ya sea por cuenta propia o de terceros, para el debido ejercicio del objeto social, ya sea dentro o fuera del territorio nacional.--------------------------------------------------------------------

**VII.-** La adquisición y operación de cualquier título legal de equipos, así como la contratación de todo tipo de servicios relacionados con el transporte aéreo.---------------

**VIII.-** Participar en el capital social de todo tipo de sociedades mercantiles, civiles o asociaciones civiles, mediante la suscripción o adquisición de todo tipo de partes sociales, certificados de aportación o acciones que representen el capital social de dichas entidades.----------------------------------------------------------------------------------

**IX.-** Participar en toda clase de convenios de asistencia técnica y transferencia de tecnología en sociedades mexicanas o extranjeras, ya sea como propietaria o licenciataria, así como adquirir los derechos de toda clase de marcas, nombres comerciales, o cualquiera otros derechos de propiedad industrial o intelectual.----------

**X.-** Otorgar y recibir todo tipo de créditos o prestamos con garantías de todo genero o si n ellas, la emisión de obligaciones, bonos, pagares o cualquier instrumento o título valor de deuda, así como garantizar obligaciones de terceros.------------------------------

RCONS0088



3



**XI.-** Comprar o cualquier otra forma adquirir, vender, dar o tomar en uso o arrendamiento o subarrendamiento, o en su caso, en comodato y la celebración de toda clase de actos jurídicos que versen sobre bienes inmuebles ubicados dentro o fuera del territorio nacional.-------------------------------------------------------------

**XII.-** En general, la realización y ejecución de todos los actos y contratos lícitos que directa o indirectamente se relacionen con el objeto social.------------------------------

El contenido semántico de los objetivos mencionados es en forma enunciativa, nunca limitativa, por lo que en consecuencia la sociedad podrá además:---------------------------

**a).-** Ejecutar toda clase de actos de comercio, pudiendo comprar y vender, importar y exportar toda clase de artículos y mercancías, así como la prestación de toda clase de servicios.-------------------------------------------------------------------------------

**b).-** Contratar activa o pasivamente toda clase de prestaciones de servicios, celebrar contratos, convenios, así como adquirir por cualquier título patentes, marcas industriales, nombres comerciales, opciones y preferencias, derechos de propiedad literaria, industrial, artística o concesiones.-----------------------------------------------

**c).-** Formar parte de otras sociedades.--------------------------------------------------

**d).-** Realizar contratos y operaciones de crédito, arrendamiento financiero y factoraje financiero en los términos previstos y autorizados por la Ley General de Títulos y Operaciones de Crédito, y demás disposiciones legales aplicables.-----------------------

**e).-** Emitir, girar, aceptar, avalar, descontar y suscribir toda clase de títulos de crédito, sin que se ubique en los supuestos restrictivos de la Ley del Mercado de Valores.------

**f).-** Adquirir obligaciones de toda clase de empresas o sociedades y entrar en comandita, sin que se ubiquen en los supuestos restrictivos de la Ley del Mercado de Valores.---------------------------------------------------------------------------------

**g).-** Aceptar o conferir toda clase de comisiones mercantiles y mandatos, obrando en su propio nombre o en nombre del comitente o mandante.------------------------------------

**h).-** Adquirir por cualquier título, poseer y explotar toda clase de bienes muebles, derechos reales y personales, así como los inmuebles que sean necesarios para su objeto.------------------------------------------------------------------------------------

**i).-** Contratar al personal necesario para el cumplimiento de los fines sociales o delegar en una o varias personas el cumplimiento de mandatos, comisiones, servicios y demás actividades propias de su objeto.-------------------------------------------------

**j).-** La sociedad podrá otorgar avales y obligarse solidariamente por terceros, así como constituir garantías a favor de terceros.----------------------------------------------------

**k).-** En general, la realización y emisiones de toda clase de actos, operaciones, convenios, contratos y títulos ya sean civiles, mercantiles o de cualquier otra naturaleza.------------------------------------------------------------------------------

**ARTÍCULO CUARTO.- _DURACIÓN_.**----------------------------------------------

La duración de la sociedad será de cincuenta años, a partir de la fecha de esta póliza.-

RCONS0089

Exhibit 17, page 39

4



Servicios de Correduría Pública
Correduría Pública No. 38 y 72
Plaza Distrito Federal

**ARTÍCULO QUINTO.- NACIONALIDAD Y CLÁUSULA DE EXTRANJERÍA.**----------------

La sociedad será de nacionalidad mexicana, y se estipula que los accionistas extranjeros actuales o futuros de la sociedad se obligan formalmente con la Secretaría de Relaciones Exteriores a considerarse como nacionales respecto a las acciones de la sociedad que adquieran o de que sean titulares, así como de los bienes, derechos, concesiones, participaciones o intereses de que la sociedad sea titular o bien de los derechos y obligaciones que deriven de los contratos que la sociedad celebre con autoridades mexicanas y en no invocar, por lo mismo, la protección de sus gobiernos, bajo la pena, en caso contrario, de perder en beneficio de la Nación las participaciones sociales que hubieren adquirido.------------------------------------------------------------

----------------------------------------CAPÍTULO SEGUNDO---------------------------------
----------------------------------CAPITAL SOCIAL Y ACCIONES----------------------------

**ARTÍCULO SEXTO.- CAPITAL SOCIAL.**-----------------------------------------------------

A.- La porción fija del capital social sin derecho a retiro, es la cantidad de **DOSCIENTOS CINCUENTA MIL PESOS, MONEDA NACIONAL** y estará representada por **DOSCIENTOS CINCUENTA** acciones nominativas, con valor nominal de **MIL PESOS, MONEDA NACIONAL**, cada una.------------------------------------------------------

B.- La porción variable del capital social será ilimitada y estará representada por acciones nominativas con valor nominal de **MIL PESOS, MONEDA NACIONAL**, cada una.--------------------------------------------------------------------------------------------------

C.- Todas las acciones conferirán iguales derechos y obligaciones a sus propietarios.----

**ARTÍCULO SÉPTIMO.- SERIES DE ACCIONES.**----------------------------------------

A.- Las acciones representativas del capital social estarán divididas en dos series:------

Acciones de la Serie A que constituirán el capital mínimo fijo.-------------------------------

Acciones de la Serie B que constituirán el capital variable.----------------------------------

Tanto las acciones de la porción fija como de la variable del capital social, podrán ser adquiridas, suscritas, poseídas y traspasadas a mexicanos o extranjeros.-----------------

Cuando las respectivas adquisiciones de participación en el capital social sean realizadas por extranjeros, su adquisición deberá estar ajustada a lo previsto en la Ley de Inversión Extranjera, y en especial a lo contenido en el artículo treinta y cuatro de su Reglamento, y de ser necesario, la adquisición deberá ser autorizada por la autoridad competente.--------------------------------------------------------------------------

**ARTÍCULO OCTAVO.- EXPEDICIÓN DE TÍTULOS.**-------------------------------------

Los títulos de acciones se expedirán de conformidad con los requisitos establecidos en la Ley General de Sociedades Mercantiles y deberán contener las disposiciones del Artículo Quinto de estos estatutos.----------------------------------------------------------------

Las acciones estarán representadas por títulos impresos, numerados progresivamente, mismos que deberán ser firmados por dos consejeros o por el Administrador Único en su caso.-----------------------------------------------------------------------------------------------------

RCONS0090



5

*Servicios de Correduría Pública*
*Corredurías Públicas No.38 y 72*
*Plaza Distrito Federal*

ARTÍCULO NOVENO.- PROPIEDAD Y TRASPASO DE ACCIONES.----------------------

A.- La propiedad de las acciones se traspasará mediante endoso del título o certificado respectivo o por cualesquier otro medio legal.-------------------------------------------

La sociedad llevará un Libro de Registro de Acciones nominativas y en él se anotarán los nombres y domicilios de los accionistas, expresando las características y demás particularidades de los títulos de las acciones, los cambios y transmisiones de los mismos.----------------------------------------------------------------------------------------

Cualesquier suscripción, adquisición o traspaso de acciones serán reconocidos por la sociedad, únicamente cuando hayan sido inscritas en el libro de registro de acciones.------------------------------------------------------------------------------------------

Los certificados de acciones que hubieren sido traspasados por medio distinto del endoso, se entregarán a la sociedad para su cancelación y para la expedición de nuevos certificados a favor del cesionario.---------------------------------------------------

B.- Los accionistas de la sociedad, gozarán del derecho del tanto, en proporción al número de acciones de que sean tenedores, para adquirir las acciones que algún otro accionista desee vender o transferir a terceros por cualquier razón.-----------------------

Al efecto, el accionista que desee vender o en cualquier otra forma transmitir acciones de su propiedad, deberá notificarlo por escrito al presidente del consejo de administración o en su caso al Administrador único, con copia a los demás accionistas, acompañando la oferta y la documentación completa que establezca todos los demás términos y condiciones aplicables a la operación.-----------------------

El presidente o el secretario del consejo, o en su defecto el Administrador único, notificará a los demás accionistas en forma fehaciente dentro de los quince días siguientes, la solicitud del accionista que desee vender sus acciones y los términos y condiciones de la venta.----------------------------------------------------------------------

C.- Los demás accionistas tendrán el derecho para adquirir tales acciones durante un plazo de quina días naturales siguientes al recibo de la notificación que al efecto haga el presidente o el secretario del consejo de administración, el secretario o en su caso el administrador único, a cada uno de ellos en forma fehaciente.--------------------------

El Derecho del tanto deberá ser ejercitado mediante notificación por escrito del accionista de que se trate al presidente o, secretario del consejo o administrador único, también en forma fehaciente.----------------------------------------------------------

D.- En caso de que no se hubiere ejercitado el derecho del tanto en los términos mencionados, o solo se hubiere ejercitado parcialmente, el accionista vendedor podrá vender o transmitir sus acciones al tercero oferente si lo hubiera, o cualquier otra persona, en el entendido de que la venta o transmisión deberá hacerse como mínimo en los mismos términos y condiciones que los especificados en la oferta y, en ningún caso, a precio inferior del precio de mercado, acreditando lo anterior mediante documento público.------------------------------------------------------------------------------

RCONS0091

Exhibit 17, page 41

6

*Servicios de Correduría Pública*
*Corredurías Públicas No. 38 y 72*
*Plaza Distrito Federal*

E.- En el caso de fallecimiento de un accionista, la sucesión testamentaria será la titular de las acciones, hasta que no se resuelva dicha sucesión y los herederos hayan sido adjudicados.------------------------------------------------------------------

F.- Los traspasos de acciones que se efectúen sin seguir el procedimiento señalado en este artículo no producirán efecto alguno respecto de la sociedad y no deberán ser inscritos en el libro de registro de acciones excepto cuando exista donación de las acciones por parte de un titular, siempre y cuando sea a su cónyuge o en línea recta consanguínea sin limitación de grado, y notifique al Consejo de Administración, o a Administrador Único, en su caso, de dicha donación.------------------------------

G.- Todos los traspasos de acciones se considerarán incondicionales y sin reserva respecto a la sociedad.------------------------------------------------------------------

Por lo tanto, la persona que adquiera una o más acciones asumirá todos los derechos y obligaciones del cedente en relación con la sociedad.------------------------------

La posesión de una o más acciones significa la aceptación por parte del titular de las disposiciones de esta póliza constitutiva, de las reformas o modificaciones que se le hicieren y de las resoluciones tomadas en asambleas de accionistas y en juntas del consejo de administración, dentro de la esfera de sus facultades respectivas.-----------

**ARTÍCULO DÉCIMO.- <u>ACCIONES INDIVISIBLES Y EXTRAVIADAS.</u>** --------------------

A.- La sociedad considerará cada acción como única e indivisible.------------------------

Si una acción perteneciere a dos o más personas, éstas deberán nombrar un representante común, quien será el único que tendrá derecho de asistir y votar a las asambleas de accionistas.------------------------------------------------------------------

En caso de omitirse el nombramiento de representante común, la persona cuyo nombre aparezca primero en el libro de registro de acciones será considerada el representante común.---------------------------------------------------------------------

B.- En caso de pérdida, destrucción o robo de uno o más títulos de acciones, se seguirá el procedimiento establecido en los artículos cuarenta y cuatro y siguientes de la Ley General de Títulos y Operaciones de Crédito.----------------------------------

**ARTÍCULO DÉCIMO PRIMERO.- <u>AUMENTOS DEL CAPITAL SOCIAL.</u>** ------------------

A. Cualquier aumento en la porción variable del capital social se llevará a cabo mediante resolución de una asamblea ordinaria de accionistas.------------------------

Cualquier aumento en la porción fija del capital sin derecho a retiro, requerirá la aprobación de una asamblea extraordinaria de accionistas.--------------------------------

No se autorizará ningún aumento a menos que las acciones que representen el aumento inmediato anterior hayan sido totalmente suscritas y pagadas.-----------------

B.- Todos los aumentos y reducciones en el capital social se inscribirán en el libro de registro de variaciones de capital que la sociedad llevará al efecto.------------------------

C.- Al tomar la resolución correspondiente, la asamblea de accionistas que autorice el aumento, determinará los términos y condiciones para llevarlo a cabo.-----------------

RCONS0092

Exhibit 17, page 42



7

*Servicios de Correduría Pública*
*Corredurías Públicas No.38 y 72*
*Plaza Distrito Federal*

Los accionistas tendrán derecho preferente para suscribir aumentos en el capital social, ya sea fijo o variable, en proporción al número de acciones de que cada uno sea propietario.------------------------------------------------------------------------------------

Tratándose de capital fijo, el derecho preferente deberá ejercitarse dentro de un plazo de quince días contados a partir de la fecha en que se publique el aviso de aumento del capital social en el Diario Oficial o en un periódico de mayor circulación del domicilio de la sociedad, o de la fecha de la asamblea, si todos los accionistas estuvieran presentes o representados en la misma.---------------------------------------

Las acciones remanentes que queden sin suscribir podrán ser suscritas únicamente por la persona o personas que designe la asamblea de accionistas o en su caso el consejo de administración o el administrador único.----------------------------------------

D.- Los aumentos de capital en su parte variable, podrán realizarse sin que impliquen reformas a los Estatutos Sociales, ni estén sujetos a ninguna otra formalidad que la aprobación por la Asamblea Ordinaria, la cuál podrá Formalizarse ante Corredor Público o diverso fedatario autorizado para ello; su inscripción en el Registro Público de Comercio, será potestativa.-------------------------------------------------------------------

ARTÍCULO DÉCIMO SEGUNDO.- REDUCCIONES DEL CAPITAL SOCIAL.--------------

Las reducciones del capital social que afecten la porción fija deberán ser aprobadas por una asamblea extraordinaria de accionistas.------------------------------------------

Las reducciones del capital social que afecten la porción variable requerirán únicamente la resolución de una asamblea ordinaria de accionistas.----------------------

Toda reducción del Capital Variable, siempre que éste último no sea disminuido a menos del mínimo fijo, podrá realizarse sin más formalidades que una resolución tomada al efecto por una asamblea general ordinaria de accionistas y en cumplimiento de las estipulaciones conducentes del capítulo octavo de la Ley General de Sociedades Mercantiles.----------------------------------------------------------------------------------------

Salvo lo que dispone el artículo doscientos seis de la Ley General de Sociedades Mercantiles, ningún accionista tendrá derecho a retirar sus aportaciones, ya sea parcial o totalmente, sin previo acuerdo de la asamblea de accionistas y en los términos de Ley.---------------------------------------------------------------------------------

Todas las reducciones serán por acciones íntegras y de acuerdo a lo siguiente:----------

A.- Tan pronto como se decrete una reducción de capital mínimo fijo, la resolución deberá publicarse por tres veces en el periódico oficial de la entidad federativa en la que tenga su domicilio la sociedad con intervalos de diez días, momento en que los accionistas podrán solicitar la amortización de sus acciones en proporción a la disminución decretada; tal derecho deberá ejercitarse dentro de los quince días siguientes a la fecha de la última publicación.--------------------------------------------

B.- Si dentro del término establecido hubiere alguna petición de reembolso por un número de acciones que correspondan al capital que va a reducirse, se reembolsará a

RCONS0093

8

*Servicios de Correduría Pública*
*Corredurías Públicas No. 38 y 72*
*Plaza Distrito Federal*

los accionistas que lo soliciten, en la fecha en que se hubiere determinado.------------

C.- Si las solicitudes de reembolso excedieren del capital amortizable, el monto de la reducción se distribuirá para su amortización entre los solicitantes, en proporción al número de acciones que cada uno haya ofrecido para su amortización y se procederá al reembolso en la fecha que se hubiere determinado.-------------------------------------

D.- Si las solicitudes hechas no completaren el número de acciones que deberían ser amortizadas, se reembolsarán las acciones de los accionistas que así lo solicitaren y se designará por sorteo ante Corredor Público, el resto de las acciones que deban amortizarse hasta completar el monto en que se haya acordado la disminución del capital.-----------------------------------------------------------------------------------------

En este último caso, las amortizaciones no surtirán efecto sino hasta el fin del ejercicio que esté corriendo si el sorteo se hubiere efectuado antes del último trimestre de dicho ejercicio, y hasta el fin del ejercicio siguiente, si se hiciere después.-------------

En caso de reducción del capital social, siempre y cuando no hayan transcurrido más de dos años desde la fecha de su suscripción y pago, no se amortizarán las acciones pagadas en especie, en todo o en parte, a menos que los titulares de dichas acciones garanticen el valor de los bienes aportados en pago de las mismas, en los términos y condiciones que determine la propia asamblea de accionistas que apruebe dicha reducción.------------------------------------------------------------------------------------------

-------------------------------------CAPITULO TERCERO--------------------------------

-------------------ASAMBLEAS GENERALES DE ACCIONISTAS------------------------

ARTÍCULO DÉCIMO TERCERO.- <u>ASAMBLEAS DE ACCIONISTAS.</u>----------------------

A.- La suprema autoridad radica en las asambleas de accionistas.------------------------

Estas podrán ser ordinarias y extraordinarias y se celebrarán por regla general en el domicilio de la sociedad, salvo lo dispuesto por estos estatutos y la Ley General de Sociedades Mercantiles.------------------------------------------------------------------------

B.- Las asambleas ordinarias de accionistas se celebrarán en cualquier tiempo cuando sean convocadas para ello, pero los accionistas deberán celebrar una asamblea anual ordinaria dentro de los cuatro meses siguientes a la terminación del ejercicio social.---

Las demás asambleas ordinarias o extraordinarias de accionistas podrán ser celebradas en cualquier tiempo cuando hayan sido convocadas en la forma en que se establece en estos estatutos.-------------------------------------------------------------------

Todas las Asambleas deberán celebrarse en el domicilio de la sociedad, excepto en caso fortuito o de fuerza mayor, o previo acuerdo y conformidad de los accionistas en cuyo caso podrán reunirse en cualquiera otro lugar.---------------------------------------

C.- Las asambleas de accionistas serán convocadas por el consejo de administración, o el presidente del consejo, o el Administrador Único, o el o los comisarios en la forma y términos prevista por la Ley General de Sociedades Mercantiles.------------------------

La convocatoria deberá incluir el orden del día, así como la fecha, lugar, y hora en que

RCONS0094

9

**_Servicios de Correduría Pública_**
_Correic Correduría Pública No.38 y 72_
_Plaza Distrito Federal_

habrá de celebrarse la asamblea.------------------------------------------------------------

Las convocatorias deberán publicarse en el Diario Oficial de la Federación, en la Gaceta o Periódico Oficial del domicilio de la sociedad, o en uno de los periódicos de mayor circulación del domicilio de la sociedad, por lo menos quince días antes de la fecha señalada para la celebración de la asamblea.------------------------------------------

Las asambleas de accionistas considerarán únicamente los asuntos incluidos en la convocatoria respectiva.--------------------------------------------------------------------

No se requerirá convocatoria cuando todos los accionistas estén presentes o representados al declararse instalada la asamblea.-------------------------------------------

Instalada legalmente una asamblea, si por falta de tiempo no pudiere resolverse todos los asuntos considerados en el orden del día, podrá suspenderse para reanudarla al siguiente día hábil, sin necesidad de nueva convocatoria.---------------------------------

D.- Las asambleas ordinarias podrán resolver toda clase de asuntos, con excepción de los siguientes que quedan reservados para las asambleas extraordinarias:-------------

I).- Prórroga de la duración de la sociedad;--------------------------------------------------

II).- Disolución anticipada de la sociedad;---------------------------------------------------

III).- Aumento o reducción de la porción fija del capital social;------------------------------

IV).- Cambio, reforma o modificación del objeto de la sociedad;-----------------------------

V).- Cambio de nacionalidad de la sociedad;------------------------------------------------

VI).- Transformación de la sociedad;-----------------------------------------------------------

VII).- Fusión con otra sociedad;.---------------------------------------------------------------

VIII).- Escisión de la sociedad;.----------------------------------------------------------------

IX).- Emisión de acciones privilegiadas;------------------------------------------------------

