Ralph S. LaMontagne, Jr. [State Bar No. 91536]
Eric A. Amador [State Bar No. 143395]
Thomas T. Carpenter [State Bar No. 98051]
LaMONTAGNE & AMADOR LLP
150 S. Los Robles Avenue, Suite 940
Pasadena, California 91101
Telephone: (626) 765-6800
Facsimile: (626) 765-6801

Attorneys for Defendant
OLD REPUBLIC INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R CONSULTING & SALES, INC., a Nevada corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>OLD REPUBLIC INSURANCE COMPANY, a Pennsylvania corporation; and DOES 1 through 10,<br><br>    Defendants. | Case No. 3:17-cv-00171-LAB-BLM<br><br>**DECLARATION OF JENNIFER MELVIN IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date: July 23, 2018<br>Time: 11:30 a.m.<br>Ctrm: 14A<br><br>Removal Filed: 1/30/2017 |

I, Jennifer Melvin, declare as follows:

1. From December of 2009 to June of 2015, I was employed by Phoenix Aviation Managers, Inc. ("PAM") as an underwriter. (PAM changed its name to Old Republic Aerospace, Inc. shortly before I left the company.) I have personal knowledge of the matters set forth in this declaration. If called to testify, I would testify competently to the facts set forth herein.

2. My deposition was taken in this case on December 13, 2017.

1
DECLARATION OF JENNIFER MELVIN IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

239127

3.     When I was employed by PAM, I underwrote aviation insurance policies on behalf of Old Republic Insurance Company ("ORIC").

4.     Until my departure from PAM in June of 2015, I was the PAM underwriter assigned to the R Consulting & Sales, Inc. ("R Consulting") account.  In this regard, I was responsible for underwriting relating to, and involving the issuance of, two policies of insurance: (1) policy no. CA 0024601, effective September 30, 2013 to September 30, 2014 ("the 13/14 Policy"); and (2) policy no. CA 00246202, effective September 30, 2014 to September 30, 2015 ("the 14/15 Policy").  Broker Avsurance Corporation ("Avsurance") represented R Consulting's interest as respects the issuance of both policies.  My principal contact at Avsurance was its Account Manager, James Coleman.

5.     In initially considering the R Consulting risk, I reviewed a number of documents provided me from Avsurance, including a "Pilot Experience Form" ("PEF") for pilot Lance Ricotta ("Ricotta"), which was dated September 4, 2013, as well as an "Aircraft Insurance Application" ("the 2013 Application") signed by R Consulting's president, Raquel Michel ("Michel"), on September 10, 2013.  Exhibit 7 to the Notice of Lodgment and Lodgment of Exhibits in Support of Motion for Summary Judgment, or, in the Alternative, Partial Summary Judgment ("NOL") is a true and correct copy of the PEF.  Exhibit 6 to the NOL is a true and correct copy of the 2013 Application.

6.     In the PEF, the "No" box was checked as respects the question: "Have you ever been convicted of or pleaded guilty to a felony or driving while impaired or intoxicated?"

7.     In the 2013 Application, it was represented that the aircraft to be insured, a 1983 Gulfstream jet, would be "based at" Brown Field in San Diego, California.  This was an acceptable base airport from an underwriting perspective.  Although the 2013 Application identified the aircraft's registration number as N797BD, I would later learn that the registration number had been changed to N388LR.

8.     The 2013 Application also stated: "Describe any navigation outside of the USA and Canada."  The answer provided was "Mexico."

9. Given the "Mexico" response, I wanted to ensure that the aircraft's travel into Mexico would only be occasional in nature. This is because, during my entire tenure at PAM, it was the company's firm policy to *not* write aviation policies as respects aircraft that were based in Mexico.

10. Given my concerns, on September 11, 2013, I sent Mr. Coleman at Avsurance an email, wherein I set forth four items that I needed in order to proceed with my underwriting evaluation. A true and correct copy of this email is set forth as Exhibit 8 to the NOL. One of the items I requested in this email was the following: "Confirmation that the aircraft is not **predominantly** based in, or conducting flights in Mexico (the policy territory is Worldwide, so we do not mind the occasional vacation south of the border, but if they spend more time down there than up here we'd have to pass)."

11. On September 17, 2013, I sent another email to Mr. Coleman. A true and correct copy of this email is set forth as Exhibit 9 to the NOL. In that email, I sought to "confirm" a number of items, including the following: "While there are several vacation flights a year to Mexico, their operations are predominantly domestic."

12. On September 18, 2013, Mr. Coleman sent me an email. A true and correct copy of this email is set forth as Exhibit 11 to the NOL. Therein, Mr. Coleman stated: "The insured has confirmed all of your questions. However, they do go to Mexico from time to time for business, so I wouldn't classify it solely as 'vacation' trips."

13. On September 19, 2013, Mr. Coleman sent me another email. A true and correct copy thereof is set forth on the second page of Exhibit 12 to the NOL. Therein, Mr. Coleman stated: "I thought I mentioned it, but maybe I did not . . . The aircraft is no longer based in San Diego. It is based at Atlantic Aviation in El Paso, TX." (At the time of my deposition, I had not recalled this email, which had been written more than four years prior, as it was not one of the documents I reviewed in preparation for my deposition. As none of the documents I *did* review in preparation for my deposition indicated that the aircraft's base was, in fact, El Paso, I testified during my deposition that it was my "best estimate" that the information I received regarding the base change to El Paso was via a telephone

call with Mr. Coleman.  In this regard, I stated: "If I don't have it in writing, it was a phone call.  That was now I kind of operated."  (See my deposition at pages 26, line 18 through page 27, line 14.)  I now know that I *did* have it in writing.)

14. El Paso, like San Diego, was an acceptable base airport from an underwriting perspective.

15. On September 19, 2013, I sent Mr. Coleman an email, indicating that the El Paso base was not a problem.  A true and correct copy of this email is set forth on the first page of Exhibit 12 to the NOL.  (Once again, this is an email that I had not reviewed prior to my deposition.)

16. As my communications with Mr. Coleman reassured me that N388LR would *not* be based in Mexico, I proceeded to issue the 13/14 Policy.  A certified copy of this policy appears as Exhibit 13 to the NOL.

17. In August of 2014, R Consulting submitted its application for a renewal policy for the period September 30, 2014 to September 30, 2015 ("the 2014 Application"). A true and correct copy of the 2014 Application is set forth as Exhibit 48 to the NOL.  The 2014 Application sought coverage not only for N388LR, but also for a second Gulfstream III jet, N234LR.  The 2014 Application stated that both jets would be "Based At" the Minden-Tahoe Airport in Nevada.  (This airport, like Brown Field and El Paso, was also an acceptable aircraft base from an underwriting perspective.)  The 2014 Application also provided a "No" response to the following question: "Has any pilot ever been convicted of or plead guilty to a felony or driving while intoxicated?"

18. On September 23, 2014, I sent to Avsurance the "Aircraft Insurance Binder" ("the Binder") relative to the 14/15 Policy.  A true and correct copy of the Binder is set forth as Exhibit 55 to the NOL.  The Binder stated that both aircraft would be "Based at" El Paso.  I believe the listing of N388LR's base as El Paso was the result of a telephone conversation I likely had with Mr. Coleman, wherein I was informed that El Paso, not Minden-Tahoe, would be the base for that aircraft.

19. In my September 23, 2014 email to Avsurance's Customer Service Representative, Kathleen Winkelhaus, which attached the Binder (a true and correct copy of which is set forth in Exhibit 56 to the NOL), I stated, relative to the Binder: "Please send a confirmation email stating it is either correct or incorrect along with the needed changes." In an email of the same date (which is also set forth in Exhibit 56 to the NOL), Ms. Winkelhaus responded: "The binder looks good."

20. I thereafter issued the 14/15 Policy. A certified copy of this policy appears as Exhibit 21 to the NOL. The Coverage Data Page of the 14/15 Policy identified the "Home Base" for both aircraft as "ELP," which is the airport identifier for El Paso.

21. Since I left my employment with PAM, I learned that, on or about September 4, 2014, a dry-lease was entered into between R Consulting on the one hand, and Pablo Gonzalez Ulloa ("Ulloa") and his Mexican company, Aviarrendamientos S.A. de C.V., on the other hand, with respect to N388LR ("the Ulloa Lease"). I was never informed of the existence of the Ulloa Lease until well after I left PAM, and after the 14/15 Policy had expired. After the 14/15 Policy expired, I was shown a copy of the Ulloa Lease, which is attached as Exhibit 2 to Exhibit 17 to the NOL. It is my understanding that the Ulloa Lease called for a $73,000 monthly rent payment, and that, during the term of the lease, N388LR was based in Toluca, Mexico, which I understand is located on the outskirts of Mexico City.

22. While the form CA 280 "Industrial Aid Use Amendment" endorsement, contained in both the 13/14 Policy and 14/15 Policy, prohibits the insured from "charg[ing]" another party for using the insured aircraft, outside of "reimbursement of the operating expenses," PAM has, on occasion, on a case-by-case basis, waived this prohibition, and has allowed insureds to charge others in the form of lease payments pursuant to an aircraft dry lease. Throughout my employment with PAM, however, it was PAM's custom and practice that such a waiver could only occur when the insured specifically alerted PAM to the lease in question, explained where the aircraft was going to be based, explained who would be flying the aircraft, explained how the aircraft was going

to be used, and provided a copy of the relevant dry lease agreement (or proposed dry lease agreement). Typically, if we approved a lease, we would add the lessee as an additional insured.

23. If I had known that N388LR would be based *anywhere* in Mexico-- Toluca or any other Mexican city-- I would have absolutely refused to provide coverage for that aircraft. If I had known about the existence of the Ulloa Lease prior to the issuance of any policy, I would have absolutely refused to provide coverage for N388LR. If, during the course of either policy period, I had been asked to approve the Ulloa Lease, I would have absolutely refused to do so. If, during the course of either policy period, I had at any time found out that the Aircraft was based in Mexico, pursuant to the Ulloa Lease or otherwise, I would have immediately started the process of having N388LR removed from the policy.

24. I now understand that R Consulting entered into an Aircraft Purchase Agreement ("Purchase Agreement"), effective December 1, 2014, with one Jose Luis Sanchez, to sell the Aircraft. This Purchase Agreement was not disclosed to PAM at any time while I worked with the company. Had I been made aware that this Purchase Agreement had been entered into, I would have deleted the Aircraft from the 14/15 Policy as of the effective date of the sale.

25. If, in either the PEF or the 2014 Application, I had seen a "Yes" response to the question of whether a pilot had ever been found guilty of a felony, I would have followed up with R Consulting's broker, Avsurance, to obtain the details of the felony. I am now aware that a truthful response to such a follow-up would have led to the disclosure of the case of *United States of America v. Lance Z. Ricotta*, case no. 3:02-cr-00333-W, that was filed in the United States District Court for the Southern District of California, and involved Lance Ricotta's 2005 conviction of the Class C felony of "Conspiracy to Commit Fraud Involving Aircraft." Once I discovered this conviction, I would not have agreed to write any policy for R Consulting without first obtaining the express approval of my supervisor, Michael Prahl, who was (and still is) the company's Senior Vice President and Chicago Branch Manager.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of June, 2018 at Chicago, Illinois.

           /s/ *Jennifer Melvin*
           Jennifer Melvin


# **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 15, 2018, I electronically transmitted Defendant, Old Republic Insurance Company's DECLARATION OF JENNIFER MELVIN IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael J. Mason, Esq.                                    Tel: 619-230-0897
Metsch & Mason, LLP
5060 N. Harbor Drive, Suite 275
San Diego, CA  92106
Email: *mmason@metschlaw.com*

Attorneys for Plaintiff
R CONSULTING & SALES, INC.

                                     */s/  Ralph S. LaMontagne, Jr.*
                                      Ralph S. LaMontagne, Jr.