Ralph S. LaMontagne, Jr. [State Bar No. 91536]
Eric A. Amador [State Bar No. 143395]
Thomas T. Carpenter [State Bar No. 98051]
LaMONTAGNE & AMADOR LLP
150 S. Los Robles Avenue, Suite 940
Pasadena, California 91101
Telephone: (626) 765-6800
Facsimile: (626) 765-6801

Attorneys for Defendant
OLD REPUBLIC INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R CONSULTING & SALES, INC., a Nevada corporation,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>OLD REPUBLIC INSURANCE COMPANY, a Pennsylvania corporation; and DOES 1 through 10,<br><br>　　　　Defendants. | Case No. 3:17-cv-00171-LAB-BLM<br><br>**DECLARATION OF MICHAEL PRAHL IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date: July 23, 2018<br>Time: 11:30 a.m.<br>Ctrm: 14A<br><br>Removal Filed: 1/30/2017 |

I, Michael Prahl, declare as follows:

　　1.　　I am Senior Vice President and Chicago Branch Manager of Old Republic Aerospace, Inc. ("ORA"). I have been employed as an underwriter with the company since December 15, 2009. I have personal knowledge of the matters set forth in this declaration. If called to testify, I would testify competently to the facts set forth herein.

　　2.　　My deposition was taken in this case on February 8, 2018.

---

1
DECLARATION OF MICHAEL PRAHL IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

239133

3.      ORA was previously known as Phoenix Aviation Managers ("PAM"). PAM changed its name to ORA in 2015. In the paragraphs set forth below, I shall use the term "PAM/ORA" to refer to the company.

4.      PAM/ORA is, and for a period of more than ten years has been, the managing general agent for Old Republic Insurance Company ("ORIC") as respects aviation insurance.

5.      I am familiar with the account involving R Consulting & Sales, Inc. ("R Consulting") that involved the issuance by PAM/ORA of two ORIC insurance policies: (1) policy no. CA 0024601, effective September 30, 2013 to September 30, 2014 ("the 13/14 Policy"); and (2) policy no. CA 00246202, effective September 30, 2014 to September 30, 2015 ("the 14/15 Policy"). Exhibit 13 to the Notice of Lodgment and Lodgment of Exhibits in Support of Motion for Summary Judgment, or, in the Alternative, Partial Summary Judgment ("NOL") is a certified copy of the 13/14 Policy. Exhibit 21 to the NOL is a certified copy of the 14/15 Policy.

6.      R Consulting's broker with respect to both policies was Avsurance Corporation ("Avsurance"), which is located in Ann Arbor, Michigan.

7.      The PAM/ORA underwriter who handled the R Consulting account until her departure from the company in June of 2015 was Jennifer Melvin. Thereafter, the account was handled by Corey Becker.

8.      As the Chicago Branch Manager, I served as supervisor of both Ms. Melvin and Mr. Becker.

9.      I have reviewed, and am familiar with, the PAM/ORA underwriting file with respect to the 13/14 Policy and 14/15 Policy, which is available to me electronically. I can attest that all of the documents identified below were kept in the underwriting file in the regular course of PAM/ORA's business:

- Exhibit 6 to the NOL is a true and correct copy of the "Aircraft Insurance Application" submitted by R Consulting dated September 10, 2013.

- Exhibit 7 to the NOL is a true and correct copy of the "Pilot Experience Form" relative to Lance Ricotta dated September 4, 2013.
- Exhibit 8 to the NOL is a true and correct copy of the September 11, 2013 email from Jennifer Melvin to James Coleman.
- Exhibit 9 to the NOL is a true and correct copy of the September 17, 2013 email from Jennifer Melvin to James Coleman.
- Exhibit 37 to the NOL is a true and correct copy of the September 28, 2015 email from Lance Ricotta to James Coleman and Ed Underwood, plus trailing emails.
- Exhibit 48 to the NOL is a true and correct copy of the "Aircraft Insurance Application" submitted by R Consulting relative to the 14/15 Policy.
- Exhibit 51 to the NOL is a true and correct copy of the "Aircraft Insurance Application" submitted by R Consulting dated September 20, 2015.  (No policy was ever issued based upon this application.)
- Exhibit 57 to the NOL is a true and correct copy of email exchanges between Corey Becker and Ed Underwood on August 31, 2015.
- Exhibit 58 to the NOL is a true and correct coy of the September 28, 2015 email from Corey Becker to Michael Prahl, plus trailing emails.
- Exhibit 59 to the NOL is a true and correct copy of the September 28, 2015 email from James Coleman to Corey Becker, plus trailing emails.

10. It is, and at all times during my employment with PAM/ORA has been, the company policy to *not* write aviation policies as respects aircraft that are based in Mexico. This is because the company evaluates the risks of loss in Mexico to be unacceptably high for a number of reasons, including corruption, drug cartel activity and lack of airport security. Indeed, during the course of my eight and one half years working at PAM/ORA, I am unaware of so much as a single policy ever having been issued as respects a Mexican-based risk.

11. It is true that some of our policies provide that aircraft can be *flown* "worldwide." However, there is a huge difference from an underwriting standpoint between allowing occasional flights into a particular country, and having the insured aircraft *based* there. That is why we insist upon knowing where any aircraft we are being asked to insure will be *based*.

12. In order to avoid any confusion regarding Mexican-related coverages, it is appropriate to note that the government of Mexico requires a separate liability coverage for any aircraft entering into Mexico. This coverage is written by Mexican companies and is completely unrelated to the coverage provided under ORIC policies. We do issue an endorsement that strongly encourages our insureds to obtain this separate Mexican coverage. Such endorsement in the 14/15 Policy is to be found on page OR 511 of Exhibit 21 to the NOL.

13. I am aware that the aircraft that is at issue in this lawsuit, a Gulfstream III jet bearing registration no. N388LR ("N388LR"), was the subject matter of a lease dated September 4, 2014 between R Consulting, on the one hand, and Pablo Gonzalez Ulloa ("Ulloa") and his company, both located in Mexico, on the other hand ("the Ulloa Lease"). I understand that this lease called for a monthly rent payment of $73,000, and that N388LR was to be based in Mexico. Had our company known about the Ulloa Lease, it would have absolutely refused to cover the aircraft.

14. Both the 13/14 Policy and the 14/15 Policy included the form CA280 "Industrial Aid Use Amendment" endorsement. This endorsement provides, in part, that "you cannot charge any person or organization for using your aircraft for anything other than reimbursement of the operating expenses." PAM/ORA has, on occasion, on a case-by-case basis, waived this prohibition, and allowed insureds to charge others in the form of lease payments pursuant to an aircraft dry lease. It is PAM/ORA's custom and practice, however, that such a waiver can only occur where the insured alerts PAM/ORA to the proposed lease in question, explains where the aircraft is going to be based, explains who will be flying the aircraft, explains how the aircraft is going to be used, and provides a copy

of the relevant dry lease agreement (or proposed dry lease agreement). If we approve of the lease, the custom and practice is to add the lessee as an additional insured.

15.  My review of the PAM/ORA underwriting file reveals that, during the two year effective period of the 13/14 Policy and 14/15 Policy, PAM/ORA was never informed prospectively by either R Consulting, or its broker, Avsurance, that N388LR would be subject to any dry leases (including the Ulloa Lease). PAM/ORA was also never provided with copies of any dry leases relative to this Aircraft by either R Consulting or Avsurance until the existence of the Ulloa Lease was revealed retrospectively in late September of 2015.

16.  As respects *another* aircraft that was listed under the policies, i.e., Gulfstream III jet N234LR ("N234LR"), there *was* a dry lease involving R Consulting that was presented to PAM/ORA, and was approved. That was an Aircraft Dry Lease made as of July 3, 2014 between R Consulting, on the one hand, and Info Tech Corporation, Andy Kim, both of Las Vegas, Nevada, on the other hand ("the Info Tech Lease"). A true and correct copy of the Info Tech Lease, as it appears in the PAM/ORA underwriting file, is attached as Exhibit 60 to the NOL. And, consistent with custom and practice, Info Tech was added as an additional insured under the 14/15 Policy. An endorsement memorializing same can be found on page OR 0513 of Exhibit 21 to the NOL.

17.  R Consulting also attempted to have a *second* dry lease approved by PAM/ORA as respects N234LR, but PAM/ORA refused. In this regard, Exhibit 57 to the NOL referenced above is an email exchange between PAM/ORA's Corey Becker and Ed Underwood of Avsurance, regarding a potential dry lease between R Consulting and a company which had its home office in the Dominican Republic. Therein, Mr. Becker told Mr. Underwood that "we're just not comfortable with providing coverage for this potential dry-lease, given the nature of the lessee's operations (VIP transportation, Latin America exposure, etc.)." As set forth in Exhibit 58 to the NOL also referenced above, PAM/ORA declined the proposed dry lease notwithstanding Avsurance having advised Mr. Becker that

PAM/ORA "would most likely lose the account over this." In spite of this threat, Mr. Becker stated: "We held our ground due to exposure."

18. I now understand that R Consulting entered into an Aircraft Purchase Agreement ("Purchase Agreement"), effective December 1, 2014, with one Jose Luis Sanchez to sell N388LR. The existence of the Purchase Agreement was not disclosed to PAM/ORA until late September of 2015, immediately before the expiration of the 14/15 Policy. Had PAM/ORA been made aware that this Purchase Agreement had been entered into, it would have deleted the Aircraft from the 14/15 Policy as of the effective date of the sale.

19. I have reviewed the Exhibit 7 to the NOL which is, as noted above, the "Pilot Experience Form" relative to R Consulting pilot, Lance Ricotta, dated September 4, 2013. In that document, the "No" box was checked as respects the question: "Have you ever been convicted or pleaded guilty to a felony or driving while impaired or intoxicated?" I have also reviewed Exhibit 48 to the NOL, which is, as noted above, the "Aircraft Insurance Application" submitted by R Consulting as respects the 14/15 Policy. Therein, there was a "No" response provided to the question: "Has any pilot ever been convicted of or plead guilty to a felony or driving while intoxicated?"

20. Well after expiration of the 14/15 Policy, it first came to my attention that the responses to the questions referenced in paragraph 19, above, was false, and that, in fact, R Consulting's pilot, Lance Ricotta, had been convicted in 2005 of the Class C felony of "Conspiracy to Commit Fraud Involving Aircraft" in the United States District Court for the Southern District of California, in the case of *United States of America v. Lance Z. Ricotta*, case no. 3:02-cr-00333-W ("the Ricotta Felony Action")-- a conviction that involved a jail sentence, a $185,000 restitution payment, a three year term of "supervised release," and a "condition of supervision" that Ricotta "shall not engage in the employment of aircraft sales or any other occupation involving fiduciary responsibilities or the solicitation of funds." (I have reviewed Exhibit 3 to the NOL, which sets forth Mr. Ricotta's conviction and related terms.)

21. Well after expiration of the 14/15 Policy, it further came to my attention that, on April 4, 2006, a Petition for Warrant or Summons for Offender Under Supervision ("Petition for Warrant") was filed in the Ricotta Felony Action by the United States Probation Officer to obtain a "no-bail bench warrant" against Mr. Ricotta on the ground that, on December 22, 2005, Mr. Ricotta had assaulted, and punched in the face, a female employee at the Jet Air facility located at Gillespie Field in San Diego, California. The assault assertedly arose out of a dispute regarding a $100 storage and hangar fee relative to a jet Mr. Ricotta had flown into the airport. (I have reviewed Exhibit 4 to the NOL, which is the Petition for Warrant.)

22. Had I been aware of either the facts detailed in paragraph 20, above, or the facts detailed in paragraph 21, above, I would have directed Ms. Melvin to decline to issue any policy of insurance to R Consulting.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 12th day of June, 2018 at Chicago, Illinois.

                        /s/ *Michael Prahl*
                        Michael Prahl

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 15, 2018, I electronically transmitted Defendant, Old Republic Insurance Company's DECLARATION OF MICHAEL PRAHL IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Michael J. Mason, Esq.<br>Metsch & Mason, LLP<br>5060 N. Harbor Drive, Suite 275<br>San Diego, CA  92106<br>Email: *mmason@metschlaw.com* | Tel: 619-230-0897 |

Attorneys for Plaintiff
R CONSULTING & SALES, INC.

                                               */s/  Ralph S. LaMontagne, Jr.*
                                               Ralph S. LaMontagne, Jr.