# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R CONSULTING & SALES, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>vs.<br><br>OLD REPUBLIC INSURANCE COMPANY, a Pennsylvania corporation, et al.,<br><br>Defendants. | CASE NO. 17cv171-LAB (BLM)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Dkt. 19]** |

R Consulting & Sales, Inc. ("R Consulting") owned a Gulfstream jet insured by Defendant Old Republic Insurance Co. ("ORIC"). After the jet went missing in Mexico in 2014, R Consulting filed a claim with ORIC, who denied coverage based on alleged misrepresentations in the policy application and breaches of several of the policy's warranties. R Consulting then filed this suit for breach of contract and bad faith. ORIC now moves for summary judgment, arguing that its denial of coverage was proper. For the reasons below, the Court agrees and **GRANTS** ORIC's Motion for Summary Judgment.

/ / /

/ / /

/ / /

- 1 -

# **FACTUAL BACKGROUND**[1]

R Consulting is a company involved in aircraft sales, leasing, and consulting. *See* Joint Statement of Undisputed Facts, Dkt. 42 ¶ 1. Beginning in 2013, R Consulting's insurance broker, Avsurance Corporation ("Avsurance"), negotiated with ORIC's general agent, Phoenix Aviation Managers, Inc. ("PAM"), to obtain two insurance policies covering R Consulting's 1983 Gulfstream jet: (1) No. CA 00246201, effective from September 30, 2013 to September 30, 2014 ("the 13/14 Policy") and (2) No. CA 00246202, effective from September 30, 2014 to September 30, 2015 ("the 14/15 Policy"). *Id.* ¶ 4. Only the 14/15 Policy is at issue in this suit.

Before the 13/14 Policy expired on September 30, 2014, R Consulting (through Avsurance) applied for the 14/15 Policy at issue here. *See* Dkt. 19, Ex. 17 at 6. In that application, R Consulting stated that the aircraft was to be based at Minden-Tahoe Airport in Nevada. *Id.* R Consulting also checked the "NO" box next to the question: "Has any pilot ever been convicted of or plead guilty to a felony or driving while intoxicated?" *Id.* at 7. It is undisputed that one of the pilots listed on the application, Lance Ricotta, had an undisclosed 2004 felony conviction for falsifying aircraft logbooks, although he was allowed to keep his air transport pilot's license as part of that plea deal. *See* Dkt. 36-6 ¶ 11.

Finally, the application asked the applicant "[d]escribe any navigation outside the USA & Canada," to which Avsurance responded: "Mexico." *Id.* at 6. Avsurance had responded similarly when originally applying for coverage in 2013. This answer piqued the interest of ORIC's underwriter, Jennifer Melvin, who reached out to Avsurance's Jim

---

[1] The Court relies where possible on the facts in the parties' Joint Statement of Undisputed Facts. Dkt. 42. ORIC, however, has lodged numerous documents along with its motion, including the insurance policies and applications at issue, as well as email communications between the parties. Because R Consulting has not made any evidentiary objections to these documents—indeed, R Consulting relies on many of these documents in its opposition—the Court views the authenticity of these documents as undisputed.

Coleman in 2013 for clarification. She noted that ORIC needed "[c]onfirmation that the aircraft is not predominantly based in, or conducting flights in Mexico (the policy territory is Worldwide, so we do not mind the occasional vacation south of the border, but if they spent more time down there than up here we'd have to pass)". Dkt. 19, Ex. 8. After a "series of emails and phone calls" between Melvin and Coleman, Melvin summarized that "[w]hile there are several vacation flights a year to Mexico, [R Consulting's] operations are predominately domestic." *Id.*, Ex. 11. Coleman clarified that R Consulting's officers "do go to Mexico from time to time for business, so I wouldn't classify it solely as 'vacation' trips." *Id.*

Based on the answers provided, on September 23, 2014, ORIC sent Avsurance an "Aircraft Insurance Binder" containing the tentative 14/15 Policy. *See* Dkt. 42 ¶ 23. Avsurance confirmed that the documents "looked good," and ORIC issued the policy. The policy, (Dkt. 21, Ex. 21), contained several provisions at issue here:

- **"Your Aircraft" Provision**: "You must own your aircraft solely or in part or you must hold it under a written lease of at least one year";
- **"Purpose of Flight" Provision (as modified by the "Industrial Use" amendment)**: "[Y]ou cannot charge any person or organization for using your aircraft for anything other than reimbursement of the operating expenses of the Aircraft";
- **"Who Can Fly Your Aircraft" Provision**: Only pilots named in the application or pilots meeting minimum qualifications may fly the Aircraft;
- **"Sale or Disposition" Provision**: Negates coverage "[i]f someone is legally holding your aircraft, and later sells or disposes of your aircraft, or keeps you from using it";

The story takes shape in July 2014, shortly before R Consulting obtained the 14/15 Policy. In July 2014, R Consulting's pilot, Lance Ricotta, took a trip to Toluca, Mexico, where he met Pablo Gonzalez Ulloa, the president of the Mexican company Aviarrendamientos S.A. de C.V. Dkt. 42 at ¶ 12. Ulloa indicated he was "doing work for the Mexican Military" and sought a dry lease of R Consulting's Gulfstream "for his travel and for his clients [sic] travel." *Id.* at ¶ `14. On September 4, 2014, a few days after R Consulting applied for the 14/15 Policy (but before that policy went into effect), R Consulting and Ulloa finalized the terms of the lease and Ricotta delivered the Gulfstream

to Ulloa in Toluca. *Id.* at ¶¶ 20, 22. The lease was for a term of three months, with an agreed rate of $73,000 per month. Dkt. 19, Ex. 17 at 9.

Three months later, on December 1, 2014, R Consulting sold the Gulfstream to a Mexican national named Jose Luis Sanchez for $1,000,000, with Ulloa serving as R Consulting's agent in the sale.[2] *Id.* at 16-26. Shortly thereafter, it became apparent to R Consulting that something had gone wrong. The funds Sanchez owed were never transferred and R Consulting no longer had possession of the plane. In a letter, Sanchez wrote to R Consulting to confirm that he "received this aircraft from R Consulting & Sales Inc., at Toluca International Airport, Mexico and assumed possession and control over said aircraft, the 22nd day of December of 2014." Dkt. 19, Ex. 24 at 2. On April 9, 2015, Ulloa made a $200,000 payment to R Consulting, although the parties dispute whether this was a portion of the sale price or simply money Ulloa still owed under the lease. *Id.*, Ex. 25 at 1. Believing Ulloa had simply pocketed the remainder of the purchase price from Sanchez, in June 2015, R Consulting filed suit against Ulloa and Sanchez in San Diego Superior Court. *See* Dkt. 36-3 ¶ 4; *see also R Consulting & Sales, Inc. v. Pablo Gonzalez Ulloa, et al.*, case no. 37-2015-00021516-CU-BC-CTL (S.D. Cty. Sup. Ct. 2015).

In September 2015, nine months after it sold (or attempted to sell) the plane to Sanchez, R Consulting learned from the Mexican Directorate General of Civil Aeronautics that the aircraft had crashed sometime before January 12, 2015. *See* Dkt. 36-3 ¶ 4. From this, R Consulting discerned that the "sale" arranged by Ulloa had been a ruse to cover up the crash. R Consulting later learned from the U.S. Department of Homeland Security that the plane was likely destroyed in Venezuela on or about December 23, 2014. *Id.* ¶ 5. Later in September 2015, R Consulting for the first time alerted Avsurance that it had concerns about the whereabouts of the aircraft. Dkt. 42 ¶ 25. Avsurance then informed

---

[2] R Consulting says the agreement was actually entered into in January 2015, but backdated to December 1, 2014. In any event, it is undisputed the sale (or attempted sale) took place during the 14/15 Policy's coverage period.

- 4 -

ORIC of the possible loss and noted "I am sure this will generate a reservation of rights letter due to the delayed reporting of the claim and lack of hard facts." *Id.* ¶ 26.

After a series of communications regarding what R Consulting knew about the disappearance of the aircraft, on October 15, 2015, ORIC sent a letter to R Consulting indicating that it would be investigating the claims under a reservation of rights. *Id.* ¶ 31. On March 24, 2016, ORIC concluded its investigation and informed R Consulting that it was denying coverage. *Id.* ¶ 41. Among ORIC's stated reasons for the denial were:

- ORIC was unable to confirm there had been any "direct and accidental physical damage or loss." Although the authorities indicated the plane may have crashed in Venezuela, there was no proof of that;
- ORIC was unable to confirm the plane was "stolen" as opposed to sold. The latter of which would negate coverage;
- R Consulting's sale of the plane to Sanchez voided the policy's "[y]ou must own your policy solely or in part or you must hold it under a written lease of at least one year" clause;
- R Consulting's leasing of the plane to Ulloa violated the "you cannot profit from your aircraft by charging others for its use" clause;
- The Gulfstream was not based in the United States as stated in the application for coverage, but was instead based in Mexico, negating coverage under the "Voiding the Policy" provision;
- R Consulting's nine-month delay in notifying ORIC of the potential loss violated the "Physical Damage to Aircraft" provision.

Dkt. 19, Ex. 46. R Consulting then brought this suit, alleging that ORIC breached the contract and acted in bad faith when it denied coverage under the policy. R Consulting has moved for summary judgment, arguing that its denial was proper.

## **LEGAL STANDARDS**

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the moving party's burden to show there is no factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to show there is a genuine factual

issue for trial. *Id.* at 324. The non-moving party must produce admissible evidence, and cannot rely on mere allegations. *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1033 n.14 (9th Cir. 2008). This can be done by presenting evidence that would be admissible at trial, *see Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002), or by pointing to facts or evidence that could be presented in admissible form at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). But evidence that is not admissible and could not be presented at trial in admissible form is not enough to resist summary judgment. *See Orr*, 285 F.3d at 773.

The Court does not make credibility determinations or weigh conflicting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Rather, the Court determines whether the record "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

Not all factual disputes will serve to forestall summary judgment; they must be both material and genuine. *Id.* at 247–49. Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Id.* at 248.

## DISCUSSION

ORIC moves for summary judgment on both R Consulting's breach of contract claim and its bad faith claim. As to the breach of contract claim, ORIC argues that: (1) misrepresentations in R Consulting's application for the 14/15 Policy negate any coverage; (2) R Consulting violated numerous warranties in the 14/15 Policy, also negating coverage; and (3) R Consulting has failed to show the "Physical Damage Coverage" has been triggered. R Consulting's claim for bad faith rises and falls with its breach of contract claim in this case, so the Court does not address it in detail.

/ / /

/ / /

/ / /

/ / /

**1. R Consulting's Misrepresentations Negate Coverage under the 14/15 Policy.**

ORIC argues that its denial of coverage was proper, and that summary judgment is therefore warranted, because R Consulting made material misrepresentations in its application for insurance coverage. The Court agrees.

"An insurance company is entitled to determine for itself what risks it will accept." *Imperial Casualty & Indem. Co. v. Sogomonian*, 198 Cal. App. 3d 169, 180 (Cal. Ct. App. 1988). In this regard, California law[3] imposes "heavy burdens of disclosure." *Id.* "In California, an applicant for insurance is under an affirmative obligation to provide truthful information to an insurer when applying for coverage." *United Specialty Ins. Co. v. Saleh*, 2016 WL 4434479, at *3 (E.D. Cal. 2016). An insurer has the right to rely on the insured's answers to questions "without verifying their accuracy," *Mitchell v. United Nat'l Ins. Co.*, 127 Cal. App. 4th 457, 477 (Cal. Ct. App. 2005), so "an insurer has no independent duty to investigate facts in an insurance application." *Philp v. Jackson Nat. Life Ins. Co.*, 107 F.3d 878 (9th Cir. 1997). Consistent with these general polices of disclosure, the 14/15 Policy contained a "Voiding the Policy" provision, which states, in pertinent part: "This policy will be void if you do not fully and accurately disclose, whether before or after a loss, all the important information we have requested." Dkt. 19, Ex. 21 at 27.

As a general matter, California law "permits an insurer to rescind a policy when the insured has misrepresented or concealed material information in connection with obtaining insurance." *TIG Ins. Co. of Michigan v. Homestore, Inc.*, 137 Cal. App. 4th 749, 756 (Cal. Ct. App. 2006); *see also* Cal. Ins. Code §§ 331 ("Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance."). "Materiality is determined solely by the probable and reasonable effect which truthful answers would have had upon the insurer." *Freeman v. Allstate Life Ins. Co.*, 253 F.3d 533, 536 (9th Cir.

---

[3] The Court applies California law because the policy was issued in California and the parties do not dispute that California law applies.

2001) (quoting *Thompson v. Occidental Life Ins. Co.,* 9 Cal. 3d 904, 915 (Cal. 1973) (en banc)). "[T]he critical question is the effect truthful answers would have had on [the particular insurer], not on some 'average reasonable' insurer." *Imperial Casualty*, 198 Cal. App. 3d at 181.

Although material misrepresentation or concealment entitles the insurer to rescind, rescission is not an exclusive remedy. Rather, "[a] misrepresentation or concealment of a material fact in an insurance application also establishes a complete defense in an action on the policy." *Superior Dispatch, Inc. v. Ins. Corp. of N.Y.*, 181 Cal. App. 4th 175, 192 (Cal. Ct. App. 2010). "As with rescission, an insurer seeking to invalidate a policy based on a material misrepresentation or concealment as a defense need not show an intent to deceive." *Id.* And "[t]he test for materiality is the same." *Id.*

### a. Aircraft's Home Base

ORIC argues that R Consulting materially misrepresented the anticipated home base of the aircraft when it listed the base as Minden-Tahoe Airport in Nevada instead of Mexico. The parties agree the aircraft was flown to Mexico and leased to Ulloa on September 5, 2014, nearly one month before the 14/15 Policy went into effect on September 30, 2014. Dkt. 42 ¶ 20, 22. From this, ORIC concludes that the plane was to be "based" in Mexico. ORIC says that while it provides coverage for incidental trips to Mexico, it specifically does not insure aircraft that are *primarily* operated in that country. To show the existence of this corporate policy, ORIC points to pre-policy communications between its underwriter, Jennifer Melvin, and Avsurance, in which Melvin noted that ORIC needed "[c]onfirmation that the aircraft is not predominantly based in, or conducting flights in Mexico (the policy territory is Worldwide, so we do not mind the occasional vacation south of the border, but if they spent more time down there than up here we'd have to pass.)". Dkt. 19, Ex. 8.

R Consulting argues that it did not misrepresent the home base of the aircraft and that any misrepresentation was immaterial. First, R Consulting submits expert testimony that the term "base" is vague and that the term can simply "describe the venue where

- 8 -

operations originate," reflect a "strategic location that satisfies many business needs," and need not be "even located at an airport." DiLullo Decl., Dkt. 36-5 ¶ 3. The undisputed facts show that the aircraft didn't spend a single day during the 14/15 Policy's coverage period at Minden-Tahoe Airport or anywhere else in the United States.[4] Indeed, the plane was leased to Ulloa and located in Mexico well before the policy even took effect. In the insurance context, undefined words are to be construed in accordance with the "plain meaning that a layperson would ordinarily attach to them." *Mercury Ins. Co. v. Pearson*, 169 Cal. App. 4th 1064, 1070 (Cal. Ct. App. 2008). The Court can't accept a "plain meaning" definition of "base" that would include a location (Minden-Tahoe) where the aircraft never spent a single day during the policy period. The undisputed facts show the plane was based in Mexico, and the fact that the aircraft was leased to Ulloa prior to the policy's effective date only bolsters that conclusion. No jury could reasonably conclude otherwise.

R Consulting next argues that even if the aircraft was based in Mexico, this was immaterial to ORIC's decision to provide coverage. Specifically, R Consulting points to the "Mexican Rider" on the policy—which provided coverage when the plane was flown in Mexico—to show that the location of the plane's base was immaterial to ORIC. Dkt. 19, Ex. 55 at 1-2. Again, the facts belie this argument. There is a material difference between covering a plane that is incidentally flown in Mexico and covering a plane that is *based* in Mexico. In their initial policy discussions, Melvin noted that "[ORIC] do[es] not mind the occasional vacation south of the border, but if [R Consulting] spent more time down there than up here we'd have to pass." Dkt. 19, Ex. 8. This statement was consistent with ORIC's general policy of not insuring Mexican-based aircraft. In the declaration of Michael Prahl, Senior Vice President of ORIC, Prahl stated: "the company

---

[4] R Consulting makes much of the fact that the policy lists the home base as El Paso when it told ORIC the home base would be Minden-Tahoe. This is a red herring. Both El Paso and Minden-Tahoe were acceptable bases to ORIC, but the aircraft wasn't based at either airport, so this argument is irrelevant.

evaluates the risks of loss in Mexico to be unacceptably high for a number of reasons, including corruption, drug cartel activity and lack of airport security. Indeed during the course of my eight and one half years working at PAM/OR[IC], I am unaware of so much as a single policy ever having been issued as respects a Mexican-based risk." Dkt. 21-2 ¶ 10. As noted before, "the critical question is the effect truthful answers would have had on [ORIC], not on some 'average reasonable' insurer." *Imperial Casualty*, 198 Cal. App. 3d at 181. Here, the undisputed evidence shows that the aircraft was based in Mexico, not the United States, and that R Consulting's failure to disclose that fact was material to ORIC issuing the policy. For this reason alone, ORIC was entitled to deny coverage under the policy. Summary judgment is therefore warranted.

### b. Ricotta's Felony Conviction

ORIC next argues that R Consulting's failure to disclose Lance Ricotta's felony conviction for falsifying air logs is also grounds for denying coverage. The parties agree that Ricotta was convicted and that R Consulting failed to disclose that conviction on its application, the question is simply whether the omission was material. On this front, R Consulting makes a series of scattershot arguments: that the omission was immaterial because Ricotta was not flying the aircraft; that ORIC waived this argument because it was not stated in the initial coverage denial letter; that R Consulting believed it was answering the questions truthfully; and that R Consulting disclosed the conviction to Avsurance, who they now couch as ORIC's agent. None of these arguments are availing.

From the outset, the Court notes that "[t]he fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law." *Freeman*, 253 F.3d at 536 (quoting *Thompson*, 9 Cal. 3d at 915). Additionally, "[t]he misrepresentation need not relate to the loss ultimately claimed by the insured." *Mitchell*, 127 Cal. App. 4th at 474. Thus, even ignoring the declarations indicating that ORIC would have denied coverage if it had been aware of Ricotta's conviction, (*see, e.g.,* Dkt. 21-2 ¶¶ 19-22), the court can infer materiality from the fact that the question was asked and R Consulting falsely answered it. Whether

R Consulting knew the answer was false is irrelevant. *Mitchell*, 127 Cal. App. 4th at 469 ("negligent or inadvertent" material misrepresentation in an insurance application will negate coverage).

R Consulting's other arguments also lack merit. ORIC didn't waive this defense simply because it didn't raise it in its initial denial letter. *See, e.g., Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 31 (Cal. 1995) ("[A] denial of coverage on one ground does not, absent clear and convincing evidence to suggest otherwise, impliedly waive grounds not stated in the denial."). And there is no basis for holding that Avsurance was ORIC's agent, such that disclosure of Ricotta's felony to Avsurance was sufficient to constitute disclosure to ORIC. If anything, Avsurance functioned as *Plaintiff's* agent, not ORIC's. *See Clarendon National Ins. Co. v. Insurance Company of the West*, 442 F. Supp. 2d 914, 936 (E.D. Cal. 2006) ("Insurance brokers who lack authority to bind the insurance company are not agents of the insurance company, but rather are independent contractors acting only on behalf of the insured and not the insurer."). ORIC was therefore entitled to deny coverage based on this misrepresentation, and summary judgment is warranted.

**2. R Consulting Violated Warranties in the 14/15 Policy, Negating Coverage.**

ORIC next argues that in addition to misrepresenting material facts in its application, R Consulting also breached several of the policy's warranties, thus negating coverage. Chief among these are the "Your Aircraft" and "Purpose of Flight" Warranties.

**a. "Your Aircraft" Warranty**

ORIC argues it was entitled to deny coverage because R Consulting sold the aircraft during the coverage period, thus violating the 14/15 Policy's "Your Aircraft" provision, which required that R Consulting "own" the aircraft or "hold it under a written lease of at least one year." Dkt. 19, Ex. 21 at 10. R Consulting argues this provision was never triggered because Sanchez (and/or Ulloa) never paid the full sale price and thus the sale was never consummated. Again, this argument is belied by the undisputed facts.

R Consulting has sued Ulloa for breach of the sale agreement. "When one sues ex contractu, whether on an express or implied contract, the bringing of that suit affirms the contract." *Sears, Roebuck & Co. v. Blade*, 123 F. Supp. 131, 136 (S.D. Cal. 1954), *aff'd sub nom. Sears, Roebuck & Co. v. Metro. Engravers, Ltd.*, 245 F.2d 67 (9th Cir. 1956). It may well be the case that Sanchez failed to pay the purchase price, but that constitutes a breach of the contract, not grounds for denying the contract existed altogether. And as ORIC correctly points out, the question here isn't the exact parameters of R Consulting's agreement with Ulloa/Sanchez, but rather R Consulting's concealment of the agreement (or potential agreement) from ORIC. Concealment is the "[n]eglect to communicate that which a party knows, and ought to communicate." Cal. Ins. Code § 332. Here, R Consulting plainly concealed (at a minimum) an attempt to sell the aircraft. This breached the terms of the policy and constitutes grounds for denying coverage. Summary judgment is warranted.

### b. "Purpose of Flight" Warranty

The 14/15 Policy contained a "Purpose of Flight" clause which, as modified by the "Industrial Aid" amendment, provides: "[Y]ou cannot charge any person or organization for using your aircraft for anything other than reimbursement of the operating expenses of the aircraft. If your aircraft is used for any other purpose, and you or anyone else protected by this policy knows about this use and agrees to it, we will not provide any coverage under the policy." Dkt. 19, Ex. 21 at 33. ORIC argues that R Consulting breached this provision when it leased the aircraft to Ulloa for $73,000 per month. The Court agrees.

R Consulting says it didn't breach this provision because the $73,000 per month it received from Ulloa wasn't sufficient to cover maintenance costs, and therefore R Consulting didn't "profit" from the lease. In R Consulting's view, if it didn't profit from the lease, then the "Purpose of Flight" provision (and the "Industrial Aid" amendment) is not triggered because R Consulting was merely being reimbursed for the operational costs. But there is no plain language construction of the provision that would support such a

reading. The provision did not require that R Consulting "profit" from the lease—it simply states, "you cannot *charge* any person …for using your aircraft for anything *other than reimbursement*." *Id.* (emphasis added). The $73,000 was plainly a "charge." Further, the term "reimbursement" is retrospective; it implies a payment to compensate someone for an expense already incurred. *See WDT-Winchester v. Nilsson*, 27 Cal. App. 4th 516 (Cal. Ct. App. 1994) ("The word 'reimburse,' in its ordinary acceptation, signifies to pay back an equivalent for something taken, lost, or expended to someone, to repay, to make restoration, or to indemnify."). The $73,000 was a prospective payment made by Ulloa in exchange for his future usage of the aircraft, and thus falls within the scope of the "Purpose of Flight" provision, as modified by the "Industrial Use" amendment. R Consulting breached that warranty and summary judgment is appropriate.

### 3. There are Triable Issues Regarding whether the "Physical Damage Coverage" Has Been Triggered.

ORIC's final argument is that there can be no coverage under the policy because R Consulting failed to show that there has been any "theft," "direct and accidental physical damage or loss," or "disappearance" of the aircraft. *See* Dkt. 19, Ex. 21 at 12 ("If you have this kind of coverage, you are protected if your aircraft suffers any kind of direct and accidental physical damage or loss. You are also protected if your aircraft is stolen, or if it disappears after takeoff and is not found or heard from within 60 days."). ORIC's basic argument is that there is no direct proof of what happened to the aircraft, only reports by various government agencies that it *may* have crashed in Venezuela in December 2014. Based on the undisputed facts, however, a jury could reasonably find that there was either a theft, accidental physical damage or loss, or disappearance of the aircraft, so the Court is not persuaded by ORIC's argument. Because the Court has already found that ORIC is entitled to summary judgment, this is a hollow victory for R Consulting.

### CONCLUSION

For the reasons set out above, ORIC is entitled to summary judgment on R Consulting's first claim for breach of contract. Because R Consulting's second claim for

bad faith rises or falls with the breach of contract claim, ORIC is also entitled to summary judgment on that claim. *See Benavides v. State Farm Gen. Ins. Co.*, 136 Cal. App. 4th 1241, 1250 (2006) ("[A]n insured cannot maintain a claim for tortious breach of the implied covenant of good faith and fair dealing absent a covered loss."). ORIC's motion for summary judgment is **GRANTED** as to both R Consulting's causes of action.[5] The Clerk is directed to enter judgment in favor of ORIC and close the case.

**IT IS SO ORDERED**.

Dated: November 27, 2018

_Larry A. Burns_
**HONORABLE LARRY ALAN BURNS**
United States District Judge

---

[5] ORIC also made evidentiary objections to several of the declarations submitted in support of R Consulting's opposition. Dkt. 41-1. Because summary judgment would be still be warranted even if the Court accepted these declarations in their entirety, these objections are moot and therefore **OVERRULED**.