X).- Amortización por parte de la sociedad de acciones de la porción fija del capital social y emisión de acciones de goce;-----------------------------------------------------------

XII).- Emisión de bonos;-------------------------------------------------------------------------

XII).- Cualquier otra modificación o reforma a los Estatutos Sociales.---------------------

E.- Las asambleas ordinarias de accionistas se considerarán legalmente constituidas cuando esté representado por lo menos el cincuenta y uno por ciento de las acciones del capital social, si se celebra en virtud de primera o ulterior convocatoria.--------------

Las asambleas extraordinarias de accionistas se considerarán legalmente constituidas cuando esté presente o representado cuando menos el setenta y cinco por ciento de las acciones del capital social, si se celebra en virtud de primera convocatoria, o el cincuenta y uno por ciento si se celebra en ulterior convocatoria.-----------------------

F.- Las resoluciones de las asambleas ordinarias o extraordinarias de accionistas serán válidas cuando sean tomadas por el voto favorable de los accionistas que representen el setenta y cinco por ciento de las acciones presentes del capital social.---

G.- En las asambleas de accionistas, los miembros del consejo de administración o el Administrador Único, no podrán votar para aprobar sus cuentas, ni en relación con

RCONS0095

Exhibit 17, page 45

10



Servicios de Correduría Pública
Corredurías Públicas No.38 y 72
Plaza Distrito Federal

cualquier asunto que afecte su responsabilidad personal; en su caso sus acciones deberán comparecer representadas por un tercero, quien deberá manifestar al momento de externar su votación que la misma la realiza a su leal saber y entender.---

H.- Sólo las personas inscritas como accionistas en el libro de registro de acciones tendrán derecho de comparecer o de ser representadas en las asambleas de accionistas.------

El libro de registro de acciones se cerrará el día anterior a la celebración de una asamblea y se volverá a abrir al término de la asamblea, por lo tanto, no se registrará ninguna de las operaciones con respecto a las acciones que deban inscribirse en dicho libro conforme a la Ley y a estos estatutos, durante el plazo en que esté cerrado el libro.------

I.- Los accionistas podrán votar personalmente o por medio de un apoderado nombrado mediante carta poder simple, y cada accionista o, en su caso su representante, tendrá derecho a un voto por cada acción.------

La carta poder podrá ser conferida por cablegrama, telefax, correo electrónico, o utilizando cualquier otro medio tecnológico, y posteriormente confirmada por carta tradicional.------

Los miembros del consejo de administración, el Administrador Único, el Director o Gerente general y demás funcionarios, inclusive los comisarios podrán, en su caso, representar sus propias acciones, pero no podrán representar a ningún otro accionista en ninguna asamblea.------

J.- Al iniciarse una asamblea de accionistas el funcionario que presida nombrará uno o dos escrutadores, quiénes certificarán qué accionistas están presentes y el número de acciones representadas.------

Los accionistas decidirán acerca de las objeciones que se presenten respecto de la lista de asistencia o de la capacidad legal de las personas presentes, una vez que se haya escuchado al secretario.------

K.- Los accionistas de la sociedad podrán tomar resoluciones fuera de asamblea, siempre y cuando dichas resoluciones sean aprobadas por unanimidad de votos de todos los accionistas con derecho a voto y deberán confirmarse por escrito, donde deberán constar las firmas de todos los accionistas con derecho a voto.------

Las resoluciones a que se refiere el párrafo anterior tendrán, para todos los efectos legales, la misma validez que si hubieren sido tomadas en asamblea general ordinaria o extraordinaria de accionistas.------

ARTÍCULO DÉCIMO CUARTO.-  ACTAS.------

A.- De todas las asambleas, deberá levantarse un acta.------

B.- Las actas de asambleas de accionistas, ya sean ordinarias o extraordinarias, así como las de aquellas que no se celebren por falta de quórum, serán firmadas cuando menos por el funcionario que presida, por el secretario y por los comisarios que estén

RCONS0096



11

*Servicios de Correduría Pública*
*Corredurías Públicas No.38 y 72*
*Plaza Distrito Federal*

presentes.------------------------------------------------------------------

C.- Las actas de asambleas de accionistas se asentarán en un libro de actas que será llevado por el secretario, junto con un duplicado de las actas.------------------------

Las actas de asambleas cuando menos, deberán contener: La fecha, el lugar donde se celebra, el nombre de los accionistas presentes o invitados, el nombre de las personas que por decisión de los presentes fungirán como presidente, secretario y escrutadores, el nombre del comisario si está presente, la lista de accionistas presentes o representados y cómo se acreditó tal representación y los números de acciones que cada uno represente asi como el número de votos de que cada uno puede hacer uso, el resultado del escrutinio y la declaración de estar válidamente instalada la asamblea por existir el quórum de presencia estatutario para la asamblea y el hecho de haber o no convocatoria, el orden del día de los puntos a desahogar, el desahogo de los diversos puntos a tratar y sus resoluciones, la designación de un delegado que comparezca, en su caso, ante fedatario público a solicitar la formalización del acta, la hora de la conclusión de la asamblea y el hecho de haber sido leída y firmada.---------

En el caso de asambleas de accionistas, se anexarán si los hubiere la lista de asistencia de los accionistas presentes certificada por los escrutadores, las cartas poder, ejemplares de la publicación de la convocatoria y los informes, cuentas de la sociedad y demás documentos presentados a la asamblea.------------------------------

D.- Cuando el acta de una asamblea no pueda asentarse en el libro respectivo, dicha acta se formalizará ante Corredor Público o diverso fedatario público autorizado para ello.------------------------------------------------------------------------------

Las actas de asambleas extraordinarias de accionistas se formalizarán y se inscribirán en el Registro Público de Comercio.-------------------------------------------------

----------------------------------CAPITULO CUARTO----------------------------
-----------------------DE LA REPRESENTACIÓN Y ADMINISTRACIÓN--------------

ARTÍCULO DÉCIMO QUINTO.- <u>REPRESENTACIÓN LEGAL DE LA SOCIEDAD.</u>-------

En términos de lo dispuesto por el artículo diez de la Ley General de Sociedades Mercantiles, en relación con el artículo veintisiete del Código Civil Federal, de aplicación supletoria a la materia mercantil, la representación orgánica de la sociedad corresponderá a la asamblea, a su administrador único, al consejo de administración, y a sus directores, subdirectores, gerentes, subgerentes, apoderados legales, ya sean generales o especiales y demás mandatarios temporales en ese orden jerárquico, quienes podrán realizar todas las operaciones inherentes al objeto de la sociedad, y cualquier facultad de representación legal, ya sea general o especial que se les hubiera otorgado en relación con las contenidas en los artículos décimo octavo y décimo noveno de los estatutos sociales respectivamente.--------------------------------------

Los apoderados legales, ya sean generales o especiales, y demás mandatarios temporales, no adquirirán responsabilidad personal por los actos de manejo y

RCONS0097

12

Servicios de Correduría Pública
Corredurías Públicas No.38 U.72
Plaza Distrito Federal

administración de la sociedad, salvo los realizados en ejercicio del poder o mandato.---
Para que surtan efecto los poderes que otorgue la sociedad mediante acuerdo de la
asamblea o del consejo de administración, bastará con la formalización ante Corredor
Público o diverso fedatario autorizado para ello, de la parte del acta en que conste el
acuerdo relativo a su otorgamiento, debidamente firmada por quienes actuaron como
presidente y secretario de la asamblea o de la junta del consejo de administración
según corresponda, quienes deberán firmar el instrumento o en su defecto, lo podrá
firmar el delegado especialmente designado para ello en substitución de los
anteriores.-------------------------------------------------------------------------------------
El Corredor Público o diverso fedatario autorizado para ello hará constar en el
instrumento correspondiente mediante la relación, inserción o el agregado al archivo
de las certificaciones en lo conducente de los documentos que al efecto se le exhiban,
la denominación o razón social de la sociedad, su domicilio, duración, importe del
capital social y objeto de la misma, así como las facultades que conforme a sus
estatutos le correspondan al órgano que acordó el otorgamiento del poder y, en su
caso, la designación de los miembros del consejo de administración.----------------------
Si la sociedad otorgare el poder por conducto de algún consejero, su administrador
único, o cualesquiera de los directores, subdirectores, gerentes, subgerentes,
apoderados legales, ya sean generales o especiales y demás mandatarios temporales,
en adición a la relación o inserción indicadas en el párrafo anterior, se deberá dejar
acreditado que dicha persona tiene las facultades para ello.---------------------------------
ARTÍCULO DÉCIMO SEXTO.- DE LA ADMINISTRACIÓN.----------------------------------
A.- En términos del artículo ciento cuarenta y dos de la Ley General de Sociedades
Mercantiles, la  dirección y el manejo de todos los asuntos, objeto, bienes e intereses
de la sociedad estarán encomendados a un administrador único o a un consejo de
administración compuesto por el número de consejeros designados por una asamblea
de accionistas, pero en ningún caso será menor de dos, pudiendo nombrar a sus
respectivos suplentes, en su caso.----------------------------------------------------------
Los consejeros suplentes podrán asistir a las juntas en substitución de cualquier
consejero propietario y tendrán el derecho de votar en su ausencia.------------------------
Los consejeros y sus suplentes podrán no ser accionistas.-----------------------------------
Los consejeros suplentes gozarán en su caso de las mismas facultades que los
consejeros propietarios.----------------------------------------------------------------------
B.- Los consejeros o el administrador único, en su caso, serán nombrados por un
término indefinido y continuarán en su cargo hasta que sus sucesores hayan sido
nombrados y hayan tomado posesión de sus cargos.------------------------------------------
C.- Cualquier consejero propietario o suplente podrá ser removido de su cargo en
cualquier momento, con o sin causa, mediante resolución de una asamblea ordinaria
de accionistas.-------------------------------------------------------------------------------

RCONS0098

13

**Servicios de Correduría Pública**
*Correduría Públicas No.38 y 72*
*Plaza Distrito Federal*

D.- Solo en el caso de que los consejeros o administrador único y comisarios sean accionistas en la sociedad, no será necesario prestar garantía para asegurar las responsabilidades que pudieran contraer en el desempeño de sus encargos y, en los demás casos en que la ley prevenga el otorgamiento de caución o garantía, la asamblea determinará lo procedente.-----------------------

E.- Los miembros del consejo de administración o el administrador único, en su caso, no incurrirán en responsabilidad personal alguna con las personas con quiénes contraten a nombre de la sociedad y ante ésta, serán responsables únicamente por el desempeño de sus obligaciones en los términos de estos estatutos.-----------------

F.- Tratándose de Consejo de Administración, la minoría que represente un veinticinco por ciento del capital social, tendrá el derecho de designar a un consejero propietario y a un suplente, en su caso.-----------------------

La minoría mencionada será del diez por ciento del capital social, si la sociedad inscribe sus acciones en Bolsa de Valores.-----------------------

G.- La asamblea al momento de la designación del Consejo de Administración designará de entre sus miembros como mínimo, a un presidente y un tesorero, y también podrá designar a un secretario el cual podrá ser o no miembro del Consejo.---

En caso de que la asamblea omitiera la designación a que se refiere el párrafo que antecede, el Consejo de Administración deberá sesionar inmediatamente y elegirá de entre sus miembros a las personas que deberán fungir como presidente y tesorero, y podrán designar igualmente a un secretario el cuál podrá ser o no miembro del Consejo.-----------------------

En todo caso, si se omitiera por más de un día la sesión a que se refiere el párrafo antecede, será presidente del consejo la persona cuyo nombre aparezca primero, tesorero el segundo y así sucesivamente.-----------------------

El Consejo o el Administrador Único, en su caso, también nombrará a cualesquiera otros funcionarios, delegados y comités que considere convenientes para el manejo adecuado de los asuntos de la sociedad, los cuales serán integrados por personas quiénes podrán ser o no miembros del Consejo.-----------------------

La misma persona podrá ocupar más de un puesto, siempre y cuando dichos puestos sean compatibles.-----------------------

Cualquier funcionario puede ser removido de su puesto en cualquier momento, con o sin causa, por resolución de la Asamblea, del Consejo o del Administrador Único.------

Cualquier vacante podrá cubrirse por resolución de la asamblea, del Consejo, por el Administrador Único, y en términos de ley por el comisario, en su caso.-----------------

ARTÍCULO DÉCIMO SÉPTIMO.- DE LAS SESIONES DEL CONSEJO.-----------------

A.- El consejo de administración se reunirá siempre que sea necesario, a convocatoria del presidente, del comisario, o a petición escrita de la mayoría de los consejeros en las oficinas de la sociedad, o bien, en cualquier otro lugar, siempre que en éste último

14



*Servicios de Correduría Pública*
Correduría Pública No. 38 U72
Plaza, Distrito Federal

caso, se obtenga la conformidad de la mayoría de los consejeros;-------------------------

B.- Para que una sesión del consejo de administración pueda celebrarse válidamente se requerirá la asistencia de la mayoría de los consejeros propietarios o de sus respectivos suplentes y las resoluciones serán tomadas por mayoría de votos de los presentes.-------------------------------------------------------------------------------------

El presidente tendrá voto de calidad además del suyo propio como consejero, en caso de empate;---------------------------------------------------------------------------------------

C.- El presidente del consejo de administración tendrá la representación del mismo y el consejo podrá nombrar de entre sus miembros a un delegado para la ejecución de actos concretos;-----------------------------------------------------------------------------------

D.- De todas las sesiones del consejo de administración se deberá levantar por el secretario, en cada caso, un acta de la sesión, en un libro ordinario foliado progresivamente que se denominará: "libro de actas de sesiones de consejo" y dichas actas deberán ser firmadas invariablemente por los consejeros que hayan asistido;-----

Las actas de las sesiones del consejo que por cualquier razón no pudieran asentarse en el libro a que se refiere el párrafo que antecede, deberán ser formalizadas ante fedatario público.-----------------------------------------------------------------------------------

E.- Los consejeros podrán tomar resoluciones fuera de sesión de consejo, siempre que éstas sean tomadas por unanimidad de sus miembros y sean posteriormente confirmadas por escrito con sus firmas y el secretario asentará tal situación en un acta levantada exprofeso.-----------------------------------------------------------------------

Las mencionadas resoluciones celebradas fuera de sesión ordinaria y debidamente confirmadas, tendrán, para todos los efectos legales, la misma validez que si hubieren sido adoptadas en sesión de consejo.----------------------------------------------------------

**ARTÍCULO DÉCIMO OCTAVO.- FACULTADES.**--------------------------------------

De conformidad con lo dispuesto por los artículos sexto fracción octava, diez y, ciento cuarenta y dos de la Ley General de Sociedades Mercantiles, el administrador único o el consejo de administración en su caso, tendrán las más amplias facultades legales de representación para la libre y buena administración y realización del objeto y/o negocios de la sociedad, y para tal efecto gozarán de las siguientes facultades generales:-------------------------------------------------------------------------------------------

**a).- PARA PLEITOS Y COBRANZAS.**--------------------------------------------------

Con todas las facultades generales y con las especiales que requieran mención o cláusula especial conforme a la Ley sin limitación alguna.-------------------------------

De una manera enunciativa y no limitativa, se mencionan las siguientes facultades:---

Recibir pagos, intentar y desistirse de todo tipo de demandas, procesos y procedimientos, inclusive del juicio de amparo, otorgar y suscribir toda clase de documentos públicos y privados, hacer manifestaciones, renuncias, protestas aún las establecidas por la Constitución Política de los Estados Unidos Mexicanos, para

RCONS0100



15

:a

articular, y absolver posiciones en juicio y fuera de él, para recusar, para transigir, para tachar testigos, para comprometerse en árbitros,  para presentar demandas, quejas, querellas y denuncias, ratificarlas y ampliarlas desistirse de las mismas y constituirse en tercero coadyuvante del Ministerio Público, otorgar perdón judicial en su caso, aportar pruebas, solicitar quiebras, concursos mercantiles, y en general para iniciar, proseguir y dar término en cualquier forma, a toda clase de demandas, recursos, arbitrajes, procesos y procedimientos de cualquier orden;----------------------

**b).- PARA ACTOS DE ADMINISTRACIÓN.**------------------------------------------------

Por lo que tendrá toda clase de facultades administrativas, pudiendo en consecuencia, de forma enunciativa y no limitativa celebrar, firmar, comparecer y otorgar todo tipo de actos jurídicos, documentos, convenios y contratos públicos o privados que se relacionen directamente con el objeto social de la sociedad, o que en su caso sean tendientes a incrementar o conservar de alguna u otra forma el patrimonio social, sea cual fuere su naturaleza, clase, denominación, origen o calidad.-------------------------

**c).- PARA ACTOS DE ADMINISTRACIÓN LABORAL.**-------------------------------------

Actuar como funcionario representante legal, responsable de los actos de administración en lo relativo a las relaciones obrero patronales, comparecer con la representación legal patronal de la sociedad ante las autoridades jurisdiccionales de las juntas de conciliación o de conciliación y arbitraje, tanto Federales como Locales, las autoridades de Amparo, en todos los conflictos laborales, conforme y para los efectos de los artículos once, cuarenta y seis, cuarenta y siete, ciento treinta y cuatro fracción tercera, quinientos veintitrés, seiscientos noventa y dos, fracciones primera, segunda y tercera, setecientos ochenta y seis, ochocientos setenta y ocho, ochocientos ochenta, ochocientos ochenta y tres y ochocientos ochenta y cuatro de la Ley Federal del Trabajo.-----------------------------------------------------------------------------------

La representación legal que se delega y la representación patronal que se confiere mediante el presente instrumento, se ejercitarán con las siguientes facultades que se enumeran simplemente como enunciativas y no como limitativas:---------------------------

Podrá actuar ante o frente al o los Sindicatos con los cuales existan celebrados contratos colectivos de trabajo y, para todos los efectos de conflictos colectivos; podrá actuar ante o frente a los trabajadores personalmente considerados y para todos los efectos de conflictos individuales; en general, para todos los asuntos obrero-patronales y para ejercitarse ante cualesquiera de las Autoridades del Trabajo y Servicios Sociales a que se refiere el artículo quinientos veintitrés de la Ley Federal del Trabajo; podrá asimismo comparecer ante las Juntas de Conciliación y Arbitraje, ya sean Locales o Federales; en consecuencia llevarán la representación patronal para los efectos del artículo once, cuarenta y seis y cuarenta y siete, también la representación legal de la empresa para los efectos de acreditar la personalidad y la capacidad en juicios o fuera de ellos en los términos del artículo seiscientos noventa y dos fracciones segunda y

RCONS0101

Exhibit 17, page 51

16



Servicios de Correduría Pública
Correedurías Públicas No.38 9229
Plaza Distrito Federal

tercera; podrá comparecer al desahogo de pruebas confesionales en términos del artículo setecientos ochenta y siete y setecientos ochenta y ocho de la Ley Federal del Trabajo, con facultades para articular y absolver posiciones y desahogar las pruebas confesionales en todas sus partes, podrán señalar domicilios convencionales para oír y recibir notificaciones en los términos del artículo ochocientos setenta y seis; podrá comparecer con toda la representación legal bastante y suficiente, para acudir a las audiencias a que se refiere el artículo ochocientos setenta y tres en sus tres fases de conciliación, de demanda y excepciones; y de ofrecimiento y admisión de pruebas, en los términos del artículo ochocientos setenta y cinco, ochocientos setenta y seis, fracciones primera y sexta, ochocientos setenta y siete, ochocientos ochenta; también podrá acudir a la audiencia de desahogo de pruebas en términos del artículo ochocientos setenta y tres y ochocientos ochenta y cuatro, todos de la Ley Federal del Trabajo; podrá hacer arreglos conciliatorios, celebrar transacciones, tomar toda clase de decisiones, negociar y suscribir convenios laborales; al mismo tiempo podrá actuar como representante de la empresa como director, respecto y para toda clase de juicios y procedimientos de trabajo que se tramiten ante cualesquiera autoridades;------------
d).- PARA ACTOS DE DOMINIO.--------------------------------------------------------
Por lo que tendrá todas las facultades de dueño, tanto en lo relativo a los bienes, como para hacer toda clase de gestiones, a fin de defenderlos.------------------------------
De forma enunciativa mas no limitativa, podrán celebrar, firmar, comparecer y otorgar todo tipo de actos jurídicos, documentos, convenios y contratos públicos o privados tendientes a la enajenación, transmisión, disminución, compromiso, gravamen, creación, modificación, transmisión o extinción del patrimonio social, sea cual fuere su denominación, naturaleza, calidad u origen;-------------------------------------------
En términos de lo dispuesto por el artículo segundo del Código de Comercio que establece que a falta de disposición de dicho ordenamiento y de las demás leyes mercantiles serán aplicables las del derecho común en materia federal, las anteriores facultades contenidas en los incisos a), b), c) y d), se otorgan en los términos y con fundamento en lo dispuesto por los tres primeros párrafos del artículo dos mil quinientos cincuenta y cuatro del Código Civil Federal, y sus Correlativos del Código Civil para el Distrito Federal, de los Códigos Civiles de los demás Estados de la República Mexicana y de cualquier lugar, con todas las facultades a que se refiere el artículo dos mil quinientos ochenta y dos, aún las enumeradas en el artículo dos mil quinientos ochenta y siete del mismo Código Civil Federal y sus correlativos del Código Civil para el Distrito Federal, de los Códigos Civiles de los demás Estados de la República Mexicana, y de cualquier lugar.----------------------------------------------
e).- PARA OTORGAR O SUSCRIBIR TÍTULOS DE CRÉDITO.----------------------------
De conformidad con el artículo noveno de la Ley General de Títulos y Operaciones de Crédito sin limitación alguna.-------------------------------------------------------------

RCONS0102



17

Dentro de sus facultades, tendrán poder general para emitir, otorgar, suscribir, aceptar, girar, librar, endosar, avalar y ceder toda clase de títulos de crédito.------------

f).- **FACULTADES PARA DELEGAR Y REVOCAR PODERES.**---------------------------------

De conformidad con el artículo ciento cuarenta y nueve de la Ley General de Sociedades Mercantiles, quedan facultados expresamente para que, dentro de sus facultades, puedan otorgar poderes generales o especiales por delegación total o parcial, reservándose siempre su ejercicio y conservando siempre su obligación de rendir cuentas a la asamblea respecto del ejercicio de los poderes que deleguen.--------
Igualmente quedan facultados para revocar total o parcialmente los poderes que se otorguen por delegación.--------------------------------------------------------------------------

g).- Dentro de las facultades anteriores, el administrador único o el consejo de administración, de forma enunciativa y no limitativa además:----------------------------------

I).- Llevarán la firma social;------------------------------------------------------------------------

II).- Administrarán los negocios y bienes sociales y podrán suscribir y celebrar toda clase de actos, convenios, contratos y documentos, podrá hacer renuncias, contraer obligaciones a cargo de la sociedad, otorgar fianzas, y gravámenes siempre en relación con el objeto social;--------------------------------------------------------------------------------

III).- Podrán fijar las facultades y retribuciones de los funcionarios de la sociedad en sus respectivas esferas de competencia;--------------------------------------------------------------

IV).- Podrán abrir y cancelar cuentas bancarias y designar a las personas que estén autorizadas para usar la firma social así como para firmar cheques para retirar fondos de las cuentas bancarias o de inversiones de la sociedad;---------------------------------------

V).- Podrán concurrir y participar en toda clase de concursos y licitaciones públicas o privadas de cualquier clase, convocadas por particulares o por los Gobiernos Federal, Estatales, del Distrito Federal, Municipales, sus dependencias, entidades y órganos u organismos desconcentrados, descentralizados, empresas de participación estatal, fideicomisos públicos y en general cualquier dependencia o entidad ya sea de la Administración Pública Federal, del Distrito Federal, de los Estados de la República Mexicana, o de sus Municipios, con todas las facultades necesarias para que entre otros actos pueda firmar ofertas, cartas de garantías, presentar y firmar ofertas técnicas o económicas, asistir y participar en los actos de apertura de ofertas y firmar las actas correspondientes y los pedidos en su caso y cobrar todo tipo de adeudos, asistir a los actos de evaluación o discusión técnica de las ofertas que presente, asistir al acto de fallo y firma de actas correspondientes, adjudicarse contratos que resulten de los fallos conferidos a su favor, así como realizar cualquier trámite o gestión necesarios, convenientes o conducentes ante las dependencias o entidades u organismos de cualquier instancia, sean Federales, Estatales, del Distrito Federal, o Municipales; y.------------------------------------------------------------------------------------------

VI).- Gozará según sea el caso de las facultades necesarias para comparecer y realizar

RCONS0103

Exhibit 17, page 53

18

*Servicios de Correduría Pública*
*Corredurías Públicas No.66 y 72*
*Plaza Distrito Federal*

actos y gestiones a nombre de la sociedad ante el Instituto Mexicano del Seguro Social, Instituto del Fondo Nacional de la Vivienda para los Trabajadores, Secretaría de Hacienda y Crédito Público, Servicio de Administración Tributaria, y cualquier otra autoridad de carácter fiscal o tributario, ya sean de jurisdicción municipal, estatal o federal, para que en nombre de la sociedad realicen todo tipo de trámites, incluyendo la firma electrónica avanzada, presentación de declaraciones y solicitud de devoluciones, entre otros, contando al efecto con facultades generales para pleitos y cobranzas, actos de administración, y de dominio y toda la representación necesaria y suficiente a que se refiere el artículo diecinueve del Código Fiscal de la Federación y sus correlativos de los ordenamientos fiscales y administrativos ya sean federales, estatales, locales o municipales.----------------------------------------------------------------

h).- Las anteriores facultades se otorgan sin perjuicio de que la asamblea pueda limitarlas o ampliarlas.----------------------------------------------------------------

Todas las facultades contenidas en el presente artículo se ejercitarán ante toda clase de personas físicas o morales, notarios, corredores públicos, y ante todo tipo de autoridades ya sean judiciales, civiles, mercantiles, penales, del trabajo, fiscales o administrativas, de conciliación o de conciliación y arbitraje, ya sean federales, locales, estatales o municipales.-----------------------------------------------------------

ARTÍCULO DÉCIMO NOVENO.- DE LOS DIRECTORES Y GERENTES.----------------

La asamblea general de accionistas, el consejo de administración o en su caso el administrador único, podrán nombrar y remover libremente a un director general y a un gerente general, o a diversos directores, subdirectores, gerentes, y subgerentes, generales o especiales, quienes tendrán las facultades que expresamente se les confieran al momento de su nombramiento o con posterioridad a ello, ya sean generales o especiales o de conformidad con las que enunciativamente se mencionan a continuación:---------------------------------------------------------------------------

a).- PARA PLEITOS Y COBRANZAS.--------------------------------------------------

Con todas las facultades generales y con las especiales que requieran mención o cláusula especial conforme a la Ley sin limitación alguna.---------------------------

De una manera enunciativa y no limitativa, se mencionan las siguientes facultades:--- Recibir pagos, intentar y desistirse de todo tipo de demandas, procesos y procedimientos, inclusive del juicio de amparo, otorgar y suscribir toda clase de documentos públicos y privados, hacer manifestaciones, renuncias, protestas aún las establecidas por la Constitución Política de los Estados Unidos Mexicanos, para articular, y absolver posiciones en juicio y fuera de él, para recusar, para transigir, para tachar testigos, para comprometerse en árbitros, para presentar demandas, quejas, querellas y denuncias, ratificarlas y ampliarlas desistirse de las mismas y constituirse en tercero coadyuvante del Ministerio Público, otorgar perdón judicial en su caso, aportar pruebas, solicitar quiebras, concursos mercantiles, y en general para

RCONS0104

19



iniciar, proseguir y dar término en cualquier forma, a toda clase de demandas, recursos, arbitrajes, procesos y procedimientos de cualquier orden;----------------------

**b).- PARA ACTOS DE ADMINISTRACIÓN.**-----------------------------------------------------

Por lo que tendrá toda clase de facultades administrativas, pudiendo en consecuencia, de forma enunciativa y no limitativa celebrar, firmar, comparecer y otorgar todo tipo de actos jurídicos, documentos, convenios y contratos públicos o privados que se relacionen directamente con el objeto social de la sociedad, o que en su caso sean tendientes a incrementar o conservar de alguna u otra forma el patrimonio social, sea cual fuere su naturaleza, clase, denominación, origen o calidad.--------------------------

**c).- PARA ACTOS DE ADMINISTRACIÓN LABORAL**------------------------------------------

Actuar como funcionario representante legal, responsable de los actos de administración en lo relativo a las relaciones obrero patronales, comparecer con la representación legal patronal de la sociedad ante las autoridades jurisdiccionales de las juntas de conciliación o de conciliación y arbitraje, tanto Federales como Locales, las autoridades de Amparo, en todos los conflictos laborales, conforme y para los efectos de los artículos once, cuarenta y seis, cuarenta y siete, ciento treinta y cuatro fracción tercera, quinientos veintitrés, seiscientos noventa y dos, fracciones primera, segunda y tercera, setecientos ochenta y seis, ochocientos setenta y ocho, ochocientos ochenta, ochocientos ochenta y tres y ochocientos ochenta y cuatro de la Ley Federal del Trabajo.-------------------------------------------------------------------------------

La representación legal que se delega y la representación patronal que se confiere mediante el presente instrumento, se ejercirán con las siguientes facultades que se enumeran simplemente como enunciativas y no como limitativas:--------------------------

Podrá actuar ante o frente al o los Sindicatos con los cuales existan celebrados contratos colectivos de trabajo y, para todos los efectos de conflictos colectivos; podrá actuar ante o frente a los trabajadores personalmente considerados y para todos los efectos de conflictos individuales; en general, para todos los asuntos obrero-patronales y para ejercitarse ante cualesquiera de las Autoridades del Trabajo y Servicios Sociales a que se refiere el artículo quinientos veintitrés de la Ley Federal del Trabajo; podrá asimismo comparecer ante las Juntas de Conciliación y Arbitraje, ya sean Locales o Federales; en consecuencia llevarán la representación patronal para los efectos del artículo once, cuarenta y seis y cuarenta y siete, también la representación legal de la empresa para los efectos de acreditar la personalidad y la capacidad en juicios o fuera de ellos en los términos del artículo seiscientos noventa y dos fracciones segunda y tercera; podrá comparecer al desahogo de pruebas confesionales en términos del artículo setecientos ochenta y siete y setecientos ochenta y ocho de la Ley Federal del Trabajo, con facultades para articular y absolver posiciones y desahogar las pruebas confesionales en todas sus partes, podrán señalar domicilios convencionales para oir y recibir notificaciones en los términos del artículo ochocientos setenta y seis; podrá

RCONS0105

Exhibit 17, page 55

20



Servicios de Correduría Pública
Correduría Públicas No.38 y 72
Plaza Distrito Federal

comparecer con toda la representación legal bastante y suficiente, para acudir a las audiencias a que se refiere el artículo ochocientos setenta y tres en sus tres fases de conciliación, de demanda y excepciones, y de ofrecimiento y admisión de pruebas, en los términos del artículo ochocientos setenta y cinco, ochocientos setenta y seis, fracciones primera y sexta, ochocientos setenta y siete, ochocientos ochenta; también podrá acudir a la audiencia de desahogo de pruebas en términos del artículo ochocientos setenta y tres y ochocientos ochenta y cuatro, todos de la Ley Federal del Trabajo; podrá hacer arreglos conciliatorios, celebrar transacciones, tomar toda clase de decisiones, negociar y suscribir convenios laborales; al mismo tiempo podrán actuar como representante de la empresa como director, respecto y para toda clase de juicios y procedimientos de trabajo que se tramiten ante cualesquiera autoridades;-----

d).- PARA ACTOS DE DOMINIO.-------------------------------------------------------

Por lo que tendrá todas las facultades de dueño, tanto en lo relativo a los bienes, como para hacer toda clase de gestiones, a fin de defenderlos.---------------------------

De forma enunciativa mas no limitativa, podrán celebrar, firmar, comparecer y otorgar todo tipo de actos jurídicos, documentos, convenios y contratos públicos o privados tendientes a la enajenación, transmisión, disminución, compromiso, gravamen, creación, modificación, transmisión o extinción del patrimonio social, sea cual fuere su denominación, naturaleza, calidad u origen;---------------------------------------

En términos de lo dispuesto por el artículo segundo del Código de Comercio que establece que a falta de disposición de dicho ordenamiento y de las demás leyes mercantiles serán aplicables las del derecho común en materia federal, las anteriores facultades contenidas en los incisos a), b), c) y d), se otorgan en los términos y con fundamento en lo dispuesto por los tres primeros párrafos del artículo dos mil quinientos cincuenta y cuatro del Código Civil Federal, y sus Correlativos del Código Civil para el Distrito Federal, de los Códigos Civiles de los demás Estados de la República Mexicana y de cualquier lugar, con todas las facultades a que se refiere el artículo dos mil quinientos ochenta y dos, aún las enumeradas en el artículo dos mil quinientos ochenta y siete del mismo Código Civil Federal y sus correlativos del Código Civil para el Distrito Federal, de los Códigos Civiles de los demás Estados de la República Mexicana, y de cualquier lugar.------------------------------------------

e).- PARA OTORGAR O SUSCRIBIR TÍTULOS DE CRÉDITO.-------------------------

De conformidad con el artículo noveno de la Ley General de Títulos y Operaciones de Crédito sin limitación alguna.--------------------------------------------------------------

Dentro de sus facultades, tendrán poder general para emitir, otorgar, suscribir, aceptar, girar, librar, endosar, avalar y ceder toda clase de títulos de crédito.-----------

f).- FACULTADES PARA DELEGAR Y REVOCAR PODERES.-------------------------

Para que dentro de sus facultades, puedan otorgar poderes generales o especiales por delegación total o parcial, reservándose siempre su ejercicio y conservando siempre su

RCONS0106



21

*Servicios de Correduría Pública*
*Correedurías Públicas No.38 y 72*
*Plaza Distrito Federal*

obligación de rendir cuentas respecto del ejercicio de los poderes que deleguen.---------
Igualmente quedan facultados para revocar total o parcialmente los poderes que se
otorguen por delegación.------------------------------------------------------------------------

g).- Dentro de las facultades anteriores, de forma enunciativa y no limitativa además
podrán:---------------------------------------------------------------------------------------------

I).- Administrar los negocios y bienes sociales y podrán suscribir y celebrar toda clase
de actos, convenios, contratos y documentos, podrá hacer renuncias, contraer
obligaciones a cargo de la sociedad, otorgar fianzas, y gravámenes siempre en relación
con el objeto social;----------------------------------------------------------------------------

II).- Fijar las facultades y retribuciones de los funcionarios de la sociedad en sus
respectivas esferas de competencia;-----------------------------------------------------------

III).- Abrir y cancelar cuentas bancarias así como para firmar cheques para retirar
fondos de las cuentas bancarias o de inversiones de la sociedad;--------------------------

IV).- Concurrir y participar en toda clase de concursos y licitaciones públicas o
privadas de cualquier clase, convocadas por particulares o por los Gobiernos Federal,
Estatales, del Distrito Federal, Municipales, sus dependencias, entidades y órganos u
organismos desconcentrados, descentralizados, empresas de participación estatal,
fideicomisos públicos y en general cualquier dependencia o entidad ya sea de la
Administración Pública Federal, del Distrito Federal, de los Estados de la República
Mexicana, o de sus Municipios, con todas las facultades necesarias para que entre
otros actos pueda firmar ofertas, cartas de garantías, presentar y firmar ofertas
técnicas o económicas, asistir y participar en los actos de apertura de ofertas y firmar
las actas correspondientes y los pedidos en su caso y cobrar todo tipo de adeudos,
asistir a los actos de evaluación o discusión técnica de las ofertas que presente, asistir
al acto de fallo y firma de actas correspondientes, adjudicarse contratos que resulten
de los fallos conferidos a su favor, así como realizar cualquier trámite o gestión
necesarios, convenientes o conducentes ante las dependencias o entidades u
organismos de cualquier instancia, sean Federales, Estatales, del Distrito Federal, o
Municipales; y.-----------------------------------------------------------------------------------

V).- Gozará según sea el caso de las facultades necesarias para comparecer y realizar
actos y gestiones a nombre de la sociedad ante el Instituto Mexicano del Seguro
Social, Instituto del Fondo Nacional de la Vivienda para los Trabajadores, Secretaría
de Hacienda y Crédito Público, Servicio de Administración Tributaria, y cualquier otra
autoridad de carácter fiscal o tributario, ya sean de jurisdicción municipal, estatal o
federal, para que en nombre de la sociedad realicen todo tipo de trámites, incluyendo
la firma electrónica avanzada, presentación de declaraciones y solicitud de
devoluciones, entre otros, contando al efecto con facultades generales para pleitos y
cobranzas, actos de administración, y de dominio y toda la representación necesaria y
suficiente a que se refiere el artículo diecinueve del Código Fiscal de la Federación y

RCONS0107

22

*Servicios de Correduría Pública*
*Corredurías Públicas No. 58 1/72*
*Plaza Distrito Federal*

sus correlativos de los ordenamientos fiscales y administrativos ya sean federales, estatales, locales o municipales.---------------------------------------------------------------

h).- Las anteriores facultades se otorgan sin perjuicio de que la asamblea , el Consejo de Administración o el Administrador Único en su caso puedan limitarlas o ampliarlas al momento del nombramiento respectivo o con posterioridad a ello.----------------------

Todas las facultades contenidas en el presente artículo se ejercitarán ante toda clase de personas físicas o morales, notarios, corredores públicos, y ante todo tipo de autoridades ya sean judiciales, civiles, mercantiles, penales, del trabajo, fiscales o administrativas, de conciliación o de conciliación y arbitraje, ya sean federales, locales, estatales o municipales.----------------------------------------------------------------

En cada designación o nombramiento, se podrá establecer la obligación de prestar garantía para asegurar las responsabilidades que pudieren contraer en el desempeño de sus encargos.---------------------------------------------------------------------------

**ARTÍCULO VIGÉSIMO.- FACULTADES DE LOS FUNCIONARIOS.**-----------------------

A.- El presidente del consejo o el administrador único presidirá todas las asambleas de accionistas y las juntas del consejo de administración; presentará informes a los consejeros y a los accionistas y desempeñará todas aquellas funciones que le sean señaladas por el consejo de administración.----------------------------------------------------

En caso de ausencia o incapacidad del presidente o del administrador, el consejo o la asamblea según corresponda designará al consejero o persona quien presidirá la asamblea o junta respectivamente.-------------------------------------------------------------

B.- Las operaciones y la administración diaria de la sociedad estarán a cargo del Director(es) o Gerente(s).---------------------------------------------------------------------

Dicho(s) funcionario(s) deberán ser designados de conformidad con lo dispuesto por el artículo décimo noveno de los estatutos sociales.--------------------------------------------

C.- El secretario actuará con tal carácter en las asambleas de accionistas y en las juntas del consejo de administración; preparará las convocatorias para todas las asambleas y juntas; levantará las actas; expedirá certificaciones; tendrá a su cuidado los libros de actas de la sociedad y preparará los informes y desempeñará las demás funciones inherentes a su cargo o que le sean encomendadas por el presidente, por el consejo de administración o por estos estatutos.------------------------------------------------

En caso de ausencia o incapacidad del secretario, lo suplirá el prosecretario, en su caso, o la persona que designe el Consejo.----------------------------------------------------

Cuando la sociedad sea administrada por un Administrador Único, se entiende que las facultades mencionadas en el presente artículo, corresponderán individualmente al citado administrador en tanto las mismas sean compatibles.-----------------------------------

----------------------------------------**CAPITULO QUINTO**----------------------------------------

----------------------------**DE LA VIGILANCIA DE LA SOCIEDAD**----------------------------

**ARTÍCULO VIGÉSIMO PRIMERO.- COMISARIOS.**-------------------------------------------

ROONS0108



23

A.- Los accionistas nombrarán por voto mayoritario uno o más comisarios y sus suplentes, quiénes pueden o no ser socios y tendrán a su cargo la vigilancia de la sociedad, de acuerdo con las disposiciones de la Ley General de Sociedades Mercantiles.------------------------------------------------------------------------

B.- Los comisarios propietarios y suplentes durarán un año en sus puestos, pero continuarán en su encargo hasta que sus sucesores hayan sido electos y hayan asumido el cargo. Podrán ser reelectos.----------------------------------------------

C.- Salvo disposición de la Asamblea, no será necesario que los comisarios propietarios o suplentes depositen cantidad alguna para garantizar el fiel cumplimiento de sus obligaciones.----------------------------------------------------

--------------------------------CAPITULO SEXTO--------------------------------

-------------------DEL EJERCICIO SOCIAL E INFORMACIÓN FINANCIERA.-------------

**ARTÍCULO VIGÉSIMO SEGUNDO.- EJERCICIO SOCIAL.**--------------------------

El ejercicio social de la sociedad correrá del primero de enero al treinta y uno de diciembre de cada año, con excepción del primero que correrá de la fecha de firma de esta póliza al treinta y uno de diciembre del mismo año.-----------------------------

Anualmente se preparará la información financiera a que se refiere el artículo ciento setenta y dos de la Ley General de Sociedades Mercántiles, para someterse a la consideración de los accionistas.---------------------------------------------------------

**ARTÍCULO VIGÉSIMO TERCERO.  DISTRIBUCIÓN DE UTILIDADES.**------------------

Una vez que la información financiera haya sido aprobada por una asamblea de accionistas, anualmente se separará de las utilidades netas por lo menos un cinco por ciento para el fondo de reserva legal, hasta que dicho fondo sea equivalente al veinte por ciento del capital social.----------------------------------------------------------------

El resto de las utilidades podrá distribuirse anualmente en forma de dividendos a los accionistas, conservarse en la sociedad como utilidades retenidas o disponerse de ellas en la forma que determine la asamblea de accionistas.---------------------------

La asamblea de accionistas o en su caso, el consejo de administración, determinarán la fecha en la cual se llevará a cabo el pago de dividendos.-------------------------------

Los dividendos se pagarán a los accionistas que aparezcan inscritos en el libro de registro de acciones en la fecha fijada para el pago.-----------------------------------

Los dividendos que no sean cobrados en un plazo de cinco años, contados a partir de la fecha señalada para su pago, se entenderán renunciados y cedidos a favor de la sociedad.------------------------------------------------------------------------------

Las pérdidas que arrojen los estados financieros las reportarán los accionistas, en proporción al número de sus acciones, hasta el importe del capital social.--------------

-----------------------------------CAPITULO SÉPTIMO--------------------------------

-------------------DE LA FUSIÓN, TRANSFORMACIÓN Y ESCISIÓN-------------------

**ARTÍCULO VIGÉSIMO CUARTO.- FUSIÓN.**------------------------------------------

RCONS0109

24

*Servicios de Correduría Pública*
*Corredurías Públicas No. 38 y 72*
*Plaza Distrito Federal*

La eventual fusión de la sociedad deberá ser acordada de conformidad con lo previsto por los artículos del doscientos veintidós al doscientos veintisiete de la Ley General de Sociedades Mercantiles.---------------------------------------------------------

**ARTÍCULO VIGÉSIMO QUINTO.- TRANSFORMACIÓN.-**-----------------------------

La sociedad podrá adoptar cualquier otro tipo legal de sociedad, debiendo ajustarse en su caso a lo previsto por las disposiciones legales aplicables.-----------------------

**ARTÍCULO VIGÉSIMO SEXTO.- ESCISIÓN.-**--------------------------------------

La sociedad podrá escindirse en sus dos modalidades:----------------------------------

a).- cuando sea escindente y decida extinguirse y divida la totalidad o parte de su activo, pasivo y capital social en dos o más partes, que sean aportadas en bloque a otras sociedades de nueva creación, denominadas escindidas; o.------------------------

b).- Cuando sea escindente, y decida no extinguirse u aporte en bloque parte de su activo, pasivo y capital social a otra u otras sociedades de nueva creación, denominadas escindidas.-----------------------------------------------------------------

En ambos casos, la escisión se regirá por lo siguiente:-----------------------------------

I).- Solo podrá acordarse por resolución de la asamblea de accionistas, tomada por la mayoría exigida para la modificación del contrato social;---------------------------------

II).- Las acciones de la sociedad que se escinda deberán estar totalmente pagadas;-----

III).- Cada uno de los socios de la sociedad escindente tendrá inicialmente una proporción social de las escindidas igual a la de que sea titular en la escindente;-------

IV).- La resolución que apruebe la escisión deberá contener:-----------------------------

a).- La descripción de la forma, plazos y mecanismos en que los diversos conceptos de activo, pasivo y capital social serán transferidos;------------------------------------------

b).- La descripción de las partes del activo del pasivo y del capital social que correspondan a cada sociedad escindida, y en su caso a la escindente, con detalles suficientes para permitir la identificación de éstas;-----------------------------------------

c).- Los estados financieros de la sociedad escindente, que abarquen por lo menos las operaciones realizadas durante el último ejercicio social, debidamente dictaminados por auditor externo.-----------------------------------------------------------------------

Corresponderá a los administradores de la escindente, informar a la asamblea sobre las operaciones que se realicen hasta que la escisión surta plenos efectos legales;------

d).- La determinación de las obligaciones que por virtud de la escisión asuma cada sociedad escindida si una sociedad escindida incumpliera alguna de las obligaciones asumidas por ella en virtud de la escisión, responderán solidariamente ante los acreedores que no hayan dado su consentimiento expreso, la o las demás sociedades escindidas, durante un plazo de tres años contados a partir de la última de las publicaciones a que se refiere el inciso quinto que sigue, hasta por el importe del activo neto que les haya sido atribuido en la escisión a cada una de ellas;--------------

Si la escindente no hubiere dejado de existir, esta responderá por la totalidad de la

RCONS0110



25

*Servicios de Correduría Pública*
*Correctorías Públicas No.38 y 72*
*Plaza Distrito Federal*

obligación;---------------------------------------------------------------------------

e).- Los proyectos de estatutos de las sociedades escindidas.------------------

V).- La resolución de escisión deberá formalizarse ante Corredor Público o diverso fedatario autorizado para ello e inscribirse en el Registro Público del Comercio; asimismo, deberá publicarse en la gaceta oficial y en uno de los periódicos de mayor circulación del domicilio de la escindente, un extracto de dicha resolución que contenga por lo menos la síntesis de la información a que se refieren los incisos a) y d) de la fracción cuarta del artículo doscientos veintiocho bis de la Ley General de Sociedades Mercantiles, indicando claramente que el texto completo se encuentra a disposición de socios y acreedores del domicilio social de la sociedad durante un plazo de cuarenta y cinco días naturales contados a partir de que se hubieren efectuado la inscripción y ambas publicaciones;------------------------------------------------------

VI).- Durante el plazo señalado, cualquier socio o grupo de socios que representen por lo menos el veinte por ciento del capital social o acreedor que tenga interés jurídico, podrá oponerse judicialmente a la escisión, la que se suspenderá hasta que cause ejecutoria la sentencia que declara que la oposición es infundada, se dicte resolución que tenga por terminado el procedimiento sin que hubiere procedido la oposición o se llegue a convenio, siempre cuando quien se oponga diere fianza bastante para responder de los daños y perjuicios que pudieren causase a la sociedad con la suspensión;------------------------------------------------------------------------------

VII).- Cumplidos los requisitos y transcurrido el plazo a que se refiere el inciso V, sin que se haya presentado oposición, la escisión surtirá plenos efectos, para la constitución de las nuevas sociedades, bastará la formalización de sus estatutos ante Corredor Público o diverso fedatario autorizado para ello y su inscripción en el Registro Público de Comercio;------------------------------------------------------------------

VIII).- Los accionistas o socios que voten en contra de la resolución de escisión gozarán del derecho a separarse de la sociedad, aplicándose en lo conducente lo previsto en el artículo doscientos seis de la Ley General de Sociedades Mercantiles;----

IX).- Cuando la escisión traiga aparejada la extinción de la escindente, una vez que surta efectos la escisión se deberá solicitar del registro Público del Comercio la cancelación de la inscripción del contrato social;-----------------------------------------

X).- En términos de ley no se aplicará a las sociedades escindidas lo previsto en el artículo ciento cuarenta y uno de la Ley General de Sociedades Mercantiles.------------

--------------------------------------CAPITULO OCTAVO-------------------------------

------------------------------DE LA DISOLUCIÓN Y LIQUIDACIÓN.---------------------

ARTÍCULO VIGÉSIMO SÉPTIMO.- DISOLUCIÓN.--------------------------------------

La sociedad se disolverá:----------------------------------------------------------------

I).- Por expiración del plazo fijado en el presente estatuto, a menos que dicho plazo se prorrogue antes de su terminación, mediante resolución tomada en una asamblea

RCONS0111

26

*Servicios de Correduría Pública*
*Corredurías Públicas No. 38 y 72*
*Plaza Distrito Federal*

extraordinaria de accionistas;----------------------------------------------------

II).- Porque la sociedad no pueda llevar a cabo el objeto principal para el que fue constituida.----------------------------------------------------------------------

III).- Por la pérdida de dos terceras partes del capital social, cuando la disolución sea aprobada por una asamblea extraordinaria de accionistas.----------------------

IV).- Mediante resolución tomada en una asamblea extraordinaria de accionistas.------

V).- Cuando el número de accionistas sea inferior al que establece la ley.---------

**ARTÍCULO VIGÉSIMO OCTAVO.- LIQUIDACIÓN.**

En caso de que sea necesario liquidar la sociedad, la liquidación se practicará de conformidad con lo dispuesto en este artículo y en lo omiso por lo previsto en la *Ley General de Sociedades Mercantiles*:------------------------------------------------

Los accionistas designarán por mayoría de votos, uno o más liquidadores para liquidar los negocios de la sociedad.------------------------------------------------------

El liquidador o liquidadores estarán facultados para concluir las operaciones de la sociedad y liquidar sus negocios; cobrar las cantidades que se adeuden a la sociedad y pagar las cantidades que ésta deba; vender los bienes de la sociedad al precio o precios que dichos liquidadores consideren convenientes, según su leal saber y entender; distribuir entre los accionistas los bienes remanentes de la sociedad, después de pagar todas las deudas sociales, en proporción a sus intereses respectivos; tomar las medidas que sean apropiadas o convenientes para concluir la liquidación de la sociedad de acuerdo con los artículos doscientos cuarenta y dos y doscientos cuarenta y ocho de la Ley General de Sociedades Mercantiles, así como para obtener la cancelación del registro de la sociedad, una vez terminada la liquidación.---

Los liquidadores gozarán de las facultades que les sean conferidas al momento de su nombramiento de conformidad con las contenidas en el artículo décimo octavo de estos estatutos sociales.---------------------------------------------------------

**ARTÍCULO VIGÉSIMO NOVENO.- CONTROVERSIAS.**

Los comparecientes manifiestan que su voluntad esta libre de vicios y para el caso de controversias se someten a las Leyes y Tribunales competentes en el Domicilio de la sociedad, renunciando a cualquier otro fuero que pudiera corresponderles en razón de sus domicilios presentes o futuros.-----------------------------------------------

-------------------------------**CLÁUSULAS TRANSITORIAS**-----------------------------

**PRIMERA.-** Los otorgantes declaran que han suscrito y pagado el capital mínimo de la sociedad en la siguiente forma:----------------------------------------------------

**PABLO FRANCISCO PATRICIO GONZÁLEZ ULLOA Y GONZÁLEZ.**----------------------

Suscribe **DOSCIENTAS ACCIONES.**-------------------------------------------------

Con valor nominal de **$1,000.00 PESOS.**-----------------------------------------

**(MIL PESOS 00/100 Moneda Nacional)** cada una.----------------------------------

**$200, 000.00.**-----------------------------------------------------------------

RCONS0112



27

*Servicios de Correduría Pública*
*Correedurías Públicas No.38 y 72*
*Plaza Distrito Federal*

(DOSCIENTOS MIL Moneda Nacional).--------------------------------

MARIA DEL CARMEN GONZÁLEZ SERRANO.--------------------------

Suscribe **CINCUENTA ACCIONES.**---------------------------------

Con valor nominal de **$1,000.00 PESOS.**------------------------

**(MIL PESOS 00/100 Moneda Nacional)** cada una.----------------

**$50, 000.00.**---------------------------------------------------

**(CINCUENTA MIL Moneda Nacional).**----------------------------

**TOTAL: DOSCIENTOS CINCUENTA ACCIONES**---------------------

Con valor nominal de **$1,000.00 PESOS.**------------------------

**(MIL PESOS 00/100 Moneda Nacional)** cada una.----------------

**$250,000.00 PESOS**----------------------------------------------

**(DOSCIENTOS CINCUENTA MIL PESOS 00/100 Moneda Nacional).**--------

**SEGUNDA.**- Los accionistas reunidos en primera asamblea y para cumplir con lo dispuesto por el artículo sexto de la Ley General de Sociedades Mercantiles, por unanimidad de votos, toman los siguientes acuerdos: -------------------

**I.**- Que la sociedad sea administrada por un **CONSEJO DE ADMINISTRACIÓN,** designándose para tal efecto a: --------------------------------

**PRESIDENTE: PABLO FRANCISCO PATRICIO GONZÁLEZ ULLOA Y GONZÁLEZ** ----

**SECRETARIO: MARIA DEL CARMEN GONZÁLEZ SERRANO.**-------------

Al Consejo de Administración antes nombrado, y a sus consejeros en lo individual o conjuntamente les quedan conferidas para el ejercicio de sus respectivos cargos, y para que las ejerciten conjunta o separadamente todas y cada una de las facultades estipuladas en el Artículo Décimo Octavo de los estatutos sociales, mismas que se dan aquí por reproducidas como si a la letra se insertasen.-------------------

**II.**- Se designa a: **GUSTAVO ROMERO VIRAMONTES** como Comisario de la sociedad.-

**TERCERA.**- Los ejercicios sociales correrán del primero de enero al treinta y uno de diciembre de cada año, con excepción del primer ejercicio social que será irregular en virtud de que se inicia en la fecha de firma de esta póliza para terminar el treinta y uno de diciembre del presente año.---------------------------------

**CUARTA.**- El Consejo de Administración, declara que acepta el cargo que se le ha conferido; manifiesta que no cauciona su manejo de conformidad a los Estatutos Sociales; y certifica que el capital social se encuentra íntegramente suscrito y pagado en los términos que aparecen descritos en la cláusula primera transitoria que antecede.--------------------------------------------------------

--------------------------**FUNDAMENTOS.**-----------------------

Estando los comparecientes de acuerdo en otorgar el presente instrumento, en los términos del artículo sexto de la Ley Federal de Correduría Pública y de los artículos seis, cincuenta y tres, y cincuenta y cuatro de su Reglamento, por sus instrucciones expresas relaciono en lo conducente lo que es del tenor literal siguiente:------------------

RCONS0113

Exhibit 17, page 63

28



*Servicios de Correduría Pública*
*Corredurías Públicas No.383 y 72*
*Plaza Distrito Federal*

"LEY FEDERAL DE CORREDURÍA PUBLICA"... ------------------------------------------

"ARTÍCULO 6°.- Al Corredor Público corresponde: ... VI.- Actuar como fedatario en la constitución, y en los demás actos previstos por la Ley General de Sociedades Mercantiles incluso aquellos en los que se haga constar la representación orgánica...".-----------------------------------------------------------------------

"REGLAMENTO DE LA LEY FEDERAL DE CORREDURÍA PUBLICA".------------------

"ARTÍCULO 6°.- Para efectos de las fracciones V, VI y VII del artículo 6° de la Ley, cuando en las leyes o reglamentos se haga referencia a "notario o fedatario público" "escritura", "protocolo" y "protocolización", se entenderá que se refiere a "Corredor Público", a la "póliza expedida por corredor"... respectivamente...".----------------------

"ARTÍCULO 53.- El corredor, en el ejercicio de sus funciones como fedatario público, podrá intervenir: ... V.- En la constitución, modificación, transformación, fusión, escisión, disolución, liquidación y extinción de sociedades mercantiles, así como en la designación de sus representantes legales y facultades de que estén investidos ...".----

"ARTÍCULO 54.- Las pólizas y actas expedidas por el Corredor en ejercicio de sus funciones, inclusive aquellas en que se haga constar la designación y facultades de representación en las sociedades mercantiles de conformidad con la ley de la materia, se deberán admitir para su inscripción en el Registro Público de la Propiedad y del Comercio, siempre que dichos instrumentos cumplan con los requisitos legales".-------

"LEY GENERAL DE SOCIEDADES MERCANTILES":----------------------------------

"ARTÍCULO 10.- La representación de toda sociedad mercantil corresponderá a su administrador o administradores, quienes podrán realizar todas las operaciones inherentes al objeto de la sociedad, salvo lo que expresamente establezcan la ley y el contrato social.--------------------------------------------------------------------

Para que surtan efecto los poderes que otorgue la sociedad mediante acuerdo de asamblea o del órgano colegiado de administración, en su caso, bastará con la protocolización ante notario de la parte del acta en que conste el acuerdo relativo a su otorgamiento, debidamente firmada por quienes deberán firmar el instrumento notarial, o en su defecto lo podrá firmar el delegado especialmente designado para ello en sustitución de los anteriores.--------------------------------------------------------

El notario hará constar en el instrumento correspondiente, mediante la relación, inserción o el agregado al apéndice de las certificaciones, en lo conducente, de los documentos que al efecto se le exhiban, la denominación o razón social de la sociedad, su domicilio, duración, importe del capital social y objeto de la misma, así como las facultades que conforme a sus estatutos le correspondan al órgano que acordó el otorgamiento del poder y, en su caso, la designación de los miembros del órgano de administración.------------------------------------------------------------------

Si la sociedad otorgare el poder por conducto de una persona distinta a los órganos mencionados, en relación a la adición o inserción indicadas en el párrafo anterior, se

RCONS0114

Exhibit 17, page 64

29



deberá dejar acreditado que dicha persona tiene las facultades para ello".--------------

**"CÓDIGO DE COMERCIO"**-----------------------------------------------------------------

**"ARTÍCULO SEGUNDO**.- A falta de disposiciones de este Código, serán aplicables a los actos de comercio las del derecho común."-----------------------------------------

**"CODIGO CIVIL FEDERAL"**.-----------------------------------------------------------

**"ARTICULO 2554.**- En todos los poderes generales para pleitos y cobranzas, bastará que se diga que se otorga con todas las facultades generales y las especiales que requieran cláusula especial conforme a la Ley, para que se entiendan conferidos sin limitación alguna.------------------------------------------------------------------

En los poderes generales para administrar bienes, bastará expresar que se dan con ese carácter para que el apoderado tenga toda clase de facultades administrativas.-----

En los poderes generales para ejercer actos de dominio, bastará que se den con ese carácter para que el apoderado tenga toda clase de facultades de dueño, tanto en lo relativo a los bienes, como para hacer toda clase de gestiones, a fin de defenderlos.-----

Cuando se quisieran limitar, en los tres casos antes mencionados, las facultades de los apoderados, se consignaran las limitaciones o los poderes serán especiales.---------

Los notarios insertarán este artículo en los testimonios de los poderes que otorguen."--

-------------------------------------G E N E R A L E S-----------------------------------

Los comparecientes manifestaron por sus generales ser:-----------------------------

**MARIA DEL CARMEN GONZÁLEZ SERRANO.** Mexicana, originaria de esta Ciudad de México, Distrito Federal, lugar en donde nació el día veintidós de marzo de mil novecientos cincuenta y uno, soltera, empresaria, con domicilio en calle Crater número setecientos diez, colonia Jardines del Pedregal, delegación Álvaro Obregón, Distrito Federal.---------------------------------------------------------------------

**PABLO FRANCISCO PATRICIO GONZÁLEZ ULLOA Y GONZÁLEZ.** Mexicano, originario de esta Ciudad de México, Distrito Federal, lugar en donde nació el día cuatro de octubre de mil novecientos setenta, soltero, empresario, con el mismo domicilio que la compareciente anterior.-------------------------------------------

**YO EL CORREDOR PÚBLICO, HAGO CONSTAR BAJO MI FE:**-------------------

I.- **DOCUMENTOS**.- Que certifico que tuve a la vista los documentos y originales presentados por los comparecientes para la formación de la presente póliza, mismos que me declaran que son auténticos, y que todo lo relacionado, concuerda fiel y exactamente con dichos documentos;-----------------------------------------------

II.- ARTÍCULO VEINTISIETE DEL CÓDIGO FISCAL DE LA FEDERACIÓN.--------------

A).- Informé a los comparecientes que los otorgantes de constitutivas deberán solicitar su inscripción ante el Registro Federal de Contribuyentes dentro del mes siguiente al otorgamiento de su instrumento constitutivo y, que para el caso de que me soliciten la Inscripción al Registro Federal de Contribuyentes por medio del Sistema de Inscripción mediante Fedatario Público por Medios Remotos, deberán exhibirme en un

Exhibit 17, page 65

30



Servicios de Correduría Pública
Correduría Públicas No. 38 y 72
Plaza Distrito Federal

plazo no mayor a quince días la forma R 1 (uno) debidamente requisitada, y que de lo contrario en uno u otro caso, en términos de las disposiciones legales aplicables, informaré de tal omisión a la autoridad fiscal dentro del mes siguiente a la autorización de la presente póliza; y-----------------------------------------------------------

B).- Requerí a los accionistas de su Registro Federal de Contribuyentes, así como de la Cédula de Identificación Fiscal o su solicitud de inscripción, mismos que no me fueron proporcionados, por lo que presentaré el aviso a que se refiere la regla correspondiente de la Resolución Miscelánea vigente que agregaré al archivo de este instrumento, y tomaré razón de ello en la anotación complementaria respectiva, con lo que se tiene por cumplido lo dispuesto por el artículo veintisiete del Código Fiscal de la Federación.----------------------------------------------------------------------------------------

III.- LEGALES.- Que en términos de Ley, hice del conocimiento de los comparecientes:-----------------------------------------------------------------------------------------

A).- Que todo lo declarado o manifestado por ellos y así hecho constar en esta póliza, lo hicieron bajo protesta de decir verdad;-------------------------------------------------------

B).- Del contenido del artículo mil doscientos treinta y siete del Código de Comercio en relación con el tercer párrafo del artículo dieciocho de la Ley Federal de Correduría Pública que establecen en lo conducente que las actas y pólizas autorizadas por los corredores públicos son instrumentos públicos que hacen prueba plena.------------------

C).- Que en términos de lo dispuesto por el artículo mil doscientos noventa y tres del Código de Comercio, los instrumentos públicos no se perjudicarán en cuanto a su validez por las excepciones que se aleguen para destruir la acción que en ellos se funde;------------------------------------------------------------------------------------------------------

D).- Que en tanto no se declare judicialmente su falsedad o simulación, los instrumentos públicos harán prueba plena de los hechos afirmados por el fedatario que los expide y de que los comparecientes hicieron las declaraciones o manifestaciones que se refieren como suyas y se manifestaron conformes con ellas; --

E).- Que en términos de la fracción I del artículo quince de la Ley Federal de Correduría Pública, en relación con el primer párrafo del artículo tercero de su Reglamento, la elaboración y formalización de este instrumento se realizó con estricto apego a las disposiciones de la Ley Federal de Correduría Pública y su Reglamento y ejerciendo personalmente mis funciones, acreditando además mi carácter de Corredor Público habilitado para el ejercicio de mis funciones por la Secretaría de Economía;----

IV.- INVERSIÓN EXTRANJERA.-------------------------------------------------------------------

a).- Que los comparecientes me manifestaron que en el presente instrumento no participa capital que sea de los sujetos obligados de inscripción ante el Registro Nacional de Inversiones Extranjeras;----------------------------------------------------------------

b).- Que informé a los comparecientes que en el momento en que ingrese al capital social un inversionista extranjero, la sociedad deberá inscribirse en el Registro

RCONS0116



31

*Servicios de Correduría Pública*
Correedurías Públicas No.38 y 72
Plaza Distrito Federal

Nacional de Inversiones Extranjeras en un plazo de cuarenta días contados a partir de la fecha de admisión de dicho socio extranjero.------------------------------------------------

V.- REGLAMENTO DE LA LEY GENERAL DE POBLACIÓN.- Que en términos de lo dispuesto por el artículo ciento cincuenta y dos del citado Reglamento, prevengo a los comparecientes que para el caso de que existiera la intervención en la administración de un extranjero, este deberá contar con la calidad migratoria y autorización respectiva que en su caso expida la Secretaría de Gobernación por conducto del Instituto Nacional de Migración.----------------------------------------------------------

VI.- REGISTRO PÚBLICO.- Que los comparecientes manifiestan de manera expresa, que por así convenir a sus intereses, el primer original del presente instrumento será inscrito en el Registro Público correspondiente por ellos mismos, liberando en consecuencia al suscrito Corredor Público de dicha responsabilidad.--------------------

VII.- CERTIFICACIONES.- Que en términos de lo dispuesto por los artículos quince y diecinueve de la Ley Federal de Correduría Pública y treinta y dos de su reglamento en vigor certifico que:-----------------------------------------------------------------------------

A).- Me aseguré de la identidad de los comparecientes con los documentos que en copia agrego al archivo de éste póliza;------------------------------------------------------

B).- Me aseguré de su capacidad legal para contratar y obligarse, pues en términos de la fracción VI del artículo diecinueve de la Ley Federal de Correduría Pública, en relación con el último párrafo del artículo treinta y dos de su Reglamento, a mi juicio tienen capacidad legal pues no encuentro en ellos manifestaciones evidentes de incapacidad natural y no tengo noticias de que estén sujetos a interdicción;-------------

C).- Que les hice saber el derecho que tienen de leer personalmente el presente instrumento, y de que su contenido les sea explicado por el suscrito, ante lo cuál me solicitaron que les leyera y explicara;--------------------------------------------------------

D).- Que les leí integramente el texto del presente instrumento, los oriente acerca de su contenido, y les explique su valor y consecuencias legales; y---------------------------

E).- Que los comparecientes me manifestaron su comprensión plena, consentimiento y conformidad, y en comprobación otorgaron en mi presencia este instrumento mediante la impresión de sus respectivas firmas puestas el día de su fecha momento en que AUTORIZO EL PRESENTE INSTRUMENTO, para todos los efectos legales a que haya lugar.----------------------------------------------------------------------------------

DOY FE.----------------------------------------------------------------------------------------

————————————————— F I R M A S ——————————————————

MARIA DEL CARMEN GONZÁLEZ SERRANO.--------------------------FIRMADO.----
PABLO FRANCISCO PATRICIO GONZÁLEZ ULLOA Y GONZÁLEZ--------FIRMADO.----

RCONS0117

32



*Servicios de Correduría Pública*
Correduría Públicas No. 38 y 72
Plaza Distrito Federal

CARLOS ALFREDO ONGAY FLORES.- CORREDOR PÚBLICO NÚMERO SETENTA Y
DOS PLAZA DISTRITO FEDERAL.- FIRMADO.- EL SELLO DE AUTORIZAR.------------
ES **COPIA COTEJADA** DE LA PÓLIZA DE REFERENCIA QUE SE EXPIDE COMO
TESTIMONIO A SOLICITUD DE **"AVIARRENDAMIENTOS", SOCIEDAD ANÓNIMA DE
CAPITAL VARIABLE,** A FIN DE ACREDITAR SU LEGAL CONSTITUCIÓN.------------
VA EN **TREINTA Y DOS** PÁGINAS QUE SON FIEL TRANSCRIPCIÓN DE LA PÓLIZA
ORIGINAL TAL Y COMO CONSTA CONSERVADA EN EL ARCHIVO A MI CARGO, MÁS
LA REPRODUCCIÓN DE LOS DOCUMENTOS AGREGADOS AL PROPIO ARCHIVO
COMO INTEGRANTES DEL PRESENTE INSTRUMENTO.--------------------------------
LO AUTORIZO CON MI SELLO Y FIRMA EN LA CIUDAD DE MÉXICO, PLAZA DEL
DISTRITO FEDERAL, A VEINTIOCHO DE OCTUBRE DEL DOS MIL ONCE.------------
DOY FE.---------------

RCONS0118

Exhibit 17, page 68

Secuencia:90442, #Serie:0000100000101619552

## DIRECCIÓN GENERAL DE ASUNTOS JURÍDICOS
### DIRECCIÓN DE PERMISOS ARTICULO 27 CONSTITUCIONAL
### SUBDIRECCIÓN DE SOCIEDADES




SECRETARÍA DE
RELACIONES EXTERIORES

| | |
|---|---|
| PERMISO | 0940409 |
| EXPEDIENTE | 20110937789 |
| FOLIO | 111027091178 |

De conformidad con lo dispuesto por los artículos 27, fracción I de la Constitución Política de los Estados Unidos Mexicanos, 28, fracción V de la Ley Orgánica de la Administración Pública Federal, 15 de la Ley de Inversión Extranjera y 13, 14 y 18 del Reglamento de la Ley de Inversión Extranjera y del Registro Nacional de Inversiones Extranjeras, y en atención a la solicitud presentada por el (la) Sr(a). **CARLOS ALFREDO ONGAY FLORES**, con fundamento en lo dispuesto por los artículos 33 fracción IV del Reglamento Interior de la Secretaría de Relaciones Exteriores en vigor y SEXTO incisos a) fracción VI y d) fracción I del ACUERDO publicado en el Diario Oficial de la Federación el 11 de abril de 2008, por el que se reforman los artículos sexto y séptimo; y se adicionan los artículos primero bis y décimo primero bis, del Acuerdo por el que se delegan facultades en los servidores públicos de la Secretaría de Relaciones Exteriores que se indican, publicado el 28 de abril de 2005, se concede el permiso para constituir una **SA DE CV** bajo la siguiente denominación:

### AVIARRENDAMIENTOS

Este permiso, quedará condicionado a que en los estatutos de la sociedad que se constituya, se inserte la cláusula de exclusión de extranjeros o el convenio previsto en la fracción I del Artículo 27 Constitucional, de conformidad con lo que establecen los artículos 15 de la Ley de Inversión Extranjera y 14 del Reglamento de la Ley de Inversión Extranjera y del Registro Nacional de Inversiones Extranjeras. Cabe señalar que el presente permiso se otorga sin perjuicio de lo dispuesto por el artículo 91 de la Ley de la Propiedad Industrial.

Este permiso quedará sin efectos si dentro de los noventa días hábiles siguientes a la fecha de otorgamiento del mismo, los interesados no acuden a otorgar ante fedatario público el instrumento correspondiente a la Constitución de que se trata, de conformidad con lo establecido por el artículo 17 del Reglamento de la Ley de Inversión Extranjera y del Registro Nacional de Inversiones Extranjeras.

Asimismo, el interesado deberá dar aviso del uso de la denominación que se autoriza mediante el presente permiso a la Secretaría de Relaciones Exteriores dentro de los seis meses siguientes a la expedición del mismo, de conformidad con lo dispuesto por el artículo 18 del Reglamento de la Ley de Inversión Extranjera y del Registro Nacional de Inversiones Extranjeras.

México, DF. a 27 de octubre de 2011

LA SUBDIRECTORA

LIC. VANIA ISELA ORTEGA VELAZQUEZ

RCONS0119

Secuencia:90442,  #Serie.000100000101619552



Evidencia Criptográfica · Transacción SeguriSign
Archivo Firmado:  13197874.RTF
Secuencia: 90442

Autoridad Certificadora: A.C. del Servicio de Administración Tributaria

| Firmante | Nombre: | VANIA ISELA ORTEGA VELAZQUEZ | Validez: | ✓ | Vigente |
|---|---|---|---|---|---|
| | # Serie: | 000100000101619552 | Revocación: | | No Revocado |
| Firma | Fecha: | 27/10/2011 14:16:00 (UTC: 20111027191600Z) | Status: | ✓ | Válida |
| | Algoritmo: | SHA1/RSA_ENCRIPTION | | | |
| | Cadena de firma: | | | | |
| | 99 AA 92 89 A0 30 87 96 D0 42 44 76 78 58 21 9C 5B BB DF 8D 8B 6F 93 4F DC DB CA C9 5A 1D 6C 93 EC 6D 38 31 3A 65 47 9E 26 1F 08 4F FF 44 28 22 F5 72 D6 ED 97 15 C4 CE 12 4B 7B 12 13 5D C5 7F 5B 2F 29 F7 27 2F 58 9E 84 C5 0A C6 12 77 07 AE 36 01 4D 7F 84 10 2A DF BB 82 AC 65 B2 54 96 5A 6C C4 8F AA D0 DB A8 46 60 7A D8 7F F2 95 05 CA 82 97 04 A9 79 47 E6 2B 4D 07 E9 95 91 41 0B 4A | | | | |
| OCSP | Fecha: | 27/10/2011 14:16:00 (UTC: 20111027191600Z) | | | |
| | Nombre del respondedor: | Servicio delegado OCSP de la AC del SAT | | | |
| | Emisor del respondedor: | A.C. del Servicio de Administración Tributaria | | | |
| | Número de serie: | 000100000101619552 | | | |
| TSP | Fecha: | 27/10/2011 14:16:00 (UTC: 20111027191600Z) | | | |
| | Nombre del respondedor: | AUTORIDAD DE ESTAMPILLAS DE TIEMPO | | | |
| | Emisor del respondedor: | AC Pruebas Secretaría de Relaciones Exteriores | | | |
| | Secuencia: | 0156C7 | | | |
| | Datos estampillados: | 55B3EEB36A2EB79DF279769FDEEBC32F7BF4C3B2 | | | |

Evidencia Criptográfica · Generada por SeguriData Privada, S.A.

RCONS0120

Exhibit 17, page 70

# Lic. LUIS AREVALO CONTRERAS
CORREDOR PUBLICO No. 1 DEL ESTADO DE GUERRERO

--------------------------------------------------------------------

José Luis Sánchez---------------------------------------FIRMADO---

--------------------------------------------------------------------

--------------------------------------------------------------------

--------------------CERTIFICA Y HACE CONSTAR----------------------
---QUE LA PRESENTE CORRESPONDE Y PROVIENE DEL ORIGINAL QUE
OBRA EN EL ARCHIVO OFICIAL A MI CARGO, Y SE EXPIDE A SOLICITUD
DE LOS INTERESADOS A FIN DE QUE SIRVA PARA TODOS LOS USOS Y
EFECTOS LEGALES A QUE HAYA LUGAR. VAN 5 FOJAS UTILES,
COTEJADAS, FIRMADAS Y DEBIDAMENTE SELLADAS Y EN EL MARGEN
DERECHO DE LA HOJA NUMERO UNO APARECE COLOCADO UN
HOLOGRAMA DE SEGURIDAD CON EL LOGOTIPO IMPRESO DE LA
CORREDURIA PUBLICA A MI CARGO.------------------------------------
---ACAPULCO, ESTADO DE GUERRERO, A LOS 14 DIAS DEL MES DE
AGOSTO DE DOS MIL QUINCE.-----------------------------------------
------------------------DOY FE----------------------------------------

LIC. LUIS AREVALO CONTRERAS
CORREDOR PÚBLICO NUMERO UNO
LA PLAZA DEL ESTADO DE GUERRERO

RCONS0121

Exhibit 17, page 71

# EXHIBIT 7

**From:** Michael Mason [mailto:mmason@metschlaw.com]
**Sent:** Monday, November 16, 2015 1:19 PM
**To:** Pablo Gonzalez Ulloa
**Cc:** Lance Ricotta; Paul Metsch; Kristian Frich; Doug Bland
**Subject:** R Consulting/Ulloa--Ulloa October 23, 2015 email to Doug Bland

Mr. Ulloa,

Your below October 23, 2015 email to Mr. Bland is filled with falsehoods.  As an example, the payment to which you refer relates solely to lease payments for the aircraft that were and are due under the lease.

When I first began communicating with you via email on October 19, 2015, you entered into an agreement with R Consulting (through me, as R Consulting's attorney) to resolve this matter.  You agreed with me on October 20, 2015 to pay the sum of $1,019,000 into an escrow account, with your attorney, Frank Clowney, acting as the escrow agent for ultimate distribution of the funds to R Consulting, contemporaneous with a release agreement.

To date, you have provided me with nothing but unbelievable excuses regarding why you have not paid the money into the escrow account with Mr. Clowney in an effort to delay and obfuscate. Like your assertions in your below email, nothing you say is believable. As another recent example, you informed me in a November 9, 2015 email that you would contact me the next morning to discuss your payment under your agreement with R Consulting. I never heard from you.

If you want to put this matter behind you, you need only comply with the terms of our agreement for you to pay into escrow with Mr. Clowney the sum of $1,019,000 for the benefit of R Consulting. Otherwise, we will continue to prosecute our lawsuit against you and your company, and I am confident that the aircraft's insurer will do all in its power to either recover from you the aircraft or its insured value.

Sincerely,

Mike Mason


Michael J. Mason
Metsch & Mason, LLP
Emerald Plaza
402 W. Broadway, Suite 2700
San Diego, CA 92101

Direct: 619-230-0897
Cell:    858-336-5886
Fax:     619-230-1839
E:       mmason@metschlaw.com
Web:   www.metschmason.com

Exhibit 17, page 74

# EXHIBIT 8

**From:** Michael Mason
**Sent:** Thursday, November 19, 2015 8:43 AM
**To:** 'Pablo Gonzalez Ulloa' <PGU@arm.aero>
**Cc:** Lance Ricotta <skywonders@aol.com>; Paul Metsch <Pmetsch@metschlaw.com>; Kristian Frich
<kfrich@fmvabogados.com.mx>; dbland@oraero.com; Chip Clowney <chipclowney@gmail.com>
**`ubject:** RE: R Consulting/Ulloa--Ulloa October 23, 2015 email to Doug Bland

Mr. Ulloa,

I reviewed my cell phone records for my cell phone (858-336-5886) that you claim to have called. My cell phone records reveal that there is no record of any call from any number that I did not recognize over the last two weeks, including any calls from you. You certainly did not leave any voice message.

I would definitely like to speak with you. Please call me; my direct office number is 619-230-0897—do not call my cell phone. If for some reason I am out of the office, please leave a message. I will return your call fairly immediately. I will even make myself available for a meeting in San Diego, if you wish. In short, I would love to hear from you. I need an address for service of the summons and complaint on you. I have made this request on several occasions, but you have failed to provide one, despite that you take the time to write lengthy emails with no substantive information, as you did below.

You have been promising to pay R Consulting the money for the aircraft since January of this year. In addition, as I stated in my below email to you, you offered to pay the sum of $1,019,000 on October 20, 2015. It is now a month later—still no action whatsoever from you. If you had the money for the aircraft, you would have paid it to R Consulting by now, so that you could be done with this matter, rather than spending time writing lengthy emails filled with falsehoods. You also informed me on October 23, 2015 that your attorney Mr. Clowney had agreed to represent you in connection with setting up an escrow account for you to make the payment due to R Consulting. To date, you have yet to pay even the retainer fee due to Mr. Clowney, so that he can establish the escrow account.

You have, in effect, stolen the aircraft. You claim to have sold it to someone named Jose Luis Sanchez, who, as far as we have been able to determine, is a nonexistent person.

I am confident that Mr. Clowney can help you to resolve this matter in full. Your assertion that you need to deposit the money with a Mexican court to resolve this is merely more bluster on your part. As an example, there is no income tax due on the sale of an aircraft, as you assert below.

As I have said on numerous occasions, if you pay the money into Mr. Clowney's escrow account, this matter will be behind you. Otherwise, we will continue to prosecute our lawsuit against you and your company, and I am sure the insurance company will do everything it can as well.

Sincerely,

Mike Mason

Exhibit 17, page 77

# EXHIBIT 9

**From:** Michael Mason [mailto:mmason@metschlaw.com]
**Sent:** Friday, December 04, 2015 9:47 AM
**To:** Pablo Gonzalez Ulloa
**Cc:** Lance Ricotta; Paul Metsch; Kristian Frich; Doug Bland; Chip Clowney
**Subject:** RE: R Consulting/Ulloa--Ulloa October 23, 2015 email to Doug Bland

Exhibit 17, page 79

Mr. Ulloa,

Iy client rejects your offer to pay $785,000. We had an agreement, which you apparently never intended to honor, for you to pay the sum of $1,019,000 to R Consulting via an escrow account with your attorney, Mr. Clowney. When you deposit the sum of $1,019,000 into escrow with Mr. Clowney, we will talk.

In the meantime, please provide the Aircraft's pilot records and a copy of your company's insurance policy on the Aircraft, as I have requested on several occasions, so that R Consulting may proceed with its insurance claim on the Aircraft.

Sincerely,

Mike Mason

**PROOF OF SERVICE**
*R Consulting & Sales, Inc. v. Old Republic Insurance Company, et al.*
**Case No. 3:17-cv-00171-LAB-BLM**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 150 S. Los Robles Avenue, Suite 940, Pasadena, California 91101.

On September 25, 2017, I served the within document(s) described as:

**REQUESTS FOR ADMISSION, SET ONE**

on the interested parties in this action as stated on the attached mailing list.

☐ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day, with postage thereon fully prepaid at Pasadena, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **BY FAX:** I transmitted a copy of the foregoing document(s) this date via telecopier to the facsimile numbers shown on the attached mailing list.

☒ **BY OVERNIGHT COURIER:** I caused such envelope to be placed for collection and delivery on this date in accordance with standard Federal Express delivery procedures.

☐ **BY EMAIL:** I transmitted a copy of the foregoing document by electronically sending it to the email addresses of the persons set forth on the attached service list.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 25, 2017, at Pasadena, California.

| Yvonne Allfie | *Yvonne Allfie*            /s/ |
|---|---|
| (Type or print name) | (Signature) |



**SERVICE LIST**
*R Consulting & Sales, Inc. v. Old Republic Insurance Company, et al.*
**Case No. 3:17-cv-00171-LAB-BLM**

| Michael J. Mason, Esq.<br>Metsch & Mason, LLP<br>Emerald Plaza<br>402 W. Broadway, Suite 2700<br>San Diego, CA 92101<br>Email: *mmason@metschlaw.com*<br><br>Attorneys for Plaintiff<br>R CONSULTING & SALES, INC. | Tel: 619-230-1642<br>Fax: 619-230-1839 |

LAW OFFICES
LaMontagne &
Amador LLP

2

Exhibit 17, page 82

https://www.fedex.com/shipping/html/en/PrintIFrame.html



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

9/25/2017, 1:12 PM

Exhibit 17, page 83

# EXHIBIT 18

PAUL S. METSCH [SBN 121912]
pmetsch@metschlaw.com
MICHAEL J. MASON [SBN 222602]
mmason@metschlaw.com
METSCH & MASON, LLP
Emerald Plaza
402 W. Broadway, Suite 2700
San Diego, CA 92101
Direct: 619-230-1642
Fax: 619-230-1839

Attorneys for Plaintiff R CONSULTING
& SALES, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R CONSULTING & SALES, INC. a Nevada corporation, | Case No.: 3:17-cv-00171-LAB-BLM |
| Plaintiff, | |
| v. | **PLAINTIFF R CONSULTING & SALES, INC.'S RESPONSE TO REQUESTS FOR ADMISSION, SET ONE** |
| OLD REPUBLIC INSURANCE COMPANY, a Pennsylvania corporation; and DOES 1 through 10, | |
| Defendants. | |

**PROPOUNDING PARTY:**   DEFENDANT OLD REPUBLIC INSURANCE COMPANY

**RESPONDING PARTY:**   PLAINTIFF R CONSULTING & SALES, INC.

**SET NUMBER:**   One (1)

TO OLD REPUBLIC INSURANCE COMPANY AND ITS ATTORNEYS OF RECORD:  Pursuant to Fed. R. Civ. Proc. 36(b), Plaintiff R CONSULTING & SALES, INC. ("R Consulting") hereby objects and responds as follows to Defendant OLD REPUBLIC INSURANCE COMPANY'S ("Old Republic") Requests for Admission, Set One.

/ / /

# I

## PRELIMINARY STATEMENT

These responses are made solely for the purpose of and in relation to this action. Each answer is given subject to all appropriate objections (including, but not limited to, objections concerning competence, relevance, materiality, proprietary, and admissibility) that would require the exclusion of any statement contained herein if the request were asked of, or any statement contained herein were made by, a witness present and testifying in court. All such objections and grounds therefore are reserved and may be interposed at the time of trial.

R Consulting has not completed investigation of the facts relating to this action, has not completed discovery, and has not completed preparation for trial. Therefore, the following answers are given without prejudice to R Consulting's right to produce subsequently discovered facts.

Except for facts explicitly admitted herein, no admission of any nature whatsoever is to be implied or inferred. That any request herein has been answered should not be taken as an admission, or a concession of the existence of any facts set forth or assumed by such request, or that such answer constitutes evidence of any fact thus set forth or assumed.

# II

## GENERAL OBJECTIONS

1. R Consulting objects to Old Republic's first set of requests for admission to the extent that any particular request is beyond the scope of permissible discovery, in that it is not relevant to the subject matter of the lawsuit or likely to lead to discovery of admissible evidence.

2. R Consulting objects to Old Republic's first set of requests for admission to the extent that it calls for production of any information that is privileged, that was prepared in anticipation of litigation or for trial or otherwise constitutes attorney work product, that contains privileged trade secrets or other

1    proprietary information, that contains confidential financial or other personal,

2    business, or commercial information protected from discovery under state or federal

3    constitutional rights of privacy, or that is otherwise immune from discovery.

4    Inadvertent production of any information enumerated in this general objection shall

5    not constitute a waiver of any privilege or other ground for objecting to discovery

6    concerning such information during any subsequent proceeding.

7         3.      R Consulting objects to Old Republic's first set of requests for

8    admission according to R Consulting's best, good-faith understanding and

9    interpretation of each item therein.  If Old Republic subsequently asserts a different

10   interpretation than that presently understood or being used by R Consulting, R

11   Consulting reserves the right to supplement or amend these objections and

12   responses.  In responding to Old Republic's first set of requests for admission, R

13   Consulting has conducted a diligent search and a reasonable inquiry to answer each

14   and every request.

15        4.      All General Objections are incorporated by reference into each

16   Response below.

17              **RESPONSES TO REQUESTS FOR ADMISSION**

18        Subject to the foregoing preliminary statement and without waiving the

19   foregoing general objections, R Consulting responds as follows:

20   **REQUEST FOR ADMISSION NO. 1:**

21        Exhibit 1 is a genuine copy of an Aircraft Insurance Application that YOU

22   submitted to AVSURANCE in August of 2014.

23   **RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

24        Admit.

25   **REQUEST FOR ADMISSION NO. 2:**

26        Exhibit 2 is a genuine copy of the LEASE.

27   **RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

28        Admit.

1   **REQUEST FOR ADMISSION NO. 3:**

2      Exhibit 3 is a genuine copy of the PURCHASE AGREEMENT.

3   **RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

4      Admit.

5   **REQUEST FOR ADMISSION NO. 4:**

6      Exhibit 4 is a genuine copy of four emails exchanged between RICOTTA and

7   ULLOA on July 1, 2015.

8   **RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

9      Admit only that Exhibit 4 is a genuine copy of five, not four, emails

10   exchanged between RICOTTA and ULLOA on July 1, 2015.  Except as expressly

11   admitted, deny.

12   **REQUEST FOR ADMISSION NO. 5:**

13      The $200,000 wire transfer YOU received from ASACV/ULLOA in April of

14   2015 represented rental payments pursuant to the LEASE for the months of January

15   2015, February 2015 and March 2015.

16   **RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

17      Objection.  The request lacks foundation.  The request seeks information that

18   is irrelevant to the subject matter of this litigation and is therefore not reasonably

19   calculated to lead to the discovery of admissible evidence.  Without waiving the

20   foregoing objections, R Consulting responds as follows:

21      Admit only that the $200,000 wire transfer on 4/9/15 represented payments

22   due to R Consulting under the LEASE for January through March of 2015, as stated

23   in the Wells Fargo wire transfer receipt.  At this time, R Consulting was unaware

24   that the AIRCRAFT had been stolen and then destroyed by an unknown third-party.

25   Except as expressly admitted, deny.

26   **REQUEST FOR ADMISSION NO. 6:**

27      The $200,000 wire transfer YOU received from ASACV/ULLOA in April of

28   2015 represented payment towards the amount due under the PURCHASE

1 | AGREEMENT.

2 | **RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

3 |     Objection. The request lacks foundation. The request seeks information that

4 | is irrelevant to the subject matter of this litigation and is therefore not reasonably

5 | calculated to lead to the discovery of admissible evidence. Without waiving the

6 | foregoing objections, R Consulting responds as follows:

7 |     Deny.

8 | **REQUEST FOR ADMISSION NO. 7:**

9 |     ULLOA released possession of the AIRCRAFT to SANCHEZ before there

10 | had been payment of the amount due under the PURCHASE AGREEMENT.

11 | **RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

12 |     Objection. The request lacks foundation. The request seeks information that

13 | is irrelevant to the subject matter of this litigation and is therefore not reasonably

14 | calculated to lead to the discovery of admissible evidence. Without waiving the

15 | foregoing objections, R Consulting responds as follows:

16 |     Admit only that in or around January of 2015, ULLOA falsely represented to

17 | R Consulting that he delivered the AIRCRAFT to SANCHEZ on or about January

18 | 12, 2015. Yet, R Consulting never gave any permission to ULLOA to deliver the

19 | AIRCRAFT to anyone. R Consulting later determined in or around September of

20 | 2015 that the AIRCRAFT had been lost, stolen and/or possibly destroyed. Then R

21 | Consulting learned from Michael "Scott" Weigman of DHS on or about November

22 | 30, 2015 that ULLOA had never actually delivered the AIRCRAFT to

23 | SANCHEZ—as ULLOA had represented to R Consulting—and that the

24 | AIRCRAFT had been destroyed in Venezuela on or about December 23, 2014. Mr.

25 | Weigman further informed R Consulting that he believed the AIRCRAFT had been

26 | burned. R Consulting believes that SANCHEZ was an employee of ULLOA,

27 | playing a part at ULLOA's behest to cover for the theft of the AIRCRAFT by an

28 | unknown third-party. Except as expressly admitted, deny.

Exhibit 18, page 5

1   **REQUEST FOR ADMISSION NO. 8:**

2       As of July 6, 2015, the LEASE was still registered to ULLOA/ASACV with

3   the FAA.

4   **RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

5       Objection.  The request lacks foundation.  The request seeks information that

6   is irrelevant to the subject matter of this litigation and is therefore not reasonably

7   calculated to lead to the discovery of admissible evidence.  Without waiving the

8   foregoing objections, R Consulting responds as follows:

9       Admit.

10  **REQUEST FOR ADMISSION NO. 9:**

11      Exhibit 5 is a genuine copy of a letter dated July 31, 2015 directed to

12  RICOTTA that YOU received on or about July 31, 2015.

13  **RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

14      Objection.  The request lacks foundation.  The request seeks information that

15  is irrelevant to the subject matter of this litigation and is therefore not reasonably

16  calculated to lead to the discovery of admissible evidence.  Without waiving the

17  foregoing objections, R Consulting responds as follows:

18      Admit only that Exhibit 5 is a fraud that was likely manufactured by ULLOA,

19  purporting to be from SANCHEZ.  Except as expressly admitted, deny.

20  **REQUEST FOR ADMISSION NO. 10:**

21      YOU have no evidence disputing the fact that possession and control of the

22  AIRCRAFT was assumed by SANCHEZ at the Toluca International Airport,

23  Mexico, on December 22, 2014.

24  **RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

25      Objection.  The request lacks foundation.  The request seeks information that

26  is irrelevant to the subject matter of this litigation and is therefore not reasonably

27  calculated to lead to the discovery of admissible evidence.  Without waiving the

28  foregoing objections, R Consulting responds as follows:

1    Deny.

2    **REQUEST FOR ADMISSION NO. 11:**

3    Exhibit 6 is a genuine copy of a document with the title "Lic. Luis Arevalo

4    Contreras Corredor Publico No. 1 Del Estado De Guerrero" that was attached to an

5    email dated August 27, 2015 from ULLOA to RICOTTA.

6    **RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

7    Objection. The request lacks foundation. The request seeks information that

8    is irrelevant to the subject matter of this litigation and is therefore not reasonably

9    calculated to lead to the discovery of admissible evidence. Without waiving the

10   foregoing objections, R Consulting responds as follows:

11   Admit only that Exhibit 6 is a copy of a document with the title "Lic. Luis

12   Arevalo Contreras Corredor Publico No. 1 Del Estado De Guerrero, but R

13   Consulting does not know to what Exhibit 6 pertains or its purpose. Except as

14   expressly admitted, deny.

15   **REQUEST FOR ADMISSION NO. 12:**

16   ULLOA has stated that he delivered the AIRCRAFT to SANCHEZ.

17   **RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

18   Objection. The request lacks foundation. The request seeks information that

19   is irrelevant to the subject matter of this litigation and is therefore not reasonably

20   calculated to lead to the discovery of admissible evidence. Without waiving the

21   foregoing objections, R Consulting responds as follows:

22   Admit only that ULLOA perpetrated a fraud on R Consulting to lead R

23   Consulting into believing that the AIRCRAFT was going to be sold to SANCHEZ,

24   who was an employee of ULLOA, playing a part at ULLOA's behest to cover for

25   the theft of the AIRCRAFT by an unknown third-party. Except as expressly

26   admitted, deny.

27   **REQUEST FOR ADMISSION NO. 13:**

28   YOU have no evidence disputing ULLOA's statement that ULLOA delivered

Exhibit 18, page 7

1   the AIRCRAFT to SANCHEZ.

2   **RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

3       Objection.  The request lacks foundation.  The request seeks information that

4   is irrelevant to the subject matter of this litigation and is therefore not reasonably

5   calculated to lead to the discovery of admissible evidence.  Without waiving the

6   foregoing objections, R Consulting responds as follows:

7       Deny.

8   **REQUEST FOR ADMISSION NO. 14:**

9       YOU believe ULLOA stole the AIRCRAFT.

10  **RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

11      Objection.  The request lacks foundation.  The request seeks information that

12  is irrelevant to the subject matter of this litigation and is therefore not reasonably

13  calculated to lead to the discovery of admissible evidence.  Without waiving the

14  foregoing objections, R Consulting responds as follows:

15      Deny.

16  **REQUEST FOR ADMISSION NO. 15:**

17      Exhibit 7 is a genuine copy of an email dated November 16, 2015 from

18  YOUR attorney, Michael Mason, to ULLOA.

19  **RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

20      Objection.  The request lacks foundation.  The request seeks information that

21  is irrelevant to the subject matter of this litigation and is therefore not reasonably

22  calculated to lead to the discovery of admissible evidence.  Without waiving the

23  foregoing objections, R Consulting responds as follows:

24      Admit.

25  **REQUEST FOR ADMISSION NO. 16:**

26      Exhibit 8 is a genuine copy of an email dated November 19, 2015 from

27  YOUR attorney, Michael Mason, to ULLOA.

28  / / /

R CONSULTING'S RESPONSE TO OLD REPUBLIC'S REQUESTS FOR ADMISSION, SET ONE

Exhibit 18, page 8

1  **RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

2      Objection.  The request lacks foundation.  The request seeks information that

3  is irrelevant to the subject matter of this litigation and is therefore not reasonably

4  calculated to lead to the discovery of admissible evidence.  Without waiving the

5  foregoing objections, R Consulting responds as follows:

6      Admit.

7  **REQUEST FOR ADMISSION NO. 17:**

8      The AIRCRAFT was destroyed in Venezuela on or about December 23, 2014.

9  **RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

10      Objection.  The request lacks foundation.  The request seeks information that

11  is irrelevant to the subject matter of this litigation and is therefore not reasonably

12  calculated to lead to the discovery of admissible evidence.  Without waiving the

13  foregoing objections, R Consulting responds as follows:

14      Admit.

15  **REQUEST FOR ADMISSION NO. 18:**

16      If the AIRCRAFT was destroyed, YOU are not aware how it was destroyed.

17  **RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

18      Objection.  The request lacks foundation.  The request seeks information that

19  is irrelevant to the subject matter of this litigation and is therefore not reasonably

20  calculated to lead to the discovery of admissible evidence.  Without waiving the

21  foregoing objections, R Consulting responds as follows:

22      Deny.

23  **REQUEST FOR ADMISSION NO. 19:**

24      The AIRCRAFT was not destroyed in Venezuela on or about December 23,

25  2014.

26  **RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

27      Objection.  The request lacks foundation.  The request seeks information that

28  is irrelevant to the subject matter of this litigation and is therefore not reasonably

1  calculated to lead to the discovery of admissible evidence.  Without waiving the

2  foregoing objections, R Consulting responds as follows:

3      Deny.

4  **REQUEST FOR ADMISSION NO. 20:**

5      Prior to 2015, YOU failed to inform AVSURANCE that the AIRCRAFT had

6  been leased to ULLOA and ASACV.

7  **RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

8      Objection.  The request lacks foundation.  The request seeks information that

9  is irrelevant to the subject matter of this litigation and is therefore not reasonably

10  calculated to lead to the discovery of admissible evidence.  Without waiving the

11  foregoing objections, R Consulting responds as follows:

12      Deny.

13  **REQUEST FOR ADMISSION NO. 21:**

14      Exhibit 9 is a genuine copy of an email dated December 4, 2015 from YOUR

15  attorney, Michael Mason, to ULLOA.

16  **RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

17      Objection.  The request lacks foundation.  The request seeks information that

18  is irrelevant to the subject matter of this litigation and is therefore not reasonably

19  calculated to lead to the discovery of admissible evidence.  Without waiving the

20  foregoing objections, R Consulting responds as follows:

21      Admit.

22  **REQUEST FOR ADMISSION NO. 22:**

23      SANCHEZ did not steal the AIRCRAFT.

24  **RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

25      Objection.  The request lacks foundation.  The request seeks information that

26  is irrelevant to the subject matter of this litigation and is therefore not reasonably

27  calculated to lead to the discovery of admissible evidence.  Without waiving the

28  foregoing objections, R Consulting responds as follows:

1    Admit.

2    **REQUEST FOR ADMISSION NO. 23:**

3    No individual other than ULLOA or SANCHEZ stole the AIRCRAFT.

4    **RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

5    Objection. The request lacks foundation. The request seeks information that

6    is irrelevant to the subject matter of this litigation and is therefore not reasonably

7    calculated to lead to the discovery of admissible evidence. Without waiving the

8    foregoing objections, R Consulting responds as follows:

9    Deny.

10

11   DATED: October 30, 2017          METSCH & MASON, LLP

12

13

14                                     By: _____

15                                          PAUL S. METSCH
                                            MICHAEL J. MASON
16                                          Attorneys for Plaintiff R CONSULTING &
17                                          SALES, INC.

18

19

20

21

22

23

24

25

26

27

28

55431-006                          -11-                    3:17-CV-00171-LAB-BLM
R CONSULTING'S RESPONSE TO OLD REPUBLIC'S REQUESTS FOR ADMISSION, SET ONE

Exhibit 18, page 11

VERIFICATION

STATE OF CALIFORNIA     )
                        )
COUNTY OF SAN DIEGO  )

I have read the foregoing PLAINTIFF R CONSULTING & SALES, INC.'S RESPONSE TO REQUESTS FOR ADMISSION, SET ONE, and know its contents.

☐   I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☒   I am the President of Plaintiff R Consulting & Sales, Inc., a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

☐   I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

☐   The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

Executed on October 3̲0̲, 2017, at San Diego, California.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Raquel Michel                     _____
Raquel Michel                     Signature

VERIFICATION TO PLAINTIFF R CONSULTING & SALES, INC.'S RESPONSE TO REQUESTS FOR ADMISSION, SET ONE

Exhibit 18, page 12

# EXHIBIT 19



ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**12/22/2016** at 09:26:48 AM

Clerk of the Superior Court
By Carla Brennan,Deputy Clerk

1   PAUL S. METSCH [SBN 121912]
    pmetsch@metschlaw.com
2   MICHAEL J. MASON [SBN 222602]
    mmason@metschlaw.com
3   METSCH & MASON, LLP
    Emerald Plaza
4   402 W. Broadway, Suite 2700
    San Diego, CA 92101
5   Direct: 619-230-1642
    Fax: 619-230-1839
6
    Attorneys for Plaintiff R CONSULTING
7   & SALES, INC.

8                   SUPERIOR COURT OF CALIFORNIA

9              COUNTY OF SAN DIEGO, CENTRAL DIVISION

10

11  R CONSULTING & SALES, INC., a Nevada        Case No.  37-2016-00045118-CU-BC-CTL
    corporation,
12                                              COMPLAINT FOR:
13              Plaintiff,
                                                (1)   BREACH OF CONTRACT;
14  v.                                                AND
                                                (2)   TORTIOUS BREACH OF THE
15  OLD REPUBLIC INSURANCE COMPANY,                   DUTY OF GOOD FAITH AND
    a Pennsylvania corporation; and DOES 1            FAIR DEALING
16  through 10,

17              Defendants.

18

19

20

21

22

23

24

25

26

27

28

55431-006

COMPLAINT FOR BREACH OF CONTRACT AND TORTIOUS BREACH OF THE DUTY OF GOOD FAITH
AND FAIR DEALING

Exhibit 19, page 1

Plaintiff R Consulting & Sales, Inc., L.P. ("R Consulting") alleges as follows:

## PARTIES

1.      R Consulting is, and at all relevant times was, a Nevada corporation authorized to do business in the County of San Diego, California. R Consulting is, and at all relevant times was, the owner of the aircraft identified as a 1983 Gulfstream III Aircraft S/N G-1159A-388 and its affixed two engines, bearing FAA Registration Number N388LR (the "Aircraft").

2.      R Consulting alleges on information and belief that Defendant Old Republic Insurance Company ("Old Republic") is, and at all relevant times was, a Pennsylvania corporation doing business in the County of San Diego, California.

3.      R Consulting is presently unaware of the true names or capacities of the defendants sued as Does 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. R Consulting will seek leave to amend this Complaint to allege the true names and capacities of Does 1 through 10 when it learns them.

4.      R Consulting alleges on information and belief that Does 1 through 10 are in some way responsible for the events and damages, along with the other defendants, alleged in this Complaint.  Unless specifically indicated otherwise, each reference to any named defendant or to "Defendants" or "defendants" includes by reference all Doe defendants.

5.      R Consulting alleges on information and belief that at all relevant times each defendant, including Does 1 through 10, was the agent, employee, partner, member, officer, parent, subsidiary, fiduciary, alter ego or co-conspirator of the remaining defendants, and in acting or failing to act as alleged, each defendant acted within the course and scope of its agency, employment, partnership, membership or conspiracy, and with the knowledge and consent and under the direction and control of one or more of the remaining defendants.

## VENUE AND JURISDICTION

6.      Venue is proper in this Court because the obligations and claims sued upon in this Complaint were made and entered into, and were performed and to be performed, in San Diego County, California. In addition, the Aircraft was based out of San Diego County, California.

///

55431-006                                    -1-
COMPLAINT FOR BREACH OF CONTRACT AND TORTIOUS BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

<u>COMMON ALLEGATIONS</u>

1

2      7.      On or about September 25, 2013, R Consulting purchased a policy of insurance for

3  the Aircraft from Old Republic, effective September 30, 2013, Policy CA-002462-02 ("Policy").

4  Attached as **Exhibit "A"** is a true copy of the Policy.  The Policy was renewed and effective

5  through September 30, 2015.  At all relevant times, the Policy provided insurance coverage for the

6  Aircraft, including physical damage coverage, up to the hull value of the Aircraft in the amount of

7  $1,300,000.  At the time the Policy was issued and at all relevant times thereafter, Old Republic

8  knew that R Consulting was in the business of leasing aircrafts, including the Aircraft.

9      8.      On or about September 4, 2014, R Consulting, on the one hand, entered into an

10  Aircraft Dry Lease for the Aircraft ("Lease") with Aviarrendamientos S.A. de C.V

11  ("Aviarrendamientos") and Pablo Gonzalez Ulloa ("Ulloa," and together with Aviarrendamientos,

12  the "Lessees"), on the other hand.  R Consulting notified Old Republic of the Lease.

13     9.      On or before September 30, 2015, R Consulting, through its agent, Lance Ricotta,

14  sent written notice to Old Republic via an email to Doug Bland of Old Republic Aerospace (the

15  managers for Old Republic) making a claim under the Policy.  Specifically, Mr. Ricotta stated that

16  R Consulting had been informed in approximately September of 2015 that, in mid-December of

17  2014, the Aircraft departed Toluca, Mexico bound for Queretaro, Mexico, and that, mid-flight, the

18  Aircraft asked to change destination to Cancun Mexico, but was told the Aircraft never arrived in

19  Cancun, and thus the Aircraft was lost, stolen or destroyed.

20     10.     R Consulting was informed via the Mexican Directorate General of Civil

21  Aeronautics ("DGAC") that on December 23, 2014 the Aircraft departed Toluca, Mexico bound

22  for Queretaro, Mexico.  The DGAC further informed R Consulting that, mid-flight, the Aircraft

23  requested to change its destination to Cancun, Mexico, but the Aircraft never arrived at its

24  destination in Cancun.  Mr. Ricotta then contacted Mr. Scott Weigman from the United States

25  Department of Homeland Security, who stated to Mr. Ricotta that he learned that the flight

26  occurred on December 23, 2014 and that the Aircraft never arrived at its destination.

27     11.     The Policy was in effect on December 23, 2014 when the Aircraft was lost, stolen

28  or destroyed and at the time the claim was made.  R Consulting timely paid all of the premiums

55431-006                                    -2-
COMPLAINT FOR BREACH OF CONTRACT AND TORTIOUS BREACH OF THE DUTY OF GOOD FAITH
AND FAIR DEALING

1  due under the Policy. R Consulting timely made a claim against the Policy to Old Republic for the

2  loss of the Aircraft. After a lengthy delay, Old Republic wrongfully denied insurance coverage for

3  the Aircraft and refused to pay R Consulting's claim arising out of the total loss of the Aircraft.

4       12.    Old Republic materially breached its obligations under the Policy by wrongfully

5  denying insurance coverage, and failing to pay R Consulting's claim against the Policy, for the

6  loss of the Aircraft. Old Republic wrongfully denied insurance coverage for the Aircraft by,

7  among other reasons, falsely stating that Old Republic was not aware of the Lease (though not a

8  prerequisite under the Policy), despite that Jennifer Melvin, Old Republic's underwriter for the

9  Policy, had informed Old Republic around November of 2015 that she was aware of the Lease and

10  had confirmed to R Consulting that the Policy would provide insurance coverage for the Aircraft

11  during the Lease term.

12       13.    As a direct and proximate result of Old Republic's bad faith denial of insurance

13  coverage, R Consulting has been damaged in the sum of at least $1,300,000, exclusive of pre-

14  judgment interest, attorneys' fees and costs. Old Republic has continued to deny insurance

15  coverage, despite R Consulting's repeated demands.

16                    <u>FIRST CAUSE OF ACTION</u>

17         **(Breach of Contract—against Old Republic and Does 1 through 10)**

18       14.    R Consulting re-alleges and incorporates by reference paragraphs 1 through 12

19  above as though fully set forth herein.

20       15.    R Consulting timely paid all premiums due on the Policy and has fully and timely

21  performed all other obligations required by the Policy, except for those legally excused.

22       16.    R Consulting alleges on information and belief that Old Republic materially

23  breached the Policy by wrongfully denying insurance coverage, and failing to pay R Consulting's

24  claim against the Policy, for the loss of the Aircraft.

25       17.    As a direct and proximate result of Old Republic's breaches, R Consulting has been

26  damaged in the sum of at least $1,300,000, exclusive of pre-judgment interest, attorneys' fees and

27  costs.

28  /  /  /

55431-006                 -3-

COMPLAINT FOR BREACH OF CONTRACT AND TORTIOUS BREACH OF THE DUTY OF GOOD FAITH
AND FAIR DEALING

## SECOND CAUSE OF ACTION

**(Tortious Breach of the Duty of Good Faith and Fair Dealing—against Old Republic and Does 1 through 10)**

18.    R Consulting re-alleges and incorporates by reference paragraphs 1 through 13 and 15 through 17 above as though fully set forth herein.

19.    The Policy contained an implied promise and obligation requiring Old Republic to refrain from doing anything to injure, frustrate, or interfere with the rights of R Consulting to receive the benefits of its Policy with Old Republic. This implied promise imposed a duty of good faith and fair dealing upon Old Republic and an obligation for Old Republic to act in a fair and honest manner.

20.    Old Republic has breached its duty of good faith and fair dealing in various respects, including:

a. Refusing to provide insurance benefits at a time when it knew or reasonably should have known it had an obligation to do so;

b. Willfully and in bad faith interpreting facts and policy provisions so as to resolve ambiguities and uncertainties to favor its own interests;

c. Looking for excuses to deny coverage; and

d. Other unreasonable acts that will be subject to proof at the time of trial.

21.    In addition to the damages alleged in paragraph 17 herein, Old Republic's wrongful conduct has caused additional harm and general damage beyond loss of Policy benefits, including additional attorneys' fees and other costs related to pursuing this claim. The exact amount of these damages is currently undetermined, but will be subject to proof at the time of trial.

22.    Old Republic has acted in a despicable manner with a willful and conscious disregard of R Consulting's rights and in a manner constituting oppression, fraud and/or malice under Civil Code section 3294, justifying punitive and exemplary damages in an amount to be determined at the time of trial sufficient to punish and make an example of Old Republic.

## PRAYER

WHEREFORE, R Consulting prays for judgment against Defendants, and each of them, as

55431-006                                    -4-

COMPLAINT FOR BREACH OF CONTRACT AND TORTIOUS BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

1   follows:

2   <u>ON THE FIRST CAUSE OF ACTION:</u>

3        1.      For compensatory damages in at least the sum of at least $1,300,000, according to

4   proof at trial;

5   <u>ON THE SECOND CAUSE OF ACTION:</u>

6        1.      For compensatory damages in at least the sum of at least $1,300,000, according to

7   proof at trial; and

8        2.      For punitive and exemplary damages, according to proof at trial.

9   <u>ON ALL CAUSES OF ACTION:</u>

10       1.      For reasonable attorneys' fees and costs of suit incurred in this action;

11       2.      For pre-judgment interest at the maximum allowable legal rate; and

12       3.      For such other and further relief as the Court deems just and proper.

13

14   DATED: December 22 , 2016          METSCH & MASON, LLP

15

16                                     By: _____
                                            PAUL S. METSCH
17                                          MICHAEL J. MASON
                                            Attorneys for Plaintiff R CONSULTING
18                                          & SALES, INC.

19

20

21

22

23

24

25

26

27

28

55431-006                                       -5-

# EXHIBIT 20

1   PAUL S. METSCH [SBN 121912]
     pmetsch@metschlaw.com
2   MICHAEL J. MASON [SBN 222602]
     mmason@metschlaw.com
3   METSCH & MASON, LLP
     Emerald Plaza
4   402 W. Broadway, Suite 2700
     San Diego, CA 92101
5   Direct: 619-230-1642
     Fax: 619-230-1839
6

7   Attorneys for Plaintiff R CONSULTING
     & SALES, INC.

8

9            **UNITED STATES DISTRICT COURT**

           **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   R CONSULTING & SALES, INC. a      Case No.: 3:17-cv-00171-LAB-BLM
     Nevada corporation,

12          Plaintiff,

13      v.                   **PLAINTIFF R CONSULTING &**
                         **SALES, INC.'S RESPONSE TO**
14   OLD REPUBLIC INSURANCE       **INTERROGATORIES, SET ONE**
     COMPANY, a Pennsylvania
15   corporation; and DOES 1 through 10,

16          Defendants.

17

18   **PROPOUNDING PARTY:**     DEFENDANT OLD REPUBLIC INSURANCE

19                            COMPANY

20   **RESPONDING PARTY:**       PLAINTIFF R CONSULTING & SALES, INC.

21   **SET NUMBER:**            One (1)

22       TO OLD REPUBLIC INSURANCE COMPANY AND ITS ATTORNEYS

23   OF RECORD:

24       Pursuant to Fed. R. Civ. Proc. 33(b), Plaintiff R Consulting & Sales, Inc. ("R

25   Consulting") hereby objects and responds as follows to Defendant Old Republic

26   Insurance Company's ("Old Republic") Interrogatories, Set One.

27   / / /

28   / / /

55431-006                                             3:17-cv-00171-LAB-BLM

# I

## PRELIMINARY STATEMENT

These responses are made solely for the purpose of and in relation to this action. Each answer is given subject to all appropriate objections (including, but not limited to, objections concerning competence, relevance, materiality, proprietary, and admissibility) that would require the exclusion of any statement contained herein if the interrogatory were asked of, or any statement contained herein were made by, a witness present and testifying in court. All such objections and grounds therefore are reserved and may be interposed at the time of trial.

R Consulting has not completed investigation of the facts relating to this action, has not completed discovery, and has not completed preparation for trial. Therefore, the following answers are given without prejudice to R Consulting's right to produce subsequently discovered facts.

Except for facts explicitly admitted herein, no admission of any nature whatsoever is to be implied or inferred. That any interrogatory herein has been answered should not be taken as an admission, or a concession of the existence of any facts set forth or assumed by such interrogatory, or that such answer constitutes evidence of any fact thus set forth or assumed.

# II

## GENERAL OBJECTIONS

1. R Consulting objects to Old Republic's first set of interrogatories to the extent that any particular interrogatory is beyond the scope of permissible discovery, in that it is not relevant to the subject matter of the lawsuit or likely to lead to discovery of admissible evidence.

2. R Consulting objects to Old Republic's first set of interrogatories to the extent that it calls for production of any information that is privileged, that was prepared in anticipation of litigation or for trial or otherwise constitutes attorney work product, that contains privileged trade secrets or other proprietary information,

1  that contains confidential financial or other personal, business, or commercial

2  information protected from discovery under state or federal constitutional rights of

3  privacy, or that is otherwise immune from discovery.  Inadvertent production of any

4  information enumerated in this general objection shall not constitute a waiver of any

5  privilege or other ground for objecting to discovery concerning such information

6  during any subsequent proceeding.

7        3.    R Consulting objects to Old Republic's first set of interrogatories

8  according to R Consulting's best, good-faith understanding and interpretation of

9  each item therein.  If Old Republic subsequently asserts a different interpretation

10  than that presently understood or being used by R Consulting, R Consulting reserves

11  the right to supplement or amend these objections and responses.  In responding to

12  Old Republic's first set of interrogatories, R Consulting has conducted a diligent

13  search and a reasonable inquiry to answer each and every interrogatory.

14        4.    All General Objections are incorporated by reference into each

15  Response below.

16  **RESPONSES TO INTERROGATORIES**

17      Subject to the foregoing preliminary statement and without waiving the

18  foregoing general objections, R Consulting responds as follows:

19  **INTERROGATORY NO. 1:**

20      IDENTIFY all insurance payments relating to the AIRCRAFT YOU have

21  received from any source in or after August 2014.

22  **RESPONSE TO INTERROGATORY NO. 1:**

23      Objection.  The interrogatory lacks foundation. The interrogatory seeks

24  information that is irrelevant to the subject matter of this litigation and is therefore

25  not reasonably calculated to lead to the discovery of admissible evidence.  Without

26  waiving the foregoing objections, R Consulting responds as follows:

27      R Consulting has not received any payments from any insurance companies

28  relating to the AIRCRAFT in or after August 2014.

1 **INTERROGATORY NO. 2:**

2    IDENTIFY all payments relating to the AIRCRAFT YOU received in or after

3 August 2014 from any source.

4 **RESPONSE TO INTERROGATORY NO. 2:**

5    Objection.  The interrogatory lacks foundation. The interrogatory is vague

6 and ambiguous.  The interrogatory seeks information that is irrelevant to the subject

7 matter of this litigation and is therefore not reasonably calculated to lead to the

8 discovery of admissible evidence.  Without waiving the foregoing objections, R

9 Consulting responds as follows:

10    R Consulting has received the following payments from ULLOA, all of which

11 were AIRCRAFT Lease payments, in or after August 2014:

12    1. $16,404.49 on 9/5/14;

13    2. $35,000 on 9/25/14;

14    3. $35,000 on 10/2/14;

15    4. $20,000 on 11/6/14;

16    5. $35,000 on 11/6/14;

17    6. $30,000 on 11/14/14;

18    7. $25,000 on 12/15/14;

19    8. $35,000 on 12/23/14;

20    9. $35,000 on 1/30/15; and

21    10. $200,000 on 4/9/15 (for the months of January, February and March 2015)

22       for total LEASE payments from ULLOA of $466,404.49.

23 **INTERROGATORY NO. 3:**

24    IDENTIFY all payments relating to the AIRCRAFT YOU received from

25 SANCHEZ.

26 **RESPONSE TO INTERROGATORY NO. 3:**

27    Objection.  The interrogatory lacks foundation. The interrogatory seeks

28 information that is irrelevant to the subject matter of this litigation and is therefore

1 | not reasonably calculated to lead to the discovery of admissible evidence.  Without
2 | waiving the foregoing objections, R Consulting responds as follows:
3 |     R Consulting has not received any payments relating to the AIRCRAFT from
4 | SANCHEZ.  Based upon comments from Mr. Weigman, R Consulting now believes
5 | that SANCHEZ was an employee of ULLOA, playing a part at ULLOA's behest to
6 | cover for the theft of the AIRCRAFT by an unknown third-party.
7 | **INTERROGATORY NO. 4:**
8 |     What was RICOTTA's employment status with YOU in 2014 and 2015?
9 | **RESPONSE TO INTERROGATORY NO. 4:**
10 |     Objection.  The interrogatory is vague and ambiguous as to "employment
11 | status."  The interrogatory seeks information that is irrelevant to the subject matter
12 | of this litigation and is therefore not reasonably calculated to lead to the discovery of
13 | admissible evidence.  Without waiving the foregoing objections, R Consulting
14 | responds as follows:
15 |     RICOTTA was, and is, a contract flight controller for R Consulting, who also
16 | brokers aircraft leases and sales for R Consulting, to sometimes include delivery of
17 | aircraft.
18 | **INTERROGATORY NO. 5:**
19 |     When, and under what circumstances, did YOU last see the AIRCRAFT?
20 | **RESPONSE TO INTERROGATORY NO. 5:**
21 |     Objection.  The interrogatory is vague and ambiguous as to "circumstances."
22 | The interrogatory seeks information that is irrelevant to the subject matter of this
23 | litigation and is therefore not reasonably calculated to lead to the discovery of
24 | admissible evidence.  Without waiving the foregoing objections, R Consulting
25 | responds as follows:
26 |     R Consulting last saw the AIRCRAFT on or about September 5, 2014 when
27 | RICOTTA flew the AIRCRAFT to Toluca, Mexico to deliver the AIRCRAFT to
28 | ULLOA on behalf of R Consulting on or about September 5, 2014.

**INTERROGATORY NO. 6:**

Did ULLOA/ASACV deliver possession of the AIRCRAFT to anyone after September 4, 2014?

**RESPONSE TO INTERROGATORY NO. 6:**

Objection.  The interrogatory lacks foundation.  The interrogatory seeks information that is irrelevant to the subject matter of this litigation and is therefore not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving the foregoing objections, R Consulting responds as follows:

No.  In or around January of 2015, ULLOA falsely represented to R Consulting that he delivered the AIRCRAFT to SANCHEZ on or about January 12, 2015.  Yet, R Consulting never gave any permission to ULLOA to deliver the AIRCRAFT to anyone.  R Consulting later determined in or around September of 2015 that the AIRCRAFT had been lost, stolen and/or possibly destroyed.  Then R Consulting learned from Michael "Scott" Weigman of DHS on or about November 30, 2015 that ULLOA had never actually delivered the AIRCRAFT to SANCHEZ and that the AIRCRAFT had been destroyed in Venezuela on or about December 23, 2014.  Mr. Weigman further informed R Consulting that he believed the AIRCRAFT had been burned.  Based upon comments from Mr. Weigman, R Consulting now believes that SANCHEZ was an employee of ULLOA, playing a part at ULLOA's behest to cover for the theft of the AIRCRAFT by an unknown third-party.

**INTERROGATORY NO. 7:**

If YOUR response to Interrogatory No. 6 is in the affirmative, please provide all details of the delivery.

**RESPONSE TO INTERROGATORY NO. 7:**

N/A.

**INTERROGATORY NO. 8:**

IDENTIFY all payments you received from ULLOA/ASACV pursuant to the

1  LEASE.

2  **RESPONSE TO INTERROGATORY NO. 8:**

3      Please see R Consulting's response to interrogatory number 2 incorporated by

4  this reference.

5  **INTERROGATORY NO. 9:**

6      If YOU contend the AIRCRAFT was destroyed in Venezuela on or about

7  December 23, 2014, state all facts that support that contention and IDENTIFY all

8  persons with knowledge of such facts.

9  **RESPONSE TO INTERROGATORY NO. 9:**

10      Objection.  The interrogatory lacks foundation. The interrogatory seeks

11  information that is irrelevant to the subject matter of this litigation and is therefore

12  not reasonably calculated to lead to the discovery of admissible evidence.  Without

13  waiving the foregoing objections, R Consulting responds as follows:

14      R Consulting learned from Michael "Scott" Weigman of DHS on or about

15  November 30, 2015 that ULLOA had never actually delivered the AIRCRAFT to

16  SANCHEZ and that the AIRCRAFT had been destroyed in Venezuela on or about

17  December 23, 2014.  Mr. Weigman further informed R Consulting that he believed

18  the AIRCRAFT had been burned.  Based upon comments from Mr. Weigman, R

19  Consulting now believes that SANCHEZ was an employee of ULLOA, playing a

20  part at ULLOA's behest to cover for the theft of the AIRCRAFT by an unknown

21  third-party.  Also, the Federal Aviation Administration ("FAA") advised R

22  Consulting that the AIRCRAFT had gone missing.  Thus, on February 2, 2017, R

23  Consulting sent a FOIA request to the FAA for records relating to the theft of the

24  AIRCRAFT, but the FAA responded on April 20, 2017 and refused to provide any

25  records, citing an ongoing investigation as the reason for its refusal.  R Consulting

26  recently contacted the FAA regarding its FOIA request, and the FAA informed R

27  Consulting, on or about October 24, 2017, that it had completed its accident

28  investigation and that R Consulting would need to submit a new FOIA request for

1   records relating to the FAA accident investigation.  R Consulting has yet to receive

2   a written acknowledgement of its recent FOIA request.

3   **INTERROGATORY NO. 10:**

4       If YOU contend the AIRCRAFT was stolen, state all facts that support that

5   contention and IDENTIFY all persons with knowledge with such facts.

6   **RESPONSE TO INTERROGATORY NO. 10:**

7       Objection.  The interrogatory lacks foundation.  The interrogatory seeks

8   information that is irrelevant to the subject matter of this litigation and is therefore

9   not reasonably calculated to lead to the discovery of admissible evidence.  Without

10   waiving the foregoing objections, R Consulting responds as follows:

11       In or around January of 2015, ULLOA falsely represented to R Consulting

12   that he delivered the AIRCRAFT to SANCHEZ on or about January 12, 2015.  Yet,

13   R Consulting never gave any permission to ULLOA to deliver the AIRCRAFT to

14   anyone.  R Consulting later determined in or around September of 2015 that the

15   AIRCRAFT had been lost, stolen and/or possibly destroyed.  Then R Consulting

16   learned from Michael "Scott" Weigman of DHS on or about November 30, 2015

17   that ULLOA had never actually delivered the AIRCRAFT to SANCHEZ—as

18   ULLOA had falsely represented to R Consulting—and that the AIRCRAFT had

19   been destroyed in Venezuela on or about December 23, 2014.  Mr. Weigman further

20   informed R Consulting that he believed that the AIRCRAFT had been burned.  R

21   Consulting later learned that the AIRCRAFT had flown through Jamaican airspace

22   on or about December 23, 2014, as the AIRCRAFT was on its way from Toluca,

23   Mexico to Cancun, Mexico.  Based upon comments from Mr. Weigman, R

24   Consulting now believes that SANCHEZ was an employee of ULLOA, playing a

25   part at ULLOA's behest to cover for the theft of the AIRCRAFT by an unknown

26   third-party.

27       The December 1, 2014 AIRCRAFT Purchase Agreement ("Purchase

28   Agreement") turned out to be a sham agreement, and the sale of the AIRCRAFT

1   never closed because, unbeknownst to R Consulting at the time, the AIRCRAFT had
2   been destroyed on or about December 23, 2014.  R Consulting never received any of
3   the funds due under the Purchase Agreement.  The Purchase Agreement was a fraud
4   perpetrated by ULLOA to deflect responsibility for the theft of the AIRCRAFT
5   from himself to SANCHEZ.  Thus, the AIRCRAFT was not "sold," but rather
6   stolen.

7         The following persons are aware of the facts relating to the AIRCRAFT's
8   theft:  Raquel Michel, Lance Ricotta, Old Republic (including its brokers, agents,
9   employees and anyone acting on its behalf), Michael "Scott" Weigman of the DHS,
10   ULLOA and SANCHEZ, who likely does not exist and possibly the FAA.

11  **INTERROGATORY NO. 11:**

12        IDENTIFY all reports to law enforcement YOU made asserting that there was
13   a theft of the AIRCRAFT.

14  **RESPONSE TO INTERROGATORY NO. 11:**

15        Objection.  The interrogatory is vague and ambiguous as to "law
16   enforcement."  Without waiving the foregoing objections, R Consulting responds as
17   follows:

18        R Consulting reported the AIRCRAFT stolen to the San Diego County
19   Sheriff's Department on December 7, 2015.  R Consulting also called Mike Webster
20   of FAA Legal on July 30, 2015 to let the FAA know that R Consulting was
21   uncertain about the AIRCRAFT's location and to seek advice.

22        R Consulting also learned from Michael "Scott" Weigman of DHS on or
23   about November 30, 2015 that ULLOA had never actually delivered the
24   AIRCRAFT to SANCHEZ—as ULLOA had falsely represented to R Consulting—
25   and that the AIRCRAFT had been destroyed in Venezuela on or about December
26   23, 2014.  Mr. Weigman further informed R Consulting that he believed the
27   AIRCRAFT had been burned.

28        In addition, Steve Tochterman of the FAA emailed R Consulting on or about

1   December 30, 2014 and asked for a copy of the LEASE.

2       Also, on or about February 2, 2017, R Consulting made a FOIA request to the

3   FAA for records relating to the theft of the AIRCRAFT, but the FAA refused to

4   provide any records, citing an ongoing investigation as the reason for its refusal. R

5   Consulting recently contacted the FAA regarding its FOIA request, and the FAA

6   informed R Consulting, on or about October 24, 2017, that it had completed its

7   accident investigation and that R Consulting would need to submit a new FOIA

8   request for records relating to the FAA accident investigation. R Consulting has yet

9   to receive a written acknowledgement of its recent FOIA request.

10   **INTERROGATORY NO. 12:**

11       In September of 2014, where did YOU understand the AIRCRAFT would be

12   based during the term of the LEASE?

13   **RESPONSE TO INTERROGATORY NO. 12:**

14       Objection. The interrogatory lacks foundation. The interrogatory is vague

15   and ambiguous as to "based." The interrogatory seeks information that is irrelevant

16   to the subject matter of this litigation and is therefore not reasonably calculated to

17   lead to the discovery of admissible evidence. Without waiving the foregoing

18   objections, R Consulting responds as follows:

19       When R Consulting prepared Old Republic's application for the policy, R

20   Consulting identified the AIRCRAFT's base as "Minden-Tahoe Airport." Before

21   Old Republic issued the AIRCRAFT's policy, Old Republic contacted R Consulting

22   to inquire of the AIRCRAFT's location. R Consulting gave El Paso, Texas as the

23   AIRCRAFT's location at that time, and that is the location that Old Republic used

24   as the AIRCRAFT's base on the Old Republic insurance policy.

25   **INTERROGATORY NO. 13:**

26       IDENTIFY who was principally responsible in YOUR company for obtaining

27   YOUR aviation insurance coverage.

28   / / /

**RESPONSE TO INTERROGATORY NO. 13:**

Raquel Michel, with assistance from RICOTTA.

**INTERROGATORY NO. 14:**

State all facts and IDENTIFY all persons with knowledge with such facts, that support the following allegation set forth in paragraph 12 of YOUR complaint: "Jennifer Melvin, Old Republic's underwriter for the Policy, had informed Old Republic around November of 2015 that she was aware of the Lease and had confirmed to R Consulting that the Policy would provide insurance coverage for the Aircraft during the Lease term."

**RESPONSE TO INTERROGATORY NO. 14:**

Objection. The interrogatory lacks foundation. The interrogatory is compound. The interrogatory seeks information that is irrelevant to the subject matter of this litigation and is therefore not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objections, R Consulting responds as follows:

Ed Underwood of Avsurance, one of Old Republic's agents, stated that Jennifer Melvin informed him in or around November of 2015 that she was aware that R Consulting leased all of its aircraft insured with Old Republic when Old Republic issued the policy and that she had informed Old Republic accordingly. In addition, Avsurance (Ed Underwood and Jim Coleman) had advised R Consulting that Old Republic's policy would provide coverage for the AIRCRAFT, and Avsurance was aware that the AIRCRAFT was under the LEASE.

The following persons are aware of the above facts: Ed Underwood, Jim Coleman, Jennifer Melvin, Raquel Michel, Lance Ricotta, Old Republic (including its brokers, agents, employees and anyone acting on its behalf).

**INTERROGATORY NO. 15:**

If YOU do not admit without qualification, Request No. 10, set forth in the accompanying Requests for Admission, Set No. One, state all facts that support

1   YOUR response, and IDENTIFY all persons with knowledge of such facts.

2   **RESPONSE TO INTERROGATORY NO. 15:**

3        Objection.  The interrogatory lacks foundation.  The interrogatory is

4   compound.  The interrogatory seeks information that is irrelevant to the subject

5   matter of this litigation and is therefore not reasonably calculated to lead to the

6   discovery of admissible evidence.  Without waiving the foregoing objections, R

7   Consulting responds as follows:

8        In or around January of 2015, ULLOA falsely represented to R Consulting

9   that he delivered the AIRCRAFT to SANCHEZ on or about January 12, 2015.  Yet,

10  R Consulting never gave any permission to ULLOA to deliver the AIRCRAFT to

11  anyone.  R Consulting later determined in or around September of 2015 that the

12  AIRCRAFT had been lost, stolen and/or possibly destroyed.  Then R Consulting

13  learned from Michael "Scott" Weigman of DHS on or about November 30, 2015

14  that ULLOA had never actually delivered the AIRCRAFT to SANCHEZ—as

15  ULLOA had falsely represented to R Consulting—and that the AIRCRAFT had

16  been destroyed in Venezuela on or about December 23, 2014.  Mr. Weigman further

17  informed R Consulting that he believed the AIRCRAFT had been burned.  Based

18  upon comments from Mr. Weigman, R Consulting now believes that SANCHEZ

19  was an employee of ULLOA, playing a part at ULLOA's behest to cover for the

20  theft of the AIRCRAFT by an unknown third-party.

21       In addition, Roberto Hernandez, the AIRCRAFT's pilot who flew the

22  AIRCRAFT to Toluca, Mexico on December 22, 2014, had not released operational

23  control of the AIRCRAFT to anyone.  Yet, the AIRCRAFT was stolen the next day,

24  on or about December 23, 2014, and was flown through Jamaican airspace.  The

25  AIRCRAFT was ultimately destroyed in Venezuela on or about December 23, 2014.

26       The following persons have knowledge of these facts:  Michael "Scott"

27  Weigman, Roberto Hernandez, ULLOA, Jamaica Civil Aviation Authority, Raquel

28  Michel, Lance Ricotta, Old Republic (including its brokers, agents, employees and

1  anyone acting on its behalf) and the unknown third-party who stole the AIRCRAFT

2  **INTERROGATORY NO. 16:**

3      If YOU do not admit without qualification, Request No. 13, set forth in the

4  accompanying Requests for Admission, Set No. One, state all facts that support

5  YOUR response, and IDENTIFY all persons with knowledge of such facts.

6  **RESPONSE TO INTERROGATORY NO. 16:**

7      Objection.  The interrogatory lacks foundation.  The interrogatory is

8  compound.  The interrogatory seeks information that is irrelevant to the subject

9  matter of this litigation and is therefore not reasonably calculated to lead to the

10  discovery of admissible evidence.  Without waiving the foregoing objections, R

11  Consulting responds as follows:

12      In or around January of 2015, ULLOA falsely represented to R Consulting

13  that he delivered the AIRCRAFT to SANCHEZ on or about January 12, 2015.  Yet,

14  R Consulting never gave any permission to ULLOA to deliver the AIRCRAFT to

15  anyone.  R Consulting later determined in or around September of 2015 that the

16  AIRCRAFT had been lost, stolen and/or possibly destroyed.  Then R Consulting

17  learned from Michael "Scott" Weigman of DHS on or about November 30, 2015

18  that ULLOA had never actually delivered the AIRCRAFT to SANCHEZ—as

19  ULLOA had falsely represented to R Consulting—and that the AIRCRAFT had

20  been destroyed in Venezuela on or about December 23, 2014.  Mr. Weigman further

21  informed R Consulting that he believed the AIRCRAFT had been burned.  Based

22  upon comments from Mr. Weigman, R Consulting now believes that SANCHEZ

23  was an employee of ULLOA, playing a part at ULLOA's behest to cover for the

24  theft of the AIRCRAFT by an unknown third-party.

25      In addition, Roberto Hernandez, the AIRCRAFT's pilot who flew the

26  AIRCRAFT to Toluca, Mexico before it went missing, had not released operational

27  control of the AIRCRAFT to anyone.  Notwithstanding that, the AIRCRAFT was

28  stolen on or about December 23, 2014, and was flown through Jamaican airspace.

1   Based upon comments from Mr. Weigman, R Consulting now believes that the
2   AIRCRAFT was ultimately destroyed in Venezuela on or about December 23, 2014.
3        The following persons have knowledge of these facts:  Michael "Scott"
4   Weigman, Roberto Hernandez, ULLOA, Jamaica Civil Aviation Authority, Raquel
5   Michel, Lance Ricotta, Old Republic (including its brokers, agents, employees and
6   anyone acting on its behalf) and the unknown third-party who stole the AIRCRAFT.
7   **INTERROGATORY NO. 17:**
8        If YOU do not admit without qualification, Request No. 14, set forth in the
9   accompanying Requests for Admission, Set No. One, state all facts that support
10  YOUR response, and IDENTIFY all persons with knowledge of such facts.
11  **RESPONSE TO INTERROGATORY NO. 17:**
12       Objection.  The interrogatory lacks foundation.  The interrogatory is
13  compound.  The interrogatory seeks information that is irrelevant to the subject
14  matter of this litigation and is therefore not reasonably calculated to lead to the
15  discovery of admissible evidence.  Without waiving the foregoing objections, R
16  Consulting responds as follows:
17       In or around January of 2015, ULLOA falsely represented to R Consulting
18  that he delivered the AIRCRAFT to SANCHEZ on or about January 12, 2015.  Yet,
19  R Consulting never gave any permission to ULLOA to deliver the AIRCRAFT to
20  anyone.  R Consulting later determined in or around September of 2015 that the
21  AIRCRAFT had been lost, stolen and/or possibly destroyed.  Then R Consulting
22  learned from Michael "Scott" Weigman of DHS on or about November 30, 2015
23  that ULLOA had never actually delivered the AIRCRAFT to SANCHEZ—as
24  ULLOA had falsely represented to R Consulting—and that the AIRCRAFT had
25  been destroyed in Venezuela on or about December 23, 2014.  Mr. Weigman further
26  informed R Consulting that he believed the AIRCRAFT had been burned.  Based
27  upon comments from Mr. Weigman, R Consulting now believes that SANCHEZ
28  was an employee of ULLOA, playing a part at ULLOA's behest to cover for the

1   theft of the AIRCRAFT by an unknown third-party.

2        In addition, Roberto Hernandez, the AIRCRAFT's pilot who flew the

3   AIRCRAFT to Toluca, Mexico on December 22, 2014, had not released operational

4   control of the AIRCRAFT to anyone.  Yet, the AIRCRAFT was stolen the next day,

5   on or about December 23, 2014, and was flown through Jamaican airspace.  The

6   AIRCRAFT was ultimately destroyed in Venezuela on or about December 23, 2014.

7        The following persons have knowledge of these facts:  Michael "Scott"

8   Weigman, Roberto Hernandez, ULLOA, Jamaica Civil Aviation Authority, Raquel

9   Michel, Lance Ricotta, Old Republic (including its brokers, agents, employees and

10  anyone acting on its behalf) and the unknown third-party who stole the AIRCRAFT.

11  **INTERROGATORY NO. 18:**

12       If YOU do not admit without qualification, Request No. 18, set forth in the

13  accompanying Requests for Admission, Set No. One, state all facts that support

14  YOUR response, and IDENTIFY all persons with knowledge of such facts.

15  **RESPONSE TO INTERROGATORY NO. 18:**

16       Objection.  The interrogatory lacks foundation.  The interrogatory is

17  compound.  The interrogatory seeks information that is irrelevant to the subject

18  matter of this litigation and is therefore not reasonably calculated to lead to the

19  discovery of admissible evidence.  Without waiving the foregoing objections, R

20  Consulting responds as follows:

21       R Consulting learned from Michael "Scott" Weigman of DHS on or about

22  November 30, 2015 that ULLOA had never actually delivered the AIRCRAFT to

23  SANCHEZ and that the AIRCRAFT had been destroyed in Venezuela on or about

24  December 23, 2014.  Yet, R Consulting never gave any permission to ULLOA to

25  deliver the AIRCRAFT to anyone.  Mr. Weigman further informed R Consulting

26  that he believed the AIRCRAFT had been burned.

27       The following persons have knowledge of these facts:  Michael "Scott"

28  Weigman, Raquel Michel, Lance Ricotta, Old Republic (including its brokers,

1 | agents, employees and anyone acting on its behalf), the San Diego County Sheriff's
2 | Department, and the unknown third-party who stole the AIRCRAFT.

3 | **INTERROGATORY NO. 19:**

4 | If YOU do not admit without qualification, Request No. 19, set forth in the
5 | accompanying Requests for Admission, Set No. One, state all facts that support
6 | YOUR response, and IDENTIFY all persons with knowledge of such facts.

7 | **RESPONSE TO INTERROGATORY NO. 19:**

8 | Objection. The interrogatory lacks foundation. The interrogatory is
9 | compound. The interrogatory seeks information that is irrelevant to the subject
10 | matter of this litigation and is therefore not reasonably calculated to lead to the
11 | discovery of admissible evidence. Without waiving the foregoing objections, R
12 | Consulting responds as follows:

13 | In or around January of 2015, ULLOA falsely represented to R Consulting
14 | that he delivered the AIRCRAFT to SANCHEZ on or about January 12, 2015. Yet,
15 | R Consulting never gave any permission to ULLOA to deliver the AIRCRAFT to
16 | anyone. R Consulting later determined in or around September of 2015 that the
17 | AIRCRAFT had been lost, stolen and/or possibly destroyed. Then R Consulting
18 | learned from Michael "Scott" Weigman of DHS on or about November 30, 2015
19 | that ULLOA had never actually delivered the AIRCRAFT to SANCHEZ—as
20 | ULLOA had falsely represented to R Consulting—and that the AIRCRAFT had
21 | been destroyed in Venezuela on or about December 23, 2014. Mr. Weigman further
22 | informed R Consulting that he believed the AIRCRAFT had been burned. Based
23 | upon comments from Mr. Weigman, R Consulting now believes that SANCHEZ
24 | was an employee of ULLOA, playing a part at ULLOA's behest to cover for the
25 | theft of the AIRCRAFT by an unknown third-party.

26 | In addition, Roberto Hernandez, the AIRCRAFT's pilot who flew the
27 | AIRCRAFT to Toluca, Mexico on December 22, 2014, had not released operational
28 | control of the AIRCRAFT to anyone. Yet, the AIRCRAFT was stolen the next day,

1   on or about December 23, 2014, and was flown through Jamaican airspace. The

2   AIRCRAFT was ultimately destroyed in Venezuela on or about December 23, 2014.

3       The following persons have knowledge of these facts: Michael "Scott"

4   Weigman, Roberto Hernandez, ULLOA, Jamaica Civil Aviation Authority, Raquel

5   Michel, Lance Ricotta, Old Republic (including its brokers, agents, employees and

6   anyone acting on its behalf) and the unknown third-party who stole the AIRCRAFT.

7   **INTERROGATORY NO. 20:**

8       If YOU do not admit without qualification, Request No. 20, set forth in the

9   accompanying Requests for Admission, Set No. One, state all facts that support

10  YOUR response, and IDENFITY all persons with knowledge of such facts.

11  **RESPONSE TO INTERROGATORY NO. 20:**

12      Objection. The interrogatory lacks foundation. The interrogatory is

13  compound. The interrogatory seeks information that is irrelevant to the subject

14  matter of this litigation and is therefore not reasonably calculated to lead to the

15  discovery of admissible evidence. Without waiving the foregoing objections, R

16  Consulting responds as follows:

17      Ed Underwood of Avsurance, one of Old Republic's agents, stated that

18  Jennifer Melvin informed him in or around November of 2015 that she was aware

19  that R Consulting leased all of its aircraft insured with Old Republic when Old

20  Republic issued the policy and that she had informed Old Republic accordingly. In

21  addition, Avsurance (Ed Underwood and Jim Coleman) had advised R Consulting

22  that Old Republic's policy would provide coverage for the AIRCRAFT, and

23  Avsurance was aware that the AIRCRAFT was under the LEASE.

24      The following persons are aware of the above facts: Ed Underwood, Jim

25  Coleman, Jennifer Melvin, Raquel Michel, Lance Ricotta, Old Republic (including

26  its brokers, agents, employees and anyone acting on its behalf).

27  **INTERROGATORY NO. 21:**

28      If YOU do not admit without qualification, Request No. 22, set forth in the

1  accompanying Requests for Admission, Set No. One, state all facts that support

2  YOUR response, and IDENTIFY all persons with knowledge of such facts.

3  **RESPONSE TO INTERROGATORY NO. 21:**

4      N/A.

5  **INTERROGATORY NO. 22:**

6      If YOU do not admit without qualification, Request No. 23, set forth in the

7  accompanying Requests for Admission, Set No. One, state all facts that support

8  YOUR response, and IDENTIFY all persons with knowledge of such facts.

9  **RESPONSE TO INTERROGATORY NO. 22:**

10     Objection. The interrogatory lacks foundation. The interrogatory is

11  compound. The interrogatory seeks information that is irrelevant to the subject

12  matter of this litigation and is therefore not reasonably calculated to lead to the

13  discovery of admissible evidence. Without waiving the foregoing objections, R

14  Consulting responds as follows:

15     In or around January of 2015, ULLOA falsely represented to R Consulting

16  that he delivered the AIRCRAFT to SANCHEZ on or about January 12, 2015. Yet,

17  R Consulting never gave any permission to ULLOA to deliver the AIRCRAFT to

18  anyone. R Consulting later determined in or around September of 2015 that the

19  AIRCRAFT had been lost, stolen and/or possibly destroyed. Then R Consulting

20  learned from Michael "Scott" Weigman of DHS on or about November 30, 2015

21  that ULLOA had never actually delivered the AIRCRAFT to SANCHEZ—as

22  ULLOA had falsely represented to R Consulting—and that the AIRCRAFT had

23  been destroyed in Venezuela on or about December 23, 2014. Mr. Weigman further

24  informed R Consulting that he believed the AIRCRAFT had been burned. Based

25  upon comments from Mr. Weigman, R Consulting now believes that SANCHEZ

26  was an employee of ULLOA, playing a part at ULLOA's behest to cover for the

27  theft of the AIRCRAFT by an unknown third-party.

28     In addition, Roberto Hernandez, the AIRCRAFT's pilot who flew the

1  AIRCRAFT to Toluca, Mexico on December 22, 2014, had not released operational

2  control of the AIRCRAFT to anyone.  Yet the AIRCRAFT was stolen the next day,

3  on or about December 23, 2014, and was flown through Jamaican airspace.  The

4  AIRCRAFT was ultimately destroyed in Venezuela on or about December 23, 2014.

5        The following persons have knowledge of these facts:  Michael "Scott"

6  Weigman, Roberto Hernandez, ULLOA, Jamaica Civil Aviation Authority, Raquel

7  Michel, Lance Ricotta, Old Republic (including its brokers, agents, employees and

8  anyone acting on its behalf) and the unknown third-party who stole the AIRCRAFT.

9

10  DATED:  October 30, 2017          METSCH & MASON, LLP

11

12

13                          By: _____

14                               PAUL S. METSCH
                                 MICHAEL J. MASON
15                               Attorneys for Plaintiff R CONSULTING &
                                 SALES, INC.
16

17

18

19

20

21

22

23

24

25

26

27

28

55431-006                          -19-                    3:17-CV-00171-LAB-BLM
        R CONSULTING'S RESPONSE TO OLD REPUBLIC'S INTERROGATORIES, SET ONE

VERIFICATION

STATE OF CALIFORNIA    )
COUNTY OF SAN DIEGO  )

      I have read the foregoing PLAINTIFF R CONSULTING & SALES, INC.'S RESPONSE TO INTERROGATORIES, SET ONE, and know its contents.

☐      I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☒      I am the President of Plaintiff R Consulting & Sales, Inc., a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

☐      I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

☐      The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

      Executed on October 30, 2017, at San Diego, California.

      I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

_Raquel Michel_
Raquel Michel

_Raquel Michel_ (Signature)
Signature

Exhibit 20, page 